PROCESS #
AMOUNT $ 350
SUMMONS ISSUED Y
LOCAL RULE 4.1
WAIVER FORM
MCF ISSUED
BY DPTY CLK
DATE

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

MARK DEARMAN and ANTHONY DEBISEGLIA, on behalf of themselves and all others similarly situated,

Plaintiffs,

vs.

THE GILLETTE COMPANY,

Defendant.

COMPLAINT

JURY TRIAL DEMANDED

**05 - 11177 DPW**

MAGISTRATE JUDGE _Alexander_

Plaintiffs, Mark Dearman and Anthony DeBiseglia, by their attorneys, bring this action on behalf of themselves and all other persons and entities similarly situated, and allege upon information and belief, formed after an inquiry reasonable under the circumstances, except as to those allegations which pertain to the named Plaintiffs (which are alleged on personal knowledge), as follows:

### NATURE OF THE ACTION

1. This class action is brought against Defendant The Gillette Company ("Gillette") to recover for the harm caused by Gillette's false and misleading advertising campaign for its M3 Power razor system (the "M3P"). Gillette's actions constitute unfair trade practices under FDUTPA, §501.201, et. seq., and New York General Business Law Sections 349 and 350 et seq., as well as similar laws in other states.

2. Gillette engaged in deceptive acts and practices and defrauded members of the Class (defined below) through its integrated advertising campaign in virtually every form of media that claimed that the M3P delivered micro-pulses to the shaving cartridge that stimulate hair upward and away from the skin. However, independent testing, as well as court decisions from around the world, including a United States District Court, demonstrate that Gillette's claims regarding the M3P are baseless.

3.  Plaintiffs and Class Members were persuaded by these false claims to purchase the M3P.

## JURISDICTION AND VENUE

4.  The Court has original jurisdiction over this matter, pursuant to 28 U.S.C. §1332(d), in that the matter in controversy exceeds $5 million, exclusive of interest and costs, and is a class action of more than 100 potential class members in which Plaintiff are citizens of Florida and New York while Gillette is a citizen of Massachusetts.

5.  Venue properly lies in this district pursuant to 28 U.S.C. §1391(a), because Defendant resides in this district of Massachusetts, as it conducts business in this district within the meaning of 28 U.S.C. §1391(a) as defined in 28 U.S.C. §1391(c), and because a substantial part of the events giving rise to the claims alleged herein occurred in this district of Massachusetts.

## PARTIES

6.  Plaintiff Mark Dearman ("Dearman") is a resident of the State of Florida. Dearman purchased the M3P after viewing Gillette's false and misleading advertisements.

7.  Plaintiff Anthony DeBiseglia ("DeBiseglia") is a resident of the State of New York. DeBiseglia purchased the M3P after viewing Gillette's false and misleading advertisements.

8.  Upon information and belief, Defendant Gillette is corporation organized and existing under the laws of the State of Delaware, with its principal place of business located in Boston, Massachusetts. Gillette is the world's market-share leader in wet shave razors. Wet shave razors are among the fastest growing market segments of the consumer products industry.

## SUBSTANTIVE ALLEGATIONS0

### Background Facts

9. Gillette launched the M3P in North America in May 2004 and the razor is sold in commerce and advertised throughout the United States, including the states of Florida and New York.

10. The vast majority of razors sold in the United States fall within two categories. The first category is known as "razor systems," which provides consumers with a permanent razor handle and separate refillable blades. The second category consists of disposable razors, which are discarded in their entirety when they are worn out. In the United States, consumers purchase more than $1 Billion of razor systems and accompanying blades each year. Gillette controls approximately 90% of that market.

11. In order to grow the market, Gillette attempts to convince consumers to abandon their current razor systems and switch to what Gillette claims are technologically advanced shaving products.

12. One recently introduced razor system is Gillette's M3P, which is sold in the premium end of the market and commands the market's highest price point.

13. In many respects, the M3P has the same components as other Gillette razor systems. However, unlike other razor systems, the M3P has a battery powered feature which causes the M3P to oscillate, creating what Gillette describes as "micro-pulses." Gillette called its M3P revolutionary in its advertising because it claimed that micro-pulses raise hair up and away from the skin ("Hair Raising Claims").

14. These Hair Raising Claims are the cornerstone of Gillette's marketing for the M3P in each of the media in which Gillette advertises.

15. For example, on its website, Gillette asserted that the M3P's "[m]icro-pulses raise the hair up and away from skin so you can shave closer and more thoroughly in one easy power stroke."

16. Similar claims were made by Gillette on retail packages and print advertisements for the M3P. These materials advised consumers that "[g]entle micro-pulses stimulate hair up and away from skin. In just one power stroke, you can get a closer and more thorough shave. So thorough, there is less need to reshave, which means less irritation."

17. In addition, Gillette repeated these Hair Raising Claims in its ubiquitous television commercials, which Gillette broadcasted nationwide, including within the states of Florida and New York. For example, in the television commercial that Gillette aired at the time when it introduced the M3P, an announcer claimed that "micro pulses raise the hair, so you shave closer in one power stroke." While the announcer was making this claim, the commercial displayed an animated product demonstration that showed the hairs changing angle from the person's face in response to the micropulses of the M3P.

18. However, Gillette knew at the time that it introduced the M3P that its advertising campaign was deceptive. Indeed, Gillette's chief scientist advised Gillette's in-house legal counsel and other high level Gillette employees that the marketing campaign was inaccurate.

19. Gillette's competitor, Schick, sued Gillette in Germany as a result of the false Hair Raising Claims. Due to their deceptive nature, a German court enjoined Gillette from making any Hair Raising Claims in that country. The German court's decision was later affirmed by the Hamburg Regional Court.

20. Thereafter, Gillette admitted that the M3P's micropulses did not cause hair to change angle on the face, and that its ads depicting such angle change are both unsubstantiated and inaccurate.

21. Although Gillette slightly modified its television commercials in the United States following the decision by the German court, Gillette continued to claim that the M3P's "micropulses raise the hairs so that the blade can shave closer."  In addition, Gillette's modified television commercials contained an animated product demonstration that showed that the MP3's micropulses lengthened a great number of hairs on the face.

22. Once again, however, Gillette knew that its advertisements were false and misleading.  Indeed, testing confirmed that Gillette's claims concerning the M3P were unsubstantiated.

23. Gillette's false advertising campaign achieved its desired result.  As a result of Gillette's deceptive marketing, by the end of 2004, the M3P attained a market share of 42% of the total dollar sales of men's system razors in the United States.

24. Gillette knew or recklessly disregarded the fact that the intentional representations about the M3P in its sales and marketing communications with purchasers of the M3P are false and misleading, and thus Defendant has acted willfully and in bad faith.

25. Gillette's false statements and misrepresentations were material.  These widespread communications and advertisements were directed at those persons, such as Class Members, who purchase the M3P.  Class Members' decisions in selecting a razor is influenced by advertisement used by Gillette.

26. Class Members have relied on Gillette's false and misleading statements about the capacity of M3P's razor system.

27. Class Members were misled as to the capacity of the M3P that they purchased.

28. Gillette' intentional misrepresentations harmed Plaintiffs and other Class Members who were deceived into purchasing the M3P based on Gillette's false and misleading claims in its advertising.

## CLASS ACTION ALLEGATIONS

29. This action is brought as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

30. Plaintiff Dearman brings this action both in his individual capacity, and as a class action against defendant on behalf of:

> all persons or entities in Florida who have purchased the M3P and were damaged thereby. Excluded from the Class are Defendant, any entity in which the Defendant has a controlling interest or which has a controlling interest of Defendant; Defendant's legal representatives, assigns and successors; any Judge or Special Master assigned to hear any aspect of this case, any member of their immediate families and to the extent the class certifications order permits exclusion, all people who submit timely and otherwise proper requests for exclusion from the Class ("Florida Sub-Class").

31. Plaintiff DeBiseglia brings this action both in his individual capacity, and as a class action against defendant on behalf of:

> all persons or entities in New York who have purchased the M3P and were damaged thereby. Excluded from the Class are Defendant, any entity in which the Defendant has a controlling interest or which has a controlling interest of Defendant; Defendant's legal representatives, assigns and successors; any Judge or Special Master assigned to hear any aspect of

this case, any member of their immediate families and to the extent the class certifications order permits exclusion, all people who submit timely and otherwise proper requests for exclusion from the Class ("New York Sub-Class"). (The Florida Sub-Class and New York Sub-Class, collectively, the "Class").

32. The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiffs at this time and can only be ascertained through appropriate discovery, Plaintiffs believe that there are hundreds or thousands of members in the proposed Class.

33. Plaintiffs' claims are typical of the claims of the members of the Class. Plaintiffs and the members of the Class have been damaged by the same wrongful conduct committed by Defendant, as alleged herein. Moreover, Plaintiffs' claims are typical because Plaintiffs and all members of the Class have purchased the M3P and have not received the benefits promised by the representations made in the advertisement and promotion of the M3P.

34. Plaintiffs will fairly and adequately protect the interests of the members of the Class and have retained counsel competent and experienced in the prosecution of complex class action litigation. The interests of the Plaintiffs are coincident with, and not antagonistic to, those of the Class.

35. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a) whether Defendant violated unfair trade practices under FDUTPA,

§501.201, *et. seq.*, and New York General Business Law Sections 349 and 350 *et seq.*, by engaging in unfair methods of competition and practicing deceptive acts in advertising the M3P;

(b)  whether Defendant's engaging in unfair methods of competition and practicing deceptive acts as alleged herein should be enjoined;

(c)  whether Defendant was unjustly enriched by its improper conduct; and

(d)  whether Plaintiffs and the members of the Class have sustained damages and, if so, what is the proper measure of those damages.

36. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## COUNT I
### Violation of FDUTPA, §501.201, et. seq.

37. Plaintiffs repeat and reallege the allegations contained in all preceding paragraphs as if fully set forth herein.

38. Plaintiffs and the Class purchased the M3P as a result of Defendant's false and misleading advertisement in violation of FDUTPA.

39. At all relevant times, Defendant advertised and distributed goods within the State of Florida, and thereby was engaged in trade or commerce, as defined in § 501.203, Florida Statutes.

40. At all relevant times, Plaintiffs and the members of the Class were consumers, as defined by § 501.203, Florida Statutes.

41. Defendant committed deceptive and unfair trade practice by uniformly representing to Plaintiffs and other putative Class Members, among other things that (i) the M3P delivered micro-pulses that stimulate hair up and away from the skin thus creating a closer shave; and (ii) the M3P delivered micro-pulses that lengthened hair.

42. Defendant engaged, and continues to engage, in the practice complained of deliberately for the purpose of taking unfair advantage of Plaintiffs and the Class and enhancing Defendant's profits.

43. As described above, Plaintiffs and the Class were aggrieved by Defendant's false and misleading advertisement in that they were misled as to the true nature of the M3P.

44. Upon information and belief, Defendant acted and continues to act in an identical or substantially similar manner with respect to the entire putative Class by uniformly marketing the M3P as delivering micro-pulses that stimulate hair up and away from the skin.

45. Plaintiffs have retained the services of the undersigned attorneys who are entitled to a reasonable fee upon prevailing.

## COUNT II
**Violation of New York General Business Law Sections 349 and 350 *et seq.***

46. Plaintiffs repeat and reallege each and every allegation contained as is fully set forth herein.

47. In violation of New York General Business Law Sections 349 and 350 *et seq.*, Defendant engaged in deceptive acts and practices the conduct of their business, trade and

commerce and in the furnishing of goods in this state in connection with the misleading advertisement which caused Plaintiffs and other class members to purchase the M3P.

48. Defendant's deceptive acts and practices have directly, foreseeably and proximately caused actual damages and injury to Plaintiffs and other members of the Class.

49. By virtue of the foregoing, Defendant has violated New York General Business Law Sections 349 and 350 et seq.

50. As a direct and proximate result of Defendant's wrongful conduct, Plaintiffs and the other members of the Class suffered damages in connection with their respective purchases of the M3P.

51. Plaintiffs and the members of the Class further seek to enjoin such unlawful deceptive acts as and practices as described above. Each of the Class members will be harmed unless the unlawful actions of Defendant are enjoined in that Defendant will continue to sell its product without adequate disclosure of the true nature thereof. Towards that end, Plaintiffs and the Class request an order granting them injunctive relief as follows: (i) ordering that Defendant make disclosures to alert Class Members of the true nature concerning the usage of the M3P; and (ii) enjoining Defendant from selling the M3P until the proper disclosures set forth above are incorporated in their advertising and sales materials. Absent injunctive relief, Defendant will continue to sell their products to consumers and fail to make the required disclosures as detailed above. Plaintiffs have not previously asked for such injunctive relief.

### COUNT III
### Unjust Enrichment

52. Plaintiffs repeat and reallege the allegations contained in all preceding paragraphs as if fully set forth herein.

53. By means of its material misrepresentations and misconduct, as set forth above, Defendant induced Plaintiffs and the Class to the M3P. As a consequence of such misrepresentations and misconduct, Plaintiffs and the members of the Class purchased a razor that they would not have otherwise purchased.

54. By virtue of the foregoing, Gillette has been unjustly enriched in an amount yet to be determined with respect to the Class members, to the extent that Gillette received and kept revenues attained from the sale of the M3P from Plaintiffs and the Class that it would not have received absent Gillette's improper conduct.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs demand judgment against Defendant for themselves and the members of the Class as follows:

(a) an order determining that this action is a proper class action and certifying Plaintiffs as representative of the Classes;

(b) an order awarding compensatory and punitive damages in favor of Plaintiffs and the other Class members against Defendant for all damages sustained as a result of Defendant's wrongdoing, in an amount to be proven at trial, including interest thereon;

(c) an order declaring the Defendant's practices to be unlawful, unfair and/or deceptive and requiring the Defendant to provide refunds to consumers;

(d) an injunction (i) ordering that Defendant make disclosures to alert Class Members of the true nature concerning the capacity of the M3P; and (ii) enjoining Defendant from selling its product until the proper disclosures set forth above are incorporated in their advertising and sales materials;

(e) disgorgement and restitution;

(f) an order awarding Plaintiffs and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(g) such other and further relief as the Court may deem just and proper.

DATED: June 7, 2005

By their attorneys,
**Shapiro Haber & Urmy LLP**

*[signature]*

Thomas G. Shapiro BBO #454680
Theodore M. Hess-Mahan BBO #557109
53 State Street
Boston, MA 02109
Telephone: 617/439-3939


**Lerach Coughlin Stoia Geller Rudman & Robbins LLP**
Samuel H. Rudman
Robert M. Rothman
200 Broadhollow Road, Suite 406
Melville, NY 11747
Telephone: 631/367-7100


*Attorneys for Plaintiffs*

12

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

1. TITLE OF CASE (NAME OF FIRST PARTY ON EACH SIDE ONLY)     MARK DEARMAN et al., v. THE GILLETTE COMPANY

2. CATEGORY IN WHICH THE CASE BELONGS BASED UPON THE NUMBERED NATURE OF SUIT CODE LISTED ON THE CIVIL COVER SHEET.  (SEE LOCAL RULE 40.1(A)(1)).

    ___  I.    160, 410, 470, R.23, REGARDLESS OF NATURE OF SUIT.

    ___  II.   195, 368, 400, 440, 441-444, 540, 550, 555, 625, 710, 720, 730,        *Also complete AO 120 or AO 121
               740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.           for patent, trademark or copyright cases

    _X_  III.  110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310,
               315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371,
               380, 385, 450, 891.

    ___  IV.   220, 422, 423, 430, 460, 510, 530, 610, 620, 630, 640, 650, 660,
               690, 810, 861-865, 870, 871, 875, 900.

    ___  V.    150, 152, 153.

    **05 - 11177 DPW**

3. TITLE AND NUMBER, IF ANY, OF RELATED CASES. (SEE LOCAL RULE 40.1(G)). IF MORE THAN ONE PRIOR RELATED CASE HAS BEEN FILED IN THIS DISTRICT PLEASE INDICATE THE TITLE AND NUMBER OF THE FIRST FILED CASE IN THIS COURT.

4. HAS A PRIOR ACTION BETWEEN THE SAME PARTIES AND BASED ON THE SAME CLAIM EVER BEEN FILED IN THIS COURT?

                                              YES  ☐        NO  X

5. DOES THE COMPLAINT IN THIS CASE QUESTION THE CONSTITUTIONALITY OF AN ACT OF CONGRESS AFFECTING THE PUBLIC INTEREST?   (SEE 28 USC §2403)

                                              YES  ☐        NO  X

   IF SO, IS THE U.S.A. OR AN OFFICER, AGENT OR EMPLOYEE OF THE U.S. A PARTY?

                                              YES  ☐        NO  X

6. IS THIS CASE REQUIRED TO BE HEARD AND DETERMINED BY A DISTRICT COURT OF THREE JUDGES PURSUANT TO TITLE 28 USC §2284?

                                              YES  ☐        NO  X

7. DO ALL OF THE PARTIES IN THIS ACTION, EXCLUDING GOVERNMENTAL AGENCIES OF THE UNITED STATES AND THE COMMONWEALTH OF MASSACHUSETTS ("GOVERNMENTAL AGENCIES"), RESIDING IN MASSACHUSETTS RESIDE IN THE SAME DIVISION? - (SEE LOCAL RULE 40.1(D)).

                                              YES  ☐        NO  X

        A.   IF YES, IN WHICH DIVISION DO ALL OF THE NON-GOVERNMENTAL PARTIES RESIDE?

             EASTERN DIVISION  ☐       CENTRAL DIVISION  ☐       WESTERN DIVISION  ☐

        B.   IF NO, IN WHICH DIVISION DO THE MAJORITY OF THE PLAINTIFFS OR THE ONLY PARTIES, EXCLUDING GOVERNMENTAL AGENCIES, RESIDING IN MASSACHUSETTS RESIDE?

             EASTERN DIVISION  ☐       CENTRAL DIVISION  ☐       WESTERN DIVISION  ☐

(PLEASE TYPE OR PRINT)
ATTORNEY'S NAME    Thomas G. Shapiro
ADDRESS    Shapiro Haber & Urmy LLP, 53 State Street, Boston, MA 02109
TELEPHONE NO.   (617) 439-3939

(Dearman Category Form.wpd  - 11/27/00)

JS 44 (Rev. 3/99)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I. (a) PLAINTIFFS**
MARK DEARMAN and ANTHONY DEBISEGLIA on behalf of themselves and all others similarly situated

**DEFENDANTS**
THE GILLETTE COMPANY

(b) County of Residence of First    out of state
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed    Suffolk
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

(c) Attorney's (Firm Name, Address, and Telephone Number)
SEE ATTACHED

Attorneys (If Known)

**05-11177DPW**

**II. BASIS OF JURISDICTION** (Place an "X" in One Box Only)

☐ 1 U.S. Government Plaintiff
☐ 2 U.S. Government Defendant
☐ 3 Federal Question (U.S. Government Not a Party)
☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | X 4 |
| Citizen of Another State | X 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury— | ☐ 620 Other Food & Drug | | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | ☐ 423 Withdrawal | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury -- | of Property 21 USC | 28 USC 157 | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | **PROPERTY RIGHTS** | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 820 Copyrights | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 830 Patent | ☐ 810 Selective Service |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | ☐ 840 Trademark | ☐ 850 Securities/Commodities/ |
| (Excl. Veterans) | ☐ 345 Marine Product | X 370 Other Fraud | ☐ 690 Other | | Exchange |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 875 Customer Challenge |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | | | 12 USC 3410 |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | ☐ 891 Agricultural Acts |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization Act |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 893 Environmental Matters |
| | Injury | | | ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 730 Labor/Mgmt.Reporting | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | & Disclosure Act | | Information Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 900 Appeal of Fee |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | Habeas Corpus: | | | Determination Under Equal |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | Access to Justice |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | or Defendant) | ☐ 950 Constitutionality of |
| ☐ 290 All Other Real Property | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | ☐ 791 Empl. Ret. Inc. | ☐ 871 IRS—Third Party | State Statutes |
| | | ☐ 550 Civil Rights | Security Act | 26 USC 7609 | ☐ 890 Other Statutory Actions |
| | | ☐ 555 Prison Condition | | | |

**V. ORIGIN** (PLACE AN "X" IN ONE BOX ONLY)

X 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
28 USC § 1332(d)

**VII. REQUESTED IN COMPLAINT:**
X CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND:   X Yes   ☐ No

**VIII. RELATED CASE(S) IF ANY** (See instructions):
JUDGE                            DOCKET NUMBER

DATE  6/7/05
SIGNATURE OF ATTORNEY OF RECORD

FOR OFFICE USE ONLY