## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MARK DEARMAN, et al , | MDL No. 1704 |
| Plaintiffs, | C.A. No. 05-11177 (DPW) |
| vs. | |
| THE GILLETTE COMPANY, | |
| Defendant | |

## DEARMAN GROUP'S MEMORANDUM OF LAW IN
## SUPPORT OF APPLICATION FOR APPOINTMENT AS CLASS COUNSEL

Plaintiffs Mark Dearman, Anthony DeBiseglia, Kevin Windom, Javier Tuñón and Adam Kline ("The Dearman Group"), by their attorneys, submit this Memorandum of Law in support of their application for appointment of their attorneys as class counsel.

## INTRODUCTION

At least 28 actions have been filed around the country against The Gillette Company ("Gillette" or the "defendant") alleging that it engaged in false advertising of its M3Power Razor System.  The firms of Shapiro Haber & Urmy LLP, Lerach Coughlin Stoia Geller Rudman and Robbins LLP, and The Wexler Firm LLP filed the first actions in this Court. *Dearman, et al. v. The Gillette Co.,* Civil Action No. 05-11177-DPW (June 7, 2005); *Windom v. The Gillette Co.*, Civil Action No. 05-11207-DPW (June 8, 2005); *Tuñón, et al. v. The Gillette Co.*, Civil Action No. 05-11208 DPW (June 9, 2005).[1]  Plaintiffs' counsel in the *Windom* action filed a motion before the Judicial Panel on Multidistrict Litigation ("JPML") that resulted in an order transferring all pending actions to this Court for coordinated pre-trial proceedings.  Given the large number of cases being centralized in

---

[1]    The *Windom* Action was first assigned to Judge Zobel and has since been transferred to this Court.

this Court, it is appropriate for the Court to create an organizational structure of plaintiffs' counsel so that the cases can be litigated effectively and efficiently.

Plaintiffs propose that this Court appoint the Boston, Massachusetts law firm of Shapiro Haber & Urmy LLP as plaintiffs' liaison counsel.  As an experienced litigator before this Court, Thomas G. Shapiro, a partner in the firm, will efficiently handle all local administrative matters and work as an effective liaison between the Court, defendant and other counsel in this matter.  Further, plaintiffs ask that this Court appoint the firms of Shapiro Haber & Urmy LLP and Lerach Coughlin Stoia Geller Rudman and Robbins LLP as co-lead counsel in this action.  Each of these firms has extensive experience in complex class action litigation, particular expertise in this very type of litigation, and they are exceedingly capable lawyers.[2]  They will work together and with other plaintiffs' counsel to bring this litigation to a successful resolution.

## BACKGROUND FACTS

The cases before this court allege that Gillette falsely advertised the capabilities of its M3Power razor system.  Before the cases were filed, Schick Manufacturing, Inc. ("Schick") sued Gillette in Connecticut federal district court over Gillette's claim that the M3Power razor delivered gentle pulses to the shaving cartridge that simulate hair upward and away from the skin, providing consumers with an easier and closer shave.  Schick asserted that Gillette's advertising was unfair because, *inter alia*, Gillette's claim that the M3Power razor raised facial hair was false.  On March 31, 2005, after receiving expert testimony, the Court ruled in Schick's favor and entered an order preliminarily enjoining

---

[2]    Attached hereto as Exhibits A and B are the firm resumes of the Shapiro and Lerach firms.

Gillette from any further marketing, promotion or advertising of claims that the M3Power razor changes the angle of hair in relation to the skin or extends or lengthens hair by a magnitude or with the frequency claimed in its advertising.

In addition to plaintiffs' actions, at least 25 other similar consumer class actions were commenced against Gillette for its false, misleading and deceptive advertisements regarding the M3Power razor. On October 27, 2005 on motion by plaintiff in the *Windom* action, the JPML centralized the M3Power razor litigation before this Court.

As reflected in the affidavit of Thomas G. Shapiro, the firms making this motion have, from the onset of the case, moved to conduct these class actions efficiently and effectively . For example, the day after filing the *Windom* action, plaintiff's counsel in that case moved the JPML to consolidate and transfer the M3Power litigation to this Court. Of the multitude of law firms filing actions, only one opposed the motion, claiming that the litigation should not be consolidated at all.

The proposed co-lead and liaison counsel saw and dealt with the need for early organization to deal with the multiplicity of lawsuits that had been filed. Proposed co-lead and liaison counsel reached out to the other plaintiff firms around the country. On November 7, 2005, shortly after the JPML Transfer Order was issued, Mr. Shapiro sent a letter to all the attorneys who had filed cases, inviting them to attend a meeting in Boston, Massachusetts, on November 16, 2005. *See* Affidavit of Thomas G. Shapiro at ¶ 9. The meeting lasted approximately one and a half hours, during which time there was an extended discussion of the case, which included discussion with respect to settlement efforts, as well as the organization of plaintiffs' counsel. *See id*. at ¶10. During this discussion no one expressed any objection to Mr. Shapiro or his firm acting as liaison

counsel for all plaintiffs.  *Id.* at ¶ 13.  Nor did anyone lodge any objection to the identity of the firms proposed as co-lead counsel.  While some lawyers at the meeting suggested that it might be preferable to have fewer than four firms on the steering committee, none of the attorneys asked for a vote on the proposed organization of plaintiffs' counsel or objected in any way to the conduct of the meeting.  *Id.* at ¶13.[3]

Proposed liaison and co-lead counsel have and will continue to include other plaintiffs' counsel in this litigation.  In fact, those attorneys that attended the meeting, as well as other plaintiffs' counsel, have been included in substantive discussions concerning the case since November 16, 2005.  Yet, while proposed liaison and co-lead counsel intend to be inclusive of all the plaintiffs' firms, they respectfully suggest that it would be unwieldy to manage this litigation without an orderly structure as contemplated by the Manual for Complex Litigation, MANUAL FOR COMPLEX LITIGATION (Fourth) §10.22 (2004).  Thus, it is appropriate for this Court to designate lead and liaison counsel.

## ARGUMENT

### A.    Appointment of Lead and Liaison Counsel is Critical to the Management and Success of Complex Litigation

In order best to coordinate and manage multi-party and multi-case litigation, the district court must act to simplify the matters at hand.  *See In re Recticel Foam Corp*. 859 F.2d 1000, 1004 (1st Cir. 1988).  In complex matters such as this, one of the key organizational tools the district court has is to appoint seasoned lead counsel and liaison counsel. *See* MANUAL FOR COMPLEX LITIGATION (Fourth) § 10.22 (2004); *see also In Re*

---

[3]    It had been proposed at that time that there be a steering committee consisting of the Shapiro firm, the Lerach firm, and the firms of Abby Gardy LLP of New York, New York, and The Wexler Firm LLP of Chicago, IL.  It was subsequently decided that having a co-lead counsel structure of two firms rather than four would promote the efficient prosecution of the litigation.

*Linerboard Antitrust Litigation*, 292 F. Supp. 2d 644, (E.D. Penn. 2003) ("The multiplicity of suits requires that the district court be allowed to combine procedures, appoint lead counsel, recognize steering committees of lawyers, limit and manage discover, etc., to minimize expense to all litigants and to provide judicial efficiency."  (citing *In re Showa Denko K.K.*, 953 F.2d 162, 165 (4th Cir. 1992)).

**B.      Federal Rule 23(G) Provides For The Designation Of Lead Counsel Who Have Exemplary Qualifications And Experience, As Well As Substantial Resources**

Rule 23(g) of the Federal Rules of Civil Procedure guides courts appointing lead counsel for a proposed class of plaintiffs.  *See* Fed. R. Civ. P. 23(g) advisory committee notes 2003 ("Rule 23(g)(2)(A) authorizes the court to designate interim counsel to act on behalf of the putative class before the certification decision is made."); *see also In re Cardinal Health, Inc. ERISA Litig*., 225 F.R.D. 552, 554-55 (S.D. Ohio 2005); *In re Delphi ERISA Litig*., 230 F.R.D. 496, 498 (E.D. Mich. 2005).  The Federal Rules enumerate the following factors that inform designation of lead counsel:  (i) "the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources counsel will commit to representing the class."  Fed. R. Civ. P. 23(g)(l)(C)(i); s*ee also Coopersmith v. Lehman Bros., Inc*., 344 F. Supp. 783, 793 (D. Mass. 2004) (Designating law firms as co-lead counsel because "[i]t is clear that these firms have extensive experience in cases such as this and are well situated to pursue this action on behalf of the class.").

There is no question that the proposed team of co-lead counsel and liaison counsel will zealously, efficiently and competently litigate this matter in the best interests of the

members of the class.  The Affidavit of Thomas G. Shapiro submitted herewith, and the resumes of the Shapiro firm and Lerach firm attached to the affidavit, describe in detail the qualifications of the firms, and accordingly how the four factors enumerated in Rule 23(g)(1)(C)(i) all militate in favor of appointing these two firms co-lead counsel.  The two firms investigated and prepared their own complaints against Gillette, including two of the first three cases filed in this district.  Plaintiffs and their counsel in all three of the first cases filed in this district support this motion.  The Shapiro firm and the Lerach firm have many years of experience handling complex class actions, they are extremely knowledgeable about applicable law, and they have demonstrated in many cases that they can and will commit the resources necessary to represent the class effectively.  Indeed, the Lerach firm has litigated some of the largest, most complex class actions ever, such as the Enron securities class action currently being litigated in Texas.

Rule 23(g)(2)(B) provides that if more than one adequate applicant seeks appointment as class counsel, the Court must appoint the applicant best able to represent the interests of the class.  Counsel respectfully submit that, in the event that any competing applications are made, the Lerach firm and the Shapiro firm are best able to represent the interests of the class in light of their experience and knowledge, including the extensive experience of both firms litigating class actions in the District of Massachusetts, the considerable resources they can commit to representation of the class, and the fact that the Shapiro firm is located in Boston and the New York office of the Lerach firm is in close proximity to Boston.  Their ability to represent the interests of the class is attested to by the number of other firms that support this application.

In short, the two firms proposed as co-lead counsel have impressive qualifications, a long record of success in complex litigation, extensive experience in this District, a demonstrated willingness to invest substantial resources in the prosecution of complex cases, and proximity to the Court.

## CONCLUSION

For the reasons set forth above, and for the reasons set forth in the Affidavit of Thomas G. Shapiro and accompanying firm resumes, Shapiro Haber & Urmy LLP and Lerach Coughlin Stoia Geller Rudman and Robbins LLP should be appointed Co-Lead Counsel, and the Shapiro firm should be appointed Liaison Counsel.

Dated:  January 13, 2006                    Respectfully submitted,


**/s/Theodore M. Hess-Mahan**
Thomas G. Shapiro BBO #454680
Theodore Hess-Mahan BBO #557109
Shapiro Haber & Urmy LLP
53 State Street
Boston, MA 02109
Tel:    (617) 439-3939


Samuel H. Rudman
Robert M. Rothman
Lerach Coughlin Stoia Geller Rudman &
Robbins LLP
58 South Service Road, Suite 200
Melville, NY 11747
Tel:    (631) 367-7100

Kenneth A. Wexler
Edward A. Wallace
The Wexler Firm LLP
One North LaSalle St., Suite 2000
Chicago, IL 60602
Tel:    (312) 346-2222

Thomas M. Sobol
Edward Notargiacomo
Hagens Berman Sobol Shapiro LLP
One Main Street, 4th Floor
Cambridge, MA 02142
Tel:    (617) 482-3700

Mark C. Gardy
Henry Young
Abbey Gardy, LLP
212 East 39th Street
New York, NY 10016
Tel:    (212) 889-3700

Alan L. Kovacs
Law Office of Alan L. Kovacs
2001 Beacon Street, Suite 106
Boston, MA 02135
Tel:    (617) 964-1177

Steven A. Kanner
Douglas A. Millen
Robert J. Wozniak, Jr.
Much Shelist Freed Denenberg Ament Rubenstein, P.C.
191 North Wacker Drive, Suite 1800
Chicago, IL 60606
Tel:    (312) 521-2000

Harry Shulman
The Mills Law Firm
145 Marina Boulevard
San Rafael, CA 94901
Tel:    (414) 455-1326

Daniel R. Karon
Goldman Scarlato & Karon
55 Public Square, Suite 1500
Cleveland, OH 44113
Tel:    (216) 622-1851

Steven J. Greenfogel
Meredith Cohen Greenfogel & Skirnick, P.C.
117 South 17th Street, 22nd Floor
Philadelphia, PA 19103
Tel:    (214) 564-5182

Corey Holzer
Michael I. Fistel
Holzer & Holzer, LLC
1117 Perimeter Center West
Suite E-107
Atlanta, Georgia 30338
Tel:    (770) 392-0090

Joseph J. DePalma
Susan D. Pontoriero
Lite, DePalma Greenberg & Rivas, LLC
Two Gateway Center, 12th Floor
Newark, NJ 07102-5003
Tel:    (973) 623-3000

James E. Miller
Patrick A. Klingman
Karen M. Leser
Shepherd, Finkelman, Miller & Shah LLC
65 Main Street
Chester, CT 06412
Tel:    (860) 526-1100

Karen Marcus
Mila F. Bartos
Finkelstein, Thompson & Loughran
1050  30th Street, N.W.
Washington, D.C. 20007
Tel:    (202) 337-8000

Steven A. Schwartz
Chimicles & Tikellis LLP
361 West Lancaster Avenue
Haverford, PA 19041
Tel:    (610) 642-8500

Lionel Z. Glancy
Michael Goldberg
Glancy, Binkow & Goldberg LLP
1801 Avenue of the Stars, Suite 311
Los Angeles, CA 90067
Tel:    (310) 201-9150

Ralph M. Stone
Shalov Stone & Bonner
485 Seventh Avenue, Suite 1000
New York, NY 10018
Tel:    (212)-239-4340