# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| In re: | ) | Civil Action No. 05-11177 |
| M3 POWER RAZOR SYSTEM | ) | (Lead Case) |
| MARKETING & SALES PRACTICES | ) | |
| LITIGATION | ) | |
| | ) | |
| **THIS DOCUMENT RELATES TO:** | ) | |
| | ) | |
| CARLOS CORRALES, | ) | Civil Action No. 05-12332 |
|     Plaintiff | ) | |
| v. | ) | |
| | ) | |
| THE GILLETTE CO., | ) | |
|     Defendant. | ) | |
| | ) | |
| **and** | ) | |
| | ) | |
| KASEM ADOURE, | ) | |
|     Plaintiff | ) | Civil Action No. 05-12336 |
| v. | ) | |
| | ) | |
| THE GILLETTE CO., | ) | |
|     Defendant. | ) | |

## PLAINTIFFS CORRALES' AND ADOURE'S PROPOSED
## JOINT SCHEDULING REPORT AND JOINT DISCOVERY PLAN

Plaintiff Kasem Adoure and Plaintiff Carlos Corrales, on behalf of himself and the putative class he represents, through undersigned counsel, submit this proposed Joint Scheduling Report and Joint Scheduling Plan. Counsel for both Plaintiffs complied with the conference requirements of Federal Rules 16 and 26 and Local Rule 16.1 by lengthy calls and e-mails with counsel for Defendant Gillette Company ("Gillette").

However, upon review of Gillette's proposed Joint Scheduling Report and Joint Discovery Plan (referred to hereinafter as "Gillette's Joint Scheduling Report"), undersigned counsel discovered that none of the issues discussed during our meetings were included. Accordingly,

Plaintiffs Adoure and Corrales submit this proposed Joint Scheduling Report and Joint Discovery Plan with alternatives for this Court's consideration.  For ease of reference, Plaintiffs Adoure and Corrales will use the same headings and captions as were used in the Gillette's Joint Scheduling Report.

The primary difference between Gillette's Joint Scheduling Report and the proposal submitted by Plaintiffs Adoure and Corrales is that in Gillette's submission, nothing happens without substantial delay.  Plaintiffs Adoure and Corrales are aware that Gillette is involved in settlement discussions with counsel for some of the other plaintiffs in this MDL proceeding, and perhaps the delay in Plaintiffs' cases is designed so that Gillette can try to reach a settlement with other plaintiffs.  If so, this is not in accord with the purpose and spirit of Rules 16 and 26.

## I.  REPORT OF THE PARTIES' CONFERENCE PURSUANT TO FED.R.CIV.P. 26(f).

As noted above, Plaintiffs Adoure and Corrales conferred with both Gillette and various counsel representing other plaintiffs in this MDL proceeding, in accordance with Fed.R.Civ.P. Rules 16, 26 and Local Rule 16.1.  Unfortunately, there were only minimal points of agreement regarding a scheduling plan and related issues between Plaintiffs' counsel and Gillette's counsel.

Repeatedly, undersigned counsel was told that Gillette had worked out these provisions with other plaintiffs' counsel and was unwilling to revisit these issues, despite the unique issues of Plaintiff Adoure's and Corrales' cases.

As a general matter, both parties indicated that efficiency was a goal; however, Defendant's ideas of efficiency were not the same as Plaintiffs'.  For example, as discussed below, Gillette's proposals seek to ignore motions and pleadings that have already been briefed and/or filed and they seek to ignore relevant discovery that has already been done in related cases.  For example, Plaintiff

Adoure has filed a remand motion and Plaintiff Corrales has filed a motion to certify a California class.

Further, Plaintiffs Adoure and Corrales proposed an immediate disclosure of discovery already produced in the related matter pending in the United States District Court of the District of Connecticut, *Schick Mfg Inc., et al v. Gillette Co.*, Case #3:05-cv-00174JCH, ("*Schick*"), which would streamline the remaining discovery to be conducted in these cases.  Attached hereto as Exhibits A and B respectively, are the docket sheet and preliminary injunction order from the *Shick* action, which reveal that substantial discovery has occurred in that case.

Despite the lengthy discussions and proposals made by Plaintiffs Adoure and Corrales, the Gillette Joint Scheduling Report was submitted without inclusion, or mention, of any of Plaintiffs' suggestions.

     **a.**     **Nature and basis of the Parties' claims and defenses:**

The Gillette Joint Scheduling Report contains a very general statement of the claims and denial of the same by Gillette.  However, no mention was made of the diversity of claims and requests for relief among the various complaints.

For example, Plaintiff Corrales' complaint seeks certification of a California class seeking monetary relief under California's consumer protection statutes.  Plaintiff Adoure's action is not a class action, but is instead a representative non-class action brought under the private attorney general provisions of California's consumer protection laws seeking curative advertising in California.

Plaintiff Adoure's action contains the sole claim in this MDL proceeding praying for "corrective advertising" as its relief.  Further, as discussed below, Plaintiff Adoure is seeking to have his case remanded.

Organization of these cases cannot be adequately done without some knowledge of the nature of the specific claims and relief requested that are lawfully before this Court. The creation of a case management scheme prior to the resolution of jurisdictional issues that may remove some cases from the group and clarify the universe of cases and issues to be managed seems inefficient.

Additionally, as noted above, the related *Schick* case has already proceeded with significant discovery. There is no reason for the parties here to reinvent the wheel in that regard. However, Plaintiffs' counsel approached Gillette about the *Schick* discovery, Plaintiffs were not provided with any information about the *Schick* discovery. Indeed, Gillette's counsel initially feigned ignorance about the *Schick* case, despite their firm's involvement in the same. Nevertheless, this Court and the parties should be informed of the proceedings in the *Schick* case that can be easily shared and used in these cases to increase efficiency and decrease duplication of efforts of all involved.

      **b.**      **Agenda for Scheduling Conference.**

      **1.**      **Submission of Rule 23(g) applications.** Gillette never discussed this issue with Plaintiff Corrales' counsel, despite the fact that the timing clearly affects them. The first time undersigned counsel became of aware of this proposed deadline was on January 11 (late afternoon) when counsel received the Gillette Joint Scheduling Report from Gillette's counsel in e-mail. There is no reason for the submission of applications as proposed. As noted above, the putative class actions are varying in definition, some being state only classes, while others seek national certification. A more appropriate time for Rule 23(g) application is upon the filing of a motion for class certification.

      **2.**      **The Parties have engaged in preliminary settlement discussions.** This is true with respect to some of the plaintiffs; however, Gillette has refused to discuss settlement of Plaintiff Adoure's California claims, which raise the specific issue of corrective advertising. On

July 8, 2005, Gillette sent a letter offering to settle Plaintiff's claims, but the offer did not address the curative advertising aspect. When Plaintiff's counsel attempted to discuss these issues, Gillette repeatedly refused, and instead demanded a counter-proposal. Plaintiff's counsel indicated that it was impossible to prepare an adequate counter-proposal without sufficient discovery, including discovery tailored to the corrective advertising issue. At Gillette's direction, undersigned sent a letter advising of the needed discovery for this purpose, to which no response has been received.

Further, Plaintiffs' counsel is aware that Gillette has had settlement discussions with various other plaintiffs' counsel, but when asked to share the status of those conversations or the financial information that was shared with those counsel, Gillette again rejected the request. Plaintiffs Adoure and Corrales have no objection to settlement discussions based on sufficient discovery, but they believe such discussions should be inclusive of all parties.

4.    **Motions to Remand.**  As noted above, Plaintiff Adoure has filed his Motion to Remand, and this Court has already rejected Gillette's attempts to delay hearing on that matter, which is scheduled for January 23, 2006. Jurisdictional challenges must be decided prior to any other issues, as any action in cases lacking federal jurisdiction would be wasted. Further, it is more efficient to determine what cases are a part of this MDL proceeding prior to determining how to organize them. Gillette likewise rejected this proposal made by Plaintiff Adoure's counsel.

5.    **Consolidation.**    Plaintiffs Adoure and Corrales have not agreed to consolidation. Indeed, Plaintiffs Adoure and Corrales **oppose** consolidation.

The cases comprising this MDL proceeding have different theories, seek different relief and are postured differently, *e.g.*, state class actions and national class actions.

Plaintiffs propose efficient management of these cases without consolidation. For example, the majority of the discovery from Gillette will be the same for all plaintiffs. Thus, this discovery can be shared and coordinated to avoid duplication, but without the need for consolidation.

Moreover, in this instance, consolidation would be less efficient and create more issues, including those that arise from the fact that the relief afforded consumers under state law and the elements of the state law claims vary from state to state and claim to claim.

## II.    PROPOSED PRE-TRIAL SCHEDULE.

### a.    Consolidated Complaint.

As noted above, Plaintiffs Adoure and Corrales oppose the consolidation of these cases, as the differences among the cases do not make them good candidates for consolidation. For example, Plaintiffs Adoure's and Corrales' complaints involve only issues of California law, where as other plaintiffs' complaints involve issues of state law in other states. Plaintiff Adoure's complaint is a representative non-class action complaint, while Plaintiff Corrale's complaint seeks a California class action. A consolidated complaint in this matter would only serve to complicate the issues and proceedings.

Further, Gillette has made no motion for consolidation to which Plaintiffs would be given the opportunity to formally object to that proposition. Accordingly, Plaintiffs Adoure and Corrales object to the consolidated complaint provisions of the Gillette Joint Scheduling Report. However, Plaintiffs request a provision setting forth a time for Gillette to answer the complaints outstanding against it. These complaints have been filed for long periods of time and have gone unanswered. There is no reason to further delay answering these complaints.

**b.      Pre-Trial Discovery.**

**1.      Arrangement for the disclosures required by Fed.R.Civ.P. 26(a)(1).**

The Gillette Joint Scheduling Report ignores the judicial economy that would be maximized by promptly providing the discovery already produced in the *Schick* matter to all plaintiffs in this MDL proceeding.  As noted above, there is not reason for the parties here to reinvent the wheel, and the burden on Gillette is minimized, as well.  Plaintiffs Adoure and Corrales propose that initial disclosures be made as set forth in Rule 26(a)(1).

**2.3.      Class Certification Discovery/Fact Discovery.**

The Gillette Joint Scheduling Report proposes bifurcated discovery.  Plaintiffs Adoure and Corrales oppose bifurcation of discovery.

With respect to Plaintiff Adoure's representative non-class action case, if it remains in this MDL proceeding, his case is effectively stayed during Gillette's proposed class certification discovery period.  This result is patently unfair to him.

With respect to the class actions, including Plaintiff Corrales' class action, there is substantial overlap between "class certification" issues and "merits" discovery, which will undoubtedly lead to numerous arguments and motions relating to whether discovery is class or merits.  Such bifurcation is inefficient.

Further, given the maturity of the *Schick* litigation and that significant discovery relating to both the merits and class certification issues has already been produced, the need for bifurcation does not make sense.  Once that discovery is provided to plaintiffs herein, the needed discovery outstanding will be much more tailored to specific case issues and other narrowly defined issues. The bifurcation of discovery under these circumstances only serves to build in additional and unnecessary delay.

Finally, the fact that Gillette is attempting to foster settlement discussions among different factions of plaintiffs' counsel herein, makes merits discovery that much more important. It is difficult, and perhaps irresponsible, to discuss settlement without full knowledge of the facts and issues.

Plaintiffs Adoure and Corrales agree with the Gillette Joint Scheduling Report's 6 month time period for fact discovery, but this 6 month period should include both class and merits discovery.

### 4.    Expert Discovery.

Plaintiffs Adoure and Corrales prefer simultaneous exchange of expert reports, rather than the staggered approach offered by the Gillette Joint Scheduling Report. Further, Plaintiffs believe that more appropriate dates can be discussed and agreed upon after remand motions and other initial matters are decided, including whether fact discovery should be bifurcated. Nevertheless, Plaintiffs Adoure and Corrales agree to the schedule of expert discovery set forth in the Gillette Joint Scheduling Report, except that expert discovery should not begin until fact discovery has closed, and as noted above, Plaintiffs Adoure and Corrales support the simultaneous exchange of reports.

### 5.    Class Certification.

Plaintiff Corrales has already filed his motion for class certification prior to removal. There is no reason to delay a hearing on Plaintiff Corrales' Motion for Class Certification or any other plaintiff's motion that is filed. As consolidation is inappropriate, there will likely be multiple motions for class certification filed, and each will be peculiar to their own facts and respective state laws, which contain not only different remedies but also different elements. For example, some states' laws do not have reliance as an element (California's Unfair Competition Law (Cal. Bus. & Prof. Code § 17200 et seq.), being a prime example), while other states' laws do have reliance as

an element.  The class certification motions should be filed by the individual plaintiff as soon as practicable and then heard as soon as possible thereafter.

## III.    MISCELLANEOUS.

**1.**    Under applicable MDL rules, counsel are automatically deemed admitted *pro hac vice* in an MDL proceeding without further action.  The Gillette Joint Scheduling Report purports to put additional requirements on plaintiffs counsel not otherwise required by the Rules.  Undersigned counsel for Plaintiffs Adoure and Corrales will, of course, abide by the court rules and orders of the Court; however, these additional requirements included in the Gillette Joint Scheduling Report are neither necessary nor appropriate.

Plaintiffs Adoure and Corrales agree with provisions of the Gillette Joint Scheduling Report that are not specifically mentioned above.

Dated: January 13, 2006                           Respectfully submitted,


By:      /s/ Taras Kick
          Taras P. Kick (Cal., State Bar #143379)
          G. James Strenio (Cal. State Bar #177624)
          Thomas G. Martin (Cal. State Bar #195627)
          THE KICK LAW FIRM, APC
          660 South Figueroa Street, Suite 1800
          Los Angeles, California 90017
          (213) 624-1588; Fax (213) 624-1589

          Allan Kanner (Cal. State Bar # 109152)
          ALLAN KANNER & ASSOCIATES, PLLC
          701 Camp Street
          New Orleans, LA 70130
          (504) 524-5777; Fax (504) 524-5763

          Counsel for Plaintiffs,
          CARLOS CORRALES &
          KASEM ADOURE

**EXHIBIT A**

EFILE

# U.S. District Court
## District of Connecticut (New Haven)
## CIVIL DOCKET FOR CASE #: 3:05-cv-00174-JCH

Schick Mfg Inc et al v. Gillette Co
Assigned to: Judge Janet C. Hall
Cause: 15:1125 Trademark Infringement (Lanham Act)

Date Filed: 01/28/2005
Jury Demand: Plaintiff
Nature of Suit: 890 Other Statutory
Actions
Jurisdiction: Federal Question

**Plaintiff**

**Schick Mfg Inc**                          represented by **Derek T. Werner**
                                                           Murtha Cullina-Htfd
                                                           Cityplace I, 185 Asylum St.
                                                           Hartford, CT 06103-3469
                                                           860-240-6000
                                                           Fax: 860-240-6150
                                                           Email: dwerner@murthalaw.com
                                                           *LEAD ATTORNEY*
                                                           *ATTORNEY TO BE NOTICED*

                                                           **Jeffrey S. Edelstein**
                                                           Manatt Phelps & Phillips-NY
                                                           7 Times Square
                                                           New York City, NY 10036
                                                           212-790-4533
                                                           Fax: 212-536-1808
                                                           Email: jedelstein@manatt.com
                                                           *LEAD ATTORNEY*
                                                           *ATTORNEY TO BE NOTICED*

                                                           **John W. Moticka**
                                                           Stinson Morrison Hecker LLP-MO
                                                           100 S. 4th Street, Suite 700
                                                           St. Louis, MO 63102
                                                           US
                                                           314-259-4500
                                                           Fax: 314-259-4599
                                                           Email: jmoticka@stinsonmoheck.com
                                                           *LEAD ATTORNEY*
                                                           *ATTORNEY TO BE NOTICED*

                                                           **Michael J. Donnelly**
                                                           Murtha Cullina LLP
                                                           Cityplace I, 185 Asylum St.
                                                           Hartford, CT 06103-3469
                                                           860-240-6058

Fax: 860-240-6150
Email: mdonnelly@murthalaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Monica Y. Youn**
Manatt Phelps & Phillips-NY
7 Times Square
New York City, NY 10036
212-790-4580
Fax: 212-790-4545
Email: myoun@manatt.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Ronald G. Blum**
Manatt Phelps & Phillips-NY
7 Times Square
New York City, NY 10036
212-830-7186
Fax: 212-830-7322
Email: rblum@manatt.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Stephen J. Owens**
Stinson Morrison Hecker-Kansas City-
MO
1201 Walnut St., Suite 2800
Kansas City, MO 64106-2150
816-842-8600
Fax: 816-691-3495
Email: sowens@stinsonmoheck.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Steven F. Reich**
Manatt Phelps & Phillips-NY
7 Times Square
New York City, NY 10036
212-830-7196
Fax: 212-830-3017
Email: sreich@manatt.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Eveready Battery Co Inc**                    represented by  **Derek T. Werner**
(See above for address)
*LEAD ATTORNEY*

*ATTORNEY TO BE NOTICED*

**Jeffrey S. Edelstein**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**John W. Moticka**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Michael J. Donnelly**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Monica Y. Youn**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Ronald G. Blum**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Stephen J. Owens**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Steven F. Reich**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Energizer Battery Inc**                represented by **Derek T. Werner**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jeffrey S. Edelstein**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**John W. Moticka**
(See above for address)

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Michael J. Donnelly**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Monica Y. Youn**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Ronald G. Blum**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Stephen J. Owens**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Steven F. Reich**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Gillette Co**                    represented by **Catherine Dugan O'Connor**
Day, Berry & Howard
One Canterbury Green
Stamford, CT 06901-2047
203-977-7538
Fax: 203-977-7301
Email: cdoconnor@dbh.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Gregory J. Glover**
Ropes & Gray - DC
700 12th St NW, Suite 900
Washington, DC 20005
202-508-4600
Fax: 202-508-4650
Email: gregory.glover@ropesgray.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**James M. Spears**
Ropes & Gray - DC
700 12th St NW, Suite 900
Washington, DC 20005
202-508-4681
Fax: 202-508-4650
Email: jspears@ropesgray.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Michael A. Bucci**
Day, Berry & Howard
Cityplace
Hartford, CT 06103-3499
860-275-0100
Fax: 860-275-0343
Email: mabucci@dbh.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Peter M. Brody**
Ropes & Gray - DC
700 12th St NW, Suite 900
Washington, DC 20005
202-508-4612
Fax: 202-508-4650
Email: peter.brody@ropesgray.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Renee L. Stasio**
Ropes & Gray - DC
700 12th St NW, Suite 900
Washington, DC 20005
202-508-4673
Fax: 202-508-4650
Email: renee.stasio@ropesgray.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 01/28/2005 | 1 | COMPLAINT against Gillette Co ( Filing fee $ 150 receipt number H14885.), filed by Energizer Battery Inc, Eveready Battery Co Inc, Schick Mfg Inc. (Attachments: # 1 Exhibits A-K manually filed) (D'Onofrio, B.) (Entered: 01/31/2005) |
| 01/28/2005 | 2 | Order on Pretrial Deadlines: Motions to Dismiss due on 4/28/2005. Amended Pleadings due by 3/29/2005. Discovery due by 7/30/2005. |

| | | |
|---|---|---|
| | | Dispositive Motions due by 8/29/2005. Signed by Clerk on 1/28/05. (D'Onofrio, B.) (Entered: 01/31/2005) |
| 01/28/2005 | 3 | NOTICE of Appearance by Michael J. Donnelly, Derek T. Werner on behalf of Energizer Battery Inc, Eveready Battery Co Inc, Schick Mfg Inc (D'Onofrio, B.) (Entered: 01/31/2005) |
| 01/28/2005 | 4 | DEMAND for Trial by Jury by Energizer Battery Inc, Eveready Battery Co Inc, Schick Mfg Inc. (D'Onofrio, B.) (Entered: 01/31/2005) |
| 01/28/2005 | 5 | Corporate Disclosure Statement by Energizer Battery Inc, Eveready Battery Co Inc, Schick Mfg Inc. (D'Onofrio, B.) (Entered: 01/31/2005) |
| 01/28/2005 | 6 | DECLARATION re 1 Complaint Signed By David J. Leffell MD filed by Energizer Battery Inc, Eveready Battery Co Inc, Schick Mfg Inc. (Manually filed) (D'Onofrio, B.) (Entered: 01/31/2005) |
| 01/28/2005 | 7 | MOTION for Preliminary Injunction by Energizer Battery Inc, Eveready Battery Co Inc, Schick Mfg Inc.Responses due by 2/18/2005 (D'Onofrio, B.) (Entered: 01/31/2005) |
| 01/28/2005 | 8 | Memorandum in Support re 7 MOTION for Preliminary Injunction filed by Energizer Battery Inc, Eveready Battery Co Inc, Schick Mfg Inc. (Attachments: # 1 Exhibits A-D manually filed)(D'Onofrio, B.) (Entered: 01/31/2005) |
| 01/28/2005 | 9 | MOTION for Order to Show Cause by Energizer Battery Inc, Eveready Battery Co Inc, Schick Mfg Inc. (D'Onofrio, B.) (Entered: 01/31/2005) |
| 01/28/2005 | 10 | MOTION to Expedite Discovery by Energizer Battery Inc, Eveready Battery Co Inc, Schick Mfg Inc. (D'Onofrio, B.) (Entered: 01/31/2005) |
| 01/28/2005 | 11 | Memorandum in Support re 10 MOTION to Expedite Discovery filed by Energizer Battery Inc, Eveready Battery Co Inc, Schick Mfg Inc. (Attachments: # 1 Exhibit A manually filed)(D'Onofrio, B.) (Entered: 01/31/2005) |
| 01/28/2005 | 12 | MOTION for Leave to Appear Pro Hac Vice Attorney Ronald G. Blum. Filing Fee $25. Receipt Number H14888. by Energizer Battery Inc, Eveready Battery Co Inc, Schick Mfg Inc. (Attachments: # 1 Blum Affidavit)(D'Onofrio, B.) (Entered: 01/31/2005) |
| 01/28/2005 | 13 | MOTION for Leave to Appear Pro Hac Vice Attorney Jeffrey S. Edelstein. Filing Fee $25. Receipt Number H14886. by Energizer Battery Inc, Eveready Battery Co Inc, Schick Mfg Inc. (Attachments: # 1 Edelstein Affidavit)(D'Onofrio, B.) (Entered: 01/31/2005) |
| 01/28/2005 | 14 | MOTION for Leave to Appear Pro Hac Vice Attorney Monica Y. Youn. Filing Fee $25. Receipt Number H14887. by Energizer Battery Inc, Eveready Battery Co Inc, Schick Mfg Inc. (Attachments: # 1 Youn Affidavit)(D'Onofrio, B.) (Entered: 01/31/2005) |
| 01/28/2005 | 15 | MOTION for Leave to Appear Pro Hac Vice Attorney Steven F. Reich. Filing Fee $25. Receipt Number H14889. by Energizer Battery Inc, |

|            |     |                                                                                                                                                                                                                                                                                                                                                                                                               |
| ---------- | --- | ------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------- |
|            |     | Eveready Battery Co Inc, Schick Mfg Inc. (Attachments: # 1 Reich Affidavit)(D'Onofrio, B.) (Entered: 01/31/2005)                                                                                                                                                                                                                                                                                                |
| 01/31/2005 |     | Summons Issued as to Gillette Co. (D'Onofrio, B.) (Entered: 01/31/2005)                                                                                                                                                                                                                                                                                                                                        |
| 02/10/2005 | 16  | NOTICE of Appearance by Michael A. Bucci on behalf of Gillette Co (D'Onofrio, B.) (Entered: 02/11/2005)                                                                                                                                                                                                                                                                                                        |
| 02/10/2005 | 17  | MOTION for Extension of Time to File Response as to 9 MOTION for Order to Show Cause, 10 MOTION to Expedite, 7 MOTION for Preliminary Injunction until 2/23/05 by Gillette Co. (D'Onofrio, B.) (Entered: 02/11/2005)                                                                                                                                                                                             |
| 02/10/2005 | 18  | MOTION to Transfer to Judge Janet C. Hall as to related case 3:03cv1668(JCH) by Gillette Co, Schick Mfg Inc, Eveready Battery Co Inc, Energizer Battery Inc. (D'Onofrio, B.) (Entered: 02/11/2005)                                                                                                                                                                                                               |
| 02/15/2005 | 19  | ORDER OF TRANSFER. Case reassigned to Judge Janet C. Hall for all further proceedings. Signed by Judge Christopher F. Droney on 2/15/05. (D'Onofrio, B.) (Entered: 02/15/2005)                                                                                                                                                                                                                                  |
| 02/17/2005 | 20  | NOTICE TO COUNSEL RE: E-FILE CALENDAR. THIS IS THE ONLY NOTICE COUNSEL WILL RECEIVE. TELEPHONIC STATUS CONFERENCE set for 2/28/2005 12:00 PM before Judge Janet C. Hall. Counsel are requested to participate in this conference, via telephone. This conference call is to be arranged between counsel. Once all parties are on the line, please telephone chambers at (203) 579-5554.(Szczygiel, G.) (Entered: 02/17/2005) |
| 02/18/2005 | 22  | MOTION to Correct 6 Affidavit of David Leffell, and to supplement 7 MOTION for Preliminary Injunction by Schick Mfg Inc, Eveready Battery Co Inc, Energizer Battery Inc.Responses due by 3/11/2005 (Cody, C.) (Entered: 02/25/2005)                                                                                                                                                                              |
| 02/18/2005 | 23  | AFFIDAVIT with Notice of Manual Filing re 7 MOTION for Preliminary Injunction Signed By Michelle Stearns filed by Schick Mfg Inc, Eveready Battery Co Inc, Energizer Battery Inc. (Cody, C.) (Entered: 02/25/2005)                                                                                                                                                                                               |
| 02/18/2005 | 24  | EXHIBIT 8 (view 1 and view 2) submitted with Notice of Manual Filing by Schick Mfg Inc, Eveready Battery Co Inc, Energizer Battery Inc. Related document: 6 Affidavit of David Leffell filed by Schick Mfg Inc,, Eveready Battery Co Inc,, Energizer Battery Inc,.(Cody, C.) (Entered: 02/25/2005)                                                                                                                |
| 02/23/2005 | 21  | Corporate Disclosure Statement by Gillette Co. (Kolesnikoff, D.) (Entered: 02/23/2005)                                                                                                                                                                                                                                                                                                                         |
| 02/23/2005 | 25  | MOTION to Seal Opposition to Motion for Preliminary Injunction and Declaration of James M. Spears with exhibits (which is Ex. A to Gillette's Opposition) by Gillette Co. (Attachments: # 1 Exhibit A)(Cody, C.) (Entered: 02/25/2005)                                                                                                                                                                           |
| 02/23/2005 | 26  | Memorandum in Opposition re 10 MOTION to Expedite Discovery filed                                                                                                                                                                                                                                                                                                                                              |

| | | by Gillette Co. (Cody, C.) (Entered: 02/25/2005) |
|---|---|---|
| 02/23/2005 | 27 | MOTION for Leave to File Unsigned Declaration of Peter M. Clay by Gillette Co. (Cody, C.) (Entered: 02/25/2005) |
| 02/23/2005 | 30 | Sealed Document by Gillette Co re 7 MOTION for Preliminary Injunction. (Cody, C.) (Entered: 02/25/2005) |
| 02/23/2005 | 31 | Sealed Document with Exhibits 1-4 & 6 submitted in paper form by Gillette Co re [30] Sealed Document. (Attachments: # (1) Exhibits 5 & 7 with Notice of Manual Filing)(Cody, C.) (Entered: 02/25/2005) |
| 02/23/2005 | 32 | EXHIBIT B by Gillette Co. Related document: [30] Sealed Document filed by Gillette Co. (Attachments: # 1 Exhibit C Declaration of D. Parus # 2 Exhibits 1-3 to Exhibit C # 3 Exhibit D, Declaration of Dr. K. Powell # 4 Exhibit 1 to Ex. D # 5 Exhibit 2 to Ex. D # 6 Exhibit 3 to Ex D # 7 Exhibit 4 to Ex D # 8 Exhibit 5 to Ex D # 9 Exhibit 6 to Ex D # 10 Exhibit 7 to Ex D # 11 Exhibit 8 to Ex D # 12 Exhibit 9 to Ex D with Notice of Manual Filing # 13 Exhibit E Declaration of Dr. I. Shaker # 14 Exhibits 1 to 5 to Ex E with Notice of Manual Filing # 15 Exhibit 6 to Ex E with Notice of Manual Filing)(Cody, C.) Modified on 2/25/2005 (Cody, C.). Additional attachment(s) Exhibit 10 & 11 to Ex D added on 2/25/2005 (Cody, C.). Modified on 2/25/2005 (Cody, C.). (Entered: 02/25/2005) |
| 02/25/2005 | 28 | ORDER granting 27 Motion for Leave to File Unsigned Declaration of Peter M. Clay. Signed by Judge Janet C. Hall on 2/25/05. (Cody, C.) (Entered: 02/25/2005) |
| 02/25/2005 | 29 | ORDER granting 25 Motion to Seal Opposition to Motion for Preliminary Injunction as well as the Declaration of James M. Spears with Exhibits (which is attached as Ex. A to Gillette's Opposition). The matters will remain sealed until further Order of the Court. Any party wishing to keep these matters sealed must show cause why they should be sealed no later than 3/15/05.. Signed by Judge Janet C. Hall on 2/25/05. (Cody, C.) (Entered: 02/25/2005) |
| 02/25/2005 | 33 | AFFIDAVIT signed By Peter M. Clay re [30] Sealed Document filed by Gillette Co. (Attachments: # 1 Exhibit 1 # 2 Exhibits 2 to 14 with Notice of Manual Filing)(Cody, C.) Modified on 2/25/2005 (Cody, C.). (Entered: 02/25/2005) |
| 02/25/2005 | 36 | MOTION for Permission to File, under Seal, Amended Opposition to Motion for Preliminary Injunction by Gillette Co. (Kolesnikoff, D.) (Entered: 03/02/2005) |
| 02/25/2005 | 37 | NOTICE of Appearance by Catherine Dugan O'Connor on behalf of Gillette Co (Kolesnikoff, D.) (Entered: 03/03/2005) |
| 02/25/2005 | 38 | MOTION for Leave to Appear Pro Hac Vice Attorney James M. Spears, Peter M. Brody and Renee L. Stasio. Filing Fee $75.00. Receipt Number B009713. by Gillette Co. (Attachments: # 1 Affidavit of James M. Spears# 2 Affidavit of Peter M. Brody# 3 Affidavit Renee L. Stasio) |

| | | (Kolesnikoff, D.) (Entered: 03/03/2005) |
|---|---|---|
| 03/01/2005 | 42 | MOTION for Leave to File Amended Declaration Of Kevin Powell In Support Of Defendant's Opposition To Plaintiff's Motion For Preliminary Injunction by Gillette Co. (Sanders, C.) (Entered: 03/07/2005) |
| 03/01/2005 | 62 | EXHIBIT 9(DVD) by Gillette Co re 32 Exhibit D, Declaration of Kevin Powell for Opposition to Motion for Preliminary Injunction with NOTICE OF MANUAL FILING ATTACHED. (Kolesnikoff, D.) (Entered: 03/30/2005) |
| 03/02/2005 | 34 | Minute Entry for proceedings held before Judge Janet C. Hall : Telephonic Status Conference held on 3/2/2005. (Court Reporter Fidanza.) (Boroskey, C.) (Entered: 03/02/2005) |
| 03/02/2005 | 35 | ORDER granting 22 MOTION to Correct 6 Affidavit of David Leffell, and to supplement 7 MOTION for Preliminary Injunction by Schick Mfg Inc, Eveready Battery Co Inc, Energizer Battery Inc.. Signed by Judge Janet C. Hall on 3/2/05. (Boroskey, C.) (Entered: 03/02/2005) |
| 03/03/2005 | 39 | SO ORDERED 38 Motion to Appear Pro Hac Vice by James M. Spears, Peter M. Brody, Renee L. Stasio.. Signed by Clerk on 3/3/05. (Kolesnikoff, D.) (Entered: 03/03/2005) |
| 03/04/2005 | 40 | ORDER granting 36 MOTION for Permission to File, under Seal, Amended Opposition to Motion for Preliminary Injunction by Gillette Co. . Signed by Judge Janet C. Hall on 3/4/05. (Boroskey, C.) (Entered: 03/04/2005) |
| 03/04/2005 | 41 | Sealed Document by Gillette Co re 7 MOTION for Preliminary Injunction. (D'Andrea, S.) (Entered: 03/07/2005) |
| 03/07/2005 | 43 | TRANSCRIPT of Proceedings held on 2/28/05 before Judge Janet C. Hall. Court Reporter: Terri Fidanza. (Simpson, T.) (Entered: 03/07/2005) |
| 03/09/2005 | 44 | ORDER granting 42MOTION for Leave to File Amended Declaration Of Kevin Powell In Support Of Defendant's Opposition To Plaintiff's Motion For Preliminary Injunction by Gillette Co . Signed by Judge Janet C. Hall on 3/9/05. (Boroskey, C.) (Entered: 03/09/2005) |
| 03/09/2005 | 45 | ORDER finding as moot in light of scheduling haring on Preliminary Injunction on 4/12/05 and 4/13/05 9 Motion for Order to Show Cause, granting in part and denying in part as stated on the record 10 Motion to Expedite, Ordered Accordingly 12 Motion to Appear pro hac vice as to Ronald Blum; Ordered Accordingly 13 Motion to Appear pro hac vice as to Jeffrey Edelstein; Ordered Accordingly 14 Motion to Appear pro hac vice as to Monica Youn; Ordered Accordingly 15 Motion to Appear pro hac vice as to Steven Reich; granting 17 Motion for Extension of Time to File Response/Reply re 17 MOTION for Extension of Time to File Response/Reply as to 9 MOTION for Order to Show Cause, 10 MOTION to Expedite, 7 MOTION for Preliminary Injunction until 2/23/05, granting 18 Motion to Transfer/Disqualify/Recuse Judge; case transferred to Judge Hall Responses due by 2/23/2005. Signed by Judge |

| | | Janet C. Hall on 3/9/05. (Boroskey, C.) (Entered: 03/09/2005) |
|---|---|---|
| 03/09/2005 | 46 | ENTERED IN ERROR: REPLY TO RESPONSE *Reply Brief* filed by Schick Mfg Inc, Eveready Battery Co Inc, Energizer Battery Inc. to 7 Motion for Preliminary Injunction (Donnelly, Michael) Modified on 3/10/2005 (Larsen, M.). Modified on 3/10/2005 (Larsen, M.). (Entered: 03/09/2005) |
| 03/09/2005 | 47 | REPLY TO RESPONSE *Reply Brief* filed by Schick Mfg Inc, Eveready Battery Co Inc, Energizer Battery Inc. to 7 Motion for Preliminary Injunction (Attachments: # 1 Exhibit Attachments A - E)(Donnelly, Michael) Modified on 3/10/2005 (Larsen, M.). (Entered: 03/09/2005) |
| 03/09/2005 | 63 | AMENDED DECLARATION re [30] Sealed Document Signed By Kevin Powell2/25/05 filed by Gillette Co. (Attachments: # 1 Exhibit 1# 2 Exhibit 2# 3 Exhibit 3# 4 Exhibit 4# 5 Exhibit 5# 6 Exhibit 6# 7 Exhibit 7# 8 Exhibit 8# 9 Notice of Manual Filing of Exh. 9# 10 Exhibit 10# 11 Exhibit 11)(Kolesnikoff, D.) (Entered: 03/30/2005) |
| 03/10/2005 | 48 | Joint MOTION for Protective Order *by Schick, et al and by Gillette Co.*Responses due by 3/31/2005 (Attachments: # 1 Text of Proposed Order Stipulated Protective Order)(Bucci, Michael) (Entered: 03/10/2005) |
| 03/10/2005 | | Docket Entry Correction re [46] Response. MODIFIED TO DESCRIBE AS REPLY TO RESPONSE TO 7 MOTION FOR PRELIMINARY INJUNCTION. (Larsen, M.) (Entered: 03/10/2005) |
| 03/10/2005 | | Docket Entry Correction re [46] Response, 47 Response. [46] RESPONSE MODIFIED TO INDICATE ENTERED IN ERROR AND TO SEAL PDF; REFILED AS 47 RESPONSE. 47 RESPONSE MODIFIED TO EDIT TEXT TO DESCRIBE AS REPLY TO RESPONSE AND LINK TO 7 MOTION FOR PRELIMINARY INJUNCTION. (Larsen, M.) (Entered: 03/10/2005) |
| 03/11/2005 | 49 | NOTICE TO COUNSEL RE: E-FILE CALENDAR. THIS IS THE ONLY NOTICE COUNSEL WILL RECEIVE. PRELIMINARY INJUNCTION set for 4/12/2005 & 4/13/2005 09:00 AM, U.S. District Court, 915 Lafayette Blvd.,Courtroom 2, Bridgeport, CT before Judge Janet C. Hall. ALL PERSONS ENTERING THE COURTHOUSE MUST PRESENT PHOTO IDENTIFICATION. (Szczygiel, G.) (Entered: 03/11/2005) |
| 03/15/2005 | 50 | RESPONSE *To Show Cause Order Regarding Filing Of Documents Under Seal* filed by Gillette Co. (Bucci, Michael) (Entered: 03/15/2005) |
| 03/15/2005 | 51 | ORDER granting except for paragraph 1048 Motion for Protective Order . Signed by Judge Janet C. Hall on 3/14/05. (Kolesnikoff, D.) (Entered: 03/16/2005) |
| 03/16/2005 | 52 | NOTICE of Appearance by James M. Spears on behalf of Gillette Co (D'Andrea, S.) (Entered: 03/16/2005) |
| 03/16/2005 | 53 | NOTICE of Appearance by Renee L. Stasio on behalf of Gillette Co |

| | | (D'Andrea, S.) (Entered: 03/16/2005) |
|---|---|---|
| 03/16/2005 | 54 | NOTICE of Appearance by Peter M. Brody on behalf of Gillette Co (D'Andrea, S.) (Entered: 03/16/2005) |
| 03/22/2005 | 55 | MOTION for Leave to File *Supplemental Declarations of K. Powell & I. Saker In Support of Defendant's Opp. to Plaintiffs' Mot. For Preliminary Injunction* by Gillette Co. (Attachments: # 1 Affidavit Supplemental Declaration of Dr. Kevin Powell, Ph.D.# 2 Affidavit Supplemental Declaration of Dr. Ian Saker, PH.D.# 3 Exhibit Notice of Manual Filing Ex. 1 to Ex. B# 4 Exhibit Notice of Manual Filing Exs. 2-17 to Ex. B) (Bucci, Michael) (Entered: 03/22/2005) |
| 03/22/2005 | 56 | AFFIDAVIT Signed By Michael P. Philpott filed by Gillette Co. (Attachments: # 1 Exhibit Ex. 1 to Declaration of Michael P. Philpott, PH.D.)(Bucci, Michael) (Entered: 03/22/2005) |
| 03/22/2005 | 58 | EXHIBIT 1 to Affidavit of Dr. Ian Saker by Gillette Co re 55 MOTION for Leave to File Supplemental Declarations of K. Powell & I. Saker In Support of Defendant's Opp. to Plaintiffs' Mot. For Preliminary Injunction. FILED IN PAPER FORM WITH NOTICE OF MANUAL FILING. (Kolesnikoff, D.) (Entered: 03/24/2005) |
| 03/22/2005 | 59 | EXHIBITS 2-17 to Supplemental Declaration of Dr. Ian Saker on 2 DVD's by Gillette Co re 55 MOTION for Leave to File *Supplemental Declarations of K. Powell & I. Saker In Support of Defendant's Opp. to Plaintiffs' Mot. For Preliminary Injunction* with Notice of Manual Filing of exhibits attached (Kolesnikoff, D.) (Entered: 03/28/2005) |
| 03/24/2005 | 57 | NOTICE TO COUNSEL RE: E-FILE CALENDAR. THIS IS THE ONLY NOTICE COUNSEL WILL RECEIVE. TELEPHONIC STATUS CONFERENCE set for 3/30/2005 10:00 AM before Judge Janet C. Hall. Counsel are requested to participate in this conference, via telephone. This conference call is to be arranged between counsel. Once all parties are on the line, please telephone chambers at (203) 579-5554.(Szczygiel, G.) (Entered: 03/24/2005) |
| 03/29/2005 | 60 | REPORT of Rule 26(f) Planning Meeting. (Bucci, Michael) (Entered: 03/29/2005) |
| 03/30/2005 | 61 | Minute Entry for proceedings held before Judge Janet C. Hall : Telephone Status Conference held on 3/30/2005. (Court Reporter Fidanza.) (Boroskey, C.) (Entered: 03/30/2005) |
| 04/01/2005 | 65 | ORDER designating case as electronically filed. Signed by Judge Janet C. Hall on 4/1/05. (Boroskey, C.) (Entered: 04/01/2005) |
| 04/01/2005 | 66 | NOTICE of Appearance by Jeffrey S. Edelstein on behalf of Schick Mfg Inc, Eveready Battery Co Inc, Energizer Battery Inc (Attachments: # 1 Notice of Manual Filing)(Kolesnikoff, D.) (Entered: 04/07/2005) |
| 04/01/2005 | 67 | NOTICE of Appearance by Ronald G. Blum on behalf of Schick Mfg Inc, Eveready Battery Co Inc, Energizer Battery Inc(Notice of Manual Filing attached to Document 66) (Kolesnikoff, D.) (Entered: 04/07/2005) |

| 04/01/2005 | 68 | NOTICE of Appearance by Monica Y. Youn on behalf of Schick Mfg Inc, Eveready Battery Co Inc, Energizer Battery Inc (Notice of Manual Filing attached to Document #66) (Kolesnikoff, D.) (Entered: 04/07/2005) |
|---|---|---|
| 04/01/2005 | 69 | NOTICE of Appearance by Steven F. Reich on behalf of Schick Mfg Inc, Eveready Battery Co Inc, Energizer Battery Inc. (Notice of Manual Filing attached to Document #66) (Kolesnikoff, D.) (Entered: 04/07/2005) |
| 04/01/2005 | 70 | ANSWER to Complaint with Affirmative Defenses by Gillette Co. (Kolesnikoff, D.) (Entered: 04/07/2005) |
| 04/01/2005 | 71 | OBJECTION to Schick's Production of New Declarations & Evidence in Support of Schick's Preliminary Injunction Motion filed by Gillette Co. (Attachments: # 1 Exhibit A# 2 Exhibit B)(Kolesnikoff, D.) (Entered: 04/07/2005) |
| 04/08/2005 | 72 | MOTION for Leave to File *Sur-Reply to Plaintiffs' Motion for Preliminary Injunction* by Gillette Co. (Brody, Peter) (Entered: 04/08/2005) |
| 04/08/2005 | 73 | REPLY to Response to 7 MOTION for Preliminary Injunction *Sur-Reply* filed by Gillette Co. (Attachments: # 1 Letter to Clerk# 2 Supplemental Declaration of James M. Spears with Exhibits 10-14# 3 Certification of Filing)(Brody, Peter) (Entered: 04/08/2005) |
| 04/11/2005 | 74 | NOTICE by Gillette Co *Of Filing Exs. 1-6 to Gillette's Notice and Objection To Schick's Production of New Declarations And Evidence In Support of Schick's Preliminary Injunction Motion filed April 1, 2005* (Bucci, Michael) (Entered: 04/11/2005) |
| 04/11/2005 | 75 | TRANSCRIPT of Proceedings held on 3/30/05 before Judge Janet C. Hall. Court Reporter: Terri Fidanza. (Simpson, T.) (Entered: 04/11/2005) |
| 04/11/2005 | 76 | MOTION in Limine , *Objection to and Motion to Exclude Certain Evidence Proffered by Plaintiffs,* by Gillette Co.Responses due by 5/2/2005 (Brody, Peter) (Entered: 04/11/2005) |
| 04/11/2005 | 77 | Memorandum in Support re 76 MOTION in Limine , *Objection to and Motion to Exclude Certain Evidence Proffered by Plaintiffs, Memorandum in Support thereof* filed by Gillette Co. (Attachments: # 1 Exhibit A# 2 Exhibit B# 3 Exhibit C# 4 Exhibit D)(Brody, Peter) (Entered: 04/11/2005) |
| 04/11/2005 | 78 | Memorandum in Opposition re 72 MOTION for Leave to File *Sur-Reply to Plaintiffs' Motion for Preliminary Injunction* filed by Schick Mfg Inc. (Donnelly, Michael) (Entered: 04/11/2005) |
| 04/11/2005 | 79 | MOTION for Leave to File *Corrected Third Declaration of Christopher Kohler* by Schick Mfg Inc. (Donnelly, Michael) (Entered: 04/11/2005) |
| 04/11/2005 | 80 | EXHIBITS 1-6 (6 Video CD's) by Gillette Co re 74 Notice of Filing, 71 Objection to Schick's Production of New Declarations and evidence in Support of Schick's Motion for Preliminary Injunction with Notice of |

| | | |
|---|---|---|
| | | Manual Filing. (Kolesnikoff, D.) (Entered: 04/12/2005) |
| 04/12/2005 | 81 | Minute Entry for proceedings held before Judge Janet C. Hall : Motion Hearing held on 4/12/2005 re 7 MOTION for Preliminary Injunction filed by Schick Mfg Inc, Eveready Battery Co Inc, Energizer Battery Inc,.Hearing continued until 4/13/05 at 9:00 a.m. (Court Reporter Fidanza.) (Boroskey, C.) (Entered: 04/13/2005) |
| 04/13/2005 | 82 | Minute Entry for proceedings held before Judge Janet C. Hall : Motion Hearing held on 4/13/2005 re 7 MOTION for Preliminary Injunction filed by Schick Mfg Inc,Eveready Battery Co Inc, Energizer Battery Inc,. Hearing continued until 4/22/05 at 10:00 a.m. (Court Reporter Fidanza.) (Boroskey, C.) (Entered: 04/14/2005) |
| 04/13/2005 | 83 | MOTION for Leave to Appear Pro Hac Vice with affidavit of Attorney Gregory J. Glover. Filing Fee $25. Receipt Number B009985. by Gillette Co. (Kolesnikoff, D.) (Entered: 04/14/2005) |
| 04/14/2005 | 84 | SO ORDERED 83 Motion to Appear Pro Hac Vice . Signed by Clerk on 4/14/05. (Kolesnikoff, D.) (Entered: 04/14/2005) |
| 04/15/2005 | 85 | ORDER granting 72 Motion for Leave to File sur-reply to plaintiff's motion for preliminary injunction. Signed by Judge Janet C. Hall on 4/12/05. (Boroskey, C.) (Entered: 04/15/2005) |
| 04/15/2005 | 86 | ORDER denying on the record 76 Motion in Limine, granting 79 Motion for Leave to File corrected third declaration of Christopher Kohler. Signed by Judge Janet C. Hall on 4/13/05. (Boroskey, C.) (Entered: 04/15/2005) |
| 04/15/2005 | 87 | CORRECTED THIRD DECLARATION with EXHIBITS 1-6 CD'S ATTACHED re 7 MOTION for Preliminary Injunction Signed By Christopher Kohler filed by Schick Mfg Inc, Eveready Battery Co Inc, Energizer Battery Inc. (Attachments: # 1 Notice of Manual Filing) (Kolesnikoff, D.) (Entered: 04/15/2005) |
| 04/15/2005 | 88 | MOTION to Continue by Gillette Co. (Brody, Peter) (Entered: 04/15/2005) |
| 04/18/2005 | 89 | Memorandum in Opposition re 88 MOTION to Continue filed by Schick Mfg Inc, Eveready Battery Co Inc, Energizer Battery Inc. (Donnelly, Michael) (Entered: 04/18/2005) |
| 04/18/2005 | 90 | TRANSCRIPT of Proceedings held on 4/13/05 before Judge Janet C. Hall. Court Reporter: Terri Fidanza. (Simpson, T.) (Entered: 04/18/2005) |
| 04/18/2005 | 91 | TRANSCRIPT of Proceedings held on 4/12/05 before Judge Janet C. Hall. Court Reporter: Terri Fidanza. (Simpson, T.) (Entered: 04/18/2005) |
| 04/18/2005 | 92 | NOTICE by Gillette Co re 77 Memorandum in Support of Motion, *to Exclude* (Attachments: # 1 Exhibit 1 to Declaration of Roderic A. Grupen, Exhibit B to Motion to Exclude# 2 Exhibit 1 to Declaration of Dr. Timothy Alan Clarke, Ph.D., Exhibit D to Motion to Exclude)(Brody, Peter) (Entered: 04/18/2005) |

| 04/18/2005 | 93 | ORDER denying 88 Motion to Continue; The Court will take Gillette's remaining evidence (other than Dr Philpott) on 4/22/05 and hear argument on the "delay" issue and the need to continue the hearing further to take Dr. Philpott's testimony . Signed by Judge Janet C. Hall on 4/18/05. (Boroskey, C.) (Entered: 04/18/2005) |
|---|---|---|
| 04/19/2005 | 94 | NOTICE by Gillette Co *Notice of Unavailability of Dr. Ian Saker To Testify at Preliminary Injunction Hearing Continued to April 22, 2005* (Spears, James) (Entered: 04/19/2005) |
| 04/22/2005 | 95 | Minute Entry for proceedings held before Judge Janet C. Hall : Motion Hearing held on 4/22/2005 re 7 MOTION for Preliminary Injunction filed by Schick Mfg Inc, Eveready Battery Co Inc, Energizer Battery Inc,. Hearing continued until 5/2/05 at 9:00 am. (Court Reporter Fidanza.) (Boroskey, C.) (Entered: 04/25/2005) |
| 04/25/2005 | 96 | NOTICE by Gillette Co *Notice of Availability of Dr. Ian Saker and Dr. Mike Philpott to Testify at Preliminary Injunction Hearing Continued to May 2, 2005* (Spears, James) (Entered: 04/25/2005) |
| 04/26/2005 | 97 | TRANSCRIPT of Proceedings held on 4/22/05 before Judge Janet C. Hall. Court Reporter: Terri Fidanza. (Simpson, T.) (Entered: 04/26/2005) |
| 04/26/2005 | 98 | NOTICE TO COUNSEL RE: E-FILE CALENDAR. THIS IS THE ONLY NOTICE COUNSEL WILL RECEIVE. PRELIMINARY INJUNCTION HEARING (Continuation) set for 5/2/2005 09:00 AM, U.S. District Court, 915 Lafayette Blvd.,Courtroom 2, Bridgeport, CT before Judge Janet C. Hall. All persons entering the courthouse must present photo identification. (Szczygiel, G.) (Entered: 04/26/2005) |
| 04/27/2005 | 99 | NOTICE by Gillette Co *Supplemental Declaration of Michael P. Philpott, Ph.D.* (Spears, James) (Entered: 04/27/2005) |
| 04/27/2005 | 100 | NOTICE by Gillette Co *of Third Declaration of Dr. Ian Saker, Ph.D.* (Attachments: # 1 Exhibit 1 - Notice of Manual Filing)(Spears, James) (Entered: 04/27/2005) |
| 04/27/2005 | 101 | ORDER granting 55MOTION for Leave to File Supplemental Declarations of K. Powell & I. Saker In Support of Defendant's Opp. to Plaintiffs' Mot. For Preliminary Injunction by Gillette Co . Signed by Judge Janet C. Hall on 4/27/05. (Boroskey, C.) (Entered: 04/27/2005) |
| 04/29/2005 | 102 | NOTICE by Gillette Co *Third Declaration of Michael P. Philpott, Ph.D.* (Spears, James) (Entered: 04/29/2005) |
| 04/29/2005 | 103 | MOTION for Leave to File *to File Amended Complaint for Injunctive Releif and Damages* by Schick Mfg Inc, Eveready Battery Co Inc, Energizer Battery Inc. (Attachments: # 1 Memorandum in Support of Plaintiffs' Motion for Leave to File Amended Complaint for Injunctive Releif and Damages# 2 Proposed Amended Complaint)(Donnelly, Michael) (Entered: 04/29/2005) |
| 04/29/2005 | 104 | MOTION in Limine *to Exclude Untimely Expert Testimony* by Schick Mfg Inc, Eveready Battery Co Inc, Energizer Battery Inc.Responses due |

| | | |
|---|---|---|
| | | by 5/20/2005 (Attachments: # 1 Memorandum in Support # 2 Supplement # 3 Exhibit # 4 Exhibit # 5 Exhibit # 6 Exhibit # 7 Exhibit # 8 Exhibit # 9 Exhibit # 10 Exhibit # 11 Exhibit # 12 Exhibit)(Donnelly, Michael) (Entered: 04/29/2005) |
| 05/02/2005 | 105 | MOTION in Limine *to Exclude Third Declaration of Dr. Michael Philpott* by Schick Mfg Inc, Eveready Battery Co Inc, Energizer Battery Inc.Responses due by 5/23/2005 (Werner, Derek) (Entered: 05/02/2005) |
| 05/02/2005 | 117 | Minute Entry for proceedings held before Judge Janet C. Hall : Motion Hearing held on 5/2/2005 re 7 MOTION for Preliminary Injunction (Court Reporter Fidanza.) (Boroskey, C.) (Entered: 05/23/2005) |
| 05/03/2005 | 106 | Memorandum in Opposition re 104 MOTION in Limine *to Exclude Untimely Expert Testimony* filed by Gillette Co. (Attachments: # 1 Exhibit A)(Brody, Peter) (Entered: 05/03/2005) |
| 05/04/2005 | 107 | TRANSCRIPT of Proceedings held on 5/2/05 before Judge Janet C. Hall. Court Reporter: Terri Fidanza. (Simpson, T.) (Entered: 05/04/2005) |
| 05/04/2005 | 108 | Memorandum in Opposition re 105 MOTION in Limine *to Exclude Third Declaration of Dr. Michael Philpott* filed by Gillette Co. (Brody, Peter) (Entered: 05/04/2005) |
| 05/04/2005 | 109 | NOTICE by Gillette Co *Notice of Objection*to Exhibits 111 & 112 (Brody, Peter) Modified on 5/9/2005 (Kolesnikoff, D.). (Entered: 05/04/2005) |
| 05/05/2005 | 110 | NOTICE by Gillette Co, Schick Mfg Inc, Eveready Battery Co Inc, Energizer Battery Inc *Joint Notice Regarding Preliminary Injunction Hearing Exhibits* (Brody, Peter) (Entered: 05/05/2005) |
| 05/05/2005 | 111 | MOTION in Limine *Regarding the Admissibility of PX 111 and 112 and Notice to Clarify Offer of PX 131* by Schick Mfg Inc, Eveready Battery Co Inc, Energizer Battery Inc.Responses due by 5/26/2005 (Attachments: # 1 Exhibit)(Donnelly, Michael) (Entered: 05/05/2005) |
| 05/09/2005 | 112 | ORDER for parties to file brief (see specific questions in Order) by 5/17/05 at 10:00 am re 7 MOTION for Preliminary Injunction filed by Schick Mfg Inc,, Eveready Battery Co Inc,, Energizer Battery Inc, and that defendant should advise plaintiff Schick of the bond amount it would argue is appropriate by 5/13/05 at 12:00 pm. Signed by Judge Janet C. Hall on 5/9/05. (Cody, C.) (Entered: 05/09/2005) |
| 05/09/2005 | | Docket Entry Correction re 109 Notice of Objections. Text added to identify items objected to (Kolesnikoff, D.) (Entered: 05/09/2005) |
| 05/17/2005 | 113 | RESPONSE *to Questions Posed in Court's May 9, 2005 Order re: 7 motion for preliminary injunction* filed by Gillette Co. (Brody, Peter) Modified on 5/24/2005 to correctly link to motion. (Cody, C.). (Entered: 05/17/2005) |
| 05/17/2005 | 114 | Proposed Findings of Fact and Conclusions of Law by Gillette Co. Re 7 Motion for Preliminary Injunction (Brody, Peter) Modified on 5/24/2005 |

| | | to correctly link to motion. (Cody, C.). (Entered: 05/17/2005) |
|---|---|---|
| 05/17/2005 | 115 | ENTERED IN ERROR - Proposed Findings of Fact and Conclusions of Law by Schick Mfg Inc, Eveready Battery Co Inc, Energizer Battery Inc. (Attachments: # (1) Proposed Findings of Fact# (2) # (3))(Donnelly, Michael) Modified on 5/17/2005 (Simpson, T.). (Entered: 05/17/2005) |
| 05/17/2005 | 116 | CORRECTED Proposed Findings of Fact and Conclusions of Law re 7 Motion for Preliminary Injunction by Schick Mfg Inc, Eveready Battery Co Inc, Energizer Battery Inc. (Attachments: # 1 Part 2# 2 Appendix Table of Contents & Index# 3 Exhibit A & B)(Donnelly, Michael) Modified on 5/17/2005 (Simpson, T.). Modified on 5/24/2005 to correctly link t motion.(Cody, C.). (Entered: 05/17/2005) |
| 05/17/2005 | | Docket Entry Correction re [115] Proposed Findings of Fact and Conclusions of Law, MODIFIED TO NOTE THAT IT WAS ENTERED IN ERROR, SEALED AND RE-DOCKETED AS DOC. # 116., 116 Proposed Findings of Fact and Conclusions of Law, MODIFIED TO SAY "CORRECTED" PROPOSED FINDINGS OF FACT AND TO NAME ATTACHMENT # 1 (Simpson, T.) (Entered: 05/17/2005) |
| 05/23/2005 | 118 | NOTICE by Schick Mfg Inc, Eveready Battery Co Inc, Energizer Battery Inc re 116 Proposed Findings of Fact and Conclusions of Law re 7 Motion for Preliminary Injunction, *Errata Sheet Correcting Certain Exhibit Cites in Their Proposed Findings of Fact and Conclusions of Law* (Donnelly, Michael) Modified on 5/24/2005 to correctly link to motion.(Cody, C.). (Entered: 05/23/2005) |
| 05/23/2005 | 119 | NOTICE by Gillette Co re 114 Proposed Findings of Fact and Conclusions of Law re 7 Motion for Preliminary Injunction *Errata* (Brody, Peter) Modified on 5/24/2005 to correctly link to motion. (Cody, C.). (Entered: 05/23/2005) |
| 05/31/2005 | 120 | RULING granting 103 Motion for Leave to File, granting in part and denying in part 104 Motion in Limine, granting in part and denying in part 7 Motion for Preliminary Injunction, denying 105 Motion in Limine, denying 111 Motion in Limine . Signed by Judge Janet C. Hall on 5/31/05. (Cody, C.) (Entered: 05/31/2005) |
| 05/31/2005 | 121 | PRELIMINARY INJUNCTION ORDER(see order for details). Plaintiff to file surety bond in the amount of $250,000. Signed by Judge Janet C. Hall on 5/31/05. (Cody, C.) (Entered: 05/31/2005) |
| 06/08/2005 | 125 | Injunction BOND in the amount of $ 250,000 posted by Schick Mfg Inc, Eveready Battery Co Inc, Energizer Battery Inc Receipt Number 8303 (Kolesnikoff, D.) (Entered: 06/13/2005) |
| 06/09/2005 | 122 | MOTION for Clarification *of Injunction and Adjustment of Bond Amount and to Shorten Time for Plaintiff's Response* by Gillette Co. (Brody, Peter) (Entered: 06/09/2005) |
| 06/09/2005 | 123 | Memorandum in Support re 122 MOTION for Clarification *of Injunction and Adjustment of Bond Amount and to Shorten Time for Plaintiff's* |

| | | *Response* filed by Gillette Co. (Brody, Peter) (Entered: 06/09/2005) |
|---|---|---|
| 06/10/2005 | 124 | ORDER granting in part 122 MOTION for Clarification of Injunction and Adjustment of Bond Amount and to Shorten Time for Plaintiff's Response. Schick is to respond by 6/16/05 at 1:00 p.m. SO ORDERED. Signed by Judge Janet C. Hall on 6/10/05. (Boroskey, C.) (Entered: 06/10/2005) |
| 06/16/2005 | 126 | RESPONSE re 122 MOTION for Clarification *of Injunction and Adjustment of Bond Amount and to Shorten Time for Plaintiff's Response*, 123 Memorandum in Support of Motion filed by Schick Mfg Inc, Eveready Battery Co Inc, Energizer Battery Inc. (Attachments: # 1 Exhibit A# 2 Exhibit B)(Donnelly, Michael) (Entered: 06/16/2005) |
| 06/17/2005 | 127 | RESPONSE re 126 Response, *(Gillette's Reply)* filed by Gillette Co. (Attachments: # 1 Declaration of Deborah Marson)(Brody, Peter) (Entered: 06/17/2005) |
| 06/20/2005 | 128 | Ruling re 122 MOTION for Clarification of Injunction and Adjustment of Bond Amount; The defendant's motion to clarify the Court's May 31, 2005 Order so as to limit its applicability to claims including the word "raise" is denied. The motion for adjustment of bond is granted in part and denied in part without prejudice to renew. The plaintiffs shall file with the Clerk a bond in the amount of $400,000.00. Gillette may within a week provide additional support in connection with restickering. (see ruling for details) . Signed by Judge Janet C. Hall on 6/20/05. (Boroskey, C.) (Entered: 06/20/2005) |
| 06/24/2005 | 131 | RIDER TO INJUCTION BOND - Bond amount increased from $250,000.00 to $400,000.00 posted by Schick Mfg Inc, Eveready Battery Co Inc, Energizer Battery Inc Receipt Number 8303 (Gutierrez, Y.) (Entered: 07/06/2005) |
| 06/27/2005 | 129 | MOTION for Extension of Time until July 5, 2005 to Submit Supplemental Information Regarding Costs of Compliance with the Preliminary Injunction by Gillette Co. (Brody, Peter) (Entered: 06/27/2005) |
| 07/05/2005 | 130 | NOTICE by Gillette Co *Supplemental Information Regarding Costs of Compliance with Preliminary Injunction* (Attachments: # 1 Declaration of Peter Clay in Support thereof)(Brody, Peter) (Entered: 07/05/2005) |
| 07/13/2005 | 132 | RESPONSE *to 130 Gillette's Supplemental Information Regarding Costs of Compliance with the Preliminary Injunction* filed by Schick Mfg Inc, Eveready Battery Co Inc, Energizer Battery Inc. (Donnelly, Michael) Modified on 7/14/2005 to Create Link to Doc #130 (D'Andrea, S.) (Entered: 07/13/2005) |
| 07/19/2005 | 133 | SUPPLEMENTAL ORDER re 131 Bond Amount - increased by $150,000.00 to $550,000.00 . Signed by Judge Janet C. Hall on 7/18/2005. (D'Andrea, S.) (Entered: 07/21/2005) |
| 07/26/2005 | 135 | RIDER to INJUNCTION BOND-Bond amount increased to $550,000.00 |

| | | |
|---|---|---|
| | | posted by Schick Mfg Inc, Eveready Battery Co Inc, Energizer Battery Inc-Receipt Number 8303 (D'Andrea, S.) Modified on 8/1/2005 to Include Receipt Number (D'Andrea, S.) (Entered: 07/29/2005) |
| 07/29/2005 | 134 | ORDER granting nunc pro tunc129MOTION for Extension of Time until July 5, 2005 to Submit Supplemental Information Regarding Costs of Compliance with the Preliminary Injunction . Signed by Judge Janet C. Hall on 7/29/05. (Boroskey, C.) (Entered: 07/29/2005) |
| 08/02/2005 | 136 | MOTION for Contempt *and For Order to Show Cause* by Schick Mfg Inc, Eveready Battery Co Inc, Energizer Battery Inc.Responses due by 8/23/2005 (Attachments: # 1 Text of Proposed Order # 2 Memorandum in Support of Plaitniffs' Motion Requesting Imposition of Civil Contempt Actions# 3 Affidavit Declaration fo Monica Youn# 4 Exhibit Youn Exhibit A# 5 Affidavit Declaration of Thomas Temelkoff# 6 Exhibit Temelkoff Exhibit A# 7 Exhibit Temelkoff Exhibit B# 8 Exhibit Temelkoff Exhibit C (Part 1)# 9 Exhibit Temelkoff Exhibit C (Part 2)# 10 Affidavit Declaration of Nancy Beardsley# 11 Exhibit Beardsley Exhibit A)(Werner, Derek) (Entered: 08/02/2005) |
| 08/08/2005 | 137 | ORDER TO SHOW CAUSE re: Failure to Obey 5/31/05 Preliminary Injunction Order Show Cause Response due by 8/31/2005. Signed by Judge Janet C. Hall on 8/8/05. (Cody, C.) (Entered: 08/08/2005) |
| 08/31/2005 | 138 | RESPONSE re 137 Order to Show Cause filed by Gillette Co. (Attachments: # 1 Second Declaration of Peter Clay# 2 Declaration of Hilary Keates# 3 Declaration of Paul Davis)(Brody, Peter) (Entered: 08/31/2005) |
| 09/07/2005 | 139 | REPLY to Response to 136 MOTION for Contempt *and For Order to Show Cause* filed by Schick Mfg Inc, Eveready Battery Co Inc, Energizer Battery Inc. (Donnelly, Michael) (Entered: 09/07/2005) |
| 09/15/2005 | 140 | MOTION for Extension of Time *for* all deadlines by Schick Mfg Inc, Eveready Battery Co Inc, Energizer Battery Inc. (Donnelly, Michael) (Entered: 09/15/2005) |
| 09/21/2005 | 141 | Ruling denying 136 Motion for Contempt and Order to Show Cause. Signed by Judge Janet C. Hall on 9/20/2005. (Sanders, C.) (Entered: 09/22/2005) |
| 09/23/2005 | 142 | ORDER granting in part (dates may not be those requested) 140 Joint MOTION for Extension of Time for all deadlines; 12/31/05 - close of fact discovery, close of fact witness depositions; 2/15/06 - Schick's expert reports due; 3/15/06 Schick's damages witness deposition cutoff, Gillette's expert reports due; 4/15/06 - Schick's non-damages witness deposition cutoff, Gillette's expert witness deposition cutoff; 5/15/06 Dispositive motion deadline . Signed by Judge Janet C. Hall on 9/20/05. (Boroskey, C.) (Entered: 09/23/2005) |
| 09/23/2005 | | Set Deadlines: Dispositive Motions due by 5/15/2006. (Boroskey, C.) (Entered: 09/23/2005) |
| | | |

| 12/01/2005 | 143 | MOTION for Leave to Appear Pro Hac Vice Attorney John W. Moticka. Filing Fee $25.00. Receipt Number B011237. by Schick Mfg Inc, Eveready Battery Co Inc, Energizer Battery Inc. (Kolesnikoff, D.) (Entered: 12/02/2005) |
| 12/01/2005 | 144 | MOTION for Leave to Appear Pro Hac Vice Attorney Stephen J. Owens. Filing Fee $25.00. Receipt Number B011237. by Schick Mfg Inc, Eveready Battery Co Inc, Energizer Battery Inc. (Kolesnikoff, D.) (Entered: 12/02/2005) |
| 12/02/2005 | 145 | SO ORDERED re 143 MOTION for Leave to Appear Pro Hac Vice Attorney John W. Moticka. Filing Fee $25.00. Receipt Number B011237. filed by Schick Mfg Inc,, Eveready Battery Co Inc,, Energizer Battery Inc, . Signed by Clerk on 12/2/05. (Kolesnikoff, D.) (Entered: 12/02/2005) |
| 12/02/2005 | 146 | SO ORDERED 144 Motion to Appear Pro Hac Vice by Stephen J. Owens. Signed by Clerk on 12/2/05. (Kolesnikoff, D.) (Entered: 12/02/2005) |
| 12/07/2005 | 147 | MOTION for Extension of Time until See attached Scheduling Order by Schick Mfg Inc, Eveready Battery Co Inc, Energizer Battery Inc. (Donnelly, Michael) (Entered: 12/07/2005) |
| 12/13/2005 | 148 | ORDER granting absent objection 147 Motion to modify scheduling order. Discovery will close on 3/31/06 and dispositive motions are due on 8/15/06.(see motion for other deadline extensions) . Signed by Judge Janet C. Hall on 12/13/05. (Boroskey, C.) (Entered: 12/13/2005) |
| 12/13/2005 |  | Set Deadlines/Hearings:The deadlines are extended absent objection and there will be no further extensions. So Ordered. Signed by Judge Janet Hall Discovery due by 3/31/2006. Dispositive Motions due by 8/15/2006. (Boroskey, C.) (Entered: 12/13/2005) |
| 12/14/2005 | 149 | Minute Entry for proceedings held before Judge Janet C. Hall : Status Conference held on 12/14/2005. and 15 minutes(Court Reporter Fidanza.) (Boroskey, C.) (Entered: 12/16/2005) |
| 12/14/2005 | 151 | NOTICE of Appearance by Stephen J. Owens on behalf of Schick Mfg Inc, Eveready Battery Co Inc, Energizer Battery Inc (Kolesnikoff, D.) (Entered: 12/16/2005) |
| 12/16/2005 | 150 | NOTICE of Appearance by John W. Moticka on behalf of Schick Mfg Inc, Eveready Battery Co Inc, Energizer Battery Inc (Kolesnikoff, D.) (Entered: 12/16/2005) |

| **PACER Service Center** | | | | |
|---|---|---|---|---|
| **Transaction Receipt** | | | | |
| 01/13/2006 13:30:19 | | | | |
|  |  |  |  |  |

SDSD District Version 1.3 - Docket Report

| PACER Login: | kl0074 | Client Code: | Gillette |
|---|---|---|---|
| Description: | Docket Report | Search Criteria: | 3:05-cv-00174-JCH |
| Billable Pages: | 12 | Cost: | 0.96 |

**EXHIBIT B**

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| SCHICK MANUFACTURING, INC., | : | |
| ET AL | : | |
|     Plaintiffs | : | |
| | : | CIVIL ACTION NO. |
| v. | : | 3-05-cv-174 (JCH) |
| | : | |
| THE GILLETTE COMPANY | : | MAY 31, 2005 |
|     Defendant | : | |

**RULING RE: MOTION FOR PRELIMINARY INJUNCTION [DKT. NO. 7],
MOTION FOR LEAVE TO AMEND [DKT. NO. 103], and
VARIOUS MOTIONS IN LIMINE [DKT. NOS. 104, 105, and 111]**

The plaintiff, Schick Manufacturing Company ("Schick"), seeks a preliminary

injunction enjoining the defendant, The Gillette Company ("Gillette"), from making

certain claims about its M3 Power razor system ("M3 Power"). Schick contends that

Gillette has made various false claims in violation of section 43(a) of the Lanham Act,

15 U.S.C. §1125(a) and the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn.

Gen. Stat. § 42-110a, et seq.

As a preliminary matter, Schick has filed a Motion for Leave to File and

Amended Complaint [Dkt. No. 103]. Leave to amend "shall be freely given when justice

so requires." Fed.R.Civ.P. 15(a). The Second Circuit has held that "'considerations of

undue delay, bad faith, and prejudice to the opposing party [are] touchstones of a

district court's discretionary authority to deny leave to amend.'" Krumme v. WestPoint

Stevens Inc., 143 F.3d 71, 88 (2nd Cir. 1998) (quoting Barrows v. Forest Laboratories,

742 F.2d 54, 58 (2d Cir. 1984)). Having considered these factors, as well as the scope

of Schick's proposed amendments, the court concludes that leave to amend is

appropriate.

The court must also address three pending motions in limine. With regard to Plaintiff's Exhibits Nos. 111, 112, 131, the objections of Gillette are overruled. PX 131 is received for the limited purpose offered, to establish the date the Dutch action was filed. With regard to Schick's Motion in Limine to Exclude Untimely Expert Testimony [Dkt. No. 104], the Motion is denied, except with regard to the alternative relief sought. DX 124(d) and (e) are for identification only. They were received on that basis. The Motion is denied to the extent it seeks to strike them as demonstrative evidence. The Motion is also denied to the extent it seeks to strike Dr. Salinger's testimony. However, the court grants Schick's alternative request to file a supplemental Affidavit of Dr. Thornton, which the court has now reviewed. Finally, the Motion to exclude DX 133 and DX 134, Declarations of Dr. Grupen and Dr. Clarke, is denied. With regard to Schick's Motion in Limine to Exclude Third Declaration of Dr. Philpott, it is denied.

The standard regarding the grant of a prohibitory preliminary injunction in the Second Circuit is clear.[1] "To obtain a preliminary injunction the moving party must show, first, irreparable injury, and, second, either (a) likelihood of success on the merits, or (b) sufficiently serious questions going to the merits and a balance of hardships decidedly tipped in the movant's favor." Green Party of N.Y. State v. N.Y. State Bd. of Elections, 389 F.3d 411, 418 (2d Cir. 2004). If Schick proves that irreparable injury may result, the court will then consider the merits of Schick's claim.

The Lanham Act creates a cause of action against any person who,

---

[1]Gillette suggests the relief sought is a mandatory injunction; this court does not agree. Schick seeks to prohibit allegedly false advertising, not to mandate action by Gillette. See Phillip v. Fairfield University, 118 F.3d 131 (2d Cir. 1997) (an injunction is mandatory where "its terms would alter, rather than preserve, the status quo by commanding some positive act").

2

> in connection with any goods or services, or any container for goods, uses
> in commerce any word, term, name, symbol, or device, or any
> combination thereof, or any false designation of origin, false or misleading
> description of fact, or false or misleading representation of fact, which . . .
> (B) in commercial advertising or promotion, misrepresents the nature,
> characteristics, qualities, or geographic origin of his or her or another
> person's goods, services, or commercial activities

by "any person who believe he or she is or is likely to be damaged by such act." 15

U.S.C. § 1125(a).

In order to succeed on its false advertising claim, Schick must prove five

elements of this claim. Omega Engineering, Inc. v. Eastman Kodak Co., 30 F.Supp.2d

226, 255 (D.Conn. 1998) (citing various treatises and cases). These are the following:

(1) The defendant has made a false or misleading statement of fact. The

statement must be (a) literally false as a factual matter or (b) likely to deceive or

confuse. S.C. Johnson & Son, Inc. v. Clorox Company, 241 F.3d 232, 238 (2d

Cir. 2001).

(2) The statement must result in actual deception or capacity for deception

"Where the advertising claim is shown to be literally false, the court may enjoin

the use of the claim without reference to the advertisement's impact on the

buying public." Id. (internal quotations omitted).

(3) The deception must be material. "[I]n addition to proving falsity, the plaintiff

must also show that the defendants misrepresented an inherent quality or

characteristic of the product." Id. (internal quotations omitted).

(4) Schick must demonstrate that it has been injured because of potential

decline in sales. Where parties are head-to-head competitors, the fact that the

defendant's advertising is misleading presumptively injures the plaintiff. Coca-

Cola Co. v. Tropicana Products, Inc., 690 F.2d 312, 317 (2d Cir. 1982)

(abrogated on other grounds by statute as noted in Johnson & Johnson v. GAC

Int'l, Inc., 862 F.2d 975, 979 (2d Cir.1988)).

(5) The advertised goods must travel in interstate commerce.

**FACTS**

The court held a scheduling conference on the preliminary injunction motion on

March 2, 2005. The court allowed the parties to conduct limited discovery prior to

conducting a hearing on Schick's motion for a preliminary injunction. The hearing on

the motion was conducted over four days: April 12, 13, 22, and May 2, 2005. During

the hearing, Schick called five witnesses: Adel Mekhail, Schick's Director of Marketing;

Peter M. Clay, Gillette's Vice-President for Premium Systems; Dr. David J. Leffell,

Professor of Dermatology; Christopher Kohler, Schick Research Technician; and John

Thornton, statistical consultant. Gillette also called five witnesses during the hearing:

Dr. Kevin L. Powell, Gillette's Director of the Advanced Technology Centre; Dr. Michael

A. Salinger, Professor of Economics; Peter M. Clay, Gillette's Vice-President for

Premium Systems; Dr. Ian Saker, Gillette Group Leader at the Advanced Technology

Centre and Dr. Michael P. Philpott, Professor of Cutaneous Biology.

The men's systems razor and blade market is worth about $1.1 billion per year in

the United States. Gillette holds about 90% of the dollar share of that market, while

Schick holds about 10%. The parties are engaged in head-to-head competition and the

court credits testimony that growth in the razor systems market results not from volume

increases but "with the introduction of high price, new premium items." Hr'g Tr. 39:20-

21.

4

Schick launched its Quattro razor system in September of 2003 and expended many millions of dollars in marketing the product. Although Schick had projected $100 million in annual sales for the Quattro, its actual sales fell short by approximately $20 million. From May 2004 to December 2004, Quattro's market share fell from 21% of dollar sales to 13.9% of dollar sales.

Gillette launched the M3 Power in the United States on May 24, 2004. In preparation for that launch, it began advertising that product on May 17, 2004. The M3 Power is sold throughout the United States. The M3 Power includes a number of components including a handle, a cartridge, guard bar, a lubricating strip, three blades, and a battery-powered feature which causes the razor to oscillate. The market share of the M3 Power, launched in May 2004, was 42% of total dollar sales in December 2004.

Gillette's original advertising for the M3 Power centered on the claim that "micro-pulses raise hair up and away from skin," thus allowing a consumer to achieve a closer shave. This "hair-raising" or hair extension claim was advertised in various media, including the internet, television, print media, point of sale materials, and product packaging. For example, Gillette's website asserted that, in order to combat the problem of "[f]acial hair grow[ing] in different directions," the M3 Power's "[m]icro-pulses raise hair up and away from skin . . ." PX 2, Hr'g Tr. 33:25-34:22. Of Gillette's expenditures on advertising, 85% is spent on television advertising. At the time of the launch, the television advertising stated, "turn on the first micro-power shaving system from Gillette and turn on the amazing new power-glide blades. Micro-pulses raise the hair, so you shave closer in one power stroke." PX 14.2(C). The advertisement also included a 1.8 second-long animated dramatization of hairs growing. In the animated

5

cartoon, the oscillation produced by the M3 Power is shown as green waves moving over hairs. In response, the hairs shown extended in length in the direction of growth and changed angle towards a more vertical position.

The court notes that eight months passed between the launch of the M3 Power and the date Schick initiated the instant suit. Schick maintains that there are two factors that excuse this delay. First, Schick invested time in developing a stroke machine and test protocol that would allow it to test the M3 Power with some degree of confidence and effectiveness.[2] Specifically, the development of a machine that would deliver a stroke of consistent pressure to a test subject's face took time. Second, after completing its first tests of Gillette's claims that the M3 Power raises hair in October, Schick chose to pursue its claims in Germany. In November of 2004, Schick sued Gillette in Germany to enjoin it from making claims that the M3 Power raised hairs. In late December of 2004, the Hamburg Regional Court affirmed the lower court's order enjoining Gillette from making such claims in Germany.

While the court finds that it may have been possible to develop testing protocols in a quicker fashion, the court finds the M3 Power was a new product with a feature (the use of battery power) that had never before been present in wet shavers. The court finds the time Schick took to develop testing of and to test the M3 Power is excusable. The court has been presented with no evidence of bad faith or strategic maneuvering behind the timing of the instant lawsuit.

In late January of 2005, Gillette revised its television commercials for the M3

---

[2]The court also notes that time spent by Schick testing Gillette's "angle-change" claim, which claim Gillette abandoned in January of 2005.

6

Power in the United States. It chose to do so based on both the German litigation as well as conversations between the parties about Schick's discomfort with certain claims made in the advertising. The animated product demonstration in the television commercials was revised so that the hairs in the demonstration no longer changed angle, and some of the hairs are shown to remain static. The voice-over was changed to say, "Turn it on and micropulses raise the hair so the blades can shave closer." PX 14.10C. The product demonstration in the revised advertisements depicts the oscillations to lengthen many hairs significantly. The depiction in the revised advertisements of how much the hair lengthens--the magnitude of the extension--is not consistent with Gillette's own studies regarding the effect of micropulses on hair. The animated product demonstration depicts many hairs extending, in many instances, multiple times the original length. Gillette began broadcasting the revised television commercials on or about January 31, 2005. Schick provided credible evidence, however, that the prior version of the advertisement is still featured on the Internet and on product packaging.

Television advertisements aim to provide consumers a "reason to believe," that is, the reason consumers should buy the advertised product. Because of the expense of television advertising, companies have a very short period of time in which to create a "reason to believe" and are generally forced to pitch only the key qualities and characteristics of the product advertised.

Gillette conceded during the hearing that the M3 Power's oscillations do not cause hair to change angle on the face. Its original advertisements depicting such an angle change are both unsubstantiated and inaccurate. Gillette also concedes that the

7

animated portion of its television advertisement is not physiologically exact insofar as

the hairs and skin do not appear as they would at such a level of magnification and the

hair extension effect is "somewhat exaggerated." Gillette Co.'s Prop. Findings of Fact

[Dkt. No. 114] ¶ 33. The court finds that the hair "extension" in the commercial is

greatly exaggerated. Gillette does contend, however, that the M3 Power's oscillations

cause beard hairs to be raised out of the skin. Gillette contends that the animated

product demonstration showing hair extension in its revised commercials is predicated

on its testing showing that oscillations cause "trapped" facial hairs to lengthen from the

follicle so that more of these hairs' length is exposed. Gillette propounds two alternative

physiological bases for its "hair extension" theory. First, Gillette hypothesizes that a

facial hair becomes "bound" within the follicle due to an accumulation of sebum and

corneocytes (dead skin cells). Gillette contends that the oscillations could free such a

"bound" hair. Second, Gillette hypothesizes that hairs may deviate from their normal

paths in the follicle and become "trapped" outside the path until vibrations from the M3

Power restore them to their proper path.

　　　Schick's expert witness, Dr. David Leffell, Professor of Dermatology and Chief of

Dermatologic Surgery at the Yale School of Medicine, testified that, based on his

clinical and dermatological expertise, he is aware of no scientific basis for the claim that

the oscillations of the M3 Power would result in hair extension, as Gillette contends. Dr.

Leffell stated that Gillette's "hair extension" theory is inconsistent with his 20 years of

experience in dermatology. He testified that he has never seen a hair trapped in a sub-

clinical manner, as hypothesized by Gillette. Dr. Leffell testified that, in certain

circumstances, trapped hairs will result in clinical symptoms, such as infection or

8

inflammation. With respect to Gillette's hypothesis that the interaction between sebum and corneocytes trap hairs, however, Dr. Leffell stated, and the court credits, that in non-clinical circumstances, sebum and corneocytes do not accumulate sufficiently to inhibit hair growth. Moreover, everyday activities such as washing or shaving remove accumulations of sebum and corneocytes.

Gillette's expert hair biologist, Dr. Michael Philpott, has studied hair biology for almost twenty years. He testified that, prior to his retention as an expert by Gillette, he had never seen a hair trapped in the manner posited by Gillette. Only after being retained by Gillette did Dr. Philpott first claim to have encountered this hair extension theory. Dr. Philpott acknowledged that neither of Gillette's two hypothesis of hair extension have any support in medical or scientific literature. With regard to Gillette's theory that hair could become bound in the follicle by sebum and corneocytes, Dr. Philpott admitted that no evidence supports that theory. Dr. Leffell testified that erector pili muscles, which cause hairs to stand up in response to various stimuli, as is commonly seen in the case of goosebumps, may also provide a biologicial mechanism for hair extension. Neither Dr. Leffell nor Dr. Philpott, however, testified on the relationship between the application of mechanical energy and the erector pili muscles, and neither party has contended that these muscles play a role in Gillette's hair extension theory.

In addition to positing biological mechanisms that might support the claim that the M3 Power's oscillations raise hairs, Gillette introduced evidence of experiments and testing to support those claims. Gillette provided summaries of said testing which were not prepared contemporaneously with the testing, conducted in the early 1990's, they

9

purport to memorialize. Instead, they were prepared in anticipation of litigation in late 2004.

Gillette performed experiments using oscillating razors in 1990, 1991 and 2003. In 1990 and 1991, Gillette performed studies using prototype oscillating razor handles fitted with razor systems other than the M3 Power, the Atra Plus and Sensor razor cartridge, two other Gillette products. In each of these initial experiments, a circle was drawn on a test subject's face. Twenty beard hairs within the circled region were measured with an imaging stereomicroscope manufactured by the Leica Company. That instrument measures hairs three-dimensionally to a resolution of three to four microns. The test subject then stroked the area using an oscillating razor with blunted blades. Then, twenty beard hairs within the circled region were again measured with a stereomicroscope. The same protocol was followed using a non-oscillating razor with blunted blades, and the changes in hair measurement were compared.

The Atra Plus study was performed in 1990 and included 10 test subjects. The study results show that the panelists' average hair length increased by 83.3 microns after five strokes with the oscillating razor versus 6.3 microns with the non-oscillating razor. The Sensor study was performed from 1990 to 1991 and also involved 10 test subjects. The subjects' mean hair length increased by 27.9 microns versus 12.9 microns with the non-oscillating razor. While both tests provided some evidence of a hair extension effect and the magnitude of that effect, neither test indicated what percentage of hairs were lengthened.

Notably, while Gillette found that use of both the oscillating Atra Plus and Sensor razors resulted in an increase in beard hair length, there was significant difference

between the average increase caused by the Atra Plus and that caused by the Sensor.

Furthermore, no evidence was presented to the court regarding similarities or

differences between the M3 Power razor and the Atra Plus or Sensor. The sample

size, ten test subjects per study, was small. The twenty beard hairs measured prior to

stroking were not necessarily the same hairs measured after stroking. The test

included no efforts to keep constant the variables of pressure on the razor or speed of

the shaving stroke. In addition, Gillette's chief scientist, Kevin Powell, testified that the

pressure or load applied by consumers co-varies to a statistically significant degree with

whether a razor oscillates. All these deficiencies cause this court not to credit the

studies' finding that oscillations cause hair lengthening.[3]

In 2003, Gillette performed a study using a prototype of the M3 Power. In the fall

of 2003, Gillette tested a Mach 3 cartridge fitted with an oscillating handle. That

prototype was called the "Swan." The Swan prototype's motor, handle, and cartridge

differ from those features of the actually-marketed M3 Power. Four test subjects were

used.[4] The test protocol was identical to that used in 1990 and 1991 except that,

instead of using blunted blades, Gillette removed the blades from the razor. The study

results suggest that the oscillating-Swan-prototype produced an average increase in

hair length of between 32 and 40 microns while the non-oscillating prototype yielded no

_____

[3]In Gillette's testing, no effort was made to control for variables, such as pressure on, or speed of, the razor. Failure to control for variable makes Gillette's "results" unscientific and not supportive of any conclusion.

[4]The sample size of four was chosen because the 2003 study, according to Gillette, was merely "confirmatory." Because the court finds the earlier tests deficient, the 2003 study cannot be "confirmatory."

11

average increase. That 32 to 40 micron increase represented an average of eight to

ten percent increase in hair length. The test does not indicate what percentage of hairs

experience any lengthening as a result of oscillations. The court does not credit Dr.

Powell's opinion that the differences between the model used in the test and the

marketed product has no impact on the testing. Failure to use the marketed product is

critical. The court cites the varied results Gillette reports between the Atra Plus,

Sensor, and "Swan" tests as only one reason to conclude that failure to use the market

product undercuts the 2003 testing. Further, the test protocol and sample size cause

the court to question the validity of these study findings.

In addition to testing oscillating battery-powered razors, Gillette conducted what

has been called the Microwatcher study. The Microwatcher is a commercially available

product consisting of a miniature camera with an illumination system that channels light

into an orifice at the tip of a transparent hemispherical dome. The device allows the

user to impart mechanical energy into the top and underlying layers of the skin, which,

according to Gillette, replicates the mechanical energy imparted by the oscillating

razor.[5] The recorded video images introduced into evidence show individual hairs

releasing from just below the skin surface. Gillette did not introduce evidence to

describe what the various elements of the photo were. When asked by the court to

identify the various elements appearing in the video were, Dr. Philpott could not identify

---

[5]Despite conducting the study on eighteen subjects, Gillette submitted only three short
video clips and does not indicate that they are representative of the study results. Further,
there is no indication of the length of the manipulation, the amount of pressure applied, or
shave preparation. Without more information, the study cannot support the conclusion that the
M3 Power extends hair.

12

or explain important skin features. For example, the court pointed to an area surrounding the individual hair, of darker hue than the rest of the skin, on the video, but Dr. Philpott could not explain what that area was or what might explain its coloration. The court further finds that Gillette provides no evidence to suggest the relationship between the amount of mechanical energy imparted by the Microwatcher and that imparted by the M3 Power.

Schick performed its own study which it contends proves the falsity of Gillette's advertising with respect to claims regarding hair extension.[6] Schick's study took place over three days and included 37 test subjects. With respect to each test subject, twenty hairs were measured before and after strokes with an M3 Power razor with blunted blades in both the power-on and power-off modes. The strokes were taken using an automated shaving device developed specially by Schick for the purposes of testing the M3 Power razor and Gillette's claims with respect to it. Images of the hairs were taken before and after the razor strokes using a camera with a plate that flattened hair onto the face. The images were then downloaded to a computer and hair lengths were assessed using ImagePro software. An independent statistician evaluated the data for all three days. Schick argues that its data indicates that there was no statistically significant difference between the change in hair length with power off and the change in hair length with power on.

Again, however, the court finds the test protocol lacking and results questionable. Schick's testing shows that some hairs shrunk even in the absence of

_____

[6]Schick first performed tests to determine whether the M3 Power changes the angle of beard hairs.

the use of water, which Gillette's testing has found to result in hair shrinkage. Schick's expert testified that this may have been the result of measurement error, and the court agrees.[7] Furthermore, Gillette provided expert testimony that the glass plate used to flatten hairs so that they could be measured would likely result in distortion, making it difficult to accurately measure hair lengths. Such flaws in Schick's testing cause the court to be skeptical of Schick's test results and the suggestion that these results demonstrate that the M3 Power does not cause hairs to extend.

The flaws in testing conducted by both parties prevent the court from concluding whether, as a matter of fact, the M3 Power raises beard hairs.

## II. ANALYSIS

### A. Irreparable Harm

Schick argues that the M3 Power advertising is causing it irreparable harm. Sales of its premiere razor, the Quattro, have decreased precipitously since Gillette's release of the M3 Power. It is far from clear that all of the decline in Quattro sales is attributable to the allegedly false statements made in the course of M3 Power advertising. It is this difficulty, however, in determining what portion of the decline is so attributable that makes Schick's harm irreparable. "It is virtually impossible to prove that so much of one's sales will be lost or that one's goodwill will be damaged as a direct result of a competitor's advertisement. Too many market variables enter into the advertising-sales equation. Because of these impediments, a Lanham Act plaintiff who can prove actual lost sales may obtain an injunction even if most of his sales decline is

_____

[7]It may also result from the application of a glass plate meant to flatten the hairs so that they could be measured in two dimensions.

14

attributable to factors other than a competitor's false advertising." Coca-Cola Co. v. Tropicana Products, Inc., 690 F.2d 312, 316 (2d Cir. 1982).

Gillette argues that Schick's delay in seeking relief, as a factual matter, militates against a finding of irreparable harm. "Delay is typically relevant to both irreparable harm and to laches, although the latter doctrine relates only to permanent relief." Tom Doherty, Inc. v. Saban Entertainment, Inc., 60 F.3d 27, 39 (2d Cir. 1995) (considering delay in seeking preliminary injunction in the context of a contract dispute). Depending on the facts of a particular case, delay may be relevant for other purposes as well. Id. In a trademark case, where a "high probability of confusion" normally gives rise to a presumption of irreparable harm for the purposes of obtaining a preliminary injunction, that presumption is "inoperative if the plaintiff has delayed either bringing suit or in moving for preliminary injunctive relief." Tough Traveler, Ltd. v. Outbound Products, 60 F.3d 964, 967-68 (2d Cir. 1995). It is important to remember, however, that a finding of irreparable harm may still be made on the basis of other relevant factors; the inexcusable delay affects only the presumption of irreparable harm. Id. at 969. In the instant context, the court considers delay as one of several factors to be considered in determining whether Schick has established irreparable harm.

There is no presumption of irreparable harm in this case as such a presumption arises in the false advertising context only when the challenged advertising mentions a competitor by name. Castrol, Inc. v. Quaker State Corp., 977 F.2d 57, 62 (2d Cir. 1992). Furthermore, in the instant case, the reasons for Schick's delay ought to guide the court's consideration of whether that delay is probative with respect to the question of irreparable harm. In the trademark context, a delay is excused where "the plaintiff

15

does not know how severe the [trademark] infringement is" or where it is caused by a plaintiff's "good faith efforts to investigate an infringement." Id. A delay is inexcusable where a party was aware of the action it now wishes to enjoin, but the delay evidences that the party determined that the action did not violate its rights. Tom Doherty, Inc., 60 F.3d at 39.

Schick provides two excuses for the time lag between the initial airing of the allegedly-false Gillette advertising. The first is that it needed time to subject the claims made in the contested advertising to scientific testing. While the advertising began to air publicly in late May 2004, Schick did not complete its testing until October 2004. While the testing could have proceeded more quickly, see supra at 5, there are reasons the testing took five months and that period, to the extent that it is deemed "delay," is excused. Schick was engaged in a good faith investigation of its competitor's claims.

The second excuse for delay involves the three month period after Schick's initial testing had been completed. Schick claims that the expense of pursuing litigation in a United States forum led it to test Gillette's claims in other fora in November 2004, before initiating the instant lawsuit. Therefore, upon completing its testing, it initiated lawsuits abroad, prior to initiating the instant suit in late January 2005. Schick argues that its attempts to resolve the issue in alternative fora excuse its delay. The cases it cites, however, either address delay in the context of patent litigation, Whistler Corp. v. Dynascan Corp., 1988 WL 142216, *2 (N.D.Ill. Dec. 28, 1988) (excusing period of delay where plaintiff in patent infringement suit first "adjudicated another lawsuit that would establish a reasonable likelihood of success on the issue of infringement in the pending case"); Amicus, Inc. v. Post-Tension of Texas, Inc., 686 F.Supp. 583, 589 (S.D. Tex.

16

1987) (same), or address arbitration or settlement attempts, not forum-shopping in foreign jurisdictions, see Millennium Imp. Co. v. Sidney Frank Importing Co., 2004 USDistLexis 11871, *33-*34 (Jun. 11, 2004) (refusing to find that delay barred preliminary injunction of false advertising where parties had pursued alternative dispute resolution before the National Advertising Division of the Council of Better Business Bureaus prior to plaintiff filing suit); Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharmaceuticals Co., 129 F.Supp.2d 351 (D.N.J. 2000) (finding of irreparable harm in false advertising context not undermined by seven month-delay where plaintiff "notified J & J of its objections, promptly challenged the advertisements with the major networks, obtained the results of [a consumer survey]," and shortly thereafter initiated litigation); Tonka Corp. v. Rose Art Industries, Inc., 836 F.Supp. 200, 219 (D.N.J. 1983) (alleged delay did not support an acquiescence defense where plaintiff had filed an objection to defendant's trademark registration). The process of alternative dispute resolution of a false advertising claim is distinguishable from bringing litigation in a foreign jurisdiction. The parties could not have resolved, in Germany or Australia, a dispute regarding advertising within the United States. The cases that allow pursuit of remedies (through alternative dispute mechanisms) to constitute excusable delay do so because such mechanisms may have, with less expense and consumption of time, achieved a remedy substantially similar to that sought in court, an injunction. The same is not true of Schick's legal actions in foreign jurisdictions, which, even if successful, had no effect on Schick's legal rights in the United States.

Schick argues that the case law on delay is motivated by the need to notice

17

parties that a claim for false advertising may lie against them.  This purpose, according to Schick, was served by the German litigation as well as non-judicial interactions between the parties prior to initiation of any litigation.  However, Schick misunderstands the import of inexcusable delay in the context of an application for a preliminary injunction.  As a factual matter, such delay suggests that irreparable harm does not exist as the moving party, for some significant period of time, declined to exercise rights that may have mitigated the irreparable harm it was suffering.  The litigation in Germany and Australia had no legal effect on advertising in the United States and, for the purposes of the instant lawsuit, it is advertising in the United States that, according to Schick, is causing it to suffer irreparable harm.

The court concludes that the three months during which Schick pursued foreign litigation is not inexcusable.  See Tom Doherty, Inc., 60 F.3d at 39.  Clearly Schick did not think Gillette's advertisements were not violating Schick's rights.

The court, therefore, considers Schick's delay in seeking relief alongside other evidence going to the factual question of irreparable injury.  The court concludes that Schick's initiation of testing in May 2004 suggests that Schick believed it was being harmed from the day the M3 Power was launched.  The severe decline in Quattro sales supports a finding of harm as does the fact that the parties are head-to-head competitors.  Furthermore, the difficulty of determining what percentage of sales is attributable to Gillette's allegedly false advertising, and, therefore, the difficulty of accurately determining what monetary damages will compensate Schick for its harm, support a finding that any such harm is, indeed, irreparable.

**B.     False Advertising**

18

**1. Literal Falsity.** "Falsity may be established by proving that (1) the advertising is literally false as a factual matter, or (2) although the advertising is literally true, it is likely to deceive or confuse customers." Nat'l Basketball Ass'n v. Motorola, Inc., 105 F.3d 841, 855 (2d Cir. 1997). "A plaintiff's burden in proving literal falsity thus varies depending on the nature of the challenged advertisement." Castrol, Inc., 977 F.2d at 63. The Second Circuit has found that where an advertisement alleges that tests have established a product's superiority, a plaintiff must demonstrate that the tests or studies did not prove such superiority. "[A] plaintiff can meet this burden by demonstrating that the tests were not sufficiently reliable to permit a conclusion that the product is superior." Id. In addition, "[i]f the plaintiff can show that the tests, even if reliable, do not establish the proposition asserted by the defendant, the plaintiff has obviously met its burden." Id.

Where, however, as here, the accused advertising does not allege that tests or clinical studies have proven a particular fact, the plaintiff's burden to come forward with affirmative evidence of falsity is qualitatively different. "To prove that an advertising claim is literally false, a plaintiff must do more than show that the tests supporting the challenged claim are unpersuasive." Mc-Neil-P.C.C., Inc. v. Bristol-Myers Squibb Co., 938 F.2d 1544, 1549 (2d Cir. 1991). The plaintiff must prove falsity by a preponderance of the evidence, either using its own scientific testing or that of the defendant. If a plaintiff is to prevail by relying on the defendant's own studies, it cannot do so simply by criticizing the defendant's studies. It must prove either that "such tests 'are not sufficiently reliable to permit one to conclude with reasonable certainty that they established' the claim made" or that the defendant's studies establish that the

19

defendant's claims are false. Id. at 1549-50.

The challenged advertising consists of two basic components: an animated representation of the effect of the M3 Power razor on hair and skin and a voice-over that describes that effect. The animation, which lasts approximately 1.8 seconds, shows many hairs growing at a significant rate, many by as much as four times the original length. During the animation, the voice-over states the following: "Turn it on and micropulses raise the hair so the blades can shave closer." Schick asserts that this M3 Power advertising is false in three ways: first, it asserts the razor changes the angle of beard hairs; second, it portrays a false amount of extension; and third, it asserts that the razor raises or extends the beard hair.

With regard to the first claim of falsity, if the voiceover means that the razor changes the angle of hairs on the face, the claim is false. Although Gillette removed the "angle changing" claim from its television advertisements, it is unclear whether it has completely removed all material asserting this angle-change claim. The court concludes that the current advertising claim of "raising" hair does not unambiguously mean to changes angles.[8] See Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharmaceuticals Co., 298 F.3d 578, 587 (3d Cir. 2002) ("only an unambiguous message can be literally false"). Thus, the revised advertising is not literally false on this basis.

With regard to the second asserted basis of falsity, the animation, Gillette concedes that the animation exaggerates the effect that the razor's vibration has on

_____

[8]It is the words "up and away" when combined with "raises" that suggest both extension and angle change.

20

hair. Its own tests show hairs extending approximately 10% on average, when the

animation shows a significantly greater extension. The animation is not even a

"reasonable approximation," which Gillette claims is the legal standard for non-falsity.

See Gillette's Prop. Conclusions of Law at ¶ 32, 37-38 [Dkt. No. 114]. Here, Schick can

point to Gillette's own studies to prove that the animation is false. See Mc-Neil-P.C.C.,

Inc. , 938 F.2d at 1549.

    Gillette argues that such exaggeration does not constitute falsity. However, case

law in this circuit indicates that a defendant cannot argue that a television

advertisement is "approximately" correct or, alternatively, simply a representation in

order to excuse a television ad or segment thereof that is literally false. S.C. Johnson &

Son, Inc., 241 F.3d at 239-40 (finding that depiction of leaking plastic bag was false

where rate at which bag leaked in advertisement was faster than rate tests indicated);

Coca-Cola Co., 690 F.2d at 318 (finding that advertisement that displaced fresh-

squeezed orange juice being poured into a Tropicana carton was false). Indeed, "[the

Court of Appeals has] explicitly looked to the visual images in a commercial to assess

whether it is literally false." S.C. Johnson, 241 F.3d at 238.[9]

    Gillette's argument that the animated portion of its advertisement need not be

exact is wrong as a matter of law. Clearly, a cartoon will not exactly depict a real-life

situation, here, e.g., the actual uneven surface of a hair or the details of a hair plug.

However, a party may not distort an inherent quality of its product in either graphics or

_____

    [9] At least one other circuit has held that picture depictions can constitute false
advertising. Scotts Co. v. United Indus. Corp., 315 F.3d 264 (4th Cir. 2002) (finding that while
ambiguous graphic on packaging did not constitute literally false advertising, an unambiguous
graphic could do so).

animation. Gillette acknowledges that the magnitude of beard hair extension in the animation is false. The court finds, therefore, that any claims with respect to changes in angle and the animated portion of Gillette's current advertisement are literally false.

The court does not make such a finding with respect to Schick's third falsity ground, Gillette's hair extension theory generally. Gillette claims that the razor's vibrations raise some hairs trapped under the skin to come out of the skin. While its own studies are insufficient to establish the truth of this claim, the burden is on Schick to prove falsity. Neither Schick's nor Gillette's testing can support a finding of falsity.

While there can be no finding of literal falsity with respect to Gillette's hair extension claim at this stage in the instant litigation, the court expresses doubt about that claim. As described earlier, Gillette's own testing is suspect. Furthermore, Schick introduced expert testimony and elicited evidence from Gillette's expert regarding the lack of scientific foundation for any biological mechanism that would explain the effect described by Gillette in its advertising. Gillette's own expert, Dr. Philpott, testified that no scientific foundation exists to support Gillette's hypothesis that beard hairs might be trapped under the skin by sebum and corneocytes and that the application of mechanical energy might release such hairs. While Dr. Philpott put forward another hypothesis--that a hair's curliness might cause it to be trapped--he also conceded that, prior to his engagement as an expert on Gillette's behalf, in twenty years of studying hair, he had never come across such a phenomenon. The court credits the testimony of Schick's expert, Dr. Leffell, that while certain clinical conditions are characterized by hairs trapped under the surface of the skin, there is no such non-clinical phenomenon.

Nevertheless, putting forth credible evidence that there is no known biological

22

mechanism to support Gillette's contention that the M3Power raises hairs is insufficient to meet Schick's burden. Such evidence is not affirmative evidence of falsity. Further, while Schick successfully attacked Gillette's testing, that attack did not result in evidence of falsity. Unlike in McNeil, here Gillette's own tests do not prove hair extension does not occur. Schick merely proved that Gillette's testing is inadequate to prove it does occur.

2. **Actual Deception.** Schick need not prove actual deception if Gilette's advertising is determined to be literally false. Mc-Neil-P.C.C., Inc., 938 F.2d at 1549 ("Where the advertising claim is shown to be literally false, the court may enjoin the use of the claim without reference to the advertisement's impact on the buying public." (internal quotation marks and citations omitted)). Because the court finds that claims regarding angle change and the magnitude and frequency of hair extension portrayed in the animated portion of Gillette's television advertisement are both literally false, it presumes that these claims result in actual deception.

3. **Materiality.** "It is also well-settled that, in addition to proving falsity, the plaintiff must also show that the defendants misrepresented an inherent quality or characteristic of the product. This requirement is essentially one of materiality, a term explicitly used in other circuits." S.C. Johnson & Son, Inc., 241 F.3d at 238 (internal quotation marks and citations omitted). In determining that certain allegedly false statements were not material, the Second Circuit considered the relevance of the statements and the fact that "[t]he inaccuracy in the statements would not influence customers." Nat'l Basketball Ass'n v. Motorola, Inc., 105 F.3d 841, 855 (2d Cir. 1997).

It is clear that whether the M3 Power raises hairs is material. Gillette's employees testified that television advertising time is too valuable to include things that are "unimportant". Furthermore, in this case, hair extension is the "reason to believe" that the M3 Power is a worthwhile product. The magnitude and frequency of that effect are also, therefore, material. Whether a material element of a product's performance happens very often and how often that element happens are, in themselves, material.

4. **Injury.** The court finds that, in light of the advertisement's literal falsity, the fact that the parties are head-to-head competitors, and recent declines in the sale of Schick's premiere wet shave system injury will be presumed. Coca-Cola Co., 690 F.2d at 316-317. While Schick has not submitted consumer surveys or market research, the fact that the parties are head-to-head competitors supports an inference of causation.

5. **Interstate Commerce.** The parties do not dispute that this element of the claim has been established.

Accordingly, the court finds that Schick has established a likelihood of success on the merits of its claims insofar as Gillette's claims regarding changes in hair angle and its animation depicting an exaggerated amount of hair extension are literally false. The court finds that Schick has failed to establish a likelihood of success, or even serious questions going to the merits, on the claim of hair "extension."

**BOND**

Gillette has requested a bond of $49,579,248. It contends that this amount represents estimated lost profits on future M3 Power sales, over a twelve-month period, if later found to have been wrongfully enjoined. Schick submits that a bond of $50,000

24

to $100,000 is appropriate.

Gillette's calculations assume a precipitous drop in sales as a result of a mandate to correct two admitted falsities in its advertisement.[10]  The court is skeptical that this calculation represents an appropriate bond amount.[11]  Instead, the court imposes a bond of $200,000 on Schick.  Absent a record created by Gillette, the court concludes this amount, generally in the range for false advertising cases, is sufficient to protect Gillette.  Gillette may move to increase the bond amount upon a showing of likely injury.

**CONCLUSION**

For the reasons stated above the Motion for Preliminary Injunction [Dkt. No. 7] is GRANTED in part and DENIED in part.  The injunction is entered as stated in the accompanying order.  Schick's Motion for Leave to Amend [Dkt. No. 103] is GRANTED.

**SO ORDERED**

Dated at Bridgeport, Connecticut this 31st day of May, 2005.


/s/ Janet C. Hall
Janet C. Hall
United States District Judge

---

[10]While Gillette contends that the animated portion of its advertisement is not literally false as a matter of law, it has conceded that, as a factual matter, the animation represents an exaggerated hair-extension effect.

[11]Does it claim that it cannot sell one M3 Power razor without making false claims regarding angle change or the magnitude of hair extension?  When it ceased television and print advertising with the "angle change," did its sales drop precipitously?

25

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

SCHICK MANUFACTURING, INC.,          :
ET AL                                :
    Plaintiffs                  :
                                :   CIVIL ACTION NO.
v.                                   :   3-05-cv-174 (JCH)
                                :
THE GILLETTE COMPANY                 :   JUNE 20, 2005
    Defendant                   :

**RULING RE: MOTION FOR CLARIFICATION OF INJUNCTION AND
ADJUSTMENT OF BOND AMOUNT [DKT. NO. 122]**

The defendant, the Gillette Company ("Gillette"), moves for clarification of this

court's Order of May 31, 2005, wherein the court granted in part the plaintiffs' motion for

a preliminary injunction. [Dkt. No. 121]. "It is undoubtedly proper for a district court to

issue an order clarifying the scope of an injunction in order to facilitate compliance with

the order and to prevent 'unwitting contempt.'" Paramount Pictures Corp. v. Carol

Publishing Group, 25 F.Supp.2d 372, 374 (S.D.N.Y. 1998) (quoting Regal Knitwear Co.

v. Nat'l Labor Relations Board, 324 U.S. 9, 15 (1945)).

Gillette asks that the court limit its May 31, 2005 Order such that it does not

apply to certain language used by Gillette on packaging. The May 31 Order specifically

prohibited use of any language that states, indirectly or directly, "the M3 Power razor or

its micro-pulses or oscillations change the angle of hair in relation to the skin." Order

[Dkt. No. 121] at 1. It further specifies that any claims made on packaging that "state or

otherwise communicate that the M3 Power razor or its micro-pulses or oscillations: (a)

change the angle of hair in relation to the skin" must be removed. Id. at 2. Gillette's

1

current packaging asserts that, "Gentle micro-pulses stimulate hair up and away from the skin." It claims that the Order does not prohibit use of such language.

The court does not agree. The use of the term "up and away" in conjunction with the term "stimulates" is literally false as it connotes an angle change.[1] "Stimulates" with "up" alone or "away" alone would not, but together state a message that is more than mere extension. The May 31, 2005 Order, as Schick indicates, applies to all forms of Gillette advertising, such as in television and radio, mailings, the internet, and packaging. Therefore, Gillette must remove such language ("up and away") from packaging of the M3 Power. It must also provide retailers and non-party distributors with stickers with which to re-sticker inventory that is not in Gillette's possession. This requirement imposes very minor hardship on any non-parties. See, e.g., Ladas v. Potpoourri Press, Inc., 846 F.Supp. 221 (E.D.N.Y. 1994) (requiring distribution of labels to retailers); compare Paramount Pictures Corp., 25 F. Supp. 2d at 375 (considering and rejecting proposed injunction prohibiting sale of good by nonparty distributors).

The court's Order was meant to cover packaging. Thus, the "stimulates up and away" wording on the M3 Power packaging in Gillette's possession must be re-stickered. In addition, the court's Order was meant to require Gillette to take all reasonable steps to sticker such language on packaging in the possession and control of third parties, including but not limited to seeking consent from such third parties to

---

[1]The court specifically addressed "raises up and away" as literally false in its May 31, 2005 Ruling, at p. 20, n. 5. The word "stimulates" does not alter the meaning when used in conjunction with "up and away." Assuming the two words are not redundant, together they must mean more than extension of the hair, but also a change in relation to the face, as an angle change.

restickering, to provide stickers, to offer to sticker the packaging, and to reimburse third parties for their restickering.

The defendant's Motion to Clarify the court's May 31, 2005 Order [Dkt. No. 122] so as to limit its applicability to claims including the word "raise" is DENIED. The motion for adjustment of bond amount [Dkt. No. 122] is GRANTED in part and DENIED in part without prejudice to renew. The court increases the bond amount to $400,000. Plaintiffs shall file with the Clerk a bond in the amount of $400,000, with good and sufficient surety, and conditioned as required by Rule 65 of the Federal Rules of Civil Procedure. However, the court does not accept that it has been demonstrated that distribution of sufficient stickers to cover and the process of covering packaging in retail outlets will cost $1.2 million, as requested by Gillette. Gillette may within a week of this Order provide additional support in connection with the restickering of packaging in the control of third parties.

**SO ORDERED**

Dated at Bridgeport, Connecticut this 20th day of June, 2005.


/s/ Janet C. Hall_____
Janet C. Hall
United States District Judge

3

**PROOF OF SERVICE**

I am employed by the Kick Law Firm, APC, in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is 660 South Figueroa Street, Suite 1800, Los Angeles, California 90017.

On January 13, 2006, I served the foregoing document described as **PLAINTIFFS CORRALES' AND ADOURE'S PROPOSED JOINT SCHEDULING REPORT AND JOINT DISCOVERY PLAN** on the interested parties identified below by placing a true copy thereof enclosed in a sealed envelope addressed as follows:

SEE ATTACHED SERVICE LIST

____ **BY PERSONAL SERVICE** – I delivered such envelope by hand delivery to the parties list listed on the attached service list.

____ **BY FEDERAL EXPRESS - NEXT DAY DELIVERY** -- I deposited the sealed envelope in a box or other facility regularly maintained by the express service carrier Federal Express in an envelope or package designated by the express service carrier with delivery fees paid or provided for, addressed to the person on whom it is to be serve.

____ **FACSIMILE** – I transmitted it to a facsimile machine maintained by the person on whom it is served at the facsimile machine telephone number as last given by that person on any document which he or she has filed in the cause and served on the party making the service, as indicated below. The facsimile was transmitted from my business address, using the fax machine whose number is 213-624-1589, at ____ approximately . The document was transmitted by facsimile transmission and that the transmission was reported as complete and without error.

__X__ **BY UNITED STATES MAIL** – I deposited the sealed envelope with postage thereon fully prepaid in the United States mail at Los Angeles, California.

I declare under the penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct. Executed this January 13, 2006.

Manuel García

**PROOF OF SERVICE**

## SERVICE LIST

### In re M3Power Razor System Marketing & Sales Practices Litigation

### MDL No. 1704;  Master File No. 05-cv-11177-DPW

| Attorney - Firm | Represented Party(s) |
| --- | --- |
| Harvey J. Wolkoff, Esq.<br>Ropes & Gray LLP<br>One International Place<br>Boston, MA 02110-2624<br>Telephone: (617) 951-7522<br>Facsimile: (617) 951-7050 | The Gillette Company |
| James M. Spears, Esq.<br>Peter M. Brody, Esq.<br>Ropes & Gray LLP<br>One Metro Center<br>700 12th Street, N.W.<br>Washington, D.C. 20005<br>Telephone: (617) 951-7000<br>Facsimile: (617) 951-7050 | The Gillette Company |
| Kent R. Raygor, Esq.<br>Sheppard Mullin Richter & Hampton LLP<br>1901 Avenue of the Stars, Suite 1600<br>Los Angeles, CA 90067-6017<br>Telephone: (310) 228-3700<br>Facsimile: (310) 228-3701 | The Gillette Company |
| Robert E. Bauts, Esq.<br>Dillion, Bitae, & Luther, LLC<br>P.O. Box 398<br>53 Maple Ave.<br>Morristown, NJ 07963-0398<br>Telephone: (973) 539-3100 | The Gillette Company |
| Thomas M. Sobol, Esq.<br>Edward Notargiacomo, Esq.<br>Hagens Berman Sobol Shapiro LLP<br>One Main Street, 4th Floor<br>Cambridge, Massachusetts 02142<br>Telephone: (617) 482-3700<br>Facsimile: (617) 482-3003 | Kevin Windom |

C. Brooks Cutter, Esq.                          Kevin Windom
Mark J. Tamblyn, Esq.
Kershaw, Cutter & Ratinoff, LLP
980 9th Street, 19th Floor
Sacramento, CA 95814
Telephone: (916) 448-9800
Facsimile: (916) 669-4499

Kenneth A. Wexler, Esq.                         Kevin Windom
Edward A. Wallace, Esq.
The Wexler Firm LLP
One North LaSalle St., Suite 2000
Chicago, Illinois 60602
Telephone: (312) 346-2222
Facsimile: (312) 346-0022

Charles A. McCallum, Esq.                       Kevin Windom
R. Brent Irby, Esq.
McCallum, Hoaglund, Cook & Irby, LLP
2062 Columbiana Road
Vestavia Hills, Alabama 35216
Telephone: (205) 842-7767
Facsimile: (205) 824-7768

Wayne S. Kreger, Esq.                           David Atkins
Lee Jackson, Esq.
Gillian Wade, Esq.
Verboon, Milstein & Peter, LLP
2800 Donald Douglas Loop North
Santa Monica, CA 90405
Telephone: (310) 396-9600
Facsimile: (310) 396-9635

Samuel H. Rudman, Esq.                          Mark Dearman and
Robert M. Rothman, Esq.                         Anthony Debiseglia
Lerach Coughlin Stoia Geller Rudman & Robbins,
LLP
200 Broadhollow Road
Suite 406
Melville, NY 11747
Telephone: (631) 367-7100
Facsimile: (631) 367-1173

Thomas G. Shapiro, Esq.                         Mark Dearman,
Theodore M. Hess-Mahan, Esq.                    Anthony Debiseglia,
Shapiro Haber & Urmy LLP                        Javier Tuñón, and
53 State Street                                 Adam Kline
Boston, MA 02109
Telephone: (617) 439-3939
Facsimile: (617) 439-0134

Cory Holzer, Esq.
Michael I. Fistel, Esq.
Holzer & Holzer, LLC
1117 Perimeter Center West
Suite E-107
Atlanta, Georgia, 30338
Telephone: (770) 392-0090
Facsimile: (770) 392-0029

Javier Tuñón and
Adam Kline

Jason B. Bud, Esq.
Jon A. York, Esq.
Brandon O. Gibson, Esq.
Pentecost, Glenn & Rudd, PLLC
106 Stonebridge Blvd.
Jackson, Tennessee 38305
Telephone: (731) 668-5995
Facsimile: (731) 668-7163

Holly Moore and
Grant W. Jackson

Frank L. Watson, Esq.
William F. Burns, Esq.
Waston Burns, PLLC
One Commerce Square, Suite 2600
Memphis, TN 38103
Telephone: (901) 578-3528
Facsimile: (901) 578-2649

Tracy Gorea and
Mark Adkinson

Arthur Horne, Esq.
Murray Wells, Esq.
Horne & Wells, PLLC
81 Monroe Ave., Suite 400
Memphis, TN 38103
Telephone: (901) 507-2520
Facsimile: (901) 507-2524

Tracy Gorea

Russell Allen Wood, Esq.
Skelton, Clark & Wood
414 East Parkway
Russellville, AR 72801
Telephone: (479) 967-9986
Fax: (479) 967-9987

Mark Adkinson

David Pastor, Esq.
Gilman and Pastor, LLP
60 State Street, 37th Floor
Boston, MA 02109
Telephone: (617) 742-9700
Facsimile: (617) 9701

Kristopher Kenessky,
Steven Meyers,
Bradley Saunders,
Bruce Fisher,
Brad Fellersen, and
Richard Herbstman

| | |
|---|---|
| Jason L. Brodsky, Esq.<br>Evan J. Smith, Esq.<br>Marc L. Ackerman, Esq.<br>Brodsky & Smith LLC<br>Two Bala Plaza, Suite 602<br>Bala Cynwyd, PA 19004<br>Telephone: (610) 667-6200<br>Facsimile: (610) 667-9029 | Kristopher Kenessky,<br>Steven Meyers,<br>Bradley Saunders,<br>Bruce Fisher,<br>Brad Fellersen, and<br>Richard Herbstman |
| Joseph J. DePalma, Esq.<br>Susan D. Pontoriero, Esq.<br>Lite, DePalma, Greenberg & Rivas, LLC<br>Two Gateway Center, 12th Floor<br>Newark, NJ 07102-5003<br>Telephone: (973) 623-3000 | Patrick Coleman |
| Mark C. Gardy, Esq.<br>Henry Young, Esq.<br>Abbey Gardy, LLP<br>212 East 39th Street<br>New York, NY 10016<br>Telephone: (212) 889-3700 | Patrick Coleman |
| Kenneth D. Quat, Esq.<br>Law Office of Kenneth Quat<br>9 Damonmill Square, Suite 4A-4<br>Concord, MA 01742<br>Telephone: (978) 366-0848 | Collin L. McGeary |
| Lance A. Harke, Esq.<br>Harke & Clasby LLP<br>155 South Miami Ave, Suite 600<br>Miami, FL 33130<br>Telephone: (305) 536-8220 | Collin L. McGeary |
| Michel Henri Kalcheim, Esq.<br>Kacheim/Salah<br>2049 Century Park East, Suite 2150<br>Los Angeles, California 90067<br>Telephone: (310) 461-1200<br>Facsimile: (310) 461-1201 | David Lipper |
| Lionel Z. Glancy, Esq.<br>Michael Goldberg, Esq.<br>Glancy Binkow & Goldberg LLP<br>1801 Avenue of the Stars, Suite 311<br>Los Angeles, California 90067<br>Telephone: (310) 201-9150<br>Facsimile: (310) 201-9160 | Matthew Marr |

Stephen M. Sohmer, Esq.         David Delre and
The Sohmer Law Firm, LLC     Joshua Vereb
One Passaic Avenue
Fairfield, NJ 07004
Telephone: (973) 227-7080

Nadeem Faruqi, Esq.           David Delre and
Anthony Vozzolo, Esq.        Joshua Vereb
Faruqi & Faruqi, LLP
320 East 39th Street
New York, NY 10016
Telephone: (212) 983-9330

Ben Barnow, Esq.             Greg Besinger and
Sharon Harris, Esq.          David Zavala
Barnow and Associates, P.C.
One North LaSalle Street, Suite 460
Chicago, IL 60602
Telephone: (312) 621-2000

Larry D. Drury, Esq.           Greg Besinger and
Larry D. Drury, Ltd.          David Zavala
Two N. LaSalle Street, Suite 700
Chicago, IL 60602
Telephone: (312) 346-7950

John H. Alexander, Esq.        Greg Besinger and
John H. Alexander & Associates, LLC  David Zavala
100 W. Monroe Street, Suite 2100
Chicago, IL 60603
Telephone: (312) 263-7731

John S. Steward, Esq.        Greg Besinger,
The Burstein Law Firm, P.C.    David Zavala, and
225 South Meramec, Suite 925    Elvis Huskic
St. Louis, MO 63105
Telephone: (314) 725-6060

Joseph V. Neill, Esq.          Elvis Huskic
5201 Hampton Avenue
St. Louis, MO 63109
Telephone: (314) 353-1001

Thomas R. Carnes, Esq.       Elvis Huskic
The Carnes Law Firm
5201 Hampton Avenue
St. Louis, MO 63109
Telephone: (314) 353-1001

| | |
|---|---|
| Clifford H. Pearson, Esq.<br>Gary S. Soter, Esq.<br>Daniel L. Warshaw, Esq.<br>C. Scott Marshall, Esq.<br>Wasserman, Comden, Casselman & Pearson,<br>L.L.P.<br>5567 Reseda Boulevard, Suite 330<br>Post Office Box 7033<br>Tarzana, CA 91357<br>Telephone: (818) 705-6800 | Dean L. Smith, Jr. |
| Robert C. Baker, Esq.<br>Phillip A. Baker, Esq.<br>Baker, Keener & Nahra LLP<br>633 West Fifth Street, 54th Floor<br>Los Angeles, CA 90071-2005<br>Telephone: (213) 241-0900 | Dean L. Smith, Jr. |
| Harold M. Hewell, Esq.<br>1901 First Avenue, Second Floor<br>San Diego, CA 92101<br>Telephone: (619) 235-6854 | Luis Gonzalez |
| Alan L. Kovacs, Esq.<br>Law Office of Alan L. Kovacs<br>2001 Becon Street, Suite 106<br>Boston, MA 02135<br>Telephone: (617) 964-1177 | Marcell Johnson,<br>Neil Hirsch, and<br>Jeffrey L. Friedman |
| Steven A. Kanner, Esq.<br>Douglas A. Millen, Esq.<br>Robert J. Wozniak, Jr., Esq.<br>Much Shelist Freed Denenberg Ament &<br>Rubenstein, P.C.<br>191 North Wacker Drive, Suite 1800<br>Chicago, IL 60606-1615<br>Telephone: (312) 521-2000 | Marcell Johnson,<br>Neil Hirsch, and<br>Jeffrey L. Friedman |
| Harry Shulman, Esq.<br>The Mills Law Firm<br>145 Marina Blvd.<br>San Rafael, CA 94901<br>Telephone: (415) 455-1326 | Marcell Johnson,<br>Neil Hirsch, and<br>Jeffrey L. Friedman |
| Daniel R. Karon, Esq.<br>Goldman Scarlato & Karon, P.C.<br>55 Public Square, Suite 1500<br>Cleveland, OH 44113 | Marcell Johnson,<br>Neil Hirsch, and<br>Jeffrey L. Friedman |
| Steven J. Greenfogel, Esq.<br>Meredith Cohen Greenfogel & Skirnick, P.C.<br>117 S. 17th Street, 22nd Floor<br>Philadelphia, PA 19103<br>Telephone: (215) 564-5182 | Marcell Johnson,<br>Neil Hirsch, and<br>Jeffrey L. Friendman |

Reginald Terrell, Esq.                          Michael Pruitt
The Terrell Law Group
223 25th Street
Richmond, CA 94804
Telephone: (510) 237-9700

Donald Amamgbo, Esq.                            Michael Pruitt
Amamgbo & Associates
1940 Embarcardero
Oakland, CA 94606
Telephone: (510) 434-7800

Karen Marcus, Esq.                              Evan Rosenthal and
Mila F. Bartos, Esq.                            Steve McGlynn
Finkelstein, Thompson & Loughran
1050 30th Street, N.W.
Washington, D.C. 20007
Telephone: (202) 337-8090

Steven A. Schwartz, Esq.                        Steve McGlynn
Chimicles & Tikellis LLP
361 West Lancaster Ave.
Haverford, PA 19041
Telephone: (610) 642-8500

Edward W. Cochran, Esq.                         Robert Falkner
20030 Marchmont Road
Shaker Heights, OH 44122

Taras Kick, Esq.                                Carlos Corrales and
G. James Strenio, Esq.                          Kasem Adoure
Thomas G. Martin, Esq.
The Kick Law Firm, APC
660 South Figueroa St. Suite 1800
Los Angeles, CA 90017

Allan Kanner, Esq.                              Carlos Corrales and
ALLAN KANNER & ASSOCIATES, PLLC                 Kasem Adoure
701 Camp Street
New Orleans, LA 70130

1

**PROOF OF SERVICE**

2

3        I am employed by the Kick Law Firm, APC, in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action.  My business address is 660 South Figueroa Street, Suite 1800, Los Angeles, California 90017.

4

5        On January 13, 2006, I served the foregoing document described as **PLAINTIFFS CORRALES' AND ADOURE'S PROPOSED JOINT SCHEDULING REPORT AND JOINT DISCOVERY PLAN** on the interested parties identified below by placing a true copy thereof enclosed in a sealed envelope addressed as follows:

6

7

                            SEE ATTACHED SERVICE LIST

8

9   ____   **BY PERSONAL SERVICE** – I delivered such envelope by hand delivery  to the parties list listed on the attached service list.

10

11  ____   **BY FEDERAL EXPRESS - NEXT DAY DELIVERY** --  I deposited the sealed envelope in a box or other facility regularly maintained by the express service carrier Federal Express in an envelope or package designated by the express service carrier with delivery fees paid or provided for, addressed to the person on whom it is to be serve.

12

13  ____   **FACSIMILE** – I transmitted it to a facsimile machine maintained by the person on whom it is served at the facsimile machine telephone number as last given by that person on any document which he or she has filed in the cause and served on the party making the service, as indicated below.  The facsimile was transmitted from my business address, using the fax machine whose number is 213-624-1589, at ____ approximately  . The document was transmitted by facsimile transmission and that the transmission was reported as complete and without error.

14

15

16

17   _X_   **BY UNITED STATES MAIL** – I deposited the sealed envelope with postage thereon fully prepaid in the United States mail at Los Angeles, California.

18

19        I declare under the penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct.  Executed this January 13, 2006.

20

                            /s/_Manuel Garcia_____
21                          Manuel Garcia

22

23

24

25

26

27

28

**PROOF OF SERVICE**

1
2

**SERVICE LIST**
**In re M3Power Razor System Marketing & Sales Practices Litigation**
**MDL No. 1704;  Master File No. 05-cv-11177-DPW**

3
4

**Attorney - Firm**                                      **Represented Party(s)**

5
6
7

Harvey J. Wolkoff, Esq.                                 The Gillette Company
Ropes & Gray LLP
One International Place
Boston, MA 02110-2624
Telephone: (617) 951-7522
Facsimile: (617) 951-7050

8
9
10
11

James M. Spears, Esq.                                   The Gillette Company
Peter M. Brody, Esq.
Ropes & Gray LLP
One Metro Center
700 12th Street, N.W.
Washington, D.C. 20005
Telephone: (617) 951-7000
Facsimile: (617) 951-7050

12
13
14
15

Kent R. Raygor, Esq.                                    The Gillette Company
Sheppard Mullin Richter & Hampton LLP
1901 Avenue of the Stars, Suite 1600
Los Angeles, CA 90067-6017
Telephone: (310) 228-3700
Facsimile: (310) 228-3701

16
17
18

Robert E. Bauts, Esq.                                   The Gillette Company
Dillion, Bitae, & Luther, LLC
P.O. Box 398
53 Maple Ave.
Morristown, NJ 07963-0398
Telephone: (973) 539-3100

19
20
21
22

Thomas M. Sobol, Esq.                                   Kevin Windom
Edward Notargiacomo, Esq.
Hagens Berman Sobol Shapiro LLP
One Main Street, 4th Floor
Cambridge, Massachusetts 02142
Telephone: (617) 482-3700
Facsimile: (617) 482-3003

23
24
25
26

C. Brooks Cutter, Esq.                                  Kevin Windom
Mark J. Tamblyn, Esq.
Kershaw, Cutter & Ratinoff, LLP
980 9th Street, 19th Floor
Sacramento, CA 95814
Telephone: (916) 448-9800
Facsimile: (916) 669-4499

27
28

**PROOF OF SERVICE**

1   Kenneth A. Wexler, Esq.                          Kevin Windom
2   Edward A. Wallace, Esq.
    The Wexler Firm LLP
3   One North LaSalle St., Suite 2000
    Chicago, Illinois 60602
4   Telephone: (312) 346-2222
    Facsimile: (312) 346-0022

5   Charles A. McCallum, Esq.                        Kevin Windom
6   R. Brent Irby, Esq.
    McCallum, Hoaglund, Cook & Irby, LLP
7   2062 Columbiana Road
    Vestavia Hills, Alabama 35216
8   Telephone: (205) 842-7767
    Facsimile: (205) 824-7768

9   Wayne S. Kreger, Esq.                            David Atkins
    Lee Jackson, Esq.
10  Gillian Wade, Esq.
    Verboon, Milstein & Peter, LLP
11  2800 Donald Douglas Loop North
    Santa Monica, CA 90405
12  Telephone: (310) 396-9600
    Facsimile: (310) 396-9635
13
    Samuel H. Rudman, Esq.                           Mark Dearman and
14  Robert M. Rothman, Esq.                          Anthony Debiseglia
    Lerach Coughlin Stoia Geller Rudman & Robbins,
15  LLP
    200 Broadhollow Road
16  Suite 406
    Melville, NY 11747
17  Telephone: (631) 367-7100
    Facsimile: (631) 367-1173
18
    Thomas G. Shapiro, Esq.                          Mark Dearman,
19  Theodore M. Hess-Mahan, Esq.                     Anthony Debiseglia,
    Shapiro Haber & Urmy LLP                         Javier Tuñón, and
20  53 State Street                                  Adam Kline
    Boston, MA 02109
21  Telephone: (617) 439-3939
    Facsimile: (617) 439-0134
22
    Cory Holzer, Esq.                                Javier Tuñón and
23  Michael I. Fistel, Esq.                          Adam Kline
    Holzer & Holzer, LLC
24  1117 Perimeter Center West
    Suite E-107
25  Atlanta, Georgia, 30338
    Telephone: (770) 392-0090
26  Facsimile: (770) 392-0029

27

28

---

**PROOF OF SERVICE**

| | |
|---|---|
| 1 | |

Jason B. Bud, Esq.                                    Holly Moore and
Jon A. York, Esq.                                     Grant W. Jackson
Brandon O. Gibson, Esq.
Pentecost, Glenn & Rudd, PLLC
106 Stonebridge Blvd.
Jackson, Tennessee 38305
Telephone: (731) 668-5995
Facsimile: (731) 668-7163

Frank L. Watson, Esq.                                 Tracy Gorea and
William F. Burns, Esq.                                Mark Adkinson
Waston Burns, PLLC
One Commerce Square, Suite 2600
Memphis, TN 38103
Telephone: (901) 578-3528
Facsimile: (901) 578-2649

Arthur Horne, Esq.                                    Tracy Gorea
Murray Wells, Esq.
Horne & Wells, PLLC
81 Monroe Ave., Suite 400
Memphis, TN 38103
Telephone: (901) 507-2520
Facsimile: (901) 507-2524

Russell Allen Wood, Esq.                              Mark Adkinson
Skelton, Clark & Wood
414 East Parkway
Russellville, AR 72801
Telephone: (479) 967-9986
Fax: (479) 967-9987

David Pastor, Esq.                                    Kristopher Kenessky,
Gilman and Pastor, LLP                                Steven Meyers,
60 State Street, 37th Floor                           Bradley Saunders,
Boston, MA 02109                                      Bruce Fisher,
Telephone: (617) 742-9700                             Brad Fellersen, and
Facsimile: (617) 742-9701                             Richard Herbstman

Jason L. Brodsky, Esq.                                Kristopher Kenessky,
Evan J. Smith, Esq.                                   Steven Meyers,
Marc L. Ackerman, Esq.                                Bradley Saunders,
Brodsky & Smith LLC                                   Bruce Fisher,
Two Bala Plaza, Suite 602                             Brad Fellersen, and
Bala Cynwyd, PA 19004                                 Richard Herbstman
Telephone: (610) 667-6200
Facsimile: (610) 667-9029

Joseph J. DePalma, Esq.                               Patrick Coleman
Susan D. Pontoriero, Esq.
Lite, DePalma, Greenberg & Rivas, LLC
Two Gateway Center, 12th Floor
Newark, NJ 07102-5003
Telephone: (973) 623-3000

**PROOF OF SERVICE**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Mark C. Gardy, Esq.                          Patrick Coleman
Henry Young, Esq.
Abbey Gardy, LLP
212 East 39th Street
New York, NY 10016
Telephone: (212) 889-3700

Kenneth D. Quat, Esq.                        Collin L. McGeary
Law Office of Kenneth Quat
9 Damonmill Square, Suite 4A-4
Concord, MA 01742
Telephone: (978) 366-0848

Lance A. Harke, Esq.                         Collin L. McGeary
Harke & Clasby LLP
155 South Miami Ave, Suite 600
Miami, FL 33130
Telephone: (305) 536-8220

Michel Henri Kalcheim, Esq.                  David Lipper
Kacheim/Salah
2049 Century Park East, Suite 2150
Los Angeles, California 90067
Telephone: (310) 461-1200
Facsimile: (310) 461-1201

Lionel Z. Glancy, Esq.                       Matthew Marr
Michael Goldberg, Esq.
Glancy Binkow & Goldberg LLP
1801 Avenue of the Stars, Suite 311
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

Stephen M. Sohmer, Esq.                      David Delre and
The Sohmer Law Firm, LLC                     Joshua Vereb
One Passaic Avenue
Fairfield, NJ 07004
Telephone: (973) 227-7080

Nadeem Faruqi, Esq.                          David Delre and
Anthony Vozzolo, Esq.                        Joshua Vereb
Faruqi & Faruqi, LLP
320 East 39th Street
New York, NY 10016
Telephone: (212) 983-9330

Ben Barnow, Esq.                             Greg Besinger and
Sharon Harris, Esq.                          David Zavala
Barnow and Associates, P.C.
One North LaSalle Street, Suite 460
Chicago, IL 60602
Telephone: (312) 621-2000

---

**PROOF OF SERVICE**

| | |
|---|---|
| Larry D. Drury, Esq.<br>Larry D. Drury, Ltd.<br>Two N. LaSalle Street, Suite 700<br>Chicago, IL 60602<br>Telephone: (312) 346-7950 | Greg Besinger and<br>David Zavala |
| John H. Alexander, Esq.<br>John H. Alexander & Associates, LLC<br>100 W. Monroe Street, Suite 2100<br>Chicago, IL 60603<br>Telephone: (312) 263-7731 | Greg Besinger and<br>David Zavala |
| John S. Steward, Esq.<br>The Burstein Law Firm, P.C.<br>225 South Meramec, Suite 925<br>St. Louis, MO 63105<br>Telephone: (314) 725-6060 | Greg Besinger,<br>David Zavala, and<br>Elvis Huskic |
| Joseph V. Neill, Esq.<br>5201 Hampton Avenue<br>St. Louis, MO 63109<br>Telephone: (314) 353-1001 | Elvis Huskic |
| Thomas R. Carnes, Esq.<br>The Carnes Law Firm<br>5201 Hampton Avenue<br>St. Louis, MO 63109<br>Telephone: (314) 353-1001 | Elvis Huskic |
| Clifford H. Pearson, Esq.<br>Gary S. Soter, Esq.<br>Daniel L. Warshaw, Esq.<br>C. Scott Marshall, Esq.<br>Wasserman, Comden, Casselman & Pearson, L.L.P.<br>5567 Reseda Boulevard, Suite 330<br>Post Office Box 7033<br>Tarzana, CA 91357<br>Telephone: (818) 705-6800 | Dean L. Smith, Jr. |
| Robert C. Baker, Esq.<br>Phillip A. Baker, Esq.<br>Baker, Keener & Nahra LLP<br>633 West Fifth Street, 54th Floor<br>Los Angeles, CA 90071-2005<br>Telephone: (213) 241-0900 | Dean L. Smith, Jr. |
| Harold M. Hewell, Esq.<br>1901 First Avenue, Second Floor<br>San Diego, CA 92101<br>Telephone: (619) 235-6854 | Luis Gonzalez |
| Alan L. Kovacs, Esq.<br>Law Office of Alan L. Kovacs<br>2001 Becon Street, Suite 106<br>Boston, MA 02135<br>Telephone: (617) 964-1177 | Marcell Johnson,<br>Neil Hirsch, and<br>Jeffrey L. Friedman |

**PROOF OF SERVICE**

| | |
|---|---|
| Steven A. Kanner, Esq.<br>Douglas A. Millen, Esq.<br>Robert J. Wozniak, Jr., Esq.<br>Much Shelist Freed Denenberg Ament &<br>Rubenstein, P.C.<br>191 North Wacker Drive, Suite 1800<br>Chicago, IL 60606-1615<br>Telephone: (312) 521-2000 | Marcell Johnson,<br>Neil Hirsch, and<br>Jeffrey L. Friedman |
| Harry Shulman, Esq.<br>The Mills Law Firm<br>145 Marina Blvd.<br>San Rafael, CA 94901<br>Telephone: (415) 455-1326 | Marcell Johnson,<br>Neil Hirsch, and<br>Jeffrey L. Friedman |
| Daniel R. Karon, Esq.<br>Goldman Scarlato & Karon, P.C.<br>55 Public Square, Suite 1500<br>Cleveland, OH 44113 | Marcell Johnson,<br>Neil Hirsch, and<br>Jeffrey L. Friedman |
| Steven J. Greenfogel, Esq.<br>Meredith Cohen Greenfogel & Skirnick, P.C.<br>117 S. 17th Street, 22nd Floor<br>Philadelphia, PA 19103<br>Telephone: (215) 564-5182 | Marcell Johnson,<br>Neil Hirsch, and<br>Jeffrey L. Friendman |
| Reginald Terrell, Esq.<br>The Terrell Law Group<br>223 25th Street<br>Richmond, CA 94804<br>Telephone: (510) 237-9700 | Michael Pruitt |
| Donald Amamgbo, Esq.<br>Amamgbo & Associates<br>1940 Embarcardero<br>Oakland, CA 94606<br>Telephone: (510) 434-7800 | Michael Pruitt |
| Karen Marcus, Esq.<br>Mila F. Bartos, Esq.<br>Finkelstein, Thompson & Loughran<br>1050 30th Street, N.W.<br>Washington, D.C. 20007<br>Telephone: (202) 337-8090 | Evan Rosenthal and<br>Steve McGlynn |
| Steven A. Schwartz, Esq.<br>Chimicles & Tikellis LLP<br>361 West Lancaster Ave.<br>Haverford, PA 19041<br>Telephone: (610) 642-8500 | Steve McGlynn |
| Edward W. Cochran, Esq.<br>20030 Marchmont Road<br>Shaker Heights, OH 44122 | Robert Falkner |

**PROOF OF SERVICE**

1

Taras Kick, Esq.                                    Carlos Corrales and
2
G. James Strenio, Esq.                              Kasem Adoure
Thomas G. Martin, Esq.
3
The Kick Law Firm, APC
660 South Figueroa St. Suite 1800
4
Los Angeles, CA 90017

5
Allan Kanner, Esq.                                  Carlos Corrales and
ALLAN KANNER & ASSOCIATES, PLLC                     Kasem Adoure
6
701 Camp Street
New Orleans, LA 70130

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PROOF OF SERVICE**