# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

---

In re:                            )

M3POWER RAZOR SYSTEM    )

MARKETING & SALES PRACTICES    )

LITIGATION                    )

_____ )

THIS DOCUMENT RELATES TO:    )

ALL CASES                  )

_____ )

Civil Action No. 05-11177-DPW

(Lead Case)

MDL Docket No. 1704

## MCGEARY PLAINTIFFS GROUP'S MOTION
## FOR APPOINTMENT OF INTERIM CLASS COUNSEL WITH SUGGESTIONS
## AS TO LIAISON COUNSEL AND ORGANIZATIONAL STRUCTURE

### I.      PRELIMINARY STATEMENT

Pursuant to the Court's January 10, 2006 Order, the plaintiffs comprising the McGeary Group (as defined below),[1] by their counsel, respectfully submit this memorandum in support of their motion under Rule 23(g) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P.") to appoint Interim Class Counsel. They do so consistent with the Court's pronouncement (transcript p. 2) and, with the Court's direction and approval, with a view to a proposed broad and inclusive counsel structure set forth in the attached Exhibit A. They seek appointment of Ben Barnow, Barnow and Associates, P.C., as either the or one of Interim Class Counsel in this MDL proceeding and consolidated action. This filing is, in part, in opposition to the "Application for

---

[1] The McGeary Group is presently comprised of the following named plaintiffs (identified by state), in each of following actions, pending in this Court: *Colin McGeary v. Gillette* (D. Mass.); *Greg Besinger and David Zavala v. Gillette* (N.D. Ill.); and *Elvis Huskic v. Gillette* (E.D. Mo.).

Appointment as Class Counsel" (the "Dearman Motion"), filed on January 13, 2006, by the Shapiro/Lerach Group.[2]

The McGeary Group comprises a group of plaintiffs and law firms encompassing a geographically broad-based coalition of class members, alleging deceptive trade practices, unjust enrichment, and other claims.

For these reasons, and as further explained below, the McGeary Group respectfully requests that the Court appoint Ben Barnow, Barnow and Associates, P.C., as Interim Class Counsel or one of Interim Class Counsel, and, should the Court deem it appropriate, in a manner consistent or substantially consistent with the proposed counsel structure filed herewith (Exhibit A).

## II.     PERTINENT FACTS AND PROCEDURAL HISTORY: A VIEW TO EFFECTIVE ORGANIZATION FOR THIS LITIGATION

This consumer litigation brings with it the usual multiplicity of cases, views on national and state classes, arguments regarding alleged differences in state laws and their possible effects, motions for remand, longings for *Lexecon*[3], and, hopefully, a constant search through those elements for a resolve that is acceptable to the parties and ultimately to the Court and the system.

Most of these types of cases are organized by plaintiffs' counsel for review and final approval of the court. The movants here, led by Ben Barnow and Lance Harke, have been diligent in that regard, but circumstances have prevented agreements amongst all counsel for such an organization. It is believed positive, however, that their early efforts

---

[2] The premature nature of the Dearman Motion filed by the Shapiro/Lerach Group was addressed in Plaintiffs' Motion to Set Schedule for Filing of Applications for Appointment of Plaintiffs' Steering Committee, a January 19, 2006 filing supported by plaintiffs' counsel in 10 of the 28 pending consolidated cases.
[3] *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26 (1998).

did result in calling to the Court's attention the lack of claimed support for the early filing regarding appointing interim class counsel. And, they believe that the required organization should and will follow the Order of the Court.

In that regard, it is believed important to note that the litigation was likely in an advanced stage of settlement discussion, a process that was likely interrupted by the fact that the two groups most engaged in that process did not unify those efforts, although attempts were made to do so, albeit in different ways. Nonetheless, those two groups, McGeary (Barnow/Harke) and  Shapiro/Lerach, have advanced the plaintiffs' resolve both in that process and in initial organizational efforts (and results, although partial and not yet complete). Each of these groups have recognized the importance of this MDL assignment and the opportunity it represents for global resolution; each has eliminated, as best they could, remand from the mix of issues in this litigation and the divisiveness it represents.  Thus, respectfully, for the reasons stated herein, it is suggested that the best resolve would be for the appointment of Ben Barnow and Thomas Shapiro as Co-Interim Class Counsel with an order from the Court directing them to tender by a date short and certain a proposed organizational order in a form similar to Exhibit A, attached hereto.

## III.    ARGUMENT

### A.    The Court Should Appoint Interim Class Counsel Who Will Best Represent the Interests of the Putative Class

Fed. R. Civ. P. 23(g)(2)(A) authorizes the Court to "designate interim counsel to act on behalf of the putative class before determining whether to certify the action as a class action." As the Committee Notes to the 2003 amendments to Rule 23 point out, designation of interim class counsel is appropriate because:

[I]t will usually be important for an attorney to take action to prepare for the

certification decision. The amendment to Rule 23(c)(I) recognizes that some discovery is often necessary for that determination. It may also be important to make or respond to motions before certification. . . . Rule 23(g)(2)(A) authorizes the court to designate interim counsel to act on behalf *of* the putative class before the class certification decision is made.

Fed. R. Civ. P. 23(g)(1) directs the Court to appoint class counsel who will "fairly and adequately represent the interests *of* the class." *Id.* (emphasis added). The Rule further states that the Court must consider the following factors in appointing class counsel: 1) the work counsel has done in identifying or investigating potential claims in the action; 2) counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action; 3) counsel's knowledge of the applicable law; and 4) the resources counsel will commit to representing the class. *See* Fed. R. Civ. P. 23(g)(1)(C)(i). *See also In re Elec. Data Sys. Corp. Sec. Litig.,* 226 F.R.D. 559, 571 (B.D. Tex. 2005), *aff'd, Feder v. Elec. Data Sys. Corp.,* 429 F.3d 125 (5th Cir. 2005) ("In making [a class counsel] appointment, there are a variety of factors the court should consider. The court must consider: counsel's work in identifying or investigating the class's claims; counsel's class action, complex litigation, and similar claims experience; counsel's knowledge of the applicable law; and counsel's resources committed to class representation.") (citing Fed. R. Civ. P. 23(g)(1)(C)(i)).  The Court may also consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class.[4] *Id.*

In this regard, the Manual for Complex Litigation specifically cautions against "[d]eferring to proposals by counsel without independent examination, even those that

---

[4] As the court noted in *Coleman* v. *General Motors Acceptance Corp.,* 220 F.R.D. 64, 100 (M.D. Tenn. 2004), "the primary responsibility of the class counsel, resulting from an appointment as such, is to represent the best interests of the class."

seem to have the concurrence of the majority of those affected. . . ." Manual for Complex Litigation (Fourth) (the "Manual") § 10.224 (2004). *See also In re Scrap Metal Antitrust Litig.,* No. I :02-CV-0844 2002 WL 31988203, at \*1 (N.D. Ohio Aug. 5,2002).

**B.    Counsel for the McGeary Plaintiffs' Group Will Fairly and Adequately Represent The Interests Of The Putative Class**

Consistent with its unilateral approach throughout the proceedings to date, the Shapiro/Lerach Group offers no rationale for adopting its proposed leadership structure apart from asserting that the two firms seeking appointment from that group have sufficient consumer class action experience and that other counsel involved in this litigation have apparently acquiesced to their appointment. The McGeary Group does not challenge that the firms proposed by the Shapiro/Lerach Group to lead these cases are experienced and capable attorneys, notwithstanding their refusal to adequately promote a broad-based plaintiffs' group and leadership structure.  One of the purposes underlying the 2003 amendments to Rule 23, however, was to provide — by the enactment of Rule 23(g) — a mechanism for choosing class counsel who would *best* represent the interests of the class without regard to negotiated deals or political arrangements among plaintiffs' proposed class counsel. As the May 20, 2002 report of the Civil Rules Advisory Committee noted, under the new Rule 23(g) "the criteria for appointment are supplemented by provisions designed to reduce the risk that an ingrown class bar will fence out counsel whose knowledge of the law and experience in the subject matter promise effective representation. . . ."

As detailed below, the McGeary Group filing satisfies the criteria for selection as Interim Class Counsel set forth in Rule 23(g); the counsel it suggests as the, or one of, Interim Class Counsel, will fairly and adequately represent the interests of the consumers

concerned in this litigation. Ben Barnow, Barnow and Associates, P.C., is well-qualified and well-equipped to serve as Interim Class Counsel. *See* short form resume of Ben Barnow, attached hereto as Exhibit B. Under this view, other attorneys wishing to continue working would do so within the court-ordered structure. And, the Shapiro/Lerach group has not been excluded.

> **1.    Proposed Interim Class Counsel Has Already Done Considerable Substantive Work in this Action and Has Consistently Sought Unification of Plaintiffs and Their Counsel**

In considering a motion for appointment as interim class counsel, the Court should consider the work undertaken by that counsel in the case. *See Harrington v. City of Albuquerque,* 222 F.R.D. 505, 520 (D.N.M. 2004) (appointing class counsel who had "done significant work in [the] case"). As discussed at length above, Ben Barnow, Barnow and Associates, P.C., and Lance A. Harke, Harke & Clasby LLP, and other members of the McGeary Group, have already spent considerable time and resources researching and identifying the claims at issue; conducting and directing industry research; negotiating with and working with defense counsel on pre-trial and discovery matters as well as addressing the substantive merits of plaintiffs' claims; discussing the terms and parameters of a confidentiality stipulation; participated in substantial settlement efforts with Defendant and other plaintiffs' counsel; and they have reached out to all plaintiffs' counsel, including the Shapiro/Lerach Group, and counsel with California plaintiffs who have been seeking and may be seeking remand.

In an effort to accelerate the prosecution of this litigation, the McGeary Group repeatedly offered to cooperate with the Shapiro/Lerach Group, without prejudice to the Court's ultimate decision on the Rule 23(g) issue with respect to case leadership. To that

end, numerous calls and emails were initiated and pursued by Ben Barnow and Lance

Harke.  Mr. Harke even traveled to Boston to meet with Mr. Shapiro in an effort to

continue these discussions.  It has become apparent, however, that the Shapiro/Lerach

Group has no intention of opening their determination of case leadership. The McGeary

Group has continued to press for cooperation among the various counsel groups to draft

case management documents and discovery plans, and to coordinate the plaintiffs' efforts

in these cases amongst themselves.  The Shapiro/Lerach Group has rejected — and

continues to reject — all these offers out of hand, including unified settlement attempts,

or any changes or modifications to the proposal the Shapiro/Lerach group submitted to

this Court on January 13.  That latter refusal and impasse reaches into the possible

progress of the litigation to date. The Court's order unifying the plaintiffs' groups will go

far in ending any divisiveness in that important element of litigation.

Based upon their efforts in investigating, organizing, coordinating, and

prosecuting this case to date, including significant settlement efforts and progress in that

regard, Ben Barnow, Lance Harke, and the McGeary Group satisfies the first criteria

under Rule 23(g) for selection as Interim Class Counsel.

**2.      Proposed Interim Class Counsel Has Experience and Expertise in
Handling Class Actions, Complex Litigation and Antitrust Claims**

Courts applying Rule 23(g) have placed great emphasis on proposed class

counsel's experience and knowledge of the applicable law. *See generally In Re Toys R Us*

*Antitrust Litig.,* 191 F.R.D. 347, 351 (E.D.N.Y. 2000) ("Class counsel are highly skilled

and experienced and can fairly and adequately represent the interests of the class."); *In re*

*Cree, Inc. Sec. Litig.,* 219 F.R.D. 369, 373 (M.D.N.C. 2003) (appointing class counsel in

a securities case where the firm had "extensive experience in representing institutional

investors in securities actions throughout the country and . . . long been heavily engaged in securities and corporate litigation.").

Ben Barnow, Barnow and Associates, P.C., and Harke & Clasby, LLP, and the other firms in the McGeary Group, have extensive experience in class action litigation, particularly in consumer class actions, having represented plaintiffs in numerous nationwide class actions, including consumer product and deceptive marketing class actions and other complex, large-scale litigations throughout the United States in both state and federal courts.

An examination of Ben Barnow's short form resume illustrates his substantial experience in prosecuting complex consumer class action litigation. His cases set forth his proven ability to organize and advance, in an efficient and productive manner, litigation that includes many filings by many different plaintiffs, lawyers and law firms. For instance, the *Schwab v. America Online, Inc.* litigation comprised approximately 58 law firms; the Milberg, Weiss firm, formerly including the Lerach firm seeking interim class counsel status here, was on the executive committee in that case. *See* Exhibit B, at numbered paragraph 1. This was also the organizational structure in the *Heilman* case, which included 23 law firms from across the country.  *Id.* at numbered paragraph 4. In the MDL proceeding *In re High Sulfur Content Gasoline Products Liability Litigation*, U.S. District Court for the E.D. of Louisiana, pending before the Honorable Ivan L.R. Lemelle, Ben Barnow was appointed and acts as Co-Lead Counsel, and Lance Harke is on the Plaintiffs' Steering Committee.[5]  That case organized approximately 30 law firms. The Amended Order of Assignment in that case is suggested as a working model for this

---

[5] Lance A. Harke is an AV-rated commercial litigator and his short form resume is attached as Exhibit C.

case. *See* Exhibit D, attached hereto. Indeed, that structure, with suggested "for-further-discussion" counsel placements was circulated to most counsel in these proceedings. *See* [Proposed] Case Management Order #2, attached hereto as Exhibit A. The Shapiro/Lerach group rejected it and would make no counter-suggestions other than that their proposal to the Court stays the same. Should it be the Court's order, Ben Barnow, individually or with any other Co-Interim Class Counsel,[6] would commence establishing and finalizing, with the input of all interested counsel, such an order for the Court's review and approval.

### 3. Proposed Interim Class Counsel Will Commit the Resources Necessary to Represent the Putative Class

As required by Rule 23(g), courts have also considered the resources that proposed class counsel will commit to the prosecution of the lawsuit. *LeBeau v. United States,* 222 F.R.D. 613, 619 (D.S.D. 2004) ("In considering the resources that counsel will commit to represent the class, the Court may consider the staff, supplies and professional commitments of that attorney") (citation omitted). The cases that Ben Barnow alone has advanced show his and the McGeary Group's ability to fund this litigation, and that is even if the proposed order including other counsel is not favored by the Court.

To date, the McGeary Group has already expended many hours of attorney time and resources advancing this litigation. Based on the foregoing, proposed counsel clearly satisfies the criteria for appointment as Interim Class Counsel and will "fairly and adequately represent the interests of the class," as required under Rule 23(g).

---

[6] Should the Court consider an organizational structure with greater than two Co-Interim Class Counsel, the McGeary Group respectfully requests that Lance A. Harke be considered for such a position.

IV.     **<u>CONCLUSION</u>**

For all of the foregoing reasons, the members of the McGeary Group request that the Court grant their cross-motion and enter an Order appointing Interim Class Counsel, including appointment of Ben Barnow, Barnow and Associates, P.C., as the, or one of, Interim Class Counsel. Respectfully, in view of the work done in these cases to date and the position of the litigation, it is suggested that Interim Class Counsel be Ben Barnow, Esq., and Thomas G. Shapiro, Esq., of Shapiro Haber & Urmy LLP said order to include presentation, within ten days, of a proposed order in a form similar to Exhibit A.

Respectfully submitted,


*s/ Lance A. Harke*
Lance A. Harke, P.A.
HARKE & CLASBY LLP
155 South Miami Avenue, Suite 600
Miami, FL  33130
Telephone:  (305) 536-8220
Facsimile:  (305) 536-8229

*s/ Ben Barnow*
Kenneth D. Quat
LAW OFFICE OF KENNETH D. QUAT
9 Damonmill Square, Suite 4A-4
Concord, MA 01742
Telephone:  (978) 369-0848

*Counsel for Plaintiff Colin McGeary*


*s/ Ben Barnow*
Ben Barnow
Sharon Harris
BARNOW AND ASSOCIATES, P.C.
One North LaSalle Street, Suite 460
Chicago, IL 60602
Telephone:  (212) 349-7950

*s/ Ben Barnow*
Larry D. Drury
LARRY D. DRURY, LTD
Two N. LaSalle Street, Suite 700
Chicago, IL  60602
Telephone:  (312) 349-7950

*s/ Ben Barnow*
John H. Alexander
JOHN H. ALEXANDER & ASSOC., LLC
100 W. Monroe Street, Suite 2100
Chicago, IL 60603
Telephone:  (312) 263-7731

*Counsel for Plaintiff Greg Besinger and David Zavala*

*s/ Ben Barnow*
John S. Steward
Burstein Law Firm P.C.
225 South Meramec, Suite 925
Clayton, MI 63105

*Counsel for Plaintiff Elvis Huskic*

EXHIBIT

A

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| In re: | ) | CIVIL ACTION NO. 05-11177-DPW |
| M3POWER RAZOR SYSTEM | ) | (LEAD CASE) |
| MARKETING & SALES PRACTICES | ) | |
| LITIGATION | ) | MDL Docket No. 1704 |
| | ) | |
| THIS DOCUMENT RELATES TO: | ) | |
| **ALL CASES** | ) | |
| | ) | |

[PROPOSED] CASE MANAGEMENT ORDER #2

WHEREAS, the Court having entered a Case Management Order and Order for

Consolidation on January 26, 2006 ("CMO #1"), and in furtherance thereof, the following

ORDER is hereby set:

1.    **Organization of Plaintiffs' Counsel.**

a.    **Plaintiffs' Co-Lead Counsel**

The Court hereby appoints as Plaintiffs' Co- Lead Counsel: Tom Shapiro, Sam

Rudman, Ben Barnow and Lance Harke.  Plaintiffs' Co-Lead Counsel shall be

generally responsible for coordinating the activities of plaintiffs during pre-trial

and trial proceedings and shall:

(a) formulate and present (in motions, briefs, oral argument, or such other

fashion as may be appropriate, personally or by a designee) to the Court

and opposing parties the position of the plaintiffs and the class on all

matters arising during pre-trial proceedings;

(b) determine the scope of and coordinate the initiation and conduct of

discovery on behalf of plaintiffs consistent with the requirements of

F.R.C.P. 26, including the preparation of joint interrogatories and requests

for production of documents and the examination of witnesses in

depositions;

(c) delegate and oversee specific tasks to member of Plaintiffs' Steering

Committee and its subcommittees in a manner to assure that pre-trial

preparation for the plaintiffs is conducted effectively, efficiently, and

economically;

(d) enter into stipulations with opposing counsel necessary for the conduct

of the litigation;

(e) preside over meetings of the Plaintiffs' Steering Committee and,

provide status reports, either orally or in writing, to Plaintiffs' Steering

Committee;

(i) maintain adequate time and expense records covering services of

Plaintiffs' Steering Committee;

(g) monitor the activities of Plaintiffs' Steering Committee to assure that

schedules are met and unnecessary expenditures of time and funds are

avoided;

(h) initiate and conduct all settlement negotiations on behalf of plaintiffs,

the putative class and class;

(i) advise the Plaintiff Steering Committee of all settlement proposals and

obtain the Plaintiff Steering Committee's input and comments regarding

same;

(j) and perform such other duties as may be incidental to proper

coordination of plaintiffs' pre-trial and trial activities, or as otherwise

authorized by further order of the Court.

With respect to the master case, no motion, request for discovery, or other pre-trial proceeding shall be initiated except through Plaintiffs' Co-Lead Counsel or as otherwise ordered by the Court. Defendants are under no obligation to respond to motions, requests for discovery, or other pre-trial proceedings with respect to the master case unless initiated by Plaintiffs' Co-Lead Counsel, or as otherwise ordered by the Court to respond. An agreement reached with Plaintiffs' Co-Lead Counsel shall be binding on all other plaintiffs' counsel and the Plaintiffs' Steering Committee in the master case.

**b.      Plaintiffs' Steering Committee**

In addition to Plaintiffs' Co-Lead counsel, the Court designates as the Plaintiffs' Steering Committee the following attorneys:  Allan Kanner, Joseph J. DePalma Ken Wexler, Mark Gardy, Reginald Miller, Donald Amamgbo, Larry Drury, Ken Quat, Russell Wood, Gillian Wade, Tony Baird, Ken Dodd, John Steward, Edward Cochran and Taras Kick for the Plaintiffs. The Plaintiffs' Steering Committee shall consult with Plaintiffs' Co-Lead Counsel on all litigation matters and shall perform work assignments, along with other plaintiffs' counsel who, from time to time receive assignments, as designated by Plaintiffs' Co-Lead Counsel, including the work in the subcommittees set forth below.

**c.    Plaintiffs' Liaison Counsel**

The Court hereby designates as Plaintiffs' Liaison Counsel: Thomas Shapiro

Plaintiffs' Liaison Counsel shall:

(i)    serve as the contact and recipient for the Court for the distribution, by overnight courier service and/or telecopier within two days after receipt, of all orders to Plaintiffs' Steering Committee and all other plaintiffs' counsel(as noted above, the clerk shall serve copies of all orders to each of Plaintiffs' Co-Lead Counsel in addition to service on Plaintiffs' Liaison Counsel);

(ii)    coordinate service of filings (pleadings, motions, or other documents) by overnight courier service and/or telecopier within two days after receipt, of all orders to Plaintiffs' Steering Committee and all other plaintiffs' counsel (as noted above, Defendants shall provide one (1) copy of all pleadings. motions, or other documents to each of Plaintiffs' Co-Lead Counsel in addition to service on Plaintiffs' Liaison Counsel);

(iii)    maintain and distribute to Plaintiffs' Steering Committee and all other plaintiffs' counsel and to Defendants' Counsel an up-to date service list;

(iv)    maintain and make available to Plaintiffs' Steering Committee and all other plaintiffs' counsel at reasonable hours a complete file of an documents served by or upon each party, except such documents as may be available at a document depository; and

(v)    in coordination with Plaintiffs' Document Depository Committee Chairman, establish and maintain a document depository.

**c.    Document Depository Committee**

The Court hereby appoints _____ as Document Depository Chairman. The responsibilities of Document Depository Counsel shall include meeting, conferring and reaching an amicable arrangement on the formation of the following depository and identification system:

**(i).    Joint Discovery Depository and Identification System:**

All documents produced pursuant to this proceeding shall be maintained in a single document depository to be maintained jointly by Plaintiffs' Document Depository Committee, under the direction of Plaintiffs' Co-Lead Counsel, and Defendants' Counsel; plaintiffs and defendants shall share the costs of the document depository. Plaintiffs' Document Depository Chairman, after consultation with Plaintiffs' Co-Lead Counsel, and Defendants' Counsel jointly shall determine the operating protocol for the document depository, including a provision for the maintenance of a master catalog listing all documents produced.  Each document produced shall be given a single identifying number.  These identification numbers must be used by all parties when referring to documents so identified. The Court will not consider any pleading that does not use these identification numbers or annex the documents to the pleading, except for good cause shown.

(ii).    **Electronic Service/Website/Virtual Delivery**

Plaintiffs' Co-Lead Counsel and Defendants' Counsel are to confer as to

whether a website and virtual depository would be helpful and would

advance the course of this litigation. At the appropriate time, said counsel

shall report to the Court regarding these matters.

e.    **Plaintiffs' Lead Discovery Committee**

The Court hereby designates Larry Drury and _____ as co-chairmen

of the Lead Discovery Committee.  Under direction of Plaintiffs' Co-Lead

Counsel, Plaintiffs' Lead Discovery Counsel shall coordinate the initiation and

conduct of discovery on behalf of plaintiffs consistent with the requirements of

Federal Rule of Civil Procedure 26(b)(1) and (2) and (g), including the

preparation of joint interrogatories and requests for production of documents and

the examination of witnesses in depositions.

f.    **Pleadings/Drafting Committee**

The Court hereby designates Donald Amamgbo and _____ as co-chairmen

of the Pleadings/Drafting Committee.  The responsibilities of the

Pleading/Drafting Committee are to draft, pursuant to the directions of the

Plaintiffs' Co-Lead Counsel, any pleadings or motions filed with the Court and

ensure the comprehensive and unified filing of same.

g.    **Expert Committee**

The Court hereby designates Tony Baird and Kenneth Dodd as co-chairmen of the

Expert Committee.  The Expert Committee's responsibilities shall include

coordinating discovery concerning expert reports as per the Court's approved

Joint Discovery Order of _____ (Rec. Doc. No. _____), and any other Discovery of Case Management Orders as this Court may make.

**h.     Law/Research Committee**

The Court hereby designates as co-chairmen of the Law/Research Committee Reginald Terrell and Gillian Wade.  The responsibilities of the Law/Research Committee shall include conducting legal research and any other research needed for plaintiffs' claims.  The co-chairmen of this Committee shall also meet and confer regularly with Plaintiffs' Co-Lead Counsel and the Pleadings/Drafting Committee and cooperate on any matters of law that must be included in any drafting or pleadings by the Pleading/Drafting Committee.

**i.     Trial Committee**

The Court hereby designates Plaintiffs' Co-Lead Counsel, Allan Kanner and Russell Wood as co-chairmen of the Trial Committee.  Responsibilities shall include those duties appropriately assigned by Plaintiffs' Co-Lead Counsel.

**j.     Class Certification Committee**

The Court hereby designates Edward Cochran and _____ as co-chairmen of the Class Certification Committee.  The Class Certification Committee shall be responsible for coordination of evidence necessary to have this matter certified as a class action.

**k.     State Law Issues Committee**

The Court hereby designates Taras Kick and _____ as co-chairmen of the State Law Issues Committee.  The State Law Issues Committee shall be responsible for addressing the uniformity and interrelation of various state laws.

SO ORDERED.

_____

Douglas P. Woodlock
United States District Judge


Dated: _____


Agreed to by:

Plaintiffs, by Plaintiffs' Co-Lead Counsel:



_____          _____

(BLANK NAME)                              (BLANK NAME)



Defendants, by Defendants' Counsel:



_____

(BLANK NAME)

E

X

H

I

B

I

T


B

BEN BARNOW
ATTORNEY AT LAW
1 NORTH LASALLE STREET, SUITE 4600
CHICAGO, ILLINOIS  60602
(312) 621-2000

SHORT FORM RESUME

I graduated from the University of Wisconsin in June of 1966 with a degree of Bachelor of
Business Administration.  I received my degree of Juris Doctor from the University of Michigan
Law School in May of 1969.  I am licensed to practice in the State of Illinois and the State of
New York.  I am admitted to practice before the Supreme Court of the United States of America,
the United States Court of Appeals for the Seventh Circuit, and the United States District Court
for the Northern District of Illinois. I am a member of the American Bar Association, the
Association of Trial Lawyers of America, the Illinois State Bar Association, and the Chicago Bar
Association.  I served as a member of the Panel of Arbitrators of the American Arbitration
Association; in that capacity, I arbitrated a number of disputes.  I am listed in Martindale-Hubbell
with an AV rating.

I was an Associate Professor at Northern Michigan University from 1969-1971 and taught
business law and unfair competition.  I joined the law firm of Herrick, McNeill, McElroy &
Peregrine in July 1971, and became a partner in that firm in 1977.

My legal career has included a great variety of matters.  Representation has included both
defendants and plaintiffs in most types of litigation and significant transactional work.  I have
argued and tried cases in a variety of forums.  In addition to states where I am admitted, I have
participated in litigation in a number of states and federal venues, including Washington, D.C.,
Maryland, Wisconsin, Minnesota, Kansas, South Dakota, Texas, Florida, and California.  For a
substantial number of years, I also acted as General Counsel to the world's largest public relations
agency and presided as chairman of certain retirement trusts.

Some of my significant cases are as follows:

1.    *Schwab v. America Online, Inc.*, Case No. 96 CH 13732 (Cir. Ct. of Cook Co., Ill.).  Class
      Counsel and Co-Chair.  This highly publicized litigation dealt with the representations of
      unlimited access to AOL for $19.95/month and the problems that ensued in conjunction
      therewith.  In the face of what was ultimately over one hundred class actions filed
      nationwide, I organized over 50 law firms, set up the co-chairmanship and the Executive
      Committee, which brought order and resolution to this litigation.  The settlement was
      approved and resulted in a multi-million dollar benefit to the Class.

2.    *In re Chicago Flood Litigation*, Case No. 92 L 5422 (Cir. Ct. of Cook Co., Ill.).  Co-Lead
      Class Counsel and a member of the Executive Committee.  In this capacity, I was
      responsible for major aspects of this class action, including arguing a related portion of
      the matter before the United States Supreme Court, and sundry other matters in state and

BEN BARNOW                                                                                    Page 2
SHORT FORM RESUME

federal venues. The case included settlement and trial. A multi-million dollar settlement
was achieved.

3.      *Orrick v. Sonic Communications*, Case No. 95 CH 3567 (Cir. Ct. of Cook Co., Ill.). This
        litigation, as well as others against the defendant, resulted from the practice known as
        "slamming." The private actions and actions filed on behalf of various Attorneys General
        were consolidated. A settlement providing benefits of approximately $8.3 million was
        achieved; the settlement covered all of the pending cases. I served as one of the Lead
        Class Counsel in this matter. This litigation is believed to be the first class certification
        and class settlement on the practice known as slamming.

4.      *Heilman, et al., v. Perfection Corp., et al.*, Case No. 99-0679-CV-W-HFS (W.D. Mo.).
        This national class action concerned allegedly defective dip tubes in over 14.2 million hot
        water tanks sold throughout the United States (95% of the hot water tanks sold during a 5
        year period). I served as Co-Lead Class Counsel. In that capacity, I organized twenty-
        three law firms and numerous separate filings in bringing about this national unified
        settlement. The settlement provided for a 100% recovery of out-of-pocket expenses and
        requisite repairs including preventive replacement of all concerned dip tubes, whether or
        not the dip tubes had actually failed. The case pended in the United States District Court
        for the Western District of Missouri.

5.      *Siegel v. Syncronys*, Case No. 95 CH 12257 (Cir. Ct. of Cook Co., Ill.). I was Co-Class
        Counsel in this nationwide class action concerning an allegedly defective computer
        product. The matter was settled, resulting in a remedy for the Class which provided for a
        100% reimbursement on moneys spent for the product. Settlement value was estimated at
        $22 million.

6.      *Schneider v. Dominick's Finer Foods, Inc.*, Case No. 98 CH 007951 (Cir. Ct. of Cook
        Co., Ill.). I was Co-Class Counsel in this case which pursued consumer remedies for
        failure of certain food chains to deliver on representations of 100% ground beef. The
        case alleged that pork, chicken, and other types of meat were included contrary to
        representations. The settlement included significant remedial relief in the form of shop
        signage regarding cleanliness and meat grinding practices and fluid recovery mechanisms
        to compensate the class members by way of in-store sales and published coupons.

7.      *Schwab v. Binney & Smith, et ano.*, Case No. 00 CH 8354 (Cir. Ct. of Cook Co., Ill.). I
        served as Co-Lead Class Counsel in this case, which sought and achieved remedy for
        consumers regarding crayons produced for decades with talc, which allegedly contained,
        or was subject to containing, asbestos. This national class settlement contributed to the
        reformulation of most of the crayons produced in this country so as to eliminate the
        inclusion of talc and thus the alleged asbestos inclusion. The settlement pursuant to the
        litigation also included *cy pres* and fluid recovery aspects (coupons and products) with a

face value of approximately $46 million. This class necessarily included many millions of members and is believed to be one of the largest classes ever certified.

8.   *In re Mercury Class Action Litigation*, Case No. 00 CH 13226 (Cir. Ct. of Cook Co., Ill.). I served as Co-Lead Class Counsel in this case that pursued consumers' remedies regarding the location of mercury-containing gas regulators in and on real estate. This class is a regional one. The settlement, which has been finally approved, provides for medical monitoring, removal of the regulators, and cash compensation to certain of the class members.

9.   *Loeb Industries, Inc., et al., v. Sumitomo Corporation, et al.*, Case No. 99 C 0377 (W.D. Wis.). I served as Co-Lead Counsel in this national class antitrust litigation, which sought recovery on behalf of a class of scrap copper purchasers who were allegedly harmed by activities allegedly designed to manipulate the copper market. A $20 million cash settlement with one of the defendants (Merrill Lynch) was reached.

10.  *In re Starlink Corn Products Liability Litigation*, MDL Docket No. 1403 (N.D. Ill.). I served as Co-Lead Class Counsel in this litigation regarding the alleged inclusion of genetically engineered corn in defendants' food products. The settlement, totaling $9 million, including the return of up to $6 million to consumers on a fluid recovery/*cy pres* basis through price reduction on future purchases coupled with a cash payment to approved charities in the event of any shortfall in the redemption, was granted final approval and has been completed.

11.  *Boland, et al. v. McDonald's Corporation, et ano.*, Case No. 01 CH 13803 (Cir. Ct. of Cook Co., Ill.). As Co-Lead Class Counsel in this national class litigation, I coordinated the efforts of approximately 25 plaintiffs' firms. The litigation concerned certain McDonald's promotional games and arose from the fraudulent removal of winning game pieces from random public distribution. The settlement of this case is valued at approximately $20 million, which included fifteen $1 million prizes given away by McDonald's.

12.  *Microsoft Civil Antitrust Litigation: State and Federal*. I am Class Counsel in a number of the state Microsoft civil antitrust cases; that includes Kansas and South Dakota, where settlements were recently approved by the respective state trial courts. I am also, *inter alia*, a Co-Lead Counsel in the MDL proceedings pending before the Honorable J. Frederick Motz in the U.S. District Court for the District of Maryland.

13.  *Fernandez, et ano. v. Vitamin Shoppe Industries, Inc., et ano.*, Case No. 03-25607-CA-30 (Cir. Ct. of the Eleventh Judicial Circuit in and for Miami-Dade Co., Fla.). I am Co-Lead Counsel in this national class action settlement, which has resulted in injunctive relief

BEN BARNOW                                                                                    Page 4
SHORT FORM RESUME

regarding labeling practices and additional relief by way of discount coupons and *cy pres* relief to appropriate charities.

14.    *In re United Parcel Service, Inc., Shipper Excess Value Insurance Coverage Litigation*, Master File No. M-21-84 (In the United States District Court for the Southern District of New York). I was one of five Settlement Class Counsel in this settlement that provided relief to UPS shippers who had paid premiums for excess value insurance coverage.

15.    *Smith v. J.M. Smucker Co.*, Case No. 03 CH 8522 (Cir. Ct. of Cook Co., Ill.). I am Class Counsel and a settlement has been granted final approval by the Court. The settlement provides relief to consumers of spreadable fruit products labeled "Simply 100% Fruit." I organized a group of Plaintiffs' Counsel from over 25 firms nationwide who have supported the settlement.

16.    *Rosen v. Ingersoll-Rand Co., Kryptonite Corp.*, Case No. 04 CH 15345 (Cir. Ct. of Cook Co., Ill.). I am Co-Lead Class Counsel and a settlement has been granted final approval by the Court. The settlement provides relief to purchasers of U-shaped tubular cylinder bicycle locks ("Kryptonite U-Lock(s)") throughout the United States and Canada. I organized and lead 18 firms in this litigation and settlement.

17.    *In Re High Sulfur Content Gasoline Products Liability Litigation*, MDL 1632 (U.S.D.C. for the E.D. La.). I am one of two Plaintiffs' Co-Lead Counsel/Co-Lead Settlement Class Counsel. A settlement has been granted preliminary approval by the Court.

EXHIBIT

C

# RESUME OF LANCE A. HARKE

## EDUCATIONAL BACKGROUND

Mr. Harke received his Bachelor of Arts degree in philosophy, with honors, from the University of Florida in 1987, and his Juris Doctor degree, *magna cum laude*, from the University of Miami School of Law in 1990. Mr. Harke served as Editor-in-Chief of the University of Miami Law Review. He was the recipient of the Soia Mentschikoff Award for Excellence in Scholarly Writing.

## LEGAL BACKGROUND

Following law school, Mr. Harke served as the judicial law clerk for the Honorable Magistrate Judge Barry L. Garber in United States District Court for the Southern District of Florida. Thereafter, Mr. Harke joined the law firm of Steel Hector and Davis LLP for 8 years, where he became a partner and practiced in the fields of products liability defense, class action defense, accountant malpractice, and insurance defense. After leaving Steel Hector and Davis LLP in 1998, Mr. Harke formed his own firm and has focused his practice almost exclusively in complex commercial litigation and consumer class litigation at both the trial and appellate levels. Currently, Mr. Harke is a founding partner of the law firm Harke & Clasby LLP where his practice concentrates in multi-state consumer class action litigation, insurance litigation, employment matters, professional malpractice, products liability defense, and general and complex commercial litigation.

Mr. Harke is admitted to practice law in the state of Florida, the United States District Courts for the Southern and Northern Districts of Florida, and the United States Court of Appeals for the Eleventh Circuit. In addition to Florida, Mr. Harke has tried matters to verdict in a number of states and federal venues, including Pennsylvania, Nevada, New Mexico, Iowa, Illinois, and New York. He is AV rated by the Florida Bar.

Notable cases Mr. Harke has successfully litigated include:

*Brian Shapiro v. Seaway Hotels Corporation*, Case No.: 03-12917-CA-10 (Fla. 11th Jud. Cir. Ct.) (acted as Lead Class Counsel in a nationwide litigation regarding alleged deceptive charges regarding hotel fees).

*Rosen v. Kryptonite Corporation*, Case No. 04 CH 15345 (Cir. Ct. of Cook Co., Ill.) (acted as Co-Lead Class Counsel in a nationwide defective products litigation).

*Fernandez, et al. v. Vitamin Shoppe Industries Inc., et al.,* Case No.: 03-25607-CA-30 (Fla. 11th Jud. Cir. Ct.) (acted as Co-Lead Class Counsel in a nationwide litigation regarding alleged deceptive pricing scheme perpetrated by the defendants).

*Maravilla v. Buy.com*, Case No. 02-5237-CA-08 (Fla. 11th Jud. Cir. Ct.) (acted as primary counsel for a consumer class action regarding alleged deceptive shipping charges by the defendant).

*In Re: Guidant Corp. Implantable Defibrillators Products Liability Litigation*, MDL No. 1708 (currently pending in the United States District Court for the District of

Minnesota Court) (appointed as a member of the Plaintiff's Steering Committee for this nationwide mass tort class action regarding the sale of defective cardiac defibrillators and pacemakers to the consuming public).

*Hoyos v. McDonald's Corporation, et al.,* Case No.: 01-20463-CA-24 (Fla. 11th Jud. Cir. Ct.) (acted as counsel for Florida consumers in a litigation concerning certain McDonald's promotional games and arose from the fraudulent removal of winning game pieces from random public distribution. The settlement of this case is valued at approximately $20 million, which included fifteen $1 million prizes given away by McDonald's).

*Marguerite Miles, et al. v. America Online, Inc.,* Case No. 8:00cv273-T-24C, (M.D.Fla. 2000) (acted as primary counsel for a class of consumers for alleged deceptive practices of the defendant as well as violation of the Computer Fraud and Abuse Act).

*E.I. du Pont de Nemours and Company, Inc., ("DuPont")* (defense of numerous products liability suits against one of the largest chemical companies in the world).

*Julio Rumbaut v. Spanish Broadcasting System*, Case No. 01-14249 CA 09 (Fla. 11th Jud. Cir. Ct.) (successful defense at trial of second largest Hispanic radio corporation regarding employment compensation claim, including appeal, settled on appeal).

## PUBLICATIONS

*The Scope of Discovery in the Federal Courts: A Survey of Published, Post-1980 Cases From the Federal Courts Regarding the Scope of Permissible Discovery in Civil Litigation*, Editor, published by the American Bar Association Section of Litigation.

*Product Liability Desk Reference: A Fifty State Compendium*, Contributing Author, published by Aspen Law and Business.

E

X

H

I

B

I

T


D

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

2004 NOV 22 PM 3: 18

LORETTA G. WHYTE
CLERK

IN RE HIGH SULFUR CONTENT GASOLINE    CIVIL ACTION NO. MDL 1632
PRODUCTS LIABILITY LITIGATION

## AMENDED ORDER OF ASSIGNMENT

Having considered Plaintiffs' Co-Lead Counsel's and Defendants' Counsel's joint request

to amend the Court's Order of Assignment entered on September 22, 2004 (Rec. Doc. No. 23),

**IT IS ORDERED** that:

This Amended Order of Assignment supersedes the previous Order of Assignment

entered on September 22, 2004 (Rec. Doc. No. 23) and amends said order as follows,

## I. CASE MANAGEMENT

**A.    Pre-trial Consolidation of Affected Cases**

This Amended Order of Assignment applies to all cases transferred to the Court pursuant

to 28 U.S.C. sec. 1407 by any current or subsequent order of the Judicial Panel on Multidistrict

Litigation in MDL 1632, and to any other actions designated by this Court as Related Actions

("the Affected Cases"). A Related Action shall mean an action that is transferred to this Court,

whether pursuant to 28 U.S.C. sec. 1407 or by any other means and includes those cases

previously consolidated for pre-trial purposes pursuant to Federal Rule of Civil Procedure 42

under the master case, *Lewis v. Shell Oil Products, LLC, et al., 04-1595*, as well as newly filed

cases that relate to the same subject matter.

Any party to any Affected Case aggrieved by any portion of this Order, within thirty (30)

1

DATE OF ENTRY

NOV 2 4 2004

Fee_____
Process_____
X  Dktd_____
✓  CtRmDep_____
Doc. No. 3

days of:

1.  the effective date of the Conditional Transfer Order issued by the Judicial Panel

    on Multidistrict Litigation in MDL 1632; or

2.  the date that a matter filed in, removed to, or transferred to, the U.S. District Court

    for the Eastern District of Louisiana is deemed a Related Action,

shall file an application for relief from this Order or any provision herein. Pending the Court's

ruling on any such application, the provisions of this Order shall fully apply to such Related

Action. If no such application is filed within the thirty-day period, such Related Action shall be

governed by this Order.

Counsel shall familiarize themselves with this District's Local Rules, and with the current

edition of the Manual for Complex Litigation, which is hereby adopted by the Court for general

guidance. The provisions of this order supersede any inconsistent provisions of this District's

Local Rules.

**B.    Newly filed or transferred actions**

When a newly filed or transferred case is deemed a Related Action, the Clerk of this

Court shall:

1.  File a copy of this Order in the separate file for such action.

2.  Make an appropriate entry in the MDL Master Docket.

3.  Mail a copy of the case docket sheet to Plaintiffs' Co-Lead Counsel, Plaintiffs'

    Liaison Counsel, and Defendants' Counsel.

and Plaintiffs' Liaison Counsel shall:

4. Mail a copy of this Order of Assignment and the Joint Discovery Order No. 1 (Rec. Doc. No. 21) to counsel for Plaintiffs in the Related Action.

## II. CASE IDENTIFICATION

The purpose of the instructions that follow is to reduce the time and expense of duplicate filings of documents through the use of a master case, while at the same time not congesting the master case with miscellaneous pleadings and orders that are of interest only to the parties directly affected by them.

### A. Master Docket and Record

For the convenience of the parties and the Court, the Clerk will maintain a master docket using the Civil Action No. MDL 1632 and under the style: IN RE HIGH SULFUR CONTENT GASOLINE PRODUCTS LIABILITY LITIGATION. When a document is filed and docketed in the MDL case, it shall be deemed filed and docketed in each individual case to the extent applicable and will not ordinarily be separately docketed or physically filed in any individual cases, with the exception of orders or documents terminating a case. However, the caption may also contain a notation indicating whether the document relates to all cases or only to specified cases, as described below.

### B. Captions

All orders, pleadings, motions, and other documents shall bear the same caption as that of the MDL record style contained in subsection A, above.

#### 1. Master Filing

If the document(s) is generally applicable to all Related Actions, the caption shall include

3

the notation that it relates to "ALL CASES," and the Clerk will file and docket the document(s)

only in the MDL master record.

### 2. Separate Filing

However, if a document is intended to apply only to a particular case, the caption shall

indicate the case number of the case(s) to which it applies.

## III. SERVICE OF DOCUMENTS

### A. Orders

The clerk shall copy each order to each of Plaintiffs' Co-Lead Counsel, Defendants'

Counsel, and, for distribution purposes to other counsel and parties not represented by counsel (if

any), to Plaintiffs' Liaison Counsel.

### B. Pleadings, Motions, and Other Documents

For distribution purposes, a party filing a pleading, motion, or other document shall

provide seven (7) copies to Plaintiffs' Liaison Counsel and seven (7) copies to Defendants'

Counsel, and, in addition, Defendants' Counsel shall provide one (1) copy to each of Plaintiffs'

Co-Lead Counsel. A copy of the document shall also be submitted to Plaintiffs' Liaison Counsel

on a disc or CD-ROM in either WordPerfect or Microsoft Word format. Service on Plaintiffs'

Liaison Counsel constitutes service on other attorneys and parties for whom Plaintiffs' Liaison

Counsel is acting, except that Plaintiffs' Co-Lead Counsel are to be served separately and in

addition to service on Plaintiffs' Liaison Counsel. Service on the parties for whom Plaintiffs'

Liaison Counsel is acting is deemed effective five (5) days after service on Plaintiffs' Liaison

Counsel. Service and distribution by Plaintiffs' Liaison Counsel to other attorneys of record shall

4

be by overnight courier service and/or telecopier.

### C. Refinement of Pleadings

Any attempt to add parties shall be governed by the Federal Rules of Civil Procedure.

Parties may also be added by a final transfer order of the Multidistrict Litigation Panel. See

sections VIII-X, below.

### D. Courtesy Copies

In addition to filing pleadings and other papers with the Court pursuant to the Local

Rules, the Court requests that the parties also submit an electronic courtesy copy in WordPerfect

format to the Court.

## IV. ORGANIZATION AND RESPONSIBILITIES OF COUNSEL

### A. Organization

Plaintiffs' counsel have met and discussed their organizational structure and functions.

Defense counsel have also met and discussed their organizational structure and functioning.

#### 1. Plaintiffs' Co-Lead Counsel

The Court hereby appoints as Plaintiffs' Co-Lead Counsel: Don Barrett and Ben Barnow.

Plaintiffs' Co-Lead Counsel shall be generally responsible for coordinating the activities of

plaintiffs during pre-trial and trial proceedings and shall:

(a) formulate and present (in motions, briefs, oral argument, or such other fashion as may

be appropriate, personally or by a designee) to the Court and opposing parties the position

of the plaintiffs and the class on all matters arising during pre-trial proceedings;

(b) determine the scope of and coordinate the initiation and conduct of discovery on

behalf of plaintiffs consistent with the requirements of F.R.C.P. 26, including the

preparation of joint interrogatories and requests for production of documents and the

examination of witnesses in depositions;

(c) delegate and oversee specific tasks to members of Plaintiffs' Steering Committee and

its subcommittees in a manner to assure that pre-trial preparation for the plaintiffs is

conducted effectively, efficiently, and economically;

(d) enter into stipulations with opposing counsel necessary for the conduct of the

litigation;

(e) preside over meetings of the Plaintiffs' Steering Committee and, as Plaintiffs' Co-

Lead Counsel deem necessary, provide status reports, either orally or in writing, to

Plaintiffs' Steering Committee;

(f) maintain adequate time and expense records covering services of Plaintiffs' Steering

Committee;

(g) monitor the activities of Plaintiffs' Steering Committee to assure that schedules are

met and unnecessary expenditures of time and funds are avoided;

(h) initiate and conduct all settlement negotiations on behalf of plaintiffs and the class;

(i) and perform such other duties as may be incidental to proper coordination of

plaintiffs' pre-trial and trial activities, or as otherwise authorized by further order of the

Court.

With respect to the master case, no motion, request for discovery, or other pre-trial

proceeding shall be initiated except through Plaintiffs' Co-Lead Counsel, or as otherwise ordered

6

by the Court. Defendants are under no obligation to respond to motions, requests for discovery, or other pre-trial proceedings with respect to the master case unless initiated by Plaintiffs' Co-Lead Counsel, or as otherwise ordered by the Court to respond.

An agreement reached with Plaintiffs' Co-Lead Counsel shall be binding on all other plaintiffs' counsel and the Plaintiffs' Steering Committee in the master case.

### 2. Plaintiffs' Steering Committee

The Court now designates as the Plaintiffs' Steering Committee the following attorneys: Don Barrett, Ben Barnow, Daniel E. Becnel, Jr., Richard Arsenault, Matthew Lundy, M.H. Gertler, Brian F. Aylstock, Joseph M. Bruno, Marc A. Wites, Stephen Murray, Jr., John Ruiz, Darleen M. Jacobs, B. Kristian W. Rasmussen, Michael G. Crow, Walter Dumas, and Lance A. Harke for the Plaintiffs. The Plaintiffs' Steering Committee shall consult with Plaintiffs' Co-Lead Counsel on all litigation matters and shall perform work assignments as designated by Plaintiffs' Co-Lead Counsel, including the work in the subcommittees set forth below.

### (a) Plaintiffs' Liaison Counsel

The Court hereby designates as Plaintiffs' Liaison Counsel: Daniel Becnel, Jr. Plaintiffs' Liaison Counsel shall:

(i)      serve as the contact and recipient for the Court for the distribution, by overnight courier service and/or telecopier within two days after receipt, of all orders to Plaintiffs' Steering Committee (as noted above, the clerk shall serve copies of all orders to each of Plaintiffs' Co-Lead Counsel in addition to service on Plaintiffs' Liaison Counsel);

     (ii)    coordinate service of filings (pleadings, motions, or other documents) by overnight courier service and/or telecopier within two days after receipt, on Plaintiffs' Steering Committee (as noted above, Defendants shall provide one (1) copy of all pleadings, motions, or other documents to each of Plaintiffs' Co-Lead Counsel in addition to service on Plaintiffs' Liaison Counsel);

     (iii)    maintain and distribute to Plaintiffs' Steering Committee and to Defendants' Counsel an up-to date service list;

     (iv)    maintain and make available to Plaintiffs' Steering Committee at reasonable hours a complete file of all documents served by or upon each party, except such documents as may be available at a document depository; and

     (v)    in coordination with Plaintiffs' Document Depository Committee Chairman, establish and maintain a document depository.

### (b) Document Depository Committee

The Court hereby appoints Walter Dumas as Document Depository Chairman. The responsibilities of Document Depository Counsel shall include meeting, conferring, and reaching an amicable arrangement on the formation of the following depository and identification system:

### i.  Joint Discovery Depository and Identification System:

All documents produced pursuant to the Joint Discovery Order No. 1 (Rec. Doc. No. 21) shall be maintained in a single document depository to be maintained jointly by Plaintiffs' Document Depository Committee, under the direction of Plaintiffs' Co-Lead Counsel, and Defendants' Counsel; plaintiffs and defendants shall share the costs of the document depository.

Plaintiffs' Document Depository Chairman, after consultation with Plaintiffs' Co-Lead Counsel, and Defendants' Counsel jointly shall determine the operating protocol for the document depository, including a provision for the maintenance of a master catalog listing all documents produced.

Each document produced shall be given a single identifying number. These identification numbers must be used by all parties when referring to documents so identified. The Court will not consider any pleading that does not use these identification numbers or annex the documents to the pleading, except for good cause shown.

### ii.  Electronic Service/Website/Virtual Delivery

Plaintiffs' Co-Lead Counsel and Defendants' Counsel are to confer as to whether electronic service of documents is appropriate in these actions and/or whether a website and virtual depository would be helpful and would advance the course of this litigation. At the appropriate time, said counsel shall report to the Court regarding these matters.

### (c) Plaintiffs' Lead Discovery Committee

The Court hereby designates as co-chairmen of the Lead Discovery Committee: M.H. Gertler and Brian F. Aylstock. Under the direction of Plaintiffs' Co-Lead Counsel, Plaintiffs' Lead Discovery Counsel shall coordinate the initiation and conduct of discovery on behalf of plaintiffs consistent with the requirements of Federal Rule of Civil Procedure 26(b)(1) and (2) and (g), including the preparation of joint interrogatories and requests for production of documents and the examination of witnesses in depositions.

9

### (d) Pleadings/Drafting Committee

The Court hereby designates Joseph M. Bruno and Marc A. Wites as co-chairmen of the Pleadings/Drafting Committee. The responsibilities of the Pleading/Drafting Committee are to draft, pursuant to the directions of Plaintiffs' Co-Lead Counsel, any pleadings or motions filed with the Court and ensure the comprehensive and unified filing of same.

### (e) Expert Committee

The Court hereby designates Richard Arsenault and Matthew E. Lundy as co-chairmen of the Expert Committee. The Expert Committee's responsibilities shall include coordinating discovery concerning expert reports as per the Court's approved Joint Discovery Order of September 3, 2004 (Rec. Doc. No. 21), and any other Discovery or Case Management Orders as this Court may make.

### (f) Law/Research Committee

The Court hereby designates as co-chairmen of the Law/Research Committee Stephen Murray, Jr., and John Ruiz. The responsibilities of the Law/Research Committee shall include conducting legal research and any other research needed for plaintiffs' claims. The co-chairmen of this Committee shall also meet and confer regularly with Plaintiffs' Co-Lead Counsel and the Pleadings/Drafting Committee and cooperate on any matters of law that must be included in any drafting or pleadings prepared by the Pleading/Drafting Committee.

### (g) Trial Committee

The Court hereby designates Darleen M. Jacobs and B. Kristian W. Rasmussen as co-chairmen of the Trial Committee. Responsibilities shall include those duties appropriately

10

assigned by Plaintiffs' Co-Lead Counsel.

### (h) Class Certification Committee

The Court hereby designates Walter Dumas and Lance A. Harke as co-chairmen of the

Class Certification Committee. The Class Action Committee shall be responsible for

coordination of evidence necessary to have this matter certified as a class action.

### 3. Defendants' Counsel

The Court now designates as Defendants' Counsel the following attorneys: Donald

Richard Abaunza, Marie Lefere, Don Keller Haycraft, Carol Wellborn Reisman, and Kristina

DeLuna Miller.

### 4. Privileges Preserved

No communications among plaintiffs' counsel or among defendants' counsel shall be

taken as a waiver of any privilege or protection to which they would otherwise be entitled.

## V. DISCOVERY—FAILURE TO DISCLOSE

A party's failure to either produce or identify as withheld pursuant to privilege a relevant

document may be viewed by the Court as an infraction of its orders, justifying appropriate

sanctions. Upon learning that there are any relevant documents which have not been produced or

identified, a party is under an obligation to promptly make known the existence of the

documents, including the reason for its failure, and submit the documents to the opposing party,

or if withheld under a claim of privilege or protection, identify the documents and the

corresponding privilege, pursuant to the Joint Discovery Order No. 1 of September 3, 2004 (Rec.

Doc. No. 21). The parties are to meet and confer regarding any such disputes and make all

11

serious attempts to resolve these issues amicably.

## VI. COMMUNICATION WITH THE COURT

If possible, please direct all questions to Plaintiffs' Co-Lead Counsel and Defendant's Counsel. Do not telephone the Judge's chambers. Questions and requests for Judge Lemelle should always be submitted in writing. Chambers will accept telephone calls only from Plaintiffs' Co-Lead Counsel and Defendants' Counsel. The Judge's Law Clerk presently assigned to this matter is Mark Graffagnini.

## VII. COURT ORDERS

The Clerk of Court shall mail a copy of the Court's orders to Plaintiffs' Co-Lead Counsel, Plaintiffs' Liaison Counsel, and to Defendants' Counsel.

_____
IVAN L.R. LEMELLE
UNITED STATES DISTRICT JUDGE

Agreed to by:

Plaintiffs, by Plaintiffs' Co-Lead Counsel:

_____          _____
Don Barrett                                    Ben Barnow

Defendants, by Defendants' Counsel:

_____
Donald R. Abaunza, one of the attorneys
for Defendants

12