UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ) | |
| In re: ) | CIVIL ACTION NO. 05-11177-DPW |
| M3POWER RAZOR SYSTEM ) | (LEAD CASE) |
| MARKETING & SALES PRACTICES ) | |
| LITIGATION ) | MDL Docket No. 1704 |
| ) | |

| |
|---|
| ) |
| THIS DOCUMENT RELATES TO: ) |
| **ALL CASES** ) |
| ) |

## [PROPOSED] CASE MANAGEMENT ORDER #1

WHEREAS, Plaintiffs have filed complaints in the actions identified in paragraph A.1

below arising from Defendant The Gillette Company's allegedly deceptive marketing and sale of

its M3Power Razor System, and a Scheduling Conference having been held on January 23, 2006,

with respect to each case, the following ORDER is hereby set:

A.    **Consolidation of Related Actions**

1.    Cases Subject to Consolidation.  The following cases are subject to consolidation

in this proceeding:

a.    Actions transferred by the Judicial Panel on Multidistrict Litigation

("JPML") pursuant to its Transfer Order dated October 27, 2005:

*Atkins v. The Gillette Company*, Civil Action No. 05-12192-DPW

b.    Actions filed in this Court requiring no action on the part of the JPML, *see*

Judicial Panel Rule of Procedure 7.5(a), which are hereby consolidated in this

proceeding pursuant to District of Massachusetts Local Rule 40.1:

*Dearman v. The Gillette Company*, Civil Action No. 05-11177-DPW
*Windom v. The Gillette Company*, Civil Action No. 05-11207-DPW

*Tunon v. The Gillette Company*, Civil Action No. 05-11208-DPW

*Kenessky v. The Gillette Company*, Civil Action No. 05-11272-DPW

*McGeary v. The Gillette Company*, Civil Action No. 05-11319-DPW

*Saunders v. The Gillette Company*, Civil Action No. 05-11425-DPW

*Johnson v. The Gillette Company*, Civil Action No. 05-11455-DPW

c.    Actions subject to the JPML's conditional transfer order dated November 2, 2005, and effective November 18, 2005:

*Adkison v. The Gillette Company*, Civil Action No. 05-12331-DPW

*Corrales v. The Gillette Company*, Civil Action No. 05-12332-DPW

*Lipper v. The Gillette Company*, Civil Action No. 05-12333-DPW

*Marr v. The Gillette Company*, Civil Action No. 05-12334-DPW

*Adoure v. The Gillette Company*, Civil Action No. 05-12336-DPW

*Pruitt v. The Gillette Company*, Civil Action No. 05-12365-DPW

*Gonzales v. The Gillette Company*, Civil Action No. 05-12366-DPW

*Geis  v. The Gillette Company*, Civil Action No. 05-12367-DPW

*Besinger  v. The Gillette Company*, Civil Action No. 05-12368-DPW

*Rosenthal v. The Gillette Company*, Civil Action No. 05-12369-DPW

*Huskic v. The Gillette Company*, Civil Action No. 05-12370-DPW

*Coleman v. The Gillette Company*, Civil Action No. 05-12374-DPW

*Falkner v. The Gillette Company*, Civil Action No. 05-12375-DPW

*McGlynn  v. The Gillette Company*, Civil Action No. 05-12376-DPW

*Moore v. The Gillette Company*, Civil Action No. 05-12377-DPW

*Gorea  v. The Gillette Company*, Civil Action No. 05-12378-DPW

*Jackson v. The Gillette Company*, Civil Action No. 05-12379-DPW

d.    Any cases filed in this Court or transferred by the JPML to this Court following entry of this Order.  The terms of this Order shall apply automatically to any such action.

2.    The cases identified in paragraph A.1 above shall be, and are hereby ORDERED, consolidated for pretrial purposes.

3.    Master Docket and Filings.

    a.    A Master Docket number is hereby established in this proceeding.  The Master Docket number shall be 05-11177-DPW (LEAD CASE).  One docket will be maintained for these actions with all entries to be docketed under the consolidated lead case number 05-11177-DPW (LEAD CASE).

    b.    All orders, pleadings, motions, and other documents filed in this proceeding shall bear a caption in the following format:

| | |
|---|---|
| In re: | CIVIL ACTION NO. 05-11177-DPW |
| M3POWER RAZOR SYSTEM | (LEAD CASE) |
| MARKETING & SALES PRACTICES | |
| LITIGATION | MDL Docket No. 1704 |
| | |
| THIS DOCUMENT RELATES TO: | |
| [ALL CASES] [SPECIFIC ACTION(S)] | |

    c.    When an order, pleading, motion, or other document is intended to be applicable to all actions to which this ORDER applies, the words "ALL ACTIONS" shall appear immediately after or below the words "THIS DOCUMENT RELATES TO" in the caption set out above.  When an order, pleading, motion, or other document is intended to be applicable to some, but not all, of the actions to which this ORDER applies, then the separate caption and docket number of each individual action to which the document pertains shall appear immediately after or below the words "THIS DOCUMENT RELATES TO" in the caption set out above.

d.     When a document is filed and the caption, pursuant to the foregoing, shows that it is applicable to "ALL ACTIONS," it shall be filed and docketed only in the Master Docket, and the docket entry shall note that the document applies to "ALL ACTIONS." No further docket entries need be made.

e.     When a document is filed and the caption, pursuant to the foregoing, shows that it is applicable to fewer than all of the actions to which this Order applies, it shall be filed and docketed only in the Master Docket, and the docket entry shall note the case number(s) to which the document pertains. No further docket entries need be made.

**B.     Admission of Attorneys**

1.     Each attorney not a member of the Bar of this Court who is acting as counsel for any party shall, pursuant to Local Rule 83.5.3, file a motion *pro hac vice* to practice before this Court in connection with these proceedings, and shall pay the appropriate application fee for each such application, except that any such motion need not be made on behalf of an out-of-state attorney by a member of the bar of this court.

2.     All counsel are required to apply for, effectuate, and maintain access to the electronic filing system of this Court.

**C.     Schedule**

1.     **Motions to Remand**. Any motions to remand shall be filed by no later than February 6, 2006.

2.     **Organization of Plaintiffs' Counsel**. In the event Plaintiffs' counsel are unable to reach agreement on a structure for organizing themselves, Plaintiffs' counsel shall file their applications pursuant to Fed.R.Civ.P. 23(g) by February 10, 2006; any responses thereto shall be filed by February 24, 2006. A further conference to address the

organizational structure of Plaintiffs' counsel is hereby scheduled for 2:30 p.m. on March 6, 2006.

3.     **Filing of Consolidated Complaint**.  Plaintiffs shall file their Consolidated Amended Complaint within 30 days of the Court's determination pursuant to Fed.R.Civ.P. 23(g) regarding the organizational structure of Plaintiffs' counsel.

4.     **Response to Consolidated Complaint**.  Defendant shall file its responsive pleading to the Consolidated Complaint within 30 days of its filing.

5.     **Disclosures Pursuant to Fed.R.Civ.P. 26(a)(1)**.  The Parties shall make the disclosures set forth in Fed.R.Civ.P. 26(a)(1) within 10 days after the filing of the Consolidated Complaint.  Defendant's initial disclosures pursuant to Fed.R.Civ.P. 26(a)(1) shall include any relevant documents that it has previously produced in the *Schick* litigation pending in the District of Connecticut, provided that an appropriate protective order has been entered as of the time for such initial disclosures.  Gillette shall be obliged to provide a log identifying any documents withheld as not relevant.

6.     **Class Certification Discovery**.  This phase of discovery shall be completed by no later than 60 days after the exchange of the parties' initial disclosures pursuant to Fed.R.Civ.P. 26(a)(1).

7.     **Fact Discovery**.  This phase of discovery shall be completed by no later than six months from the exchange of the parties' initial disclosures pursuant to Fed.R.Civ.P. 26(a)(1).

8.    **Expert Discovery**.

    a.    Plaintiffs' Expert Reports shall be served within 45 days of the close of

fact discovery.

    b.    Defendant's Expert Reports shall be served within 45 days thereafter.

    c.    Rebuttal Reports from either party shall be served within 21 days after

Defendant serves its Expert Reports.

    d.    Expert Discovery shall conclude 45 after the date rebuttal reports are due.

9.    **Class Certification Briefing**.

    a.    Plaintiffs' Motion for Class Certification shall be filed by no later 30 days

after the close of class certification discovery.

    b.    Defendant's response shall be due within 30 days of the date Plaintiffs'

motion is filed.

    c.    Plaintiffs shall file their reply brief within 20 days of Defendant's

response, provided any reply shall be limited to issues that could not have been

reasonably anticipated and addressed in Plaintiffs' opening brief.

10.    **Dispositive Motions**.

    a.    Motions for Summary Judgment shall be filed within 30 days after the

close of Expert Discovery.

    b.    A party opposing any motion for summary judgment shall have 30 days to

file an opposition to said motion.

    c.    Any reply brief shall be due within 20 days after the filing of the response,

provided any reply shall be limited to issues that could not have been reasonably

anticipated and addressed in the moving party's opening brief.

11.    **Final Pretrial Conference.**  A final pre-trial conference and trial date shall be

determined by the Court at a later time.

SO ORDERED.

_____

Douglas P. Woodlock
United States District Judge

Dated: _____

## James Strenio

| | |
|---|---|
| **From:** | James Strenio |
| **Sent:** | Wednesday, January 25, 2006 8:53 PM |
| **To:** | 'Szpak, Mark P.'; gwade@maklawyers.com; tshapiro@shulaw.com; ed@hagens-berman.com; dpastor@gilmanpastor.com; ken@quatlaw.com; Lharke@harkeclasby.com; alankovacs@yahoo.com; russellawood@cox-internet.com; DonaldAmamgbo@citycom.com; info@glancylaw.com; pklingman@sfmslaw.com; b.barnow@barnowlaw.com; kjm@ftllaw.com; glaw123@aol.com; mgardy@abbeygardy.com; edwardcochran@adelphia.net; steveschwartz@chimicles.com; jyork@pgandr.com; mitch@kslegal.com; reggiet2@aol.com; Ldrurylaw@aol.com; bgibson@pgandr.com; dmillen@muchshelist.com; skanner@muchshelist.com; joseph@sarrafgentile.com; RStone@lawssb.com; hmhewell@yahoo.com; 'Wolkoff, Harvey J.'; Shanahan, Emily C.; srudman@lerach.com; pbaker@bknlawyers.com; rbaker@bknlawyers.com; dwarshaw@wccplaw.com; David Maher; Tony Baird; rbaker@bknlawyers.com; olendodd@earthlink.net; Anthony Vozzolo; alxfen@aol.com; s.harris@barnowlaw.com; Aron Robinson; Pete Petroski; Howard Bushman |
| **Cc:** | Taras Kick; a.kanner@kanner-law.com; C.Green@kanner-law.com |
| **Subject:** | RE: M3Power Cases: Proposed CMO |

1. The Court ordered Gillette to produce all the discovery in the Schick cases, not just the discovery in the Connecticut case but also the discovery in the Germany and Australia cases. Moreover, Gillette was ordered to produce all discovery (e.g., documents, depos, expert depos, any expert disclosures and reports produced to Schick, responses to rfas, responses to special rogs, etc, as well as documents and any other discovery from Schick), not just documents, and not just "relevant" documents. Additionally, Gillette cannot withhold any discovery on the grounds that it is not "relevant"; the Court discussed the privilege log in terms of information that is privileged, such as trade secrets. In any event, any discovery that is relevant in the Schick cases would necessarily be relevant to these consumer cases. Further, Gillette's production was not conditioned on a protective order having been entered. Finally, Gillette was ordered to produce this discovery on Feb 22 (30 days from Jan 23), not late April as indicated in Gillette's proposed CMO.

2. The Court ordered that expert reports be produced with the party bearing the burden of proof on the issue going first. Gillette's proposed CMO incorrectly provides that the plaintiffs will go first.

3. The Court stated that, if a party does not believe that the consolidated complaint covers all their issues, they could file a separate complaint. Gillette's proposed CMO fails to include this potentially important provision.

4. Gillette's proposed CMO fails to indicate that the pro hac vice apps, if granted, will be granted nunc pro tunc to the date of the atty's first appearance in the MDL.

5. The Court did not limit the possible organizational structure to an interim class counsel structure (applications pursuant to 23(g)), but instead was open to applications for a steering committee structure.

6. My understanding is that the Court did not consolidate all the actions for pretrial purposes, but instead only ordered a consolidated complaint. If you do not agree, we will need to obtain a copy of the transcript to resolve this issue.

-----Original Message-----
**From:** Szpak, Mark P. [mailto:Mark.Szpak@ropesgray.com]
**Sent:** Wednesday, January 25, 2006 5:03 PM
**To:** gwade@maklawyers.com; tshapiro@shulaw.com; ed@hagens-berman.com; dpastor@gilmanpastor.com; ken@quatlaw.com; Lharke@harkeclasby.com; alankovacs@yahoo.com; russellawood@cox-internet.com; a.kanner@kanner-law.com; James Strenio; Taras Kick; DonaldAmamgbo@citycom.com; info@glancylaw.com; pklingman@sfmslaw.com; b.barnow@barnowlaw.com; kjm@ftllaw.com; glaw123@aol.com; mgardy@abbeygardy.com; edwardcochran@adelphia.net; steveschwartz@chimicles.com; jyork@pgandr.com; mitch@kslegal.com;

reggiet2@aol.com; Ldrurylaw@aol.com; bgibson@pgandr.com; dmillen@muchshelist.com; skanner@muchshelist.com; C.Green@kanner-law.com; joseph@sarrafgentile.com; RStone@lawssb.com; hmhewell@yahoo.com
**Cc:** Shanahan, Emily C.
**Subject:** M3Power Cases: Proposed CMO

Counsel:

Enclosed is a draft Proposed Case Management Order reflecting Judge Woodlock's changes to our prior document.  Please let us know if you have any comments on the enclosed draft as soon as possible, and in any event, by the close of business on Friday, January 27, 2006, so that we can submit a Proposed Case Management Order to the Court. -- Mark Szpak

<<Cover Letter re Proposed CMO.pdf>> <<Proposed CMO.pdf>>

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| In re: | ) | CIVIL ACTION NO. 05-11177-DPW |
| M3POWER RAZOR SYSTEM | ) | (LEAD CASE) |
| MARKETING & SALES PRACTICES | ) |  |
| LITIGATION | ) | MDL Docket No. 1704 |
|  | ) |  |

|  |  |
|---|---|
| THIS DOCUMENT RELATES TO: | ) |
| **ALL CASES** | ) |
|  | ) |

### [PROPOSED] ~~CASE MANAGEMENT~~SCHEDULING ORDER ~~#1~~

WHEREAS, ~~Plaintiffs have filed complaints in the actions identified in paragraph A.1 below arising from Defendant The Gillette Company's allegedly deceptive marketing and sale of its M3Power Razor System, and~~ a Scheduling Conference having been held on January 23, 2006, ~~with respect to each case,~~ the following ORDER is hereby set:

A.    ~~Consolidation of Related Actions~~

~~1.    Cases Subject to Consolidation.  The following cases are subject to consolidation in this proceeding:~~

~~a.    Actions transferred by the Judicial Panel on Multidistrict Litigation ("JPML") pursuant to its Transfer Order dated October 27, 2005:~~

~~*Atkins v. The Gillette Company*, Civil Action No. 05-12192-DPW~~

~~b.    Actions filed in this Court requiring no action on the part of the JPML, *see* Judicial Panel Rule of Procedure 7.5(a), which are hereby consolidated in this proceeding pursuant to District of Massachusetts Local Rule 40.1:~~

~~*Dearman v. The Gillette Company*, Civil Action No. 05-11177-DPW~~
~~*Windom v. The Gillette Company*, Civil Action No. 05-11207-DPW~~

~~*Tunon v. The Gillette Company*, Civil Action No. 05-11208-DPW~~
~~*Kenessly v. The Gillette Company*, Civil Action No. 05-11272-DPW~~
~~*McGeary v. The Gillette Company*, Civil Action No. 05-11319-DPW~~
~~*Saunders v. The Gillette Company*, Civil Action No. 05-11425-DPW~~
~~*Johnson v. The Gillette Company*, Civil Action No. 05-11455-DPW~~

~~c.    Actions subject to the JPML's conditional transfer order dated November 2, 2005, and effective November 18, 2005:~~

~~*Adkison v. The Gillette Company*, Civil Action No. 05-12331-DPW~~
~~*Corrales v. The Gillette Company*, Civil Action No. 05-12332-DPW~~
~~*Lipper v. The Gillette Company*, Civil Action No. 05-12333-DPW~~
~~*Marr v. The Gillette Company*, Civil Action No. 05-12334-DPW~~
~~*Adoure v. The Gillette Company*, Civil Action No. 05-12336-DPW~~
~~*Pruitt v. The Gillette Company*, Civil Action No. 05-12365-DPW~~
~~*Gonzales v. The Gillette Company*, Civil Action No. 05-12366-DPW~~
~~*Geis v. The Gillette Company*, Civil Action No. 05-12367-DPW~~
~~*Besinger v. The Gillette Company*, Civil Action No. 05-12368-DPW~~
~~*Rosenthal v. The Gillette Company*, Civil Action No. 05-12369-DPW~~
~~*Huskie v. The Gillette Company*, Civil Action No. 05-12370-DPW~~
~~*Coleman v. The Gillette Company*, Civil Action No. 05-12374-DPW~~
~~*Falkner v. The Gillette Company*, Civil Action No. 05-12375-DPW~~
~~*McGlynn v. The Gillette Company*, Civil Action No. 05-12376-DPW~~
~~*Moore v. The Gillette Company*, Civil Action No. 05-12377-DPW~~
~~*Gorea v. The Gillette Company*, Civil Action No. 05-12378-DPW~~
~~*Jackson v. The Gillette Company*, Civil Action No. 05-12379-DPW~~

~~d.    Any cases filed in this Court or transferred by the JPML to this Court following entry of this Order. The terms of this Order shall apply automatically to any such action.~~

~~2.    The cases identified in paragraph A.1 above shall be, and are hereby ORDERED, consolidated for pretrial purposes.~~

3. ~~Master Docket and Filings.~~

    a. ~~A Master Docket number is hereby established in this proceeding. The Master Docket number shall be 05-11177-DPW (LEAD CASE). One docket will be maintained for these actions with all entries to be docketed under the consolidated lead case number 05-11177-DPW (LEAD CASE).~~

    b. ~~All orders, pleadings, motions, and other documents filed in this proceeding shall bear a caption in the following format:~~

| | | |
|---|---|---|
| ~~In re:~~ | ~~)~~ | ~~CIVIL ACTION NO. 05-11177-DPW~~ |
| ~~M3POWER RAZOR SYSTEM~~ | ~~)~~ | ~~(LEAD CASE)~~ |
| ~~MARKETING & SALES PRACTICES~~ | ~~)~~ | |
| ~~LITIGATION~~ | ~~)~~ | ~~MDL Docket No. 1704~~ |
| | ~~)~~ | |
| ~~THIS DOCUMENT RELATES TO:~~ | ~~)~~ | |
| ~~[ALL CASES] [SPECIFIC ACTION(S)]~~ | ~~)~~ | |

    c. ~~When an order, pleading, motion, or other document is intended to be applicable to all actions to which this ORDER applies, the words "ALL ACTIONS" shall appear immediately after or below the words "THIS DOCUMENT RELATES TO" in the caption set out above. When an order, pleading, motion, or other document is intended to be applicable to some, but not all, of the actions to which this ORDER applies, then the separate caption and docket number of each individual action to which the document pertains shall appear immediately after or below the words "THIS DOCUMENT RELATES TO" in the caption set out above.~~

~~d.  When a document is filed and the caption, pursuant to the foregoing, shows that it is applicable to "ALL ACTIONS," it shall be filed and docketed only in the Master Docket, and the docket entry shall note that the document applies to "ALL ACTIONS."  No further docket entries need be made.~~

~~e.  When a document is filed and the caption, pursuant to the foregoing, shows that it is applicable to fewer than all of the actions to which this Order applies, it shall be filed and docketed only in the Master Docket, and the docket entry shall note the case number(s) to which the document pertains.  No further docket entries need be made.~~

**B.  ~~Admission of Attorneys~~**

~~1.  Each attorney not a member of the Bar of this Court who is acting as counsel for any party shall, pursuant to Local Rule 83.5.3, file a motion *pro hac vice* to practice before this Court in connection with these proceedings, and shall pay the appropriate application fee for each such application, except that any such motion need not be made on behalf of an out-of-state attorney by a member of the bar of this court.~~

~~2.  All counsel are required to apply for, effectuate, and maintain access to the electronic filing system of this Court.~~

**C.  ~~Schedule~~**

1.  **Motions to Remand**.  Any motions to remand shall be filed by no later than February 6, 2006.

~~2.  **Organization of Plaintiffs' Counsel**.  In the event Plaintiffs' counsel are unable to reach agreement on a structure for organizing themselves, Plaintiffs' counsel shall file their applications pursuant to Fed.R.Civ.P. 23(g) by February 10, 2006; any responses thereto shall be filed by February 24, 2006.  A further conference to address the~~

~~organizational structure of Plaintiffs' counsel is hereby scheduled for 2:30 p.m. on March~~ ~~6, 2006.~~

<u>2.</u>    ~~3.~~ **Filing of Consolidated Complaint**.  Plaintiffs shall file their Consolidated Amended Complaint within 30 days of the Court's determination pursuant to Fed.R.Civ.P. 23(g) regarding the organizational structure of Plaintiffs' counsel.

<u>3.</u>    ~~4.~~ **Response to Consolidated Complaint**.  Defendant shall file its responsive pleading to the Consolidated Complaint within 30 days of its filing.

<u>4.</u>    ~~5.~~ **Disclosures Pursuant to Fed.R.Civ.P. 26(a)(1)**.  The Parties shall make the disclosures set forth in Fed.R.Civ.P. 26(a)(1) within 10 days after the filing of the Consolidated Complaint.  Defendant's initial disclosures pursuant to Fed.R.Civ.P. 26(a)(1) shall include<u>, without limitation,</u> any relevant ~~documents~~<u>discovery</u> that it has previously produced in the *Schick* litigation pending in the District of Connecticut, provided that an appropriate protective order has been entered as of the time for such initial disclosures.  Gillette shall be obliged to provide a log identifying any documents withheld as not relevant.

<u>5.</u>    ~~6.~~ **Class Certification Discovery**.  This phase of discovery shall be completed by no later than 60 days after the exchange of the parties' initial disclosures pursuant to Fed.R.Civ.P. 26(a)(1).

<u>6.</u>    ~~7.~~ **Fact Discovery**.  This phase of discovery shall be completed by no later than six months from the exchange of the parties' initial disclosures pursuant to Fed.R.Civ.P. 26(a)(1).

<u>7.</u>    ~~8.~~

**Expert Discovery**.

    a.    ~~Plaintiffs' Expert Reports~~<u>The Expert Report(s) of the party bearing the burden of proof on the issue to which any such report pertains</u> shall be served within 45 days of the close of fact discovery.

    b.    ~~Defendant's Expert Reports~~<u>The Expert Report(s) of the party not bearing the burden of proof on the issue to which the report described in paragraph 8.a above pertains</u> shall be served within 45 days thereafter.

    c.    Rebuttal Reports from either party shall be served within 21 days ~~after Defendant serves its Expert Reports~~<u>thereafter</u>.

    d.    Expert Discovery shall conclude 45 after the date rebuttal reports are due.

<u>8.</u>    ~~9.~~ **Class Certification Briefing**.

    a.    Plaintiffs' Motion for Class Certification shall be filed by no later 30 days after the close of class certification discovery.

    b.    Defendant's response shall be due within 30 days of the date Plaintiffs' motion is filed.

    c.    Plaintiffs shall file their reply brief within 20 days of Defendant's response~~, provided any reply shall be limited to issues that could not have been reasonably anticipated and addressed in Plaintiffs' opening brief~~.

<u>9.</u>    ~~10.~~ **Dispositive Motions**.

    a.    Motions for Summary Judgment shall be filed within 30 days after the close of Expert Discovery.

    b.    A party opposing any motion for summary judgment shall have 30 days to file an opposition to said motion.

c.      Any reply brief shall be due within 20 days after the filing of the response, ~~provided any reply shall be limited to issues that could not have been reasonably anticipated and addressed in the moving party's opening brief.~~

<u>10.</u>    ~~11.~~ **Final Pretrial Conference**. A final pre-trial conference and trial date shall be determined by the Court at a later time.

SO ORDERED.

_____

Douglas P. Woodlock
United States District Judge

Dated: _____

## James Strenio

**From:** Szpak, Mark P. [Mark.Szpak@ropesgray.com]

**Sent:** Monday, January 30, 2006 2:32 PM

**To:** Lance Harke; Taras Kick; gwade@maklawyers.com; tshapiro@shulaw.com; ed@hagens-berman.com; dpastor@gilmanpastor.com; ken@quatlaw.com; alankovacs@yahoo.com; russellawood@cox-internet.com; a.kanner@kanner-law.com; James Strenio; DonaldAmamgbo@citycom.com; info@glancylaw.com; patrick klingman; b.barnow@barnowlaw.com; kjm@ftllaw.com; glaw123@aol.com; mgardy@abbeygardy.com; edwardcochran@adelphia.net; steveschwartz@chimicles.com; jyork@pgandr.com; mitch@kslegal.com; reggiet2@aol.com; Ldrurylaw@aol.com; bgibson@pgandr.com; dmillen@muchshelist.com; skanner@muchshelist.com; C.Green@kanner-law.com; joseph@sarrafgentile.com; RStone@lawssb.com; hmhewell@yahoo.com; mgodino@glancylaw.com; mmgoldberg@glancylaw.com; Howard Bushman

**Cc:** Shanahan, Emily C.

**Subject:** RE: M3Power Cases: Proposed CMO

Counsel:

In response to our request for a transcript of the January 23 conference with Judge Woodlock, we received a draft of the transcript from the Court Reporter earlier today. We assume that the Court Reporter has already or will be making the transcript similarly available to any of you that have directed a request to her. According to the draft transcript, the draft scheduling order that I circulated at the end of last week is consistent with the Court's comments during the conference and accurately reflects the proceedings at the conference with respect to those points that were raised in various of your emails:

(1) Gillette need only produce relevant discovery from the Schick matter.

> **The Court:** "So, finding someplace in-between, you can turn over the documents that are related to this case while we're working our way through class certification. What's the problem with that? I mean, you identified the class that you say is irrelevant to this case, and that's why – you know, that's a beginning. But let them chew on some stuff."
>
>      * * * *
>
> **The Court:** "I mean, what I said is anything that's relevant to this case."
>
> **Mr. Strenio:** "Thank you."
>
> **The Court:** "I mean, if it's some peculiarity in Australia or Germany, I suspect it won't be disclosed to you."

(2) Judge Woodlock recognized and anticipated that the production of any discovery from the Schick matter would be subject to an appropriate confidentiality agreement/protective order.

> **The Court:** "Why are there confidentiality arrangements particular to Schick? Schick gets to look at this stuff under the protective order because you're concerned about trade secrets being disseminated. Why doesn't the same protective order apply to these plaintiffs?"

(3) The production of any discovery from the Schick matter is to occur in connection with Gillette's service of its initial disclosures, *i.e.*, within 10 days of the filing of the consolidated complaint.

> **The Court:** "I understand that, but we're not doing that today. I want you to start thinking about this because I will expect that that's going to be turned [sic] immediately – that is, the Schick discovery that is relevant to this case."
>
>      * * * *

**The Court:** "Okay. I think I understand that as a well in its refinement. But I guess I want to bite off – at least stick my teeth into – what seems to be a large portion of the discovery that's out there and available to get that put into the initial disclosure context."

      \* \* \* \*

**The Court:** " . . . Now, we have this time period that I've had further insight about concerning the initial disclosure, which I understand, Mr. Shapiro, in any event, your view was that that would incorporate the Schick materials; is that right?"

**Mr. Shapiro:** "I would think so, Your Honor."

**The Court:** "Okay. I do, too. . . ."

      \* \* \* \*

**The Court:** "Right. And I'm not looking forward to the opportunity to do shadow motion practice, discovery motion practice for the District of Connecticut. I will assume that you have got a pretty clear idea of what it is that you need to turn over here. If you're withholding things for purposes of – that are relevant for initial disclosure, broadly conceived, that deal with the question of privilege, you will have a privilege log."

**Mr. Wolkoff:** "Yes, Your Honor."

**The Court:** "And here, we're now, at the minimum, dealing with 40 days out from the day of the next conference in this case which I anticipate will resolve the question of interim counsel."

Please forward any other comments that you have by no later than the close of business on Tuesday, January 31. If we do not receive comments from you, we will assume that you have no objection to submission of the scheduling order in the form circulated at the end of last week and we will represent to the Court that we have received no objection from you. We will plan to file the scheduling order on Wednesday, February 1.

-- Mark Szpak

    -----Original Message-----
**From:** Szpak, Mark P.
**Sent:** Friday, January 27, 2006 6:21 PM
**To:** 'Lance Harke'; Taras Kick; gwade@maklawyers.com; tshapiro@shulaw.com; ed@hagens-berman.com; dpastor@gilmanpastor.com; ken@quatlaw.com; alankovacs@yahoo.com; russellawood@cox-internet.com; a.kanner@kanner-law.com; James Strenio; DonaldAmamgbo@citycom.com; info@glancylaw.com; 'patrick klingman'; b.barnow@barnowlaw.com; kjm@ftllaw.com; glaw123@aol.com; mgardy@abbeygardy.com; edwardcochran@adelphia.net; steveschwartz@chimicles.com; jyork@pgandr.com; mitch@kslegal.com; reggiet2@aol.com; Ldrurylaw@aol.com; bgibson@pgandr.com; dmillen@muchshelist.com; skanner@muchshelist.com; C.Green@kanner-law.com; joseph@sarrafgentile.com; RStone@lawssb.com; hmhewell@yahoo.com; 'mgodino@glancylaw.com'; 'mmgoldberg@glancylaw.com'; Howard Bushman
**Cc:** Shanahan, Emily C.
**Subject:** RE: M3Power Cases: Proposed CMO

We are not making any filing today and will wait for the transcript in the expectation that it becomes available shortly. We at the same time note that we need promptly to comply with the Court's instruction and again ask that you give us any comments as soon as possible so that we are ready to proceed in any event.

      -----Original Message-----
      **From:** Lance Harke [mailto:lharke@harkeclasby.com]
      **Sent:** Friday, January 27, 2006 3:02 PM
      **To:** Taras Kick; Szpak, Mark P.; gwade@maklawyers.com; tshapiro@shulaw.com; ed@hagens-berman.com; dpastor@gilmanpastor.com; ken@quatlaw.com; alankovacs@yahoo.com; russellawood@cox-internet.com; a.kanner@kanner-law.com; James Strenio; DonaldAmamgbo@citycom.com; info@glancylaw.com; pklingman@sfmslaw.com; b.barnow@barnowlaw.com; kjm@ftllaw.com; glaw123@aol.com; mgardy@abbeygardy.com;

edwardcochran@adelphia.net; steveschwartz@chimicles.com; jyork@pgandr.com; mitch@kslegal.com; reggiet2@aol.com; Ldrurylaw@aol.com; bgibson@pgandr.com; dmillen@muchshelist.com; skanner@muchshelist.com; C.Green@kanner-law.com; joseph@sarrafgentile.com; RStone@lawssb.com; hmhewell@yahoo.com
**Cc:** Shanahan, Emily C.; Howard Bushman
**Subject:** RE: M3Power Cases: Proposed CMO

Emily, Howard Bushman of my office already spoke with you about this issue earlier today. My understanding is that you are to speak with Mark and get back to us shortly.  Thanks.


Lance

> -----Original Message-----
> **From:** Taras Kick [mailto:taras@kicklawfirm.com]
> **Sent:** Friday, January 27, 2006 2:01 PM
> **To:** Szpak, Mark P.; gwade@maklawyers.com; tshapiro@shulaw.com; ed@hagens-berman.com; dpastor@gilmanpastor.com; ken@quatlaw.com; Lance Harke; alankovacs@yahoo.com; russellwood@cox-internet.com; a.kanner@kanner-law.com; James Strenio; DonaldAmamgbo@citycom.com; info@glancylaw.com; pklingman@sfmslaw.com; b.barnow@barnowlaw.com; kjm@ftllaw.com; glaw123@aol.com; mgardy@abbeygardy.com; edwardcochran@adelphia.net; steveschwartz@chimicles.com; jyork@pgandr.com; mitch@kslegal.com; reggiet2@aol.com; Ldrurylaw@aol.com; bgibson@pgandr.com; dmillen@muchshelist.com; skanner@muchshelist.com; C.Green@kanner-law.com; joseph@sarrafgentile.com; RStone@lawssb.com; hmhewell@yahoo.com
> **Cc:** Shanahan, Emily C.
> **Subject:** RE: M3Power Cases: Proposed CMO
>
> Mark, We appreciate your effort in this to date, including incorporating into your latest document some of the points previously emailed to you by attorney James Strenio.  Further to my email below, we will wait for the transcript from the January 23 hearing to arrive to finalize our comments so that all sides can be certain they are being as accurate as possible before filing.  Please be so kind as to confirm that you too will wait for the transcript before filing.  Thank you.  Taras.
>
> Taras Kick
> The Kick Law Firm, APC
> 660 S. Figueroa Street, Suite 1800
> Los Angeles, CA 90017
> Phone: (213)624-1588
> Fax: (213)624-1589
>
> _____
>
> **From:** Taras Kick
> **Sent:** Thursday, January 26, 2006 4:16 PM
> **To:** 'Szpak, Mark P.'; gwade@maklawyers.com; tshapiro@shulaw.com; ed@hagens-berman.com; dpastor@gilmanpastor.com; ken@quatlaw.com; Lharke@harkeclasby.com; alankovacs@yahoo.com; russellwood@cox-internet.com; a.kanner@kanner-law.com; James Strenio; DonaldAmamgbo@citycom.com; info@glancylaw.com; pklingman@sfmslaw.com; b.barnow@barnowlaw.com; kjm@ftllaw.com; glaw123@aol.com; mgardy@abbeygardy.com; edwardcochran@adelphia.net; steveschwartz@chimicles.com; jyork@pgandr.com; mitch@kslegal.com; reggiet2@aol.com; Ldrurylaw@aol.com; bgibson@pgandr.com; dmillen@muchshelist.com; skanner@muchshelist.com; C.Green@kanner-law.com; joseph@sarrafgentile.com; RStone@lawssb.com; hmhewell@yahoo.com
> **Cc:** Shanahan, Emily C.

**Subject:** RE: M3Power Cases: Proposed CMO

Mark, We will review and comment by tomorrow morning.  Taras.

Taras Kick
The Kick Law Firm, APC
660 S. Figueroa Street, Suite 1800
Los Angeles, CA 90017
Phone: (213)624-1588
Fax: (213)624-1589

**From:** Szpak, Mark P. [mailto:Mark.Szpak@ropesgray.com]
**Sent:** Thursday, January 26, 2006 4:05 PM
**To:** gwade@maklawyers.com; tshapiro@shulaw.com; ed@hagens-berman.com;
dpastor@gilmanpastor.com; ken@quatlaw.com; Lharke@harkeclasby.com;
alankovacs@yahoo.com; russellawood@cox-internet.com; a.kanner@kanner-law.com;
James Strenio; Taras Kick; DonaldAmamgbo@citycom.com; info@glancylaw.com;
pklingman@sfmslaw.com; b.barnow@barnowlaw.com; kjm@ftllaw.com; glaw123@aol.com;
mgardy@abbeygardy.com; edwardcochran@adelphia.net; steveschwartz@chimicles.com;
jyork@pgandr.com; mitch@kslegal.com; reggiet2@aol.com; Ldrurylaw@aol.com;
bgibson@pgandr.com; dmillen@muchshelist.com; skanner@muchshelist.com;
C.Green@kanner-law.com; joseph@sarrafgentile.com; RStone@lawssb.com;
hmhewell@yahoo.com
**Cc:** Shanahan, Emily C.
**Subject:** RE: M3Power Cases: Proposed CMO


Counsel:
Enclosed is a further draft of the proposed order circulated yesterday, which we have
revised to show comments we have accepted and to remove matters addressed in the
Court's Case Management Order and Order for Consolidation entered today.  A
redline is also enclosed.  Again, please give us any comments by the close of
business on Friday, January 27, 2006. -- Mark Szpak

    <<Cover Letter for Revised Scheduling Order.PDF>> <<Revised Scheduling
    Order.PDF>> <<Redline for Revised Scheduling Order.PDF>>

## James Strenio

**From:** Szpak, Mark P. [Mark.Szpak@ropesgray.com]

**Sent:** Monday, January 30, 2006 2:32 PM

**To:** Lance Harke; Taras Kick; gwade@maklawyers.com; tshapiro@shulaw.com; ed@hagens-berman.com; dpastor@gilmanpastor.com; ken@quatlaw.com; alankovacs@yahoo.com; russellawood@cox-internet.com; a.kanner@kanner-law.com; James Strenio; DonaldAmamgbo@citycom.com; info@glancylaw.com; patrick klingman; b.barnow@barnowlaw.com; kjm@ftllaw.com; glaw123@aol.com; mgardy@abbeygardy.com; edwardcochran@adelphia.net; steveschwartz@chimicles.com; jyork@pgandr.com; mitch@kslegal.com; reggiet2@aol.com; Ldrurylaw@aol.com; bgibson@pgandr.com; dmillen@muchshelist.com; skanner@muchshelist.com; C.Green@kanner-law.com; joseph@sarrafgentile.com; RStone@lawssb.com; hmhewell@yahoo.com; mgodino@glancylaw.com; mmgoldberg@glancylaw.com; Howard Bushman

**Cc:** Shanahan, Emily C.

**Subject:** RE: M3Power Cases: Proposed CMO

Counsel:

In response to our request for a transcript of the January 23 conference with Judge Woodlock, we received a draft of the transcript from the Court Reporter earlier today.  We assume that the Court Reporter has already or will be making the transcript similarly available to any of you that have directed a request to her.  According to the draft transcript, the draft scheduling order that I circulated at the end of last week is consistent with the Court's comments during the conference and accurately reflects the proceedings at the conference with respect to those points that were raised in various of your emails:

(1)  Gillette need only produce relevant discovery from the Schick matter.

> **The Court:**  "So, finding someplace in-between, you can turn over the documents that are related to this case while we're working our way through class certification.  What's the problem with that?  I mean, you identified the class that you say is irrelevant to this case, and that's why – you know, that's a beginning.  But let them chew on some stuff."
>
>         * * * *
>
> **The Court:**  "I mean, what I said is anything that's relevant to this case."
>
> **Mr. Strenio:**  "Thank you."
>
> **The Court:**  "I mean, if it's some peculiarity in Australia or Germany, I suspect it won't be disclosed to you."

(2)  Judge Woodlock recognized and anticipated that the production of any discovery from the Schick matter would be subject to an appropriate confidentiality agreement/protective order.

> **The Court:**  "Why are there confidentiality arrangements particular to Schick?  Schick gets to look at this stuff under the protective order because you're concerned about trade secrets being disseminated.  Why doesn't the same protective order apply to these plaintiffs?"

(3)  The production of any discovery from the Schick matter is to occur in connection with Gillette's service of its initial disclosures, *i.e.*, within 10 days of the filing of the consolidated complaint.

> **The Court:**  "I understand that, but we're not doing that today.  I want you to start thinking about this because I will expect that that's going to be turned [sic] immediately – that is, the Schick discovery that is relevant to this case."
>
>         * * * *

**The Court:** "Okay. I think I understand that as a well in its refinement. But I guess I want to bite off – at least stick my teeth into – what seems to be a large portion of the discovery that's out there and available to get that put into the initial disclosure context."

    * * * *

**The Court:** " . . . Now, we have this time period that I've had further insight about concerning the initial disclosure, which I understand, Mr. Shapiro, in any event, your view was that that would incorporate the Schick materials; is that right?"

**Mr. Shapiro:** "I would think so, Your Honor."

**The Court:** "Okay. I do, too. . . ."

    * * * *

**The Court:** "Right. And I'm not looking forward to the opportunity to do shadow motion practice, discovery motion practice for the District of Connecticut. I will assume that you have got a pretty clear idea of what it is that you need to turn over here. If you're withholding things for purposes of – that are relevant for initial disclosure, broadly conceived, that deal with the question of privilege, you will have a privilege log."

**Mr. Wolkoff:** "Yes, Your Honor."

**The Court:** "And here, we're now, at the minimum, dealing with 40 days out from the day of the next conference in this case which I anticipate will resolve the question of interim counsel."

Please forward any other comments that you have by no later than the close of business on Tuesday, January 31. If we do not receive comments from you, we will assume that you have no objection to submission of the scheduling order in the form circulated at the end of last week and we will represent to the Court that we have received no objection from you. We will plan to file the scheduling order on Wednesday, February 1.

-- Mark Szpak

    -----Original Message-----
**From:** Szpak, Mark P.
**Sent:** Friday, January 27, 2006 6:21 PM
**To:** 'Lance Harke'; Taras Kick; gwade@maklawyers.com; tshapiro@shulaw.com; ed@hagens-berman.com; dpastor@gilmanpastor.com; ken@quatlaw.com; alankovacs@yahoo.com; russellawood@cox-internet.com; a.kanner@kanner-law.com; James Strenio; DonaldAmamgbo@citycom.com; info@glancylaw.com; 'patrick klingman'; b.barnow@barnowlaw.com; kjm@ftllaw.com; glaw123@aol.com; mgardy@abbeygardy.com; edwardcochran@adelphia.net; steveschwartz@chimicles.com; jyork@pgandr.com; mitch@kslegal.com; reggiet2@aol.com; Ldrurylaw@aol.com; bgibson@pgandr.com; dmillen@muchshelist.com; skanner@muchshelist.com; C.Green@kanner-law.com; joseph@sarrafgentile.com; RStone@lawssb.com; hmhewell@yahoo.com; 'mgodino@glancylaw.com'; 'mmgoldberg@glancylaw.com'; Howard Bushman
**Cc:** Shanahan, Emily C.
**Subject:** RE: M3Power Cases: Proposed CMO

We are not making any filing today and will wait for the transcript in the expectation that it becomes available shortly. We at the same time note that we need promptly to comply with the Court's instruction and again ask that you give us any comments as soon as possible so that we are ready to proceed in any event.

    -----Original Message-----
**From:** Lance Harke [mailto:lharke@harkeclasby.com]
**Sent:** Friday, January 27, 2006 3:02 PM
**To:** Taras Kick; Szpak, Mark P.; gwade@maklawyers.com; tshapiro@shulaw.com; ed@hagens-berman.com; dpastor@gilmanpastor.com; ken@quatlaw.com; alankovacs@yahoo.com; russellawood@cox-internet.com; a.kanner@kanner-law.com; James Strenio; DonaldAmamgbo@citycom.com; info@glancylaw.com; pklingman@sfmslaw.com; b.barnow@barnowlaw.com; kjm@ftllaw.com; glaw123@aol.com; mgardy@abbeygardy.com;

edwardcochran@adelphia.net; steveschwartz@chimicles.com; jyork@pgandr.com;
mitch@kslegal.com; reggiet2@aol.com; Ldrurylaw@aol.com; bgibson@pgandr.com;
dmillen@muchshelist.com; skanner@muchshelist.com; C.Green@kanner-law.com;
joseph@sarrafgentile.com; RStone@lawssb.com; hmhewell@yahoo.com
**Cc:** Shanahan, Emily C.; Howard Bushman
**Subject:** RE: M3Power Cases: Proposed CMO

Emily, Howard Bushman of my office already spoke with you about this issue earlier today.
My understanding is that you are to speak with Mark and get back to us shortly.  Thanks.


Lance

> -----Original Message-----
> **From:** Taras Kick [mailto:taras@kicklawfirm.com]
> **Sent:** Friday, January 27, 2006 2:01 PM
> **To:** Szpak, Mark P.; gwade@maklawyers.com; tshapiro@shulaw.com; ed@hagens-
> berman.com; dpastor@gilmanpastor.com; ken@quatlaw.com; Lance Harke;
> alankovacs@yahoo.com; russellwood@cox-internet.com; a.kanner@kanner-law.com;
> James Strenio; DonaldAmamgbo@citycom.com; info@glancylaw.com;
> pklingman@sfmslaw.com; b.barnow@barnowlaw.com; kjm@ftllaw.com; glaw123@aol.com;
> mgardy@abbeygardy.com; edwardcochran@adelphia.net; steveschwartz@chimicles.com;
> jyork@pgandr.com; mitch@kslegal.com; reggiet2@aol.com; Ldrurylaw@aol.com;
> bgibson@pgandr.com; dmillen@muchshelist.com; skanner@muchshelist.com;
> C.Green@kanner-law.com; joseph@sarrafgentile.com; RStone@lawssb.com;
> hmhewell@yahoo.com
> **Cc:** Shanahan, Emily C.
> **Subject:** RE: M3Power Cases: Proposed CMO
>
> Mark, We appreciate your effort in this to date, including incorporating into your latest
> document some of the points previously emailed to you by attorney James Strenio.  Further
> to my email below, we will wait for the transcript from the January 23 hearing to arrive to
> finalize our comments so that all sides can be certain they are being as accurate as
> possible before filing.  Please be so kind as to confirm that you too will wait for the transcript
> before filing.  Thank you.  Taras.
>
> Taras Kick
> The Kick Law Firm, APC
> 660 S. Figueroa Street, Suite 1800
> Los Angeles, CA 90017
> Phone: (213)624-1588
> Fax: (213)624-1589
>
> _____
>
> **From:** Taras Kick
> **Sent:** Thursday, January 26, 2006 4:16 PM
> **To:** 'Szpak, Mark P.'; gwade@maklawyers.com; tshapiro@shulaw.com; ed@hagens-
> berman.com; dpastor@gilmanpastor.com; ken@quatlaw.com; Lharke@harkeclasby.com;
> alankovacs@yahoo.com; russellwood@cox-internet.com; a.kanner@kanner-law.com;
> James Strenio; DonaldAmamgbo@citycom.com; info@glancylaw.com;
> pklingman@sfmslaw.com; b.barnow@barnowlaw.com; kjm@ftllaw.com; glaw123@aol.com;
> mgardy@abbeygardy.com; edwardcochran@adelphia.net; steveschwartz@chimicles.com;
> jyork@pgandr.com; mitch@kslegal.com; reggiet2@aol.com; Ldrurylaw@aol.com;
> bgibson@pgandr.com; dmillen@muchshelist.com; skanner@muchshelist.com;
> C.Green@kanner-law.com; joseph@sarrafgentile.com; RStone@lawssb.com;
> hmhewell@yahoo.com
> **Cc:** Shanahan, Emily C.

**Subject:** RE: M3Power Cases: Proposed CMO

Mark, We will review and comment by tomorrow morning.  Taras.

Taras Kick
The Kick Law Firm, APC
660 S. Figueroa Street, Suite 1800
Los Angeles, CA 90017
Phone: (213)624-1588
Fax: (213)624-1589

**From:** Szpak, Mark P. [mailto:Mark.Szpak@ropesgray.com]
**Sent:** Thursday, January 26, 2006 4:05 PM
**To:** gwade@maklawyers.com; tshapiro@shulaw.com; ed@hagens-berman.com;
dpastor@gilmanpastor.com; ken@quatlaw.com; Lharke@harkeclasby.com;
alankovacs@yahoo.com; russellawood@cox-internet.com; a.kanner@kanner-law.com;
James Strenio; Taras Kick; DonaldAmamgbo@citycom.com; info@glancylaw.com;
pklingman@sfmslaw.com; b.barnow@barnowlaw.com; kjm@ftllaw.com; glaw123@aol.com;
mgardy@abbeygardy.com; edwardcochran@adelphia.net; steveschwartz@chimicles.com;
jyork@pgandr.com; mitch@kslegal.com; reggiet2@aol.com; Ldrurylaw@aol.com;
bgibson@pgandr.com; dmillen@muchshelist.com; skanner@muchshelist.com;
C.Green@kanner-law.com; joseph@sarrafgentile.com; RStone@lawssb.com;
hmhewell@yahoo.com
**Cc:** Shanahan, Emily C.
**Subject:** RE: M3Power Cases: Proposed CMO


Counsel:
Enclosed is a further draft of the proposed order circulated yesterday, which we have
revised to show comments we have accepted and to remove matters addressed in the
Court's Case Management Order and Order for Consolidation entered today.  A
redline is also enclosed.  Again, please give us any comments by the close of
business on Friday, January 27, 2006. -- Mark Szpak

<<Cover Letter for Revised Scheduling Order.PDF>> <<Revised Scheduling
Order.PDF>> <<Redline for Revised Scheduling Order.PDF>>

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

)
In re:                                    )        CIVIL ACTION NO. 05-11177-DPW
M3POWER RAZOR SYSTEM                       )        (LEAD CASE)
MARKETING & SALES PRACTICES               )
LITIGATION                                )        MDL Docket No. 1704
                                          )

THIS DOCUMENT RELATES TO:                 )
**ALL CASES**                             )
                                          )

### [PROPOSED] SCHEDULING ORDER

WHEREAS, a Scheduling Conference having been held on January 23, 2006, the

following ORDER is hereby set:

1.      **Motions to Remand**.  Any motions to remand shall be filed by no later than

February 6, 2006.

2.      **Filing of Consolidated Complaint**.  Plaintiffs shall file their Consolidated

Amended Complaint within 30 days of the Court's determination pursuant to

Fed.R.Civ.P. 23(g) regarding the organizational structure of Plaintiffs' counsel.

3.      **Response to Consolidated Complaint**.  Defendant shall file its responsive

pleading to the Consolidated Complaint within 30 days of its filing.

4.      **Disclosures Pursuant to Fed.R.Civ.P. 26(a)(1)**.  The Parties shall make the

disclosures set forth in Fed.R.Civ.P. 26(a)(1) within 10 days after the filing of the

Consolidated Complaint.  Defendant's initial disclosures pursuant to Fed.R.Civ.P.

26(a)(1) shall include, without limitation, any relevant discovery that it has previously

produced in the *Schick* ~~litigation pending~~litigations in the District of Connecticut,

Germany, and Australia, provided that an appropriate protective order has been entered as

9919349_26

of the time for such initial disclosures.  Gillette shall be obliged to provide a log identifying any documents withheld as not relevant.

5.    **Class Certification Discovery**.  This phase of discovery shall be completed by no later than 60 days after the exchange of the parties' initial disclosures pursuant to Fed.R.Civ.P. 26(a)(1).

6.    **Fact Discovery**.  This phase of discovery shall be completed by no later than six months from the exchange of the parties' initial disclosures pursuant to Fed.R.Civ.P. 26(a)(1).

7.    **Expert Discovery**.

    a.    The Expert Report(s) of the party bearing the burden of proof on the issue to which any such report pertains shall be served within 45 days of the close of fact discovery.

    b.    The Expert Report(s) of the party not bearing the burden of proof on the issue to which the report described in paragraph 7.a above pertains shall be served within 45 days thereafter.

    c.    Rebuttal Reports from either party shall be served within 21 days thereafter.

    d.    Expert Discovery shall conclude 45 after the date rebuttal reports are due.

8.    **Class Certification Briefing**.

    a.    Plaintiffs' Motion for Class Certification shall be filed by no later 30 days after the close of class certification discovery.

    b.    Defendant's response shall be due within 30 days of the date Plaintiffs' motion is filed.

      c.     Plaintiffs shall file their reply brief within 20 days of Defendant's response.

9.    **Dispositive Motions**.

      a.     Motions for Summary Judgment shall be filed within 30 days after the close of Expert Discovery.

      b.     A party opposing any motion for summary judgment shall have 30 days to file an opposition to said motion.

      c.     Any reply brief shall be due within 20 days after the filing of the response.

10.    **Final Pretrial Conference**.  A final pre-trial conference and trial date shall be determined by the Court, as appropriate under relevant law, at a later time.

SO ORDERED.

_____
Douglas P. Woodlock
United States District Judge

Dated: _____

Document comparison done by DeltaView on Friday, February 03, 2006 16:45:41

| Input: | |
|---|---|
| Document 1 | iManageDeskSite://DMS1/Active/9919349/4 |
| Document 2 | iManageDeskSite://DMS1/Active/9919349/6 |
| Rendering set | Standard |

| Legend: |
|---|
| Insertion |
| Deletion |
| Moved from |
| Moved to |
| Format change |
| Moved deletion |
| Inserted cell |
| Deleted cell |
| Moved cell |
| Split/Merged cell |
| Padding cell |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 5 |
| Deletions | 3 |
| Moved from | 0 |
| Moved to | 0 |
| Format changed | 0 |
| Total changes | 8 |

## James Strenio

---

| | |
|---|---|
| **From:** | James Strenio [jstrenio@yahoo.com] |
| **Sent:** | Friday, February 03, 2006 4:57 PM |
| **To:** | Mark.Szpak@ropesgray.com; Harvey.Wolkoff@ropesgray.com; Emily.Shanahan@ropesgray.com; tshapiro@shulaw.com; srudman@lerach.com; ed@hagens-berman.com; alankovacs@yahoo.com; dpastor@gilmanpastor.com; info@glancylaw.com; pklingman@sfmslaw.com; kjm@ftllaw.com; mgardy@abbeygardy.com; steveschwartz@chimicles.com; dmillen@muchshelist.com; skanner@muchshelist.com; joseph@sarrafgentile.com; Stone@lawssb.com; dwarshaw@wccplaw.com; mgodino@glancylaw.com; mmgoldberg@glancylaw.com; avozzolo@faruquilaw.com; alxfen@aol.com; adroblaw@aol.com; Pete.Petroski@vctexlaw.com; hmhewell@yahoo.com; mitch@kslegal.com; russellawood@cox-internet.com; bgibson@pgandr.com; jyork@pgandr.com; glaw123@aol.com; b.barnow@barnowlaw.com; s.harris@barnowlaw.com; Ldrurylaw@aol.com; Lharke@harkeclasby.com; hbushman@harkeclasby.com; dmaher@harkeclasby.com; ken@quatlaw.com |
| **Cc:** | DonaldAmamgbo@citycom.com; reggiet2@aol.com; gwade@maklawyers.com; tbaird@maklawyers.com; olendodd@earthlink.net; pbaker@bknlawyers.com; rbaker@bknlawyers.com; edwardcochran@adelphia.net; Taras Kick; James Strenio; Tom Martin; a.kanner@kanner-law.com; C.Green@kanner-law.com; jstrenio@yahoo.com |
| **Subject:** | Gillette -- Scheduling Order |

Mark, the following are the comments from the attorneys copied on this email regarding the proposed Revised Scheduling Order, with the numbers corresponding to those in the proposed order. (The additional changes made to the proposed order that Emily emailed today do not moot our comments.)

1.    Okay.

2.    Delete "pursuant to Fed.R.Civ.P. 23(g)"  The Court was open to the idea of having a plaintiff's organizational structure that does not involve the appointment of interim class counsel, such as a plaintiffs' interim steering committee.  Moreover, because the Adoure action is not brought as a class action, Fed.R.Civ.P. 23(g) does not apply to that action.

3.    Okay.

4.    (1)    Replace "The Parties shall make" with "Plaintiffs shall make".

     (2)    Add after the first sentence: "Defendant shall make its disclosures set forth in Fed.R.Civ.P. 26 (a)(1) by February 22, 2006."  (See Electronic Clerk's Notes entered January 23, 2006("Gillette shall turn over CD (Schick case discovery) within 30 days.")

     (3)    Replace "Defendant's initial disclosures pursuant to Fed.R.Civ.P. 26(a)(1) shall include, without limitation, any relevant discovery it has previously produced" to "Defendant's initial disclosures pursuant to Fed.R.Civ.P. 26(a)(1) shall include, without limitation, any relevant discovery that has been previously produced".  The initial disclosure by Gillette is not limited to only discovery produced by Gillette but instead extends to all discovery in any Schick proceeding.  (Transcript at 17:20-23, 19:14-17. 20:7, 35:24-25 ("THE COURT: . . . I will expect that that's going to be turned immediately -- that is, the Schick discovery that is relevant to this case. . . . But I guess I want to bite off -- at least stick my teeth into -- what seems to be a large portion of discovery that's out there and available to get that put into the initial disclosure context. . . . But the idea is to get that Schick discovery. . . . I mean, what I said is anything that's relevant to this case.")

(4)    Replace "in the Schick litigation pending in the District of Connecticut" with "in any Schick proceeding involving the M3Power Razor, such as, but not limited to, the Schick proceedings in the District of Connecticut, Germany, and Australia." (Transcript at 35:17-25 ("MR. STRENIO: And, Your Honor, if I may, also, with respect to the issue of expert discovery, since we mentioned the initial disclosure of all the discovery that's been done in Schick, that disclosure and that discovery has included expert testimony, expert depositions not only in the Schick case, but also in previous cases in Germany, Australia. That expert discovery should be disclosed to us initially now. THE COURT: I mean, what I said is anything that's relevant to this case.")

(5)    Delete ", provided that an appropriate protective order has been entered as of the time for such initial disclosures." (Transcript at 16:13 - 17:1 ("THE COURT: Why are there confidentiality agreements particular to Schick? Schick gets to look at this stuff under the protective order because you're concerned about trade secrets being disseminated. Why doesn't the same protective order apply to these plaintiffs? MR. WOLKOFF: Well, frankly, Your Honor, there are documents that are highly proprietary and have no bearing whatsoever on this case relating to Schick's market share, Gillette's market share, competitive posturing vis-a-vis each other. Other products are on -- THE COURT: Okay. So, make a motion for privilege -- to privilege certain of these documents if that's what they are. Presumably, the ones that are covered by a protective order have already been preliminarily identified.")

(6)    Delete "shall be obliged to provide" with "shall provide to Plaintiffs on February 22, 2006,"

(7)    Replace "withheld as not relevant" with "withheld as not relevant or privileged." (Transcript at 27:4-7 ("THE COURT: . . . If you're withholding things for purposes of -- that are relevant for initial disclosure, broadly conceived, that deal with the question of privilege, you will have a privilege log. MR. WOLKOFF: Yes, Your Honor.")

So, in the end, paragraph 4 reads: "Plaintiffs shall make the disclosures set forth in Fed.R.Civ.P. 26(a) (1) within 10 days after the filing of the Consolidated Complaint. Defendant shall make its disclosures set forth in Fed.R.Civ.P. 26(a)(1) by February 22, 2006. Defendant's initial disclosures pursuant to Fed.R.Civ.P. 26(a)(1) shall include, without limitation, any relevant discovery that has been previously produced in any Schick proceeding relating to the M3Power Razor, such as, but not limited to, the Schick proceedings in the District of Connecticut, Germany, and Australia. Defendant shall provide to Plaintiffs on February 22, 2006 a log identifying any documents withheld as not relevant or privileged."

5.    Okay.

6.    Add: "Fact discovery may proceed at the same time as class certification discovery; class certification and fact (merits) discovery are not bifurcated." (Transcript at 27:25 ("MR. KANNER: . . . I don't have a problem with class discovery, except to the extent that the defendants are going to say that in some sense stays or prioritizes or shuts down merits discovery. THE COURT: I don't read this proposal in that fashion. What I read it to say is that these are keyed off of the time period from initial disclosure; that within 60 days, there will be completion of the fact discovery. MR. KANNER: As long as we all share that understanding, I'm fine. THE COURT: Is there any dispute about that? MR. WOLKOFF: Not that I know of, Your Honor. THE COURT: Okay. So we all do.")

7.d.  Add "days" after "45".

8.    Okay.

2/10/2006

9.   Add a provision 9.d. stating "A plaintiff may bring a dispositive motion before the close of expert discovery." ("Transcript at 34:16-19 ("MR. KANNER:  -- if we feel we have a dispositive motion that we want to file before the completion of expert discovery, may we do that?  THE COURT:  Yes.  . . ..")

10.  Delete this provision in its entirety.  Stating that "A final pre-trial conference and trial date shall be determined by the Court at a later time" is unnecessary. Moreover, the District Court recognized that, under Lexicon, it has no jurisdiction, without the plaintiff's consent, to try a case that was not filed in its court.  (Transcript at 13:1-3 ("MR. KANNER:  Under, for example, Lexicon, you're only going to try cases that started here.  THE COURT:  Right.")  Therefore, a provision for a final pre-trial conference and trial date is inappropriate in a scheduling order governing all the cases.

Thank you.

---

Bring words and photos together (easily) with
PhotoMail - it's free and works with your Yahoo! Mail.

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| )<br>In re: )<br>M3POWER RAZOR SYSTEM )<br>MARKETING & SALES PRACTICES )<br>LITIGATION )<br>) | CIVIL ACTION NO. 05-11177-DPW<br>(LEAD CASE)<br><br>MDL Docket No. 1704 |
| THIS DOCUMENT RELATES TO: )<br>**ALL CASES** )<br>) | |

**[PROPOSED] SCHEDULING ORDER**

WHEREAS, a Scheduling Conference having been held on January 23, 2006, the

following ORDER is hereby set:

1.      **Motions to Remand**.  Any motions to remand shall be filed by no later than

February 6, 2006.

2.      **Filing of Consolidated Complaint**.  Plaintiffs shall file their Consolidated

Amended Complaint within 30 days of the Court's determination pursuant to

Fed.R.Civ.P. 23(g) or otherwise regarding the organizational structure of Plaintiffs'

counsel.

3.      **Response to Consolidated Complaint**.  Defendant shall file its responsive

pleading to the Consolidated Complaint within 30 days of its filing.

4.      **Disclosures Pursuant to Fed.R.Civ.P. 26(a)(1)**.  The Parties shall make the

disclosures set forth in Fed.R.Civ.P. 26(a)(1) within 10 days after the filing of the

Consolidated Complaint.  Defendant's initial disclosures pursuant to Fed.R.Civ.P.

26(a)(1) shall include, without limitation, any relevant discovery that it has previously

produced in the *Schick* litigations in the District of Connecticut, Germany, and Australia,

provided that an appropriate protective order has been entered as of the time for such initial disclosures. Gillette shall be obliged to provide a log identifying any documents withheld as privileged or not relevant.

5.     **Class Certification Discovery**.  This phase of discovery commences with, and shall be completed by no later than 60 days after, the exchange of the parties' initial disclosures pursuant to Fed.R.Civ.P. 26(a)(1).

6.     **Fact Discovery**.  This phase of discovery commences with, and shall be completed by no later than six months from, the exchange of the parties' initial disclosures pursuant to Fed.R.Civ.P. 26(a)(1).

7.     **Expert Discovery**.

    a.     The Expert Report(s) of the party bearing the burden of proof on the issue to which any such report pertains shall be served within 45 days of the close of fact discovery.

    b.     The Expert Report(s) of the party not bearing the burden of proof on the issue to which the report described in paragraph 7.a above pertains shall be served within 45 days thereafter.

    c.     Rebuttal Reports from either party shall be served within 21 days thereafter.

    d.     Expert Discovery shall conclude 45 days after the date rebuttal reports are due.

8.     **Class Certification Briefing**.

    a.     Plaintiffs' Motion for Class Certification shall be filed by no later 30 days after the close of class certification discovery.

b.      Defendant's response shall be due within 30 days of the date Plaintiffs' motion is filed.

c.      Plaintiffs shall file their reply brief within 20 days of Defendant's response.

9.     **Dispositive Motions**.

a.      Motions for Summary Judgment shall be filed ~~within~~by 30 days after the close of Expert Discovery.

b.      A party opposing any motion for summary judgment shall have 30 days to file an opposition to said motion.

c.      Any reply brief shall be due within 20 days after the filing of the response.

10.    **Final Pretrial Conference**.  A final pre-trial conference and trial date shall be determined by the Court, as appropriate under relevant law, at a later time.

SO ORDERED.

_____

Douglas P. Woodlock
United States District Judge

Dated: _____

Document comparison done by DeltaView on Monday, February 06, 2006 14:50:03

| Input: | |
|---|---|
| Document 1 | iManageDeskSite://DMS1/Active/9919349/6 |
| Document 2 | iManageDeskSite://DMS1/Active/9919349/7 |
| Rendering set | Standard |

| Legend: | |
|---|---|
| Insertion | |
| Deletion | |
| Moved from | |
| Moved to | |
| Format change | |
| Moved deletion | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 10 |
| Deletions | 3 |
| Moved from | 0 |
| Moved to | 0 |
| Format changed | 0 |
| Total changes | 13 |

Page 1

```
 1              UNITED STATES DISTRICT COURT
 2                DISTRICT OF MASSACHUSETTS
 3    * * * * * * * * * * * * * * * *
 4    MARK DEARMAN, ET AL
                           Plaintiffs
 5
          VERSUS                        CA-05-11177-DPW
 6
      GILLETTE COMPANY
 7
                           Defendant
 8
      * * * * * * * * * * * * * * * *
 9
10         BEFORE THE HONORABLE DOUGLAS P. WOODLOCK
11            UNITED STATES DISTRICT COURT JUDGE
12                 SCHEDULING CONFERENCE
13                  JANUARY 23, 2006
14    APPEARANCES:
15         THOMAS G. SHAPIRO, ESQ., Shapiro, Haber & Urmy, LLP,
           53 State Street, Boston, Massachusetts  02109, on
16         behalf of Mark Dearman, Anthony Debiseglia,
17         ALAN L. KOVACS, ESQ., 2001 Beacon Street, Suite 105,
           Boston, Massachusetts  02135, on behalf of Plaintiffs.
18
           ALLAN KANNER, ESQ. AND CYNTHIA GREEN, ESQ., 701 Camp
19         Street, New Orleans, Louisiana  70130, on behalf of
           Carlos Corrales & Kasem Adoure, Plaintiffs
20
           G. JAMES STRENIO, ESQ., The Kick Law Firm, APC,
21         660 South Figueroa Street, Suite 1800, Los Angeles,
           California  90017, on behalf of Kasem Adoure & Carlos
22         Corrales, Plaintiffs
23         PATRICK A. KLINGMAN, ESQ., Shepherd, Finkelman, Miller &
           Shah, LLC, 65 Main Street, Chester, Connecticut  06412,
24         on behalf of Lisa Geis, Plaintiff
25
```

Page 2

```
 1
 2          JAMES J. NOTIS, ESQ., Abbey, Gardy, LLP, 212 East
            39th Street, New York, New York  10016, on behalf
 3          Of Plaintiffs
 4          EDWARD NOTARGIACOMO, ESQ., Hagens, Berman, LLP,
            One Main Street, 4th Floor, Cambridge, Massachusetts
 5          02142, on behalf of Kevin Windom, Plaintiff
 6          ROBERT M. ROTHMAN, ESQ., Lerach, Coughlin, Stoia,
            Geller, Rudman, & Robbins, LLP, 58 South Service
 7          Road, Suite 200, Melville, New York  11747, on
            behalf of Plaintiffs
 8
            BEN BARNOW, ESQ., Barnow & Associates, One North
 9          LaSalle Street, Suite 4600, Chicago, Illinois  60602,
            on behalf of Greg Besinger, Plaintiff
10
            WILLIAM A. BAIRD, ESQ. AND GILLIAN L. WADE, ESQ.,
11          Milstein, Adelman & Kreger, LLP, 2800 Donald Douglas
            Loop North, Santa Monica, California  90405, on behalf
12          of David Atkins, Plaintiff
13          OLEN KENNETH DODD, ESQ., The Dodd Law Firm, P.O. Box
            3504, Beaumont, Texas  77704, on behalf of Plaintiffs
14
            REGINALD VON TERRELL, ESQ., The Terrell Law Group,
15          223 25th Street, Richmond, California  94804, on
            behalf of Michael Pruitt, Plaintiff
16
            C. DONALD AMAMGBO, ESQ., Amamgbo & Associates, PLC,
17          1940 Embarcadero, Oakland, California 94606, on behalf
            of Michael Pruitt, Plaintiff
18
            KENNETH D. QUAT, ESQ., 9 Damonmill Square, Suite 4A-4,
19          Concord, Massachusetts  01742, on behalf of Plaintiffs
20          HOWARD BUSHMAN, ESQ., Florida
            (By telephone), on behalf of Collin McGeary, Plaintiff
21
            HARVEY J. WOLKOFF, ESQ., MARK P. SZPAK, ESQ. AND
22          EMILY C. SHANAHAN, ESQ., Ropes & Gray, One International
            Place, Boston, Massachusetts  02110, on behalf of
23          Gillette Company, Defendant
24
25
```

Page 3

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18                              Courtroom No. 1 - 3rd Floor

                                1 Courthouse Way

19                              Boston, Massachusetts  02210

                                2:30 P.M. - 3:15 P.M.

20

21

                Pamela R. Owens - Official Court Reporter

22           John Joseph Moakley District Courthouse

                 1 Courthouse Way - Suite 3200

23                Boston, Massachusetts  02210

24

25

Page 4

1

2          THE CLERK:  Civil Action 05-11177, In Re:  MP3

3    Power Razor System Marketing and Sales Practices Litigation.

4          THE COURT:  Well, I realize there are some things

5    that I rescheduled.  I did want to at least get the beginnings

6    of trying to put this in order as an MDL case.

7          Let me just deal with one motion that I know I can

8    deal with promptly.  That's the Adoure -- if I pronounce it

9    correctly -- motion to remand.  I'm going to deny that motion

10   here.  I believe a fair reading of the amount in controversy

11   element of diversity jurisdiction in a practical reading of it

12   is that we have more than $75,000 in controversy.  And the

13   characterization or recharacterization that Mr. Adoure has

14   represented, but not of a class, seems to me to be not

15   particularly helpful in thinking about what this case is

16   about.  So that is denied.

17          MR. STRENIO:  Your Honor --

18          THE COURT:  Yes.

19          MR. STRENIO:  -- this is James Strenio from the

20   Kick Law Firm on behalf of plaintiff Adoure.  May we be heard

21   on that?

22          THE COURT:  You have.  You filed papers.  I read

23   them.

24          MR. STRENIO:  Thank you.

25          THE COURT:  Now, with reference to the question of

Page 5

1    appointment of counsel or class counsel, I have the filings of

2    several of the plaintiffs here suggesting there just hasn't

3    been enough time to get this straightened away to file an

4    adequate response and that there may be different ways of

5    looking at this.  And under those circumstances, I'm loathe to

6    try to identify class counsel or interim liaison counsel,

7    however you want to characterize it.  The question is how we

8    get from these anxious concerns that are expressed in the

9    motion to set schedule for filing applications to some sort of

10   resolution of what the lead liaison class counsel on an interim

11   basis issue requires of me and requires of you.

12          So, let me understand.  I guess the drafter of this

13   is Mr. Harke or Mr. Steward.  Who is the --

14          MR. BARNOW:  Your Honor, if I might, my name is Ben

15   Barnow.  I'm one of the attorneys on that paper.

16          THE COURT:  Okay.

17          MR. BARNOW:  And I am Mr. Harke's colleague.  In

18   any event, first, my apologies to the Court on behalf of

19   Mr. Harke and myself.  He unfortunately is, I believe, still in

20   the air about to land with a three-hour delay on his flight or

21   he would have been here and still intends.

22          THE COURT:  That's the delay I had driving in, so I

23   understand.

24          MR. BARNOW:  I recognize sympathy from the bench

25   and I thank you for it.

Page 6

1              His colleague and associate, Howard Bushman, I

2     believe, because of a courtesy of your staff and the Court

3     itself, is on the phone.

4              THE COURT:  Yes.

5              MR. BARNOW:  But I am prepared to answer whatever

6     questions the Court has.

7              THE COURT:  Well, what do you want to do?  I mean,

8     you say 10 days to file it.  Let's talk in terms of text and

9     pretext.  First, the text?

10             MR. BARNOW:  First of all, I think every lawyer in

11    this room, every plaintiffs' lawyer, would like to see all

12    plaintiffs' counsel come together.  That's the routine and that

13.   is the practice that's customary.  Every once in a while

14    there's a bump in the road for whatever reason where, you know,

15    great minds don't always think alike.  I would say that people

16    have worked towards that goal.  There have been multiple

17    talks.  And what the people who signed onto this paper, which

18    is a significant group -- I believe it's 10 cases -- probably

19    more attorneys, which is far more than the eight by the other

20    paper, but somewhat.  In any event, it's our belief that with

21    the words of the Court, that within a short period of time,

22    that those efforts to bring people together and have an

23    appropriate interim plaintiffs' steering committee with

24    appropriate leadership as needed might be more effective than

25    we have been to date.  If not, we could file papers.  Each

Page 7

1   group, I think, basically breaks into three or four groups, if

2   that, maybe two for the Court's consideration.  I would like to

3   have another go at it, as I'm sure other people in the room

4   would, to see if lawyers can come together as they probably

5   should.  And if we have differences, we can put them to the

6   Court.  It will be fully briefed.  People can put in their own

7   credentials and ideas and then the right guy to decide will

8   decide it.  And that would be you.  But I don't think it would

9   be burdensome for the Court.

10          THE COURT:  In terms of timing, you talk about 10

11  days.  I don't know if that was a desire to make it highly

12  suggestive.

13          MR. BARNOW:  Your Honor, the 10 days, I think I was

14  traveling at the time it was written.  I seem to recall a

15  desire for 20 days.  And I'm looking not for this --

16          THE COURT:  That's a typographical error; is that

17  it?

18          MR. BARNOW:  Pardon me?

19          THE COURT:  That's a typographical error?

20          MR. BARNOW:  No.  I couldn't say that, Your Honor.

21  You will see, Your Honor, sometimes people differ --

22          THE COURT:  I'm sorry.

23          MR. BARNOW:  -- and they prevail.  The papers said

24  the original filing that was an addendum, that talked in terms

25  of 10 days.  I seem to recall, in having looked at this, that

Page 8

1    we may have changed it to 20.

2              THE COURT:  Yes, I think you did.

3              MR. BARNOW:  But whatever serves the Court's

4    purposes, I think the Court can set it.  I think 20 days might

5    allow more talk time for better phraseology and I think the

6    papers could be short.  They don't have to be long.

7              THE COURT:  Any reason why I shouldn't do that,

8    Mr. Shapiro?

9              MR. SHAPIRO:  I can't resist saying that it was

10   Mr. Harke's motion that asked for a conference.  One of the

11   items to be addressed was interim counsel.  And Your Honor

12   scheduled this conference by order of December 1st.  It's been

13   almost two months.  That's why we filed our motion when we

14   did.  Now I can't -- I'm sure the Court wants to hear all

15   counsel and I really can't oppose that.

16             THE COURT:  I do.  I mean, if there's going to be

17   some dispute about this or if the discussions haven't ripened

18   sufficiently --

19             MR. SHAPIRO:  I think it would be on the point of

20   discussions, Your Honor, that efforts were made to reach a

21   resolution with Mr. Barnow and Mr. Harke.  Proposals were made.

22   They were not agreed to and I think that we really do have

23   irreconcilable differences.

24             THE COURT:  Well, I think, then, what I'd like to

25   do is still use the 20-day period.

1           MR. SHAPIRO:  That's fine.

2           THE COURT:  You file your memorandum.  If you want

3    to file a supplement to it, you can at the end of the 20 days

4    if it's not fruitful.  But anybody who wants to be heard on

5    this question essentially of an organization of plaintiffs,

6    however we style it, as interim class counsel or lead or

7    liaison counsel, because of the Adoure -- if I pronounce it

8    correctly -- case, I think we've got an issue about class

9    counsel.  But what I would then ask is if you haven't been able

10   to reason together by February 10th, that there be filings in

11   support of the respective parties' views about how there should

12   be organization of plaintiffs' counsel; responses by February

13   24th; and we'll try and set it, if we can, down for further

14   conference, Michelle.  Monday, March the 6th at 2:30, we'll

15   have a further conference to deal with that question of

16   organization.

17           But I do want to move this along in various sorts

18   of ways today in light of the scheduling report that the

19   parties have submitted and the various addenda and alternative

20   proposals.

21           Let me understand.  But maybe this is counsel from

22   Adoure and Corrales.  I understand that there are a variety of

23   different kinds of claims addressing a variety of different

24   classes under -- pressing under various consumer protection

25   statutes in various states.  But what difference is it going to

DEARMAN, ET AL V. GILLETTE>

Page 10

1  make, at least at the earlier stages of discovery and so on,

2  the organization part of this case?  Anything -- I mean,

3  anything that's visible to the human eye, I guess, is what I'm

4  asking.

5      MR. KANNER:  Your Honor, Allan Kanner for the

6  plaintiffs Adoure and Corrales.  Yes, I think there's going to

7  be some differences and we attempted during our meeting to

8  confer to work on those.  For example, in the California cases,

9  we're going to be looking at marketing issues as they occurred

10 in California, at least with respect for a curative advertising

11 claim or a false advertising claim.

12     THE COURT:  Well, what I guess I'm getting at is

13 what difference does it make in the way in which I would

14 structure the discovery here?  There's always a danger of

15 entropy in one of these kinds of cases and I want to avoid

16 that.  And, so, I just want to be sure that I'm not missing

17 something.

18     MR. KANNER:  There are a couple of issues.  I mean,

19 I think all of us, when we think about strategies or case

20 management, try to look a couple of steps ahead which is what

21 Your Honor is doing.  And I follow that and I agree.  I mean,

22 for example, the proposal that was given to us was, "well,

23 let's have a consolidated amended complaint.  Let's create

24 something new that didn't previously exist and bury out the

25 real cases.

Page 11

1          THE COURT:  Why bury it out?  Why wouldn't the

2     obligation of lead or liaison counsel, whoever it is, bear the

3     responsibility for preparing such a document, include it as

4     Count 57, a California or consumer claim?

5          MR. KANNER:  As a practical matter, two things in

6     this case:  One, the Adoure case, which is now here before Your

7     Honor, that injunctive action is now put on hold after the

8     class action issues are heard.

9          THE COURT:  Well, that may be so, maybe not.

10          MR. KANNER:  That was one of my differences.

11          THE COURT:  Well, but I'm not sure that I really

12     think that that's necessarily the case, that it's put on hold.

13     I mean, you're here.  You want to raise that -- or I guess it's

14     the gentleman from the Kick firm --

15          MR. KANNER:  We're co-counsel.

16          THE COURT:  -- right, although I have to say I'm a

17     bit of the view that the Schick case provides the kind of

18     interlocutory relief that's necessary at this point, but it

19     doesn't rule it out.

20          MR. KANNER:  Schick was a very useful case for us,

21     Your Honor.  Schick stopped the advertising going forward.

22     That is --

23          THE COURT:  I understand the difference between

24     corrective and prospective.  The difference, I guess, is this:

25     That ordinarily you think of a preliminary injunction as

Page 12

1  attempting to deal prospectively with matters.  Corrective

2  advertising is, by definition, a retrospective undertaking.

3  But I'm not averse to the idea of dealing with a preliminary

4  injunction in the context of this case if you want to press it

5  there.  I mean, if you're really pressing it for purposes of

6  interlocutory relief during this time period and if that

7  requires some sort of discovery or separate discovery, one

8  would tailor that.  But that's the only one I guess I can see

9  in this.  I don't see anything else.

10          MR. KANNER:  Okay.  That's part of it.  Part of the

11  difference is -- and maybe because I was gearing up and

12  focusing on trying the injunctive case without the class issues

13  -- my request to counsel for Gillette and also to my co-counsel

14  in trying to put together a united front was, well, let's take

15  advantage of the Schick discovery.  Why put that on hold?

16          THE COURT:  I mean, that I understand.  I'll get to

17  that in a minute.

18          MR. KANNER:  Okay.

19          THE COURT:  I'm really -- what I'm trying to deal

20  with here is this suggestion that consolidation, at least for

21  purposes of an MDL, is improvident.

22          MR. KANNER:  I think some Judges, not all MDL

23  Judges, sitting in your position, that some Judges who have sat

24  in your position have said, "I don't know that consolidated

25  complaint is always a plus.  Sometimes it is a plus.  Sometimes

Page 13

1    it's not." Currently, you have a number of cases in front of

2    you. Under, for example, Lexicon, you're only going to try

3    cases that started here.

4              THE COURT: Right.

5              MR. KANNER: A number of these issues, such as the

6    California issue, you may decide that you're not going to rule

7    on the class issue. You may decide that there is no national

8    consumer class. You may decide to go forward on just

9    expediting discovery as efficiently as possible for all the

10   parties.

11             THE COURT: Well, I understand all of that or I

12   think I do.

13             MR. KANNER: Okay.

14             THE COURT: But the issue for me that I'm raising

15   with you is as an instrumentality, why don't we move ahead on

16   this basis? You've got a particular issue that you thought you

17   had teed up in the Superior Court in California and all of a

18   sudden kind of moved on to another golf course. And if you

19   really want to press it, there I am to deal with it. I'm not

20   suggesting that you're going to be successful on it. I'm just

21   simply suggesting that that can be accommodated.

22             The question of consolidated complaint is a way of

23   ensuring some form of coordination here. It may or may not

24   work ultimately. It may be a document so long that it looks

25   like a Christmas tree at the end. But it's one way of getting

Page 14

1    a handle around this case and understanding it.

2            MR. KANNER:  It is one way.  I'm just saying that

3    in this case when I review the complaints that are in front of

4    Your Honor, I look at the work product that's already been done

5    in the Schick case, I say is it necessarily better to stop

6    discovery, right, create a new document, arguably create

7    jurisdiction here by creating a new action of some type on a

8    national class action, go through the proceedings on the motion

9    to dismiss, then stay merits discovery again, get our Rule 26.

10           THE COURT:  That's a different issue I will get

11   to.  But I just want to understand what it is that you think is

12   the problem.  Part of it is a unique opportunity under

13   California law for a particular remedy that has not yet been

14   provided on an interlocutory basis.

15           The second is the unwieldiness, I guess.  But if I

16   move forward on discovery in this case, as I assume I will,

17   what's it to you?

18           MR. KANNER:  I think that the reason we're all

19   here -- and I'm not opposing the entry of a pretrial order.  We

20   go through it paragraph by paragraph and we're never saying no

21   discovery.

22           THE COURT:  Right.

23           MR. KANNER:  We just have a slightly different

24   point of view.  I think you ought to enter an order early on

25   and I think we ought to start the job of discovery.  I mean,

Page 15

1   if we keep -- in my opinion, if we keep our eye on the ball,

2   it's to create an efficient vehicle for discovery.  We're ready

3   to go forward with discovery and we look at an order that says,

4   "no, no, no, let's just stop."

5               THE COURT:  Okay.  I think I understand that part

6   of it.

7               MR. KANNER:  I mean, we spend --

8               THE COURT:  Maybe it is better for me to walk

9   through the scheduling report and see where the more specific

10  problems are.

11              Let me just start with the one that you raise,

12  which is the -- I'm sorry.  Did you --

13              MR. SHAPIRO:  I did want to speak to those issues

14  briefly, if I could, Your Honor.

15              THE COURT:  Well, I wonder if I haven't ventilated

16  it enough to know that it's an issue.  And the better way to

17  deal with it is just march through this.

18              But let me understand from the defendant's point of

19  view:  Is there a problem with turning over the Schick

20  discovery?

21              MR. WOLKOFF:  Harvey Wolkoff, Your Honor, on behalf

22  of Gillette.  The Schick case, Your Honor, is a different kind

23  of case in some respects.  It's a Lanham Act case.  And as a

24  result, there are a number of issues in this case which don't

25  pertain to this matter which is a consumer action.  You have

Page 16

1    all kinds of issues there with regard to --

2                THE COURT:  Well, then the plaintiffs will

3    disregard that.

4                MR. WOLKOFF:  But, Your Honor, the issue is that

5    the materials, the new-fangled way of producing materials is on

6    CDs.  The materials are all interspersed.  So Your Honor asked

7    me --

8                THE COURT:  No.  They asked for it.  Why not give

9    it to them?

10               MR. WOLKOFF:  Well, there are all kinds of document

11   discovery under a confidentiality agreement that are particular

12   to Schick that relate to Schick, that relate to market share

13   issues.

14               THE COURT:  Why are there confidentiality

15   arrangements particular to Schick?  Schick gets to look at this

16   stuff under the protective order because you're concerned about

17   trade secrets being disseminated.  Why doesn't the same

18   protective order apply to these plaintiffs?

19               MR. WOLKOFF:  Well, frankly, Your Honor, there are

20   documents that are highly proprietary and have no bearing

21   whatsoever on this case relating to Schick's market share,

22   Gillette's market share, competitive posturing vis-a-vis each

23   other.  Other products are on --

24               THE COURT:  Okay.  So, make a motion for privilege

25   -- to privilege certain of these documents if that's what they

Page 17

1    are.  Presumably, the ones that are covered by a protective

2    order have already been preliminarily identified.

3              MR. WOLKOFF:  They've been put onto CDs, but it's

4    not -- I just wanted to bring to Your Honor's attention there

5    were many documents that relate to other products, other issues

6    that aren't germane here and it's not just a matter of burning

7    some CDs, as Mr. Kanner would suggest, and entering in a

8    confidentiality agreement and providing it.

9              THE COURT:  Well, it may not be just that.  But on

10   the other hand, it's not World War III either.

11             MR. WOLKOFF:  It's not World War III.

12             THE COURT:  So, finding someplace in-between, you

13   can turn over the documents that are related to this case while

14   we're working our way through class certification.  What's the

15   problem with that?  I mean, you identified the class that you

16   say is irrelevant to this case, and that's why -- you know,

17   that's a beginning.  But let them chew on some stuff.

18             MR. WOLKOFF:  I'm sure, Your Honor, we could work

19   it out.  We had things worked out keyed off the appointment of

20   the lead counsel.

21             THE COURT:  I understand that, but we're not doing

22   that today.  I want you to start thinking about this because I

23   will expect that that's going to be turned immediately -- that

24   is, the Schick discovery that is relevant to this case.

25             MR. WOLKOFF:  Well, Your Honor, we would need 30

1    days to be able to review the CDs and pull out anything that is

2    privileged.

3              THE COURT:  Right.  And that more or less coincides

4    with our next hearing.  So, I would expect that it would be

5    turned over within 30 days from now to the parties -- that is,

6    the CDs will be available to them.

7              MR. SHAPIRO:  Well, we don't agree with the

8    defendant on any point, Your Honor.  But from my perspective,

9    in negotiating the joint scheduling plan with Gillette and for

10   going ahead moving for the appointment of interim counsel is to

11   try to get some control over the cases.  There are 26 cases

12   pending that I have counted up.  There are probably about 40

13   law firms.  And if you have discovery go ahead before there is

14   any structure created for plaintiffs' counsel, any other

15   discovery being produced to 40 law firms, 40 law firms spending

16   time going through the same documents, it's a very inefficient

17   way.

18             THE COURT:  No.  I don't think I'm thinking about

19   that.  I really am thinking about the production of this

20   material being more or less coincident with the identification

21   of lead counsel here.  What I don't want to have is -- I think

22   there's some force to the argument that the staging of this

23   means that merits discovery is avoided for a period of time

24   when there is available merits discovery that's already been

25   created.

1              MR. SHAPIRO:  That was never our position.  And I

2    noticed when Mr. Kanner talks about bifurcating discovery, as I

3    understand the joint scheduling plan, this was the one point

4    that was the biggest point of contention between us in terms of

5    the timing.  And that is there is no provision in there that

6    merits discovery, the production of initial disclosure by

7    Gillette, and I would assume initial disclosure would include

8    the Schick discovery.  It is not postponed pending class

9    discovery or class certification.

10              THE COURT:  All right.  So --

11              MR. SHAPIRO:  It's 10 days after the filing of the

12    consolidated complaint.  Very early on is our intent and

13    purpose.

14              THE COURT:  Okay.  I think I understand that as

15    well in its refinement.  But I guess I want to bite off -- at

16    least stick my teeth into -- what seems to be a large portion

17    of discovery that's out there and available to get that put

18    into the initial disclosure context.

19              MR. SHAPIRO:  I'm totally in agreement with that.

20    I think that this can be most effectively prosecuted if there

21    is a leadership structure for these 40 firms and that we have

22    appointed a discovery committee or handful of firms to have

23    that assignment.

24              THE COURT:  What I don't want to have happen, I

25    guess, is this -- because everybody is very busy -- say "now we

Page 20

```
 1   have created a leadership structure, we need 30 days to pull

 2   together the Schick discovery."  It's clear to me that the

 3   Schick discovery in some sub-set is going to be made available

 4   almost immediately or it should be.

 5           MR. SHAPIRO:  It should be.  I agree with that

 6   totally.

 7           THE COURT:  And, so, we'll refine this a bit as I

 8   go along.  But the idea is to get that Schick discovery.

 9           MR. SHAPIRO:  It's certainly one of the things we

10   pushed for is its early disclosure.

11           THE COURT:  Okay.  All right.  So -- I'm sorry?

12           MR. DODD:  Your Honor, my name is Olen Dodd and I'm

13   an attorney from Texas on the Gonzalez case.

14           And we had initially, even though I don't think we

15   signed onto the pleading of Mr. Shapiro, we were initially

16   supportive of their position to try to get a leadership

17   structure appointed.  And I just wanted to comment briefly

18   before we get too far afield on that.  I don't believe that

19   these parties are going to be able to agree amongst themselves

20   on their own in the next 30 days absent some sort of

21   intervention or instruction from the Court because I have been

22   involved in discussions back and forth between the parties.

23   And I hate to lose the benefit of this next 30 days and have us

24   come back here and tell the Judge we still can't agree.  And I

25   was hoping -- after 12-13 years of being an Assistant U.S.
```

Page 21

1   Attorney, I found that sometimes if I ask the Judge what kind

2   of structure do you think you would like to see in this case,

3   that sometimes the Court can shed some light on what would work

4   best in this case for you.

5           THE COURT:  Well, let me respond to that in two

6   ways.  The first is I'm more optimistic than you.  The second

7   is I'm more modest than other Judges.  And, so --

8           MR. DODD:  I can tell that already.

9           THE COURT:  -- you try yourself first and see what

10  you can do.  If push comes to shove -- and it may -- I'll show

11  you.

12          MR. DODD:  All right.

13          THE COURT:  But, you know, this is not rocket

14  science either.  This is making new friends, I guess, is what

15  this is about.  And you will work it out among yourselves first

16  and then I'll get involved if I have to.

17          MR. DODD:  Well, I hope I'm proven wrong and I like

18  the idea of getting that discovery up front, Your Honor.

19          THE COURT:  Okay.  All right.  So, let me go back

20  to this.  We have talked a little bit about -- I've been

21  working off the joint scheduling report although, as I said, I

22  realize that there is some more addenda here, particularly from

23  the Corrales and the Adoure case inapplicable.  But starting

24  with (a), I've got some idea what the claims are and all of

25  that and the potential existence of a variety of sub-classes or

1    at least alternative classes.

2              That having been said, I'm of the view that I'm

3    likely to say let's start working on this through a

4    consolidated complaint.

5              With respect to the submissions under 23(g), I have

6    set a time period for it.

7              As to early settlement, I'm not going to get

8    involved in that yet.  Nobody seems to want alternative dispute

9    resolution yet.

10             As to the motions to remand, I assume that the

11   Adoure case is the only one that's got a right to that.  Is

12   there anybody else?

13             MR. WOLKOFF:  Actually, Your Honor, the Huskic case

14   out of Missouri raises that issue as well.  I don't know if

15   counsel for Huskic is here today.

16             MR. BARNOW:  If I might again, Your Honor, Ben

17   Barnow for the record.  I'm also affiliated with Mr. Steward

18   and I'm aware of his case.  Unfortunately, he also is caught in

19   the snowflakes and is trying to get here.  In discussions with

20   him, it is my belief -- I don't want to commit him finally.

21   But it's my belief that he will not be challenging remand and

22   will be pleased to stay in this court.  But I have to confirm

23   that with him.  I'll say I'm 99 percent sure on that.

24             THE COURT:  All right.  So, what I think I will do,

25   then, is set the 20-day period as well for that -- for all

1    motions for remand so that will give Mr. -- I'm sorry.  I don't

2    know the fellow's name, but in the Huskic case.

3                MR. BARNOW:  Mr. Steward, yes.  And should I get

4    ahold of him, I will advise the Court and my learned colleague

5    that that's the case and nobody will waste any time.

6                THE COURT:  Okay.

7                MR. BARLOW:  Thank you.

8                MR. STRENIO:  Your Honor, just to conclude with the

9    Adoure remand --

10               THE COURT:  I think we have concluded it.

11               MR. STRENIO:  -- with this Court, that is -- shall

12   we expect to receive a ruling and an order --

13               THE COURT:  You just did.

14               MR. STRENIO:  -- a written order?

15               THE COURT:  You just did.  And it will be reflected

16   in the document of the court.

17               Now, so let me just tighten up the time for any

18   other remand orders, if people start to think this through and

19   think that they might have some opportunity to remand.  Any

20   such motions are to be filed by February 6th.  And I appreciate

21   being advised as quickly as possible concerning that, at least

22   with the Huskic case to see if we have to get worked up about

23   that.

24               I am going to use consolidation here.  It's really

25   more to make sure that we've got the papers being received in a

Page 24

1    way that doesn't tie down the Clerk's Office.  I view

2    consolidation as being highly flexible.  What I'm going to be

3    doing is consolidating all of the cases under the Dearman case

4    simply because I think that's the first filed of the cases.

5              To the degree that the parties want to separately

6    file some matter arising out of their case, they will file

7    under the MDL and the lead case number, which is 05-11177, and

8    they will identify their separate case and we can keep track of

9    it.  But I want everything to be filed really in the MDL case.

10   And, so, there will be a consolidation.  What you will see is

11   that all the cases except Dearman are going to be terminated,

12   but that's an issue for docketing.  It's not that the cases are

13   going away.  But there will be that form of dealing with that.

14             With respect to the New Jersey cases, do you expect

15   them to be refiled, Mr. Wolkoff?  Do you know what's going to

16   happen?

17             MR. WOLKOFF:  The present status, Your Honor, is

18   that they have been refiled pending a Judge's determination on

19   whether or not he's going to permit them.  They have been

20   served.  And now the issue is joined before the court.

21             THE COURT:  They have been served?

22             MR. WOLKOFF:  The two cases -- the complaints have

23   now been properly served, I believe, upon Gillette.  And the

24   issue now before the Judge in the New Jersey Superior Court,

25   Your Honor, is whether or not he will allow the case to go

Page 25

1    forward.  And then there will be an issue as to whether or not

2    Gillette removes the cases again to the federal court.

3              THE COURT:  What's your intention if it's permitted

4    to go forward?  I just want to understand who else is coming to

5    dinner.

6              MR. WOLKOFF:  Right now, Harvey Wolkoff's

7    intention, Your Honor, on behalf of Gillette is to probably try

8    to remove and try to get those cases transferred.

9              THE COURT:  Is the time period simply dependent on

10   the willingness of the Bergen County Court to permit the case

11   to go forward in light of the alleged untimeliness of the

12   service?

13             MR. WOLKOFF:  It's dependent upon the Bergen County

14   Court's decision on whether or not to allow the case to go

15   forward.  Yes.

16             THE COURT:  Okay.  So, is there something unusual

17   about those cases, unusual in the sense of something different,

18   some new addition to the mix.

19             MR. WOLKOFF:  Apart from the fact that they are in

20   New Jersey, no, Your Honor.  That's it.  I think they state the

21   same type of claim about raising hair up and away from the

22   face.  I think that's asserted here and it's on behalf of --

23   and my colleague, Mr. Szpak, reminds me that actually we're

24   checking to make sure that the service is proper.  I stated

25   before that it was.  We think it was, but we are checking.

Page 26

1      THE COURT:  All right.  Well, they're welcome if

2  they ever get here, I guess is the way I look at it.  I

3  appreciate being advised of it.

4      Turning to the question of -- let me be sure that

5  I'm -- because I know there are more specific matters in the

6  Adoure and Corrales cases.  You will stop me if I haven't

7  addressed your issues here.

8      MR. STRENIO:  Your Honor, just for the record, we

9  do object to consolidation.

10      THE COURT:  All right.  Okay.  I think I have

11  spoken to the idea that I'm presently of the view that there

12  will be a consolidated complaint in this case.  The timing of

13  that consolidated complaint is probably going to be within 30

14  days of the determination of lead liaison interim class counsel

15  here.  And 30 days to respond seems to me to be appropriate.

16      Now, we have this time period that I've had further

17  insight about concerning the initial disclosure, which I

18  understand, Mr. Shapiro, in any event, your view was that that

19  would incorporate the Schick materials; is that right?

20      MR. SHAPIRO:  I would think so, Your Honor.

21      THE COURT:  Okay.  And I do, too.  Is there an

22  issue about that that we haven't discussed so far?

23      MR. WOLKOFF:  We have no issue with regard to that,

24  Your Honor, subject to a motion that there are privileged

25  materials that --

Page 27

1            THE COURT:  Right.  And I'm not looking forward to

2      the opportunity to do shadow motion practice, discovery motion

3      practice for the District of Connecticut.  I will assume that

4      you have got a pretty clear idea of what it is that you need to

5      turn over here.  If you're withholding things for purposes of

6      -- that are relevant for initial disclosure, broadly conceived,

7      that deal with the question of privilege, you will have a

8      privilege log.

9            MR. WOLKOFF:  Yes, Your Honor.

10           THE COURT:  And here, we're now, at the minimum,

11     dealing with 40 days out from the day of the next conference in

12     this case which I anticipate will resolve the question of

13     interim counsel.

14           There has been this talk about -- that I see in the

15     Adoure responses about timing for class certification

16     discovery.  What really is the problem here?  Is there

17     anything?  I mean, 60 days seems okay.  You have got this other

18     stuff going on.  You've got your initial disclosure and all of

19     that.  But --

20           MR. KANNER:  Right.  We had suggested, one, that

21     disclosure should not wait on the consolidation -- in the event

22     that you asked for a consolidated complaint --

23           THE COURT:  I have and it will.  So, now what

24     else?

25           MR. KANNER:  Oh, you did ask for it.  And at that

1    point, I don't have a problem with class discovery, except to

2    the extent that the defendants are going to say that that in

3    some sense stays or prioritizes or shuts down merits

4    discovery.

5              THE COURT:  I don't read this proposal in that

6    fashion.  What I read it to say is that these are keyed off of

7    the time period from initial disclosure; that within 60 days,

8    there will be completion of the class certification disclosure;

9    within six months, there will be completion of the fact

10   discovery.

11             MR. KANNER:  As long as we all share that

12   understanding, I'm fine.

13             THE COURT:  Is there any dispute about that?

14             MR. WOLKOFF:  Not that I know of, Your Honor.

15             THE COURT:  Okay.  So we all do.

16             MR. BARNOW:  Your Honor, respectfully, the people

17   that we discussed it with felt that 90 days would be more

18   realistic.

19             THE COURT:  Ninety days for class discovery?

20             MR. BARNOW:  Yes.

21             THE COURT:  Why?

22             MR. BARNOW:  Well, just based upon other cases and

23   the frankness objections, et cetera.  We can live with the 60

24   if the Court tells us it's appropriate  We just raise the issue

25   of 90 days for the Court's consideration.

Page 29

```
 1                THE COURT:  Is there something about this case that
 2    says that 90 days is something that we should be doing?
 3                MR. BARNOW:  That's a hard question to answer.  I
 4    mean, obviously a lot of consumer cases are very similar to
 5    this degree.  What is it about this case, obviously, is they
 6    have very qualified defense counsel -- and I say that in a
 7    complimentary sense -- and there's a lot of stuff that can be
 8    thrown in the wave of plaintiffs' resolve.  Obviously, if --
 9                THE COURT:  In the way of -- thrown in the way of
10    plaintiffs' resolve; is that what you say?
11                MR. BARNOW:  Yes, in motions, whether or not
12    privilege or not privileged.  But obviously those can be dealt
13    with in terms of further motions.
14                THE COURT:  If that rises, I'll deal with it.
15                MR. BARNOW:  I agree.  And we only suggest the 90
16    days for the Court's consideration.
17                THE COURT:  I think I'd just like to start chugging
18    along.
19                MR. BARNOW:  No.  We agree.  And the 90 days was
20    not suggested contrary to that.  Frankly, in view of the
21    Court's other comments here today, we think that 60 days fits
22    that pattern and we could sign on with that.
23                THE COURT:  I think the parties should understand
24    that the high point in my life is not motion practice, at least
25    non-dispositive motion practice.  And whenever I encounter it,
```

Page 30

1    I'm always surprised and then find that there really isn't very

2    much to it.  So, adult lawyers, I think, are able to decide

3    what things are really important to pursue by means of

4    practice.  The first mistake in this regard will be mine.  The

5    second will be counsel's.

6            So, you will, I think, organize yourselves around a

7    meaningful way of approaching discovery that doesn't require

8    intervention of the Court.

9            MR. BARNOW:  Your Honor, not only have I heard

10   these words here, but I heard the Court's earlier words.  And I

11   believe that they went a long way to resolving my concerns that

12   motions that would have to be brought in front of you might

13   come about -- I now feel -- will not be brought about.  So, 60

14   days is fine for that.

15           THE COURT:  Okay.  So we're going to be talking

16   about 60 days for class discovery and six months from the date

17   of initial disclosure for fact discovery.

18           With respect to experts, you know, I see the

19   concern, I think, expressed here about simultaneous exchange.

20   But my own view on this is that the best way to deal with this

21   is that the parties who bear the burden as to any matter as to

22   which there is expert disclosure should be the parties that go

23   first and then the response of a rebuttal expert report can be

24   filed thereafter.  And, so, I'm likely to use that 45-day

25   period, but not plaintiff/defendant, but more along the lines

DEARMAN, ET AL V. GILLETTE>

Page 31

1  of who bears the burden of that.  And, so, these outlines seem

2  to me to be okay.

3            The class certification briefing, that is 30 days

4  after the close of class certification.

5            Discovery seems right.  Why 45 days for responses

6  from the defendants?

7            MR. WOLKOFF:  Frankly, Your Honor, we were

8  contemplating that it would be Gillette that would be filing

9  the motion for summary judgment.

10           THE COURT:  No, no.  This is class certification.

11           MR. WOLKOFF:  Oh, class certification.  I'm sorry.

12           THE COURT:  They file no later than 30 days after

13  the conclusion of class certification, which is three months

14  in.  And then you said you wanted 45 days.  I just --

15           MR. WOLKOFF:  Well, we can do it in 30, Your

16  Honor.  I don't know.  I can't recollect honestly why we put

17  45.

18           THE COURT:  Yes.  I mean, the standard under our

19  rules is 14, but --

20           MR. WOLKOFF:  We'd be agreeable to 30, Your Honor.

21           THE COURT:  Okay.  So it's likely to be 30 days

22  there and any reply, assuming that a reply is necessary -- let

23  me just mention that the purpose of a reply is to deal with

24  something that could not reasonably have been anticipated in

25  the initial briefing.  There is a phrase that the late Paul

Page 32

1    Freund used to use to describe those lawyers most feared by

2    Judges.  And it is the lawyer who knows how to spell "banana"

3    but doesn't know when to stop.  If the reply brief is just more

4    of the same, then I don't want to see it.  So, I just raise it.

5            MR. SHAPIRO:  If I could speak to that, I'm sure

6    Your Honor has seen it in some of the class cases I have had

7    before Your Honor.  We think there's pretty much a prima facie

8    case for class certification in a case like this.  And the

9    opening brief usually does sort of address the requirements of

10   the rule in a formal sense.  And typically, if there's a real

11   issue on class certification, it's raised by defendants

12   challenging a particular plaintiff.  But coming up with novel

13   theories, that's why the reply is usually more substantive.

14           THE COURT:  I'm leaving the reply in there.

15           MR. SHAPIRO:  Okay.

16           THE COURT:  But I'm going to say 15 days for the

17   reply and I'm encouraging the idea that it should be something

18   that could not reasonably have been anticipated in a motion and

19   memoranda for class classification.

20           MR. SHAPIRO:  And the reason for the 20 days is

21   that usually the issue is raised for the first time by the

22   defendants in their opposition.

23           THE COURT:  All right.  But I think that 15 days is

24   enough to get to it.  That way, it conduces to brevity, I

25   think.

Page 33

1           MR. SHAPIRO:  Except if we're going to have

2    combined briefs, we may be dealing with class certification

3    under 50 different states and 50 different issues will have to

4    be raised.

5           THE COURT:  Maybe.  And then you can ask for an

6    extension.

7           MR. SHAPIRO:  Okay.

8           THE COURT:  But with realistic ideal with prospects

9    of success.

10          Now, back to dispositive motions, those are 30 days

11   after expert discovery.  Do we have to have it 30 days after

12   expert discovery?  Why do we wait for expert discovery?  I

13   don't even know what expert discovery is here.  What is it

14   likely to be?

15          MR. SHAPIRO:  That's defendant's issue, Your

16   Honor.  That's what they asked for and we agreed to it for

17   purposes of --

18          THE COURT:  What's the expert discovery likely to

19   be?

20          MR. WOLKOFF:  Well, the expert discovery, Your

21   Honor, is going to be in support of the advertisements, whether

22   or not the M3 Power Razor does raise the hair up and away, at

23   least does it raise the hair away from the face, perhaps maybe

24   not up and away, but raise it away.  There might be some expert

25   discovery on -- there's a consumer case.  It's one of the

Page 34

1    reasons why it's different from the Schick Lanham Act case.

2    If, in fact, the razor doesn't -- we believe it does.

3            THE COURT:  So this is a follicle expert; is that

4    what --

5            MR. WOLKOFF:  It could be, Your Honor.  It could

6    also be someone who testified about a market survey, for

7    example, that whether the razor does raise the hair up and

8    away, it does give the best shave, it gives a satisfactory

9    shave, it gives consumers what they are looking for.

10            THE COURT:  So I guess I understand that.  So, 30

11    days after the close of expert discovery seems ripe for summary

12    judgment motions.

13            Here again, opposing summary judgment motions by

14    the parties, I want 30 days for that.

15            MR. KANNER:  Your Honor --

16            THE COURT:  Yes.

17            MR. KANNER:  -- if we feel we have a dispositive

18    motion that we want to file before the completion of expert

19    discovery, may we do that?

20            THE COURT:  Yes.  But let me outline my structure

21    for you.  When I say dispositive motion, it really has to be

22    something that drives a stake in the heart of the case.  You

23    know, something that rips off a part of a finger doesn't do it

24    for me unless it makes some difference in the way in which the

25    case develops.  I really would like to keep dispositive motion

DEARMAN, ET AL V. GILLETTE>

Page 35

1    practice focused on the end of the case.  But if there is

2    something there that somebody thinks can really do a number on

3    changing the balance of advantage substantially as opposed to

4    just diverting people to deal with one aspect of something that

5    was going to be taken up in any event at the end, then you file

6    it.  I'm just suggesting that this is the way -- this is the

7    structure that we're going to deal with.  And I'll look very

8    carefully at a dispositive motion like that to see whether it

9    makes very much difference.  And if I don't think it makes very

10   much difference, it may well be denied without prejudice to

11   being refiled at a later point.  It may be you want to file

12   things twice.  Maybe you don't.

13            MR. KANNER:  Thank you very much.  That's an

14   example of we're agreeing we're going to have an addition to

15   Adoure that's a little different.

16            THE COURT:  I'm sorry.  An addition to Adoure?

17            MR. KANNER:  Yes.

18            MR. STRENIO:  And, Your Honor, if I may, also, with

19   respect to the issue of expert discovery, since we mentioned

20   the initial disclosure of all the discovery that's been done in

21   Schick, that disclosure and that discovery has included expert

22   testimony, expert depositions not only in the Schick case, but

23   also in previous cases in Germany, Australia.  That expert

24   discovery should be disclosed to us initially now.

25            THE COURT:  I mean, what I said is anything that's

Page 36

```
 1    relevant to this case.

 2              MR. STRENIO:  Thank you.

 3              THE COURT:  I mean, if it's some peculiarity in

 4    Australia or Germany, I suspect it won't be disclosed to you.

 5              MR. STRENIO:  Their experts, as Gillette's counsel

 6    has stated, discussing the issue of whether or not the M3 Power

 7    Razor raises the hair away from the skin, that that expert

 8    discovery should be produced now.

 9              THE COURT:  Okay.

10              MR. KANNER:  Your Honor, relating to discovery and

11    maybe hopping back to settlement for a second, the defendant --

12    it's my understanding -- has shared some financial marketing

13    information with some plaintiffs, but not all plaintiffs.  We

14    requested access to that information as well.  And we would

15    just ask that anything that is being shared with one of the

16    counsel or two or three of the counsel be shared with everybody

17    under the same terms and conditions in the interim.

18              THE COURT:  Any objection to that?

19              MR. WOLKOFF:  Well, the only reason why it hasn't

20    been shared yet is, Your Honor, we were going through

21    variations on the confidentiality agreement with different

22    parties.  And, so, what we wound up saying was, "look, we're

23    going to have a conference in a short time."  "Lead counsel" --

24    we thought the motion would be on today -- "will be appointed

25    and we'll produce it promptly thereafter."  So, it really was
```

Page 37

1    dependent upon the --

2              THE COURT:  Okay.  Well, I think in terms of just

3    orderliness in this, I think it does have to wait until lead

4    counsel.  If they are making special arrangements with one or

5    another of the parties or this plays into settlement, that's

6    their business.  It will get organized with the identification

7    of lead counsel for this kind of thing.

8              Now, turning to the question of reply here for

9    dispositive motions, I see you have got 20 days.  And I guess

10   showing my generosity of the spirit, I'll make it 20 days for

11   class certification, again having in mind sometimes it's not

12   necessary to have a reply brief.  Frequently, it's not

13   necessary.

14             Pretrial conference, I'll deal with at a later

15   point.

16             This question of simply being a member of the

17   highest court of the state, there was some reference to MDL

18   practice in this.  Is there an MDL rule on that?  The reason I

19   ask is it's not too much to ask that somebody who appears pro

20   hac vice be familiar with the rules of this Court.  And, so, I

21   don't know why I have to have a special rule regarding counsel

22   in this case.  Is there some reason?

23        (No response from counsel)

24             THE COURT:  Okay.  So I'm not going to make some

25   special rule.  If you want to be pro hac vice, you have got to

Page 38

1   comply with our rules with respect to pro hac vice lawyers.

2   Similarly, obviously, this is an electronic case filing matter.

3              MR. KANNER:  Your Honor, there is a panel rule,

4   1.4, that says attorneys should be admitted as a matter of

5   course.

6              THE COURT:  And the course, I think, is to satisfy

7   me that you know the rules of this Court and you pay the fee.

8   So, I don't see any reason why there should be any departure

9   from that.  That seems to be in due course unless there's

10  something I'm missing.

11             MR. STRENIO:  Your Honor, the rule actually says

12  any attorney that's admitted in the original jurisdiction and

13  transferred to your jurisdiction is deemed automatically

14  admitted in the transferree jurisdiction.  We have paid our

15  fees, but the fees aren't contingent.  I mean, payment of

16  fees -- that's in the rule -- isn't a contingency to us being

17  deemed automatically admitted.

18             THE COURT:  But, you know, the only other thing You

19  have to do is say that you know the rules of this court.

20             MR. STRENIO:  We do.

21             THE COURT:  Oh, well then that will be easy for

22  you.  So the short of it is that unless there's some real

23  reason for me to say that I am going to suspend the rule of

24  this Court, which in the ordinary course permits lawyers from

25  any jurisdiction to appear who meet some minimum competence

Page 39

```
 1    level or simply assert that they've met the competence level.

 2    I don't test you, at least initially, on your familiarity with

 3    the rules of this court.  Then I'm likely to impose that.  It

 4    also ties into -- as Ms. Rynne reminds me, this also ties into

 5    the CM/ECF system, because the allowance of a formal motion is

 6    what triggers giving you passwords and that sort of thing.  And

 7    I simply -- unless you've got something else that's bothersome

 8    to you about that, I really want to hold to that.  All right.

 9              Now, are there any other matters that we need to

10    speak to in this case?

11              MR. DODD:  Your Honor, on this pro hac vice issue

12    and MDL -- and I may need retraining on the ignorance of local

13    rules.  But usually there's a requirement that local counsel

14    sign on when you're applying for pro hac vice.  And I think

15    that's why the MDL rules provide that if you're in another case

16    that is being consolidated for multi-district litigation, that

17    you're automatically in it.  I guess you still have to pay the

18    fee, submit an application, but you don't necessarily have to

19    have a local counsel sign onto your application.

20              THE COURT:  Well, you're testing my recollection.

21    I know we had some discussion about this when we were

22    redrafting the rules to try to minimize the problem of that --

23    that is, requiring somebody to have jurisdiction.  And I'm just

24    trying to quickly --

25              MR. WOLKOFF:  I could be mistaken, Your Honor, but
```

Page 40

1    I don't think our local rules require local counsel.

2                THE COURT:  They do.

3                MR. SHAPIRO:  The local rules --

4                THE COURT:  This is the first test, by the way, of

5    familiarity with local rules.

6                MR. SHAPIRO:  I believe the local rules do require

7    local counsel.  Now whether MDL is different, I don't know,

8    Your Honor.

9                THE COURT:  Right.  Well, again, as an act of

10   grace, you don't have to have local counsel.

11               MR. DODD:  Thank you, Your Honor.

12               THE COURT:  But you do have to be familiar with the

13   local rules.

14               MR. DODD:  Well, we'll pay our 50 bucks.

15               THE COURT:  Okay.  Certainly that as well.

16               MR. STRENIO:  Your Honor, to the extent that we've

17   had any filings before the Court has indicated that we must

18   file the fees, although we have, is our pro hac vice deemed

19   nunc pro tunc to the date that we filed our first papers in

20   this Court?

21               THE COURT:  Sure, if it's allowed.

22               MR. STRENIO:  Thank you.

23               THE COURT:  All right.  Okay.  Are there other

24   things that we need to take up now?

25        (No response from counsel)

Page 41

```
 1              THE COURT:  All right.  So we've got a schedule.  I

 2   think as a kind of first order of business that the structure

 3   that I have given to this order can be submitted.  You know

 4   what's happening.  It should be part of the first pretrial

 5   order submitted by the parties.  When we come here the next

 6   time, we will fill in the blanks regarding that.  But at least

 7   there ought to be sufficient cooperation to do that much in

 8   this case to get you going.

 9              MR. SHAPIRO:  I'm sorry.  You said you'd like us to

10   prepare an order reflecting what happened today?

11              THE COURT:  Yes.  All of the parties can do that.

12   And that's the beginning of your pretrial order because that's

13   the first thing that I'm going to want to enter apart from

14   identification of interim liaison lead counsel.

15              MR. WOLKOFF:  We can take the lead on preparing

16   that, Your Honor --

17              THE COURT:  Yes.

18              MR. WOLKOFF:  -- certainly amongst the other side.

19              THE COURT:  Okay.  All right.  So if there is

20   nothing further, then I'll see you, I guess, on the 6th.

21              MR. SHAPIRO:  Yes.

22              THE COURT:  Thank you very much.

23

24              RECESSED AT 3:30 P.M.

25
```

Page 42

1

2

3                          CERTIFICATION

4

5          I certify that the foregoing is a correct

6     transcript of the record of proceedings in the above-entitled

7     matter to the best of my skill and ability.

8

9

10

11     _____     _____

12     Pamela R. Owens                      Date

13     Official Court Reporter

14

15

16

17

18

19

20

21

22

23

24

25

DEARMAN, ET AL V. GILLETTE>

Page 43

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re:<br>DPW<br>M3POWER RAZOR SYSTEM<br>MARKETING & SALES PRACTICES<br>LITIGATION | CIVIL ACTION NO. 05-11177-<br><br>(LEAD CASE)<br><br>MDL Docket No. 1704 |
| THIS DOCUMENT RELATES TO:<br>**ALL CASES** | |

## [PROPOSED] SCHEDULING ORDER

WHEREAS, a Scheduling Conference having been held on January 23, 2006, the following ORDER is hereby set:

1.     **Motions to Remand.**  Any motions to remand shall be filed by no later than February 6, 2006.

2.     **Filing of Consolidated Complaint.**  Plaintiffs shall file their consolidated Amended Complaint within 30 days of the Court's determination pursuant to Fed.R.Civ.P. 23(g) or otherwise regarding the organizational structure of Plaintiffs' counsel.

3.     **Response to Consolidated Complaint.**  Defendant shall file its responsive pleading to the Consolidate Complaint within 30 days of its filing.

4.     **Disclosures Pursuant to Fed. R.Civ.P. 26(a)(1).**  Plaintiffs shall make the disclosures set forth in Fed.R.Civ.P. 26(a)(1) within 10 days after the filing of the Consolidated Complaint.  Defendant shall make its disclosures set forth in Fed.R.Civ.P. 26(a)(1) by February 22, 2006.  Defendant's initial disclosures pursuant to Fed.R.Civ.P.

26(a)(1) shall include, without limitation, any relevant discovery that has been previously produced in any *Schick* proceeding relating to the M3Power Razor, including, without limitation, the *Schick* proceedings in the District of Connecticut, Germany, and Australia. Defendant shall provide to Plaintiffs on February 22, 2006 a log identifying any and all documents or portion of documents withheld as not relevant or privileged.

5. **Class Certification Discovery.** This phase of discovery commences with, and shall be completed by no later than 60 days after, the exchange of the parties' initial disclosures pursuant to Fed.R.Civ.P. 26(a)(1).

6. **Fact Discovery.** This phase of discovery commences with, and shall be completed by no later than six months from, the exchange of the parties' initial disclosures pursuant to Fed.R.Civ.P. 26(a)(1). Fact discovery may proceed at the same time as class certification discovery; class certification and fact (merits) discovery are not bifurcated.

7. **Expert Discovery**.

a. The Expert Report(s) of the party bearing the burden of proof on the issue to which any such report pertains shall be served within 45 days of the close of fact discovery.

b. The Expert Report(s) of the party not bearing the burden of proof on the issue to which the report described in paragraph 7.a. above pertains shall be served within 45 days thereafter.

c. Rebuttal Reports from either party shall be served within 21 days thereafter.

d. Expert Discovery shall conclude 45 days after the date rebuttal

reports are due.

8.     **Class Certification Briefing**.

a.     Plaintiffs' Motion for Class Certification shall be filed by no later than 30 days after the close of class certification discovery.

b.     Defendant's response shall be due within 30 days of the date Plaintiffs' motion is filed.

c.     Plaintiffs shall file their reply brief within 20 days of Defendant's response.

9.     **Dispositive Motions**.

a.     Motions for Summary Judgment shall be filed by 30 days after the close of Expert Discovery.

b.     A party opposing any motion for summary judgment shall have 30 days to file an opposition to said motion.

c.     Any reply brief shall be due within 20 days after the filing of the response.

10.     **Final Pretrial Conference.**  A final pre-trial conference and trial date shall be determined by the Court, as appropriate under relevant law, at a later time.

SO ORDERED.

_____
Douglas P. Woodlock
United States District Judge

Dated:  _____

THE KICK LAW FIRM

A PROFESSIONAL CORPORATION

660 SOUTH FIGUEROA STREET, SUITE 1800
LOS ANGELES, CALIFORNIA 90017
213 624 1588 / FAX 213 624 1589

August 17, 2005



**Via U.S. Mail & Fax (310) 228-3701**
Kent Raygor, Esquire
Sheppard Mullin Richter & Hampton, LLP
1901 Avenue of the Stars
Los Angeles, CA 90067-6017

> Re:  *Corrales v. The Gillette Company, et al.,*
>      **U.S. District Court, C.D. Cal., Case No. CV05-4116 DDP (FMOx)**

Dear Kent:

At the hearing in front of Judge Pregerson this Monday, August 22, 2005, would you be so kind as to provide to me a copy of the discovery responses from the *Schick* case in federal court in Connecticut in front of Judge Janet C. Hall (U.S.D.C. Case No. 05CV174(JCH))?

Regardless of Judge Pregerson's ruling on the motion to stay, this will allow us to determine whether we need to conduct any discovery in our case, and if so, to draft discovery which will not duplicate the discovery already conducted in the Connecticut case. It will also allow us to comply with Rule 26(f)'s requirement of proceeding "as soon as practicable."

We will be happy to sign off on any protective order issued by Judge Hall related to that discovery.

Thank you for your attention.

Very truly yours,

Taras Kick

cc: Allan Kanner, Esquire, By Facsimile to (504)524-5763

# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

_____

|  |  |  |
|---|---|---|
| | ) | |
| In re: | ) | CIVIL ACTION NO. 05-11177-DPW |
| | ) | (LEAD CASE) |
| M3POWER RAZOR SYSTEM | ) | |
| MARKETING & SALES PRACTICES | ) | MDL Docket No. 1704 |
| LITIGATION | ) | |
| _____ | ) | |
| | ) | |
| THIS DOCUMENT RELATES TO: | ) | |
| **ALL CASES** | ) | |
| _____ | ) | |

## PLAINTIFFS' OBJECTIONS TO DEFENDANT'S PROPOSED SCHEDULING ORDER

## I.    INTRODUCTION.

Plaintiffs David Atkins, Carlos Corrales, Kasem Adoure, Luis Gonzalez, Robert Falkner,

and Michael Pruitt ("Plaintiffs") hereby object to the proposed scheduling order lodged by The

Gillette Company ("Defendant") and hereby respectfully request that this Court approve and

enter a Scheduling Order in the form attached as Exhibit J hereto.  (For the Court's convenience,

a copy of the final transcript of the proceedings held by this Court on January 23, 2006, filed on

February 6, 2006, is attached hereto as Exhibit I.)

While Defendant has, through the four iterations,  incrementally incorporated several of

Plaintiffs' comments made for the first time on January 25,[1] Defendant's proposed order is still

_____

[1]    On January 25, Defendant circulated its original iteration of the proposed
scheduling order (Exhibit A hereto).  Plaintiffs Kasem Adoure and Carlos Corrales provided their
comments to Defendant later that day.  (Exhibit B hereto.)  On January 26, Defendant then
circulated its second iteration of the proposed order (Exhibit C (redline version) hereto).  On
January 30, after receiving the draft transcript of the January 23 proceedings, Defendant sent an
email to counsel for plaintiffs stating that its second iteration is consistent with the transcript.
(Exhibit D hereto.)  Counsel for some of the other plaintiffs found this second iteration

deficient with respect to discovery:

   **(1)**    delaying disclosure from Feb 22 to mid-April;

   **(2)**    building in possible additional delay by conditioning disclosure on "an appropriate protective order" being entered;

   **(3)**    not including in the disclosure discovery produced by persons other than Gillette in the *Schick* actions, such as Schick and third-parties;

   **(4)**    limiting disclosure to only discovery in the *Schick* actions in Connecticut, Germany, and Australia;

   **(5)**    not including a privilege log in its disclosure;  and

   **(6)**    not incorporating the Court's ruling that class certification and merits discovery will not be bifurcated.

Each of these six objections are discussed below.

   In light of these objections, Plaintiffs respectfully request the Court to enter the proposed

order in the form attached hereto as Exhibit J, which differs from Defendant's proposed order in

two respects:

   **(i)**    *Paragraph 4 is revised to read as follows*:  "Plaintiffs shall make the disclosures set forth in Fed.R.Civ.P. 26(a)(1) within 10 days after the filing of the Consolidated Complaint.  Defendant shall make its disclosures set forth in Fed.R.Civ.P. 26(a)(1) by February 22, 2006.  Defendant's initial disclosures pursuant to Fed.R.Civ.P. 26(a)(1) shall include, without limitation, any relevant discovery that has been previously produced in any *Schick* proceeding relating to the M3Power Razor, including, without limitation, the *Schick* proceedings in the District of Connecticut, Germany, and Australia.  Defendant shall provide to

---

acceptable to them (Exhibit E hereto), but Plaintiffs' counsel did not.  After Plaintiffs and other plaintiffs indicated that they still had objections to the proposed order, Defendant, on February 3, circulated its third iteration (Exhibit F (redlined version) hereto).  Counsel for some of the other plaintiffs found this third iteration acceptable to them.  Plaintiffs did not and so informed Defendant.  (Exhibit G hereto).  On February 6, Defendant, after having made additional revisions, circulated to the plaintiffs its fourth and "final" iteration of the proposed scheduling order, which it has now lodged with this Court.  (Exhibit H (redlined version) hereto.)

Plaintiffs on February 22, 2006 a log identifying any and all documents or portion of documents withheld as not relevant or privileged."[2]

**(ii)** *Added to Paragraph 6 is the following sentence*: "Fact discovery may proceed at the same time as class certification discovery; class certification and fact (merits) discovery are not bifurcated."

Instead of addressing Plaintiffs' objections head-on, Defendant takes comfort in the fact that many other plaintiffs no longer object to its proposed scheduling order.

But, first, and foremost, counsel for some or even most of the plaintiffs cannot, through agreement with Defendant, veto the Court's orders. Because Defendant's proposed scheduling order still does not fully and accurately reflect the Court's orders, Plaintiffs continue to seek amendments thereto.

Second, Defendant's statement – that plaintiffs' counsel for "21 of [the] 25" cases do not object – is misleading because many counsel have filed more than one case. A more accurate picture emerges by excluding, for purposes of counting cases, the case(s) subsequently filed by counsel who previously filed a case. So counting the 25 cases results in a total of 17 cases.[3] Plaintiffs' counsel in five (5) of this 17 – **approximately one-third (1/3) of the cases** – object to

---

[2] Paragraph 4 of Defendant's proposed order currently reads as follows: "The Parties shall make the disclosures set forth in Fed.R.Civ.P. 26(a)(1) within 10 days after the filing of the Consolidated Complaint. Defendant's initial disclosures pursuant to Fed.R.Civ.P. 26(a)(1) shall include, without limitation, any relevant discovery that it has previously produced in the Schick litigations in the District of Connecticut, Germany, and Australia, provided that an appropriate protective order has been entered as of the time for such initial disclosures. Gillette shall be obliged to provide a log identifying any documents withheld as not relevant or privileged."

[3] (1) *Atkins*; (2) *Moore* and *Jackson*; (3) *Dearman/Debiseglia* and *Tunon/Kline*; (4) *Corrales* and *Adoure;* (5) *Gonzalez*; (6) *Windom* and *Geis*; (7) *Marr*; (8) *Lipper*; (9) *Gorea* and *Adkison;* (10) *Kennesky/Meyers* and *Saunders/Fisher/Fellersen/Herbstman*; (11) *Coleman*; (12) *Huskic* and *Besinger/Zavala*; (13) *McGeary*; (14) *Rosenthal* and *McGlynn*; (15) *Johnson/ Hirsch/Friedman*; (16) *Pruitt;* and (17) *Falkner*.

**Objections to Proposed Scheduling Order**

3

Defendant's proposed scheduling order:  (1) *Atkins*;  (2) *Corrales* and *Adoure;*  (3) *Gonzalez*;  (4) *Pruitt*;  and (5) *Falkner*.  Thus, there is actually twice as much support for the objections than the impression of support, created by Defendant's double-counting of cases filed by the same counsel, of plaintiffs' counsel in less than 1/6th (4 of 25) of the cases.[4]

Third, it has been Plaintiffs' counsel who have been championing the inclusion of the Schick discovery in an early initial disclosure, as the Court will recall from the January 23 Scheduling Conference.  Indeed, Plaintiffs' counsel have been attempting to obtain this Schick discovery as far back as six months ago, when, on ***August 17, 2005***, Plaintiffs' counsel in the *Corrales* case wrote to Defendant's counsel:

> "At the hearing in front of Judge Pregerson this Monday, August 22, 2005, would you be so kind as to provide to me a copy of the discovery responses from the *Schick* case in federal court in Connecticut in front of Judge Janet C. Hall (U.S.D.C. Case No. 05CV174(JCH))?
>
> Regardless of Judge Pregerson's ruling on the motion to stay, this will allow us to determine whether we need to conduct any discovery in our case, and if so, to draft discovery which will not duplicate the discovery already conducted in the Connecticut case.  It will also allow us to comply with Rule 26(f)'s requirement of proceeding `as soon as practicable.'
>
> We will be happy to sign off on any protective order issued by Judge Hall related to that discovery."

(Letter dated August 17, 2005 from Taras Kick to Kent Raygor, attached hereto as Exhibit K.)

---

[4]  Defendant also errs by failing to count plaintiffs' counsel in the *Atkins* and *Falkner* cases as still objecting.

**Objections to Proposed Scheduling Order**

## II.    OBJECTIONS

### (1)    Defendant's proposed order delays Defendant's initial Rule 26 disclosure from February 22 to mid-April.

This Court ordered Defendant to make its initial disclosures within 30 days of the January 23, 2006 Scheduling Conference, *i.e.*, by February 22.  As the Electronic Clerk's Notes reflect: "Gillette shall turn over CD (Schick case discovery) within 30 days."

Nonetheless, Defendant's proposed order delays Defendant's initial disclosures for almost 90 days, to mid-April (10 days after the filing of the Consolidated Complaint, which is scheduled for 30 days after the determination of plaintiffs' organizational structure, which is scheduled for around March 6).

No good reason exists for this additional delay.  (Transcript at 17:25 - 18:2 ("MR. WOLKOFF: Well, Your Honor, we would need 30 days to be able to review the CDs and pull out anything that is privileged").)

Indeed, Defendant has known for at least six months that it will be called upon to produce the Schick discovery in these actions.  (Exhibit K.)  And, of course, there is no need to wait for the determination of plaintiffs' organizational structure because all the plaintiffs' counsel are entitled to receive the discovery.  This is especially true for those whose cases were filed in courts outside Massachusetts and therefore will be tried, pursuant to the United States Supreme Court's decision of <u>Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach</u>, 523 U.S. 26, 28 (1998), in those original (transferor) courts. (Transcript at 13:2 - 4 ("MR. KANNER:  Under, for example, Lexicon [sic], you're only going to try cases that started here.  THE COURT:  Right.")

**(2)    Defendant's proposed order builds in possible additional delay by conditioning disclosure on "an appropriate protective order" being entered.**

Defendant's proposed order unilaterally conditions its initial disclosures on an "appropriate protective order" having been entered by that time.

Plaintiffs cannot help but to point out the obvious:  a protective order – to cover discovery already shared between two companies (Gillette and Schick) that compete head-to-head in the men's systems razor and blade market, with Gillette holding about 90% of the dollar share of that market and with Schick holding about 10% – seems counter-intuitive.  The purpose of a protective order is to prevent a competitor from discovering confidential information, *e.g.*, trade secrets.  Here, the discovery in the Schick actions has been between the two competitors in the market.

Plaintiffs are nonetheless not opposed to entering into a protective order.  But, Plaintiffs are opposed to conditioning Defendant's initial disclosures on "an appropriate protective order" having been entered at that time.  Plaintiffs view this condition unilaterally imposed by Defendant as an attempt to create a hatch for it to escape from making its initial disclosures by the date ordered by this Court.

As this Court readily recognized, a protective order has already been entered in the *Schick* action and there is no reason why the plaintiffs here cannot enter into the same protective order:

> "THE COURT:  Why are there confidentiality agreements particular to Schick?  Schick gets to look at this stuff under the protective order because you're concerned about trade secrets being disseminated.  ***Why doesn't the same protective order apply to these plaintiffs?***
>
> MR. WOLKOFF:  Well, frankly, Your Honor, there are documents that are highly proprietary and have no bearing whatsoever on this case relating to Schick's market

share, Gillette's market share, competitive posturing vis-a-vis each other.  Other products are on –

THE COURT:  Okay. So, make a motion for privilege – to privilege certain of these documents if that's what they are.  Presumably, the ones that are covered by a protective order have already been preliminarily identified."

(Transcript at 16:14 - 17:2 (emphasis added).)

Defendant, however, has still not circulated that protective order to the plaintiffs' counsel to allow them to enter into it.  Each of the plaintiffs are entitled to receive the initial disclosures, especially those whose cases will be tried, under <u>Lexicon</u>, in the transferor courts.  What is Defendant waiting for?

> **(3)    Defendant's proposed order does not include in the disclosure discovery produced by persons other than Gillette in the Schick actions, such as Schick and third-parties.**

Defendant's proposed order excludes from its initial disclosures discovery produced by persons other than Gillette in the Schick actions, such as Schick and third-parties.

Yet, that discovery is also relevant to the plaintiffs' cases in this MDL proceeding, *e.g.,* Schick's testing of the M3Power Razor System to determine whether or not Gillette's advertising claims were false, Schick's expert discovery on this issue, and the impact on Schick's market share from Gillette's introduction of the M3Power Razor System which is relevant to the issue of damages as a cross-check to any discovery produced by Gillette on that issue.

Because this discovery is relevant here, this discovery from the Schick actions, not just discovery produced by Defendant in the Schick actions, was ordered by this Court to be included in Defendant's initial disclosures:

**Objections to Proposed Scheduling Order**

"THE COURT: . . . I will expect that that's going to be turned immediately -- that is, the Schick discovery that is relevant to this case. . . . But I guess I want to bite off -- at least stick my teeth into -- what seems to be a large portion of discovery that's out there and available to get that put into the initial disclosure context. . . . But the idea is to get that Schick discovery. . . . I mean, what I said is anything that's relevant to this case."

(Transcript at 17:22-24, 19:15-18, 20:8, and 35:25 - 36:1.)

> **(4)** **Defendant's proposed order limits disclosure to only discovery in the *Schick* actions in Connecticut, Germany, and Australia.**

Defendant's proposed order, while not limiting its initial disclosures to only items produced in Schick actions, appears to limit its initial disclosures of the items produced in *Schick* actions to only the Schick actions in Connecticut, Germany, and Australia. While Plaintiffs are not aware of any other Schick actions (*i.e.*, actions by Schick or Schick-related entities against Defendant relating to the M3Power Razor System), if any other such actions exist then the discovery in those actions should also be produced as part of the initial disclosures because they too would be relevant.[5] And, if there are no such other actions, then why does Defendant refuse to incorporate this revision in its proposed order?

> **(5)** **Defendant's proposed order does not include a privilege log in its disclosure.**

Defendant's proposed order does not include a privilege log in its initial disclosures. Instead, Defendant's proposed order cryptically states that Defendant "shall be obliged to provide" a privilege log. *When*?

---

[5]  (Transcript at 35:18 - 36:1 ("MR. STRENIO: And, Your Honor, if I may, also, with respect to the issue of expert discovery, since we mentioned the initial disclosure of all the discovery that's been done in *Schick*, that disclosure and that discovery has included expert testimony, expert depositions not only in the *Schick* case, but also in previous cases in Germany, Australia. That expert discovery should be disclosed to us initially now.  THE COURT:  I ***mean, what I said is anything that's relevant to this case.***") (emphasis added)).

**Objections to Proposed Scheduling Order**

The Court afforded Defendant 30 days to turn over the *Schick* discovery to provide

Defendant time to create a privilege log for any items that are not relevant (broadly construed) or

privileged.

The purpose of a privilege log is to allow the plaintiffs to know what a defendant has

withheld and to provide sufficient information so the plaintiffs can determine whether or not to

challenge  Defendant's designation of items as not relevant or privileged.  To do this, Defendant

needs to provide the privilege log with the initial disclosures, as the Court instructed:

> "THE COURT: . . . If you're withholding things for purposes of – that are relevant for
> initial disclosure, broadly conceived, that deal with the question of privilege, you will
> have a privilege log.  MR. WOLKOFF:  Yes, Your Honor."

(Transcript at 27:5-8.)

Plaintiffs read the Court's instruction that Defendant "will have a privilege log" as

meaning Defendant will have a privilege log in its initial disclosure.  That was the context of the

quoted language.  Otherwise, what good is a privilege log?  This is especially true given that the

plaintiffs shall have only 60 days from the initial disclosures to complete class certification

discovery.

**(6)    Defendant's proposed order does not incorporate the Court's ruling that
class certification and merits discovery will not be bifurcated.**

Defendant's proposed order does not incorporate the Court's ruling that class certification

and merits discovery will not be bifurcated.  This Court expressly so ruled:

> "MR. KANNER:  . . . I don't have a problem with class discovery, except to the extent
> that the defendants are going to say that that in some sense stays or prioritizes or shuts
> down merits discovery.
>
> THE COURT:  I don't read this proposal in that fashion.  What I read it to say is that

**Objections to Proposed Scheduling Order**
9

these are keyed off of the time period from initial disclosure; that within 60 days, there will be completion of the fact discovery.

MR. KANNER:  As long as we all share that understanding, I'm fine.

THE COURT:  Is there any dispute about that?

MR. WOLKOFF:  Not that I know of, Your Honor.

THE COURT:  Okay. So we all do."

(Transcript at 28:1-15.)

Plaintiffs fail to understand Defendant's refusal to incorporate this ruling and

understanding into the proposed order, especially given Defendant's representation to this Court

that it agrees that class certification and merits discovery shall not be bifurcated.  The scheduling

order should reflect this important ruling to avoid any future misunderstanding.

## III.    CONCLUSION

In conclusion, Plaintiffs believe that their proposed scheduling order, contemporaneously

lodged herewith, most accurately reflects the Court's order.

Accordingly, Plaintiffs respectfully request that this Court approve and enter a Scheduling

Order in the form attached as Exhibit J hereto.

Dated: February 10, 2006            Respectfully submitted,

By:    /s/ Taras P. Kick
Taras P. Kick
G. James Strenio
Thomas G. Martin
THE KICK LAW FIRM, APC
660 South Figueroa Street, Suite 1800
Los Angeles, California 90017
(213) 624-1588
taras@kicklawfirm.com

**Objections to Proposed Scheduling Order**
10

james@kicklawfirm.com
tom@kicklawfirm.com
Counsel for Plaintiffs
CARLOS CORRALES and KASEM ADOURE

KANNER & WHITELEY, LLC
Allan Kanner
701 Camp Street
New Orleans, LA 70130
(504) 524-5777
A.Kanner@kanner-law.com
C.Green@kanner-law.com
Counsel for Plaintiffs
CARLOS CORRALES and KASEM ADOURE

MILSTEIN, ADELMAN & KREGER, LLP
Gillian L. Wade
William A. Baird
Lee Jackson
Wayne S. Kreger
2800 Donald Douglas Loop North
Santa Monica, CA 90405
(310) 396-9600
gwade@maklawyers.com
tbaird@maklawyers.com
Counsel for Plaintiff
DAVID ATKINS

AMAMGBO & ASSOCIATES
Donald Amamgbo
A Professional Law Corporation
1940 Embarcadero
Oakland, CA 94606
(510) 434-7800
DonaldAmamgbo@Citycom.com
Counsel for Plaintiff
MICHAEL PRUITT

THE TERRELL LAW GROUP
Reginald Terrell
223 25th Street
Richmond, CA 94804

**Objections to Proposed Scheduling Order**

(510) 237-9700
ReggieT2@aol.com
Counsel for Plaintiff
MICHAEL PRUITT

THE DODD LAW FIRM
Olen Kenneth Dodd
909 Laurel Street
Beaumont, Texas 77701
(409) 832-2589
olendodd@earthlink.net
Counsel for Plaintiff
LUIS GONZALEZ

THE HEWELL LAW FIRM
Harold M. Hewell,
1901 First Avenue, Second Floor
San Diego, California 92101
(619) 235-6854
hewell@aol.com
Counsel for Plaintiff
LUIS GONZALEZ

HOWARD M. RUBINSTEIN, ATTORNEY AT LAW
Howard M. Rubinstein
2601 South Bayshore Dr., Suite 600
Miami, Florida 33133
(305) 859-7700
Howardr@pdq.net
Counsel for Plaintiff
LUIS GONZALEZ

SHARP & BARNES LLP
James E. Sharp
Kent A. Caperton
William F. Boyer
1215 19th Street, NW
Washington, DC  20036
(202) 467-1620
kmcdowell@benbarnesgroup.com
kcaperton@benbarnesgroup.com
wboyer@sharp-assoc.com

**Objections to Proposed Scheduling Order**
12

Counsel for Plaintiff
LUIS GONZALEZ

THE LAW OFFICES OF L. DEWAYNE LAYFIELD
L. De Wayne Layfield
P.O. Box 3829
Beaumont, TX 77704
(409) 832-1891
Counsel for Plaintiff
LUIS GONZALEZ

EDWARD W. COCHRAN
Edward W. Cochran
20030 Marchmont Road
Shaker Heights, Ohio 44122
(216) 751-5546
edwardcochran@adelphia.net
Counsel for Plaintiff
ROBERT FALKNER

**Objections to Proposed Scheduling Order**