# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re:<br><br>M3 POWER RAZOR SYSTEM MARKETING & SALES PRACTICES LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br>ALL ACTIONS | CIVIL ACTION NO: C.A. No. 05-11177 (LEAD CASE)<br><br>MDL Docket No: 1704 |

## DEARMAN GROUP'S MOTION FOR LEAVE
## TO FILE SUPPLEMENTAL AFFIDAVIT AND PROPOSED ORDER

The Dearman Group plaintiffs move pursuant to Local Rule 7.1(B)(3) for leave to file the Affidavit of Thomas G. Shapiro in Response to Atkins Group, in order to respond to the allegations made in the declaration of Taras P. Kick and declaration of Reginald Terrell, and the Atkins Group's Response, all filed February 24, on the grounds that the Terrell and Kick declarations make factual allegations that are not addressed in my prior affidavit.

The Dearman Group plaintiffs also move for leave to file the [Proposed] Case Management Order Re Plaintiffs' Counsel, which they inadvertently failed to file with their response to the competing applications.  The Dearman Group's Response filed February 24, 2006 (document 41) refers to the proposed order (*id.* at 9), but it appears that the order itself was inadvertently not filed at that time.

Dated:  March 2, 2006

By their attorneys,

**/s/Thomas G. Shapiro**
Thomas G. Shapiro BBO #454680
Theodore Hess-Mahan BBO #557109
Shapiro Haber & Urmy LLP
53 State Street
Boston, MA 02109
Tel:    (617) 439-3939

Samuel H. Rudman

Robert M. Rothman
Lerach Coughlin Stoia Geller Rudman &
Robbins LLP
58 South Service Road, Suite 200
Melville, NY 11747
Tel:    (631) 367-7100

Kenneth A. Wexler
Edward A. Wallace
The Wexler Firm LLP
One North LaSalle St., Suite 2000
Chicago, IL 60602
Tel:    (312) 346-2222

Thomas M. Sobol
Edward Notargiacomo
Hagens Berman Sobol Shapiro LLP
One Main Street, 4th Floor
Cambridge, MA 02142
Tel:    (617) 482-3700

Mark C. Gardy
Henry Young
Abbey Gardy, LLP
212 East 39th Street
New York, NY 10016
Tel:    (212) 889-3700

Alan L. Kovacs
Law Office of Alan L. Kovacs
2001 Beacon Street, Suite 106
Boston, MA 02135
Tel:    (617) 964-1177

Steven A. Kanner
Douglas A. Millen
Robert J. Wozniak, Jr.
Much Shelist Freed Denenberg Ament Rubenstein, P.C.
191 North Wacker Drive, Suite 1800
Chicago, IL 60606
Tel:    (312) 521-2000

Harry Shulman
The Mills Law Firm
145 Marina Boulevard
San Rafael, CA 94901
Tel:    (414) 455-1326

Daniel R. Karon
Goldman Scarlato & Karon
55 Public Square, Suite 1500
Cleveland, OH 44113
Tel:    (216) 622-1851

Steven J. Greenfogel
Meredith Cohen Greenfogel & Skirnick, P.C.
117 South 17th Street, 22nd Floor
Philadelphia, PA 19103
Tel:    (214) 564-5182

Corey Holzer
Michael I. Fistel
Holzer & Holzer, LLC
1117 Perimeter Center West
Suite E-107
Atlanta, Georgia 30338
Tel:    (770) 392-0090

Joseph J. DePalma
Susan D. Pontoriero
Lite, DePalma Greenberg & Rivas, LLC
Two Gateway Center, 12th Floor
Newark, NJ 07102-5003
Tel:    (973) 623-3000

James E. Miller
Patrick A. Klingman
Karen M. Leser
Shepherd, Finkelman, Miller & Shah LLC
65 Main Street
Chester, CT 06412
Tel:    (860) 526-1100

Karen Marcus
Mila F. Bartos
Finkelstein, Thompson & Loughran
1050  30th Street, N.W.
Washington, D.C. 20007
Tel:    (202) 337-8000

Steven A. Schwartz
Chimicles & Tikellis LLP
361 West Lancaster Avenue
Haverford, PA 19041
Tel:    (610) 642-8500

Lionel Z. Glancy
Michael Goldberg
Glancy, Binkow & Goldberg LLP
1801 Avenue of the Stars, Suite 311
Los Angeles, CA 90067
Tel:    (310) 201-9150

Ralph M. Stone
Shalov Stone & Bonner
485 Seventh Avenue, Suite 1000
New York, NY 10018
Tel:    (212)-239-4340

## <u>CERTIFICATION OF COMPLIANCE WITH LOCAL RULE 7.1</u>

I hereby certified that I conferred in good faith with Cindy Green of the firm Kanner & Whiteley in a good faith effort to narrow or resolve the issues raised in this motion.


<u>**/s/ Thomas G. Shapiro**</u>
Thomas G. Shapiro

**<u>Certificate of Service</u>**

I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing ("NEF") and paper copies will be sent to those indicated as nonregistered participants on the 2nd day of March, 2006.

**<u>/s/Thomas G. Shapiro</u>**
Thomas G. Shapiro

## UNITED STATES DISTRICT COURT
### DISTRICT OF MASSACHUSETTS

In re:

M3 POWER RAZOR SYSTEM
MARKETING & SALES PRACTICES
LITIGATION

CIVIL ACTION NO: C.A. No. 05-11177
(LEAD CASE)

MDL Docket No: 1704

THIS DOCUMENT RELATES TO:
ALL ACTIONS

### AFFIDAVIT OF THOMAS G. SHAPIRO
### IN RESPONSE TO ATKINS GROUP

First being duly sworn, Thomas G. Shapiro says as follows:

1.      I am a partner in the law firm Shapiro Haber & Urmy LLP, and I am counsel for plaintiff Adam Kline in the Tuñón action, and co-counsel for plaintiffs Dearman, DeBiseglia and Tuñón. I have previously submitted an affidavit in support of an application that my firm and the Lerach firm be designated interim class counsel pursuant to Rule 23(g) and that my firm be designated as liaison counsel. I submit this supplemental affidavit to respond to attacks made by the Atkins Group in the Atkins Group's Response to the application for appointment as counsel by the Dearman Group (document 42).

**There Has Been No Race to Settle**

2.      The overriding theme of the Atkins Group submission is that there has been an inappropriate rush to settle this case, to the prejudice of the Atkins Group counsel and their clients. The Atkins Group repeats this theme like a drum beat:

- "Both the Dearman and McGeary Groups are jockeying for position in order to be the group to make a deal with Gillette". Atkins Group's Response at 1.

- "Both the Dearman Group and the McGeary Group were racing towards settlement discussions with Gillette". *Id.* at 3.
- The Dearman Group wants "to ram through a quick and hasty settlement with Gillette." *Id.* at 7.

- The Dearman and McGeary Groups "had been falling over each other to close separate deals" and they are "scrambling to settle". Atkins Group's Application at 2.

3.     The Atkins Group has simply made up this rhetoric to suit its purposes, as these allegations are completely without foundation.

4.     In the first place, where a defendant indicates an interest in discussing an early settlement of a claim, plaintiffs' counsel would be remiss in not exploring settlement possibilities.  My firm, the Lerach firm, and the Abbey Gardy and Wexler firm have responsibly attempted to pursue a settlement that is fair, reasonable and adequate, consistent with our responsibilities to our clients and the class.  At the same time, there has been no rush to settlement as alleged by the Atkins Group.

5.     As noted in the Dearman Group's Response to Applications of the McGeary Group and the Atkins Group (hereafter "Dearman Group's Response") at 7, and as noted by the Atkins Group itself (Atkins Group's Response at 3), Gillette made a serious settlement offer on July 8, 2005.  Counsel from the Shapiro and Lerach firms, together with counsel from Abbey Gardy LLP and The Wexler Firm, met with counsel for Gillette in late July 2005 to discuss that offer and plaintiffs' ideas for improving on that offer.  A number of subjects were discussed, including general concepts for the framework of the settlement.  No settlement agreement was reached as the parties were materially apart on a number of issues.  Notably, plaintiffs' counsel at that meeting stated that they did not

want to be involved in what is sometimes referred to as a "reverse auction" and counsel for Gillette assured us that it was not their intention to do any such thing.

6.      Gillette made a further settlement offer in late September 2005. I had a telephone discussion with counsel for Gillette around the end of October 2005 and made a counter offer with respect to some elements of a possible settlement. I also demanded information concerning Gillette's sales of the M3Power razor. Very limited discussions of certain aspects of a potential settlement occurred at infrequent intervals thereafter. My group has made no settlement demands on Gillette subsequent to the end of October, much less subsequent to the November 16, 2005 organizational meeting of plaintiffs' counsel in Boston.

7.      As noted, on behalf of the firms that had met with Gillette, I demanded certain discovery from Gillette as a pre-condition of making any further settlement demand.

8.      Counsel for Gillette prepared a draft confidentiality order governing the disclosure of confidential commercial information by Gillette. The terms of that draft were negotiated and a final version was subsequently executed by counsel for Gillette and by my firm as well as the Lerach, Abbey Gardy and Wexler firms. The confidentiality agreement was also offered to other counsel, including Mr. Barnow, who I understand executed the agreement with possibly some minor modifications.

9.      In December, it became increasingly clear that the understanding as to the organization of plaintiffs' counsel reached at the November 16, 2005 organizational meeting was being disputed by counsel who chose not to attend the meeting, and that no one had authority at that time to speak for plaintiffs' counsel. Therefore, we refrained from further settlement discussions.

10.    In fact, on January 10, 2006, I sent an e-mail to counsel for Gillette stating that:

> It is best to refrain from further settlement discussions until the Court decides the issue of the organization of plaintiffs' counsel. May I suggest that you likewise refrain from any further such discussions with any other plaintiffs' counsel.

A copy of this e-mail is attached hereto as Exhibit 1.

11.    Neither the Lerach firm nor my firm has engaged in any further settlement discussions with Gillette since that time.

12.    In short, the actual facts show the exact opposite of any rush to settlement. Furthermore, the accusation that my group is "under strong pressure to conform to the defendant's wishes" (Atkins Group at 7) because we do not officially represent the class is completely unfounded, as we ceased any settlement discussions with Gillette pending a ruling by the Court on appointment of class counsel.

**Communications with Counsel**

13.    Another accusation by the Atkins Group is that my "actions to date have demonstrated an unwillingness to work with counsel outside of his group or even communicate with other counsel." Atkins Group's Response at 10. *See also* Declaration of Reginald Terrell ¶¶ 6 and 13, alleging that he was never contacted or consulted about anything following the Boston meeting.

14.    Again, the allegations are not correct. First, in conjunction with the Lerach firm and other firms, I proposed an organizational meeting of all plaintiffs' counsel to which all counsel were invited. That meeting was held in Boston on November 16, 2005.[1]

---

[1]    Mr. Kick alleges in his Declaration that I falsely claimed the hotel could not accommodate a teleconference. In the first place, as acknowledged in the Kick and Terrell declarations, their offices spoke

15.    Second, I have engaged in no substantive settlement discussions with Gillette since the November 16, 2005 meeting, and counsel were informed of this.

16.    Third, I have communicated with counsel, including Mr. Terrell and others in the Atkins Group, as to all developments in the case. Indeed, the same afternoon of the meeting, I sent an e-mail to all counsel who were present at the meeting, including Mr. Terrell and his co-counsel Mr. Amamgbo, transmitting a draft case management order and soliciting comments. A copy of my November 16, 2005 e-mail is attached hereto as Exhibit 2.

17.    On November 22, 2005, I sent a letter to all counsel present at the organizational meeting, including Mr. Terrell and his co-counsel Mr. Amamgbo, transmitting a letter to plaintiffs' counsel which responded to e-mails from Mr. Barnow regarding the conduct of the meeting. Thus, Mr. Terrell was kept informed with respect to developments as to the potential organizational of plaintiffs' counsel. A copy of my November 22, 2005 e-mail and the enclosed letter dated November 22, 2005 are attached hereto as Exhibit 3.

18.    On December 13, 2005, Mr. Amamgbo sent an e-mail to plaintiffs' counsel suggesting "that someone anyone make a formal motion to the Judge outlining a clear leadership structure". I responded to Mr. Amamgbo in an e-mail dated December 14, 2005, informing him that I planned on filing a motion for a case management order. Mr.

---

with my office, not with me personally, prior to the meeting. They were told simply that there was no teleconferencing and no reason was given. Kick Declaration par. 5 and Ex. C. (Dec 20, 2005 Kick e-mail: we "were not given a reason.") When Mr. Kick stated in his December 20 email that they were told they would not be "allowed" to participate by telephone, I responded in a January 4 e-mail that it "was not a question of not being allowed". My office had not attempted to arrange for teleconferencing after the meeting was switched from my office to the hotel meeting room shortly before the meeting. Kick Declaration, Ex. C (January 4, 2006 e-mail).

Amamgbo replied on December 14, 2005, stating "Dear Tom, thanks [for] the response." A copy of these two e-mails is attached hereto as Exhibit 4.

19.    On December 8, 2005, I sent an e-mail to plaintiffs' counsel, including Mr. Terrell, Mr. Amamgbo, Mr. Quat (Mr. Barnow's local counsel), Mr. Harke, Mr. Dodd and others transmitting a letter from me to plaintiffs' counsel dated December 8, 2005, in which I stated that I was writing:

> to let you know that I am hoping to set up a meeting with Ropes & Gray next week in compliance with the Court's Notice of Scheduling Conference.

My letter then set out my "tentative thinking about scheduling" and concluded with the statement: "we welcome any suggestions or input you may have." A copy of the December 8, 2005 e-mail and letter is attached hereto as Exhibit 5. I did not receive any comments in response to my letter.

20.    I followed up that communication with another e-mail on December 13, 2005, reporting on a meeting I had with Gillette's counsel to discuss the initial scheduling conference. I also reported in the e-mail that "we had a very general discussion with respect to settlement although no specific new demands or offers were exchanged." A copy of my December 13, 2005 e-mail is attached hereto as Exhibit 6.

21.    Mr. Kanner and I have had several lengthy telephone conversations in which we discussed the progress of the litigation in great detail, as well as concepts for the organization of plaintiffs' counsel. I had a lengthy conversation with Mr. Kanner and an attorney from the Kick firm in person following the scheduling conference in January, and I subsequently had lengthy telephone conversations with Mr. Kick regarding the organization of plaintiffs' counsel. In these discussions, I emphasized a desire to be

inclusive and suggested the concept of a steering committee. The fact that the Dearman Group would not agree to Mr. Kick's demands with respect to the power of the steering committee, is hardly a refusal to work together or to consult with counsel in this case.

22.    In summary, the allegation that the Dearman Group has refused and/or failed to communicate with other counsel in this matter is simply not an accurate characterization. Counsel were informed that there were no substantive settlement discussions taking place, they were consulted as to the proposed schedule and discovery plan[2], and there have been extensive discussions with Mr. Kanner and Mr. Kick regarding the organization of plaintiffs' counsel. There have been no other activities in this case.

**The Dearman Group is as Committed to Litigation as the Atkins Group**

23.    The Atkins Group makes the rhetorical claim that it is the "only group that has advanced or moved the litigation ball" and that it is "the only counsel in this matter that have uncompromisingly attempted to pursue discovery." Atkins Group's Response at 17. As counsel in the Atkins Group should know, plaintiffs are not permitted under the Federal Rules of Civil Procedure and the Local Rules of this court to initiate discovery requests prior to a Rule 26(f) conference. Rule 26(d). While the Atkins Group may or may not "have uncompromisingly attempted to pursue discovery" (Atkins Group's Response at 17), any such efforts were futile and have produced no discovery. On the other hand, I negotiated a confidentiality agreement with Gillette and obtained certain confidential commercial information highly relevant to potential damages in this case.

---

[2]    Indeed, counsel in the McGeary Group and in the Atkins Group had their own discussions with Gillette's counsel concerning schedule, as reflected in Gillette's filings with the court.

24.     The Atkins Group's quibbles with the proposed scheduling order are just that, and appear to be designed for the purpose of making the Atkins Group appear to be more aggressive.  While the Atkins Group notes the goal of efficiency and avoiding waste and duplication, it continues to assert that initial disclosures should be made before the Court designates class counsel.  As I stated at the scheduling conference, it is not in the interest of the class to have some 40 law firms "scrambling" (to quote from the Atkins Group) to examine Gillette's documents.  The Atkins Group deplores a "race" to reach settlement, while it seems to want to race to have an opportunity to obtain discovery.  It is in the interest of the class and the Court to conduct the litigation in efficient and an orderly fashion.  As far as the Dearman Group is aware, there are no settlement discussions going on, and therefore no rush to settlement before adequate discovery is done.

25.     The Atkins Group makes the insulting allegation that "indications of unfairness and collusion" arise, "where class plaintiffs do not meaningfully pursue discovery, yet at the same time seek early settlement".  *Id.* at 17.  As stated, the Dearman Group is not discussing settlement with Gillette, and we are meaningfully pursuing discovery in a reasonable fashion.[3]

Signed under the pains and penalties of perjury this 2nd day of March, 2006.


s/Thomas G. Shapiro
Thomas G. Shapiro

---

[3]     In fact, the main point of dispute in discussions between the Dearman Group's counsel and Gillette's counsel concerning the schedule was the timing of Gillette's initial disclosures.  I pushed for earlier disclosures and Gillette ultimately agreed to that position.

**<u>Certificate of Service</u>**

I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing ("NEF") and paper copies will be sent to those indicated as nonregistered participants on the 2nd day of March, 2006.

/s/Thomas G. Shapiro_____
Thomas G. Shapiro

EXHIBIT 1

# Tom Shapiro

**From:** Tom Shapiro
**Sent:** Tuesday, January 10, 2006 4:43 PM
**To:** 'Wolkoff, Harvey J.'; Lance Harke; Ben Barnow
**Cc:** Szpak, Mark P.
**Subject:** RE: Gillette

Dear Harvey:

I have decided that it is best to refrain from further settlement discussions until the Court decides the issue of the organization of plaintiffs' counsel. May I suggest that you likewise refrain from any further such discussions with any other plaintiffs' counsel.


Thomas G. Shapiro

Shapiro Haber & Urmy LLP
Exchange Place
53 State St.
Boston MA 02109
(617) 439-3939
(617) 439-0134 (facsimile)
tshapiro@shulaw.com

CONFIDENTIALITY NOTE: This e-mail message contains information belonging to the law firm of Shapiro Haber & Urmy LLP, which may be privileged, confidential and/or protected from disclosure. The information is intended only for the use of the addressee(s) named above. If you think that you have received this message in error, please e-mail the sender. If you are not the intended recipient, any use, dissemination, distribution or copying is strictly prohibited.

EXHIBIT 2

## Tom Shapiro

| | |
|---|---|
| **From:** | Tom Shapiro |
| **Sent:** | Wednesday, November 16, 2005 5:10 PM |
| **To:** | Alan Kovacs (E-mail); Brooks Cutter (E-mail); David Pastor (E-mail); Donald Amamgbo (E-mail); Ed Notargiacomo (E-mail); Henry Young (E-mail); James Notis (E-mail); Ken Quat (E-mail); Ken Wexler (E-mail); Mila Bartos (E-mail); Olen Dodd (E-mail); Reginald Terrell (E-mail); Robert Rothman (E-mail) |
| **Subject:** | Gillette case management order |
| **Attachments:** | Case Management Order Proposed.doc; Case Management Order Proposed.wpd |

Dear Counsel:

It was a pleasure to meet you this morning.  I believe we had a very useful and productive discussion of the case.

Attached is a proposed case management order.  I have also attached a Word version in case any of you do not have Word Perfect.  Please give me any comments tomorrow as Gillette's counsel would like to have an order in place as soon as possible.

After further consideration, we felt it appropriate to have the four firms I mentioned on the Steering Committee.  Gillette has been dealing with the four firms as a group and to date we have been able to manage the case efficiently.

I look forward to working with you.

 

Case Management   Case Management
Order Proposed...   Order Proposed...

Thomas G. Shapiro
Shapiro Haber & Urmy LLP
Exchange Place
53 State St.
Boston MA 02109
(617) 439-3939
(617) 439-0134 (facsimile)
tshapiro@shulaw.com

CONFIDENTIALITY NOTE: This e-mail message contains information belonging to the law firm of Shapiro Haber & Urmy LLP, which may be privileged, confidential and/or protected from disclosure. The information is intended only for the use of the addressee(s) named above. If you think that you have received this message in error, please e-mail the sender. If you are not the intended recipient, any use, dissemination, distribution or copying is strictly prohibited.

EXHIBIT 3

## Tom Shapiro

| | |
|---|---|
| **From:** | Tom Shapiro |
| **Sent:** | Tuesday, November 22, 2005 11:14 AM |
| **To:** | 'Ben Barnow'; alankovacs@yahoo.com; Bcutter@kcrlegal.com; 'David Pastor'; donaldamamgbo@citycom.com; 'Edward Notargiacomo'; 'Kenneth A. Wexler'; rrothman@lerachlaw.com; hyoung@abbeygardy.com; jnotis@abbeygardy.com; 'Ken Quat'; olendodd@earthlink.net; reggiet2@aol.com; milabartos@mfbwftllaw.com; 'Lance Harke'; Glaw123@aol.com; Ldrurylaw@aol.com |
| **Subject:** | RE: Gillette Litigation |
| **Attachments:** | Plaintiffs Counsel 2005 11 22.pdf |

Enclosed please find a letter from me responding to Ben Barnow's email of Sunday, November 20th.


Thomas G. Shapiro
Shapiro Haber & Urmy LLP
Exchange Place
53 State St.
Boston MA 02109
(617) 439-3939
(617) 439-0134 (facsimile)
tshapiro@shulaw.com

CONFIDENTIALITY NOTE: This e-mail message contains information belonging to the law firm of Shapiro Haber & Urmy LLP, which may be privileged, confidential and/or protected from disclosure. The information is intended only for the use of the addressee(s) named above. If you think that you have received this message in error, please e-mail the sender. If you are not the intended recipient, any use, dissemination, distribution or copying is strictly prohibited.

# SHAPIRO HABER & URMY LLP

Attorneys at Law

Thomas G. Shapiro
Edward F. Haber
Thomas V. Urmy, Jr.
Michelle H. Blauner
Theodore M. Hess-Mahan
Todd S. Heyman
Matthew L. Tuccillo
Adam M. Stewart
Robert E. Ditzion

*Counsel*

Lawrence D. Shubow
Alfred J. O'Donovan

E-mail:
tshapiro@shulaw.com

November 22, 2005

**VIA E-MAIL**

Re:   *In re M3Power Razor Systems Marketing & Sales Practices Litigation*
       *MDL No: 1704*

Dear Plaintiffs' Counsel:

I am responding to Ben Barnow's e-mail of Sunday, in order to set the record straight.

Ben's first point is to complain that he did not receive a copy of my e-mail. My e-mail was sent to all counsel who attended the organizational meeting held in Boston on November 16, 2005. Ben did not attend the meeting. The e-mail was sent to Ken Quat, who attended the meeting and who filed a case here in Massachusetts with Ben. Therefore, any insinuation that there was any intent to exclude him or keep the fact or contents of my e-mail from him is completely misguided.

Ben's suggestion that the meeting was not properly held and that the meeting be reconvened "upon proper and fair notice" is unfounded. My letter inviting all counsel to a meeting was sent on November 7, 2005 to all counsel who had filed a case against Gillette. It was sent by facsimile to all counsel whose fax numbers we could determine, and by mail to a handful of firms, including Ben's. However, Ben no doubt got prompt notice of the meeting from Ken Quat, who received a fax notice. In fact, I spoke with Ben on November 10 at which time we discussed that there was going to be a meeting and Ben said he did not think he would be attending it. In this conversation, almost a week prior to the meeting, Ben did not complain about the adequacy of notice or the timing of the meeting.

I deliberately scheduled a meeting for a date well over a week after my November 7 letter so that everyone would have proper notice of the meeting in time to attend if they wished to. Moreover, neither Ben nor anyone else requested that the meeting be postponed or rescheduled for any reason. Ben's e-mail refers to the meeting being scheduled without regard to a scheduled MDL proceeding. I have no idea what proceeding he may be referring to. For these reasons, Ben's suggestion that the meeting was not held upon "proper and fair notice" is simply incorrect. The meeting was well noticed and it was open to all participants.

SHAPIRO HABER & URMY LLP

Plaintiffs' Counsel
November 22, 2005
Page 2

The facts are that Ben was invited to attend the meeting, and he chose not to attend. Moreover, his co-counsel attended the meeting and did not object to the meeting, suggest any further or different meeting should be held, or object to the conduct of the meeting.

Ben claims that it was left out that Gillette, according to Ben, has been dealing with his group. If Ben is claiming this was left out of the meeting, the fact is that his co-counsel Ken Quat mentioned at the meeting that Ben had engaged in discussions with Gillette. However, in the course of an extended discussion at the meeting about possible settlement terms, Ken said nothing about any specific demands by Ben. Ken, or Ben if he had chosen to attend the meeting, had every opportunity to express their views about settlement.

Ben also insinuates in his e-mail that, after negotiating with him, Gillette went to my group and obtained a lower proposal. It is my understanding that this is absolutely incorrect. As you know, Gillette made a settlement proposal by letter dated July 7, 2005, which I believe was sent to each of plaintiffs' counsel. In response to that letter, my group held a meeting with counsel for Gillette on July 20, at which we presented a counter proposal and discussed issues relating to a possible settlement. As part of our discussions with Gillette's counsel, we received assurances that Gillette would not attempt what is sometimes referred to as a "reverse auction". I believe that any settlement demand made by Ben, or any settlement discussions he may have had with Gillette, occurred after my group's meeting with Gillette's counsel. It is therefore irresponsible for Ben to assert that after Gillette received his written proposal, Gillette went to my group to solicit a lower proposal. Gillette's counsel have not set up an auction process, but on the contrary they have assured us they would not attempt to do so.

According to his November 18, 2005 letter to Gillette's counsel, which is attached to his e-mail, Ben's demand was characterized by Gillette as "seeking the moon and the stars." If this is a reasonable assessment, then it appears that Ben has made what may be an unreasonable demand for the purpose of claiming that he should have leadership of the case because he is working to get the best results for the class. I have no information about the contents of Ben's written settlement proposal to Gillette and therefore cannot comment on it. I would say that making an unreasonable demand designed to obtain a leadership role in the litigation, if that is the case, is not in the best interest of the class.

If Ben wants all of us to work together, he should provide each of us with a copy of his written settlement demand. It is unfortunate that Ben chose not to attend the organizational meeting and that in the course of an extended discussion about settlement his co-counsel said nothing about Ben's demand. Nevertheless, the settlement committee

SHAPIRO HABER & URMY LLP

Plaintiffs' Counsel
November 22, 2005
Page 3

established at the organizational meeting, which includes Ken Quat, can consider any proposals Ben has if he shares his settlement demand with us.

       I have also received the e-mail from, Lance Harke, who is part of Ben's group, which was sent last evening, suggesting a conference call tomorrow morning. I will be attending a traditional Thanksgiving assembly at my youngest child's school Wednesday morning and I do not expect to be back in the office before the following Monday. In any event, I object to Ben's group's deliberately failing to attend an organizational meeting that was attended by a number of counsel who traveled considerable distances to be here, failing to inform counsel at that meeting of a settlement demand they had made, and then attempting to organize a conference call to discuss what should have been included in the organizational meeting attended by numerous counsel who traveled from different parts of the country to attend.

       Sincerely yours,

Thomas G. Shapiro

TGS/sg

EXHIBIT 4

**Tom Shapiro**

From: C. Donald Amamgbo [mailto:DonaldAmamgbo@citycom.com]
Sent: Wednesday, December 14, 2005 6:09 PM
To: Tom Shapiro
Subject: Re: The Rule 16.1 Meeting

Dear Tom,

Thanks the rsponse.

C. Donald Amamgbo
Sent from a BlackBerry.


-----Original Message-----
From: "Tom Shapiro" <TSHAPIRO@shulaw.com>
Date: Wed, 14 Dec 2005 17:02:53
To:"C. Donald Amamgbo" <DonaldAmamgbo@Citycom.com>
Subject: RE: The Rule 16.1 Meeting

Dear Donald
I am planning on filing a motion for a case management order including a structure for
plaintiffs' counsel.  I agree that airing our dirty linen with defense counsel is not
constructive.  This is why I have avoided responding to the stream of emails I am getting
and I haven't sent defense counsel any emails that I have sent to plaintiffs' counsel.  I
have never had any dealings with Ben before and I don't think I've ever had a case where
leadership differences produced this barrage of emails trying to create a record.
My best wishes.
Tom

Thomas G. Shapiro
Shapiro Haber & Urmy LLP
Exchange Place
53 State St.
Boston MA 02109
(617) 439-3939
(617) 439-0134 (facsimile)
tshapiro@shulaw.com

CONFIDENTIALITY NOTE: This e-mail message contains information belonging to the law firm
of Shapiro Haber & Urmy LLP, which may be privileged, confidential and/or protected from
disclosure. The information is intended only for the use of the addressee(s) named above.
If you think that you have received this message in error, please e-mail the sender. If
you are not the intended recipient, any use, dissemination, distribution or copying is
strictly prohibited.



 From: C. Donald Amamgbo [mailto:DonaldAmamgbo@Citycom.com]
Sent: Tuesday, December 13, 2005 5:34 PM
To: 'Ben Barnow'; 'Kenneth A. Wexler'; Tom Shapiro; 'Lance Harke'; ken@quatlaw.com;
akanner@kanner-law.com; Ldrurylaw@aol.com; 'Anthony Vozzolo'; james@kicklawfirm.com; 'Alan
Kovacs'; olendodd@earthlink.net; mtamblyn@kcrylaw.com; Bcutter@kcrlegal.com;
herman_cowanjr@yahoo.com; 'Howard Bushman'; alxfen@aol.com; 'Aron Robinson (E-mail)';
dpastor@gilmanpastor.com; 'Thomas Sobol'; esmith@brodsky-smith.com; 'Edward Notargiacomo';
skanner@muchshelist.com; dmillen@muchshelist.com; hyoung@abbeygardy.com; ReggieT2@aol.com;
rrothman@lerachlaw.com; mackerman@brodsky-smith.com; ewallace@wexlerfirm.com
Cc: 'Edward A. Wallace'
Subject: RE: The Rule 16.1 Meeting


Dear Counsel:

It is about time that someone anyone make a formal motion to the Judge outlining a clear leadership structure that will facilitate a clear coordination and articulation of plaintiffs' position. This whole notion of "groups" portrays us as amateurish and innures to the benefit of the defendant.    WE SHOULD GET OUR HOUSE IN ORDER NOW.

There is no reason why competing motions cannot be filed by anyone seeking a leadership position.  This present mode of accusations counter accusation is unhealthy and quite frankly a tard irritating to watch or read these back and forth emails on things that have nothing to do with moving the case forward but a lot to do with people trying to secure a leadership position.

Ben, I understand your frustration, and heck I agree with a few of your suggestions, but as you very well know sometimes even friends (and I suspect you guys know each other too well) do disagree, in that event, no need beating a dead horse, make a motion clearly stating your streamlined approach and ideas, the court will obviously do what makes sense regarding the administration of this case.


C. Donald Amamgbo,
AMAMGBO & ASSOCIATES
1940 Embarcadero
Oakland, CA 94606
Tel:  (510) 434-7800
Fax: (510) 434-7804

*********************************************************************************
Please Note:
The information in this E-mail message is legally privileged and confidential information intended only for the use of the addressee(s) named above.  If you, the reader of this message, are not the intended recipient, you are hereby notified that you should not further disseminate, distribute, or forward this E-mail message.  If you have received this E-mail in error, please notify the sender as soon as possible.  In addition, please delete the erroneously received message from any device/media where the message is stored. Thank you.

EXHIBIT 5

## Tom Shapiro

| | |
|---|---|
| **From:** | Tom Shapiro |
| **Sent:** | Thursday, December 08, 2005 9:13 PM |
| **To:** | Alan Kovacs (alankovacs@yahoo.com); Ben Barnow (b.barnow@barnowlaw.com); Brooks Cutter (bcutter@kerlegal.com); David Pastor (dpastor@gilmanpastor.com); Donald Amamgbo (DonaldAmamgbo@citycom.com); Doug Millen (dmillen@muchshelist.com); Ed Notargiacomo (ed@hbsslaw.com); Evan Smith (esmith@brodsky-smith.com); Henry Young (hyoung@abbeygardy.com); Herman Cowan (HermanCowanjr@yahoo.com); James Notis (Jnotis@abbeygardy.com); John Alexander (alexfen@aol.com); Ken Quat (ken@quatlaw.com); Ken Wexler (kawexler@wexlerfirm.com); Lance Harke (lharke@harkeclasby.com); Mark Ackerman (mackerman@brodsky-smith.com); Mark Tamblyn (mtamblyn@krylaw.com); Mila Bartos (mfb@ftllaw.com); Olen Dodd (olendodd@earthlink.net); Reginald Terrell (ReggieT2@aol.com); Robert Rothman (rrothman@lerachlaw.com); Sam Rudman (srudman@lerach.com); Steve Kanner (skanner@muchshelist.com) |

**Attachments:** Plaintiffs Counsel 2005 12 08.pdf

Dear Plaintiffs' Counsel:
Please see attached correspondence.


Thomas G. Shapiro
Shapiro Haber & Urmy LLP
Exchange Place
53 State St.
Boston MA 02109
(617) 439-3939
(617) 439-0134 (facsimile)
tshapiro@shulaw.com

CONFIDENTIALITY NOTE: This e-mail message contains information belonging to the law firm of Shapiro Haber & Urmy LLP, which may be privileged, confidential and/or protected from disclosure. The information is intended only for the use of the addressee(s) named above. If you think that you have received this message in error, please e-mail the sender. If you are not the intended recipient, any use, dissemination, distribution or copying is strictly prohibited.

# SHAPIRO HABER & URMY LLP

Attorneys at Law

Thomas G. Shapiro
Edward F. Haber
Thomas V. Urmy, Jr.
Michelle H. Blauner
Theodore M. Hess-Mahan
Todd S. Heyman
Matthew L. Tuccillo
Adam M. Stewart
Robert E. Ditzion

*Counsel*

Lawrence D. Shubow
Alfred J. O'Donovan

December 8, 2005

Re:    *Gillette M3Power Razor Actions*

Dear Plaintiffs' Counsel:

I am writing to let you know that I am hoping to set up a meeting with Ropes & Gray next week in compliance with the Court's Notice of Scheduling Conference. The Steering Committee has had a conference call to discuss a proposed schedule for the case. Because the meeting will be a preliminary meeting to exchange ideas about scheduling, none of the other three firms on the Steering Committee will be traveling from out of town to attend. The intention is not to reach any final agreements on anything at this meeting, but to exchange views on scheduling, which I can then bring back to the Steering Committee and to other plaintiffs' counsel for comment and suggestions before any agreements are reached.

Our tentative thinking about scheduling is as follows.

1.    Initial disclosures to be exchanged within 21 days of the Scheduling Conference.

2.    A consolidated complaint to be filed 30-45 days from the scheduling conference or the appointment of a structure for plaintiffs' counsel, whichever is later.

3.    A motion or motions for class certification to be filed 30 days after filing of the consolidated complaint. Defendant would have 60 days within which to file an opposition to class certification. (I anticipate that Gillette will want a longer period of time in view of the large number of class representatives they will likely want to depose.) The class reply brief to be filed within 45 days of the opposition.

4.    Fact discovery to be completed within six months of the date for Gillette's providing its initial disclosures.

Plaintiffs' Counsel
December 8, 2005
Page 2

5.      Plaintiffs' expert report(s) to be served 60 days after completion of fact discovery. Gillette's expert report(s) would be due 30 days thereafter. Any rebuttal report(s) would be due 21 days thereafter.  Expert depositions to be completed within 30 days after service of the rebuttal report.

6.      Any motion for summary judgment to be filed 30 days after completion of fact discovery.  Plaintiffs will have 45 days to oppose any motion for summary judgment.

7.      A final pretrial conference date and trial date would be determined by the Court.

Another item the parties are to discuss is an agenda of matters to be discussed at the scheduling conference.  We believe the matters to be discussed include the appointment of a structure of plaintiffs' counsel, scheduling, and the possibility of mediation.

As to the third item, we do not believe we should consent to trial by magistrate judge, at least at this time.

We welcome any suggestions or input you may have.

                                Sincerely yours,


                                Thomas G. Shapiro

TGS/sg

EXHIBIT 6

# Tom Shapiro

| | |
|---|---|
| **From:** | Tom Shapiro |
| **Sent:** | Tuesday, December 13, 2005 11:49 AM |
| **To:** | Alan Kovacs (alankovacs@yahoo.com); Anthony Vozzolo (avozzolo@faruqilaw.com); Ben Barnow (b.barnow@barnowlaw.com); Brooks Cutter (bcutter@kcrlegal.com); David Pastor (dpastor@gilmanpastor.com); Donald Amamgbo (DonaldAmamgbo@citycom.com); Doug Millen (dmillen@muchshelist.com); Ed Notargiacomo (ed@hbsslaw.com); Evan Smith (esmith@brodsky-smith.com); Henry Young (hyoung@abbeygardy.com); Herman Cowan (Herman_Cowanjr@yahoo.com); James Notis (Jnotis@abbeygardy.com); John Alexander (alexfen@aol.com); Ken Quat (ken@quatlaw.com); Ken Wexler (kawexler@wexlerfirm.com); Lance Harke (lharke@harkeclasby.com); Mark Ackerman (mackerman@brodsky-smith.com); Mark Tamblyn (mtamblyn@krylaw.com); Mila Bartos (mfb@ftllaw.com); Olen Dodd (olendodd@earthlink.net); Reginald Terrell (ReggieT2@aol.com); Robert Rothman (rrothman@lerachlaw.com); Sam Rudman (srudman@lerach.com); Steve Kanner (skanner@muchshelist.com) |
| **Subject:** | FW: Gillette's Rule 16.1 Conference |
| **Attachments:** | DEFENDANTS' PROPOSED PRE-TRIAL SCHEDULE.DOC |

Dear Plaintiffs' Counsel:

I write in furtherance of my letter of December 8, 2005 to report that I had a meeting with Gillette's counsel from Ropes & Gray to discuss the Court's order with respect to the initial scheduling conference. I gave Gillette's counsel the proposed schedule set out in my letter of December 8, 2005. Yesterday afternoon Gillette's counsel sent me a proposed schedule, which is attached.

Their schedule for the most part is similar or identical to plaintiffs' proposal. There is one scheduling issue on which there is a real difference of opinion. Gillette proposes a date for initial disclosures 81 days after the conference. At the meeting they wanted even a longer period, tied to the filing of their motions to dismiss. I took the position that any ruling on motions to dismiss should not effect the scope of relevant discovery and that discovery should go forward independent of any motions to dismiss. They may still agree to plaintiffs' position, or it may be that the differing positions of the parties will have to be set forth in the joint statement to be filed with the court.

We had a very general discussion with respect to settlement although no specific new demands or offers were exchanged.

I will keep you posted. It will probably be January before we attempt to finalize an agreement on schedule in view of the holidays and vacations.

Happy holidays to everyone.

Thomas G. Shapiro
Shapiro Haber & Urmy LLP
Exchange Place
53 State St.
Boston MA 02109
(617) 439-3939
(617) 439-0134 (facsimile)
tshapiro@shulaw.com

CONFIDENTIALITY NOTE: This e-mail message contains information belonging to the law firm of Shapiro Haber & Urmy LLP, which may be privileged, confidential and/or protected from disclosure. The information is intended only for the use of the addressee(s) named above. If you think that you have received this message in error, please e-mail the sender. If you are not the intended recipient, any use, dissemination, distribution or copying is strictly prohibited.

**From:** Swan, Barbara C. [mailto:Barbara.Swan@ropesgray.com] **On Behalf Of** Wolkoff, Harvey J.
**Sent:** Monday, December 12, 2005 2:42 PM
**To:** Tom Shapiro
**Subject:** Gillette's Rule 16.1 Conference

<<DEFENDANTS' PROPOSED PRE-TRIAL SCHEDULE.DOC>>

Tom, as we discussed this morning, I am enclosing a copy of Defendants' Proposed Pre-Trial Schedule.

2/27/2006

# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re:<br><br>M3 POWER RAZOR SYSTEM MARKETING & SALES PRACTICES LITIGATION | CIVIL ACTION NO: C.A. No. 05-11177 (LEAD CASE)<br><br>MDL Docket No: 1704 |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | |

## [PROPOSED] CASE MANAGEMENT ORDER
## RE PLAINTIFFS' COUNSEL

WOODLOCK, D.J.

WHEREAS, this Court in its Case Management Order and Order for Consolidation, dated January 26, 2006, ordered that any motions for appointment of lead/liaison counsel were to be filed by February 10, 2006, and any oppositions thereto were to be filed by February 24, 2006;

WHEREAS, three applications have been filed; and

WHEREAS, a hearing on the applications has been held,

IT IS HEREBY ORDERED as follows:

1.      The law firms of Shapiro Haber & Urmy LLP and Lerach Coughlin Stoia Geller Rudman & Robbins LLP are hereby appointed as interim Lead Counsel on behalf of plaintiffs pursuant to Rule 23(g)(2), pending the Court's determination whether to certify the action as a class action.

2.      The law firm of Shapiro Haber & Urmy LLP is appointed as Liaison Counsel for plaintiffs pursuant to Rule 23(g)(2), pending the Court's determination whether to certify the action as a class action.

3.      Lead Counsel shall have the following powers and responsibilities:

a.  To be responsible for coordinating and supervising the efforts of plaintiffs' counsel to ensure that pre-trial, trial and post-trial preparation is conducted effectively, efficiently and economically and that unnecessary or duplicative work and expenditures are avoided.

b.  To make all work assignments among plaintiffs' counsel, including the appointment of a steering committee or other committees as, in the discretion of Lead Counsel, may become appropriate and in the best interests of the class.

c.  To initiate or file all pleadings, motions or other papers except as follows:

    i.   Pleadings, motions or other papers that relate to unique issues in a specific case may be initiated or filed without the approval of Lead Counsel, provided that any such filing shall contain a certification that counsel filing such matter has conferred in good faith with Lead Counsel as to the necessity or appropriateness of the filing;

    ii.  Any requests for discovery that relate to unique issues in a specific case and that are not served by or with the approval of Lead Counsel, may be served on defendant only with leave of the Court.

d.  To coordinate the conduct of discovery proceedings, including the taking of depositions;

e.    To determine what counsel will act as spokesperson at pre-trial conferences or to argue motions on behalf of all plaintiffs;

f.    To retain experts or consultants;

g.    To call meetings of plaintiffs' counsel as they deem necessary and appropriate from time to time;

h.    To negotiate and authorize settlements with counsel for defendants, subject to Court approval of any settlement;

i.    To assess plaintiffs' counsel for reasonable cost contributions for a common litigation fund, to pay common expenses, such as, for example, expenses for deposition transcripts, document production and maintenance of a document depository, consultants and expert witnesses; and

j.    To supervise any other matters concerning the prosecution or resolution of this MDL proceeding.

4.    Liaison Counsel shall have the following powers and responsibilities:

a.    To be the contact between plaintiffs' counsel and defendants' counsel;

b.    To file all pleadings on behalf of plaintiffs, except as provided above;

c.    To be responsible for communicating with the Court to coordinate the conduct of the litigation.

5.    Each class counsel (or each firm) who may seek an award (or approval) of a fee (or expenses) by the Court shall file quarterly with Lead Counsel a report containing the daily record of time spent and expenses incurred during the preceding quarter (and the

ordinary billing rates of such attorneys in effect during such quarter) and the accumulated total of counsel's time, hourly rates, and expenses to date.

By the Court

_____
Hon.  Douglas P. Woodlock U.S.D.J.

DATED: _____, 2006