# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re:<br><br>M3 POWER RAZOR SYSTEM MARKETING & SALES PRACTICES LITIGATION<br><br>THIS DOCUMENT RELATES TO: ALL ACTIONS | CIVIL ACTION NO: C.A. No. 05-11177 (LEAD CASE)<br><br>MDL Docket No: 1704 |

**OPPOSITION IN RESPONSE TO PLAINTIFF CARLOS CORRALES'
OBJECTION TO THE CONSOLIDATED AMENDED COMPLAINT AND
MOTION FOR ORDER ALLOWING PLAINTIFF CARLOS CORRALES
TO PROCEED UNDER HIS OWN COMPLAINT AND WITH HIS OWN COUNSEL**

Plaintiffs Mark Dearman, Anthony DeBiseglia, Matthew Marr, Adam Kline, Greg Besinger, Collin L. McGeary and Javier Tuñón (hereafter the "Named Plaintiffs") file this Opposition in Response to Plaintiff Carlos Corrales' ("Corrales") (1) Objection to the Consolidated Amended Complaint, and (2) Motion for Order Allowing Plaintiff Carlos Corrales to Proceed Under His Own Complaint and With His Own Counsel ("Objection and Motion"), filed by The Kick Law Firm, APC ("Kick") and Kanner & Whiteley, LLC ("Kanner") (collectively referred to as "Corrales' counsel") on or about May 4, 2006.[1]

## INTRODUCTION

After consideration of briefing by counsel for the numerous plaintiffs who filed complaints against Gillette Company ("Gillette") that were transferred to this Court by the Judicial Panel for Multidistrict Litigation, and after oral argument at two separate hearings on January 23, 2006 and March 6, 2006, this Court ordered the consolidation of the complaints and designated Robert Rothman, Lerach Coughlin Stoia Geller Rudman &

---

[1]   "Mem. p. __" refers to Corrales' counsels' Objection and Motion, dated May 4, 2006.

Robbins, LLP ("Lerach") and Ben Barnow, Barnow and Associates, P.C. ("Barnow") Co-Lead Counsel and Thomas G. Shapiro, Shapiro Haber & Urmy LLP ("Shapiro") as Liaison Counsel. <u>Transcript of hearing of 3/6/06</u>, p. 42. Throughout the process, counsel for plaintiffs Corrales and Kasem Adoure ("Adoure") voiced their objection, *inter alia*, to the Multidistrict Litigation ("MDL") proceedings and the consolidation of the complaints. First, attorney Kick unsuccessfully argued in opposition to consolidation in front of the Judicial Panel for Multidistrict Litigation. Thereafter, this Court provided attorneys Kick and Kanner with the opportunity to argue their positions and bases, *inter alia*, for seeking a separate class in California state court and their objection to the MDL proceeding.[2] This Court did not disregard the concerns outlined by attorneys Kick and Kanner, but properly questioned whether their concerns were appropriate at this stage of the litigation.[3] This Court eventually decided that this case should be controlled by MDL principles, that Co-Lead Counsel should be appointed and that a consolidated complaint should be filed.[4] That ruling is in total conformity with MDL procedure and the goal of judicial efficiency it supports and protects. The Court's ruling was embodied in Case Management Order No. 2 which designates Co-Lead Counsel and Liaison Counsel with certain rights and responsibilities for the efficient prosecution of this action. *See* Court's Order dated March 17, 2006 ("Case Management Order").

---

[2]   Notably, both at the January 23, 2006 and March 6, 2006 hearings, this Court devoted a significant period of time to allow attorneys Kanner and others then with him to argue their position.

[3]   Court: "But what difference is it going to make, at least at the earlier stages of discovery and so on, the organization part of this case?" <u>Transcript of 1/26/06 hearing</u>, p. 9.

[4]   The consolidated complaint was filed on April 18, 2006 (the "Consolidated Complaint").

Corrales' counsels' Objection and Motion is another attempt by them to get this Court not to consolidate the complaints and to allow them, *inter alia*, to seek a California class on their own, thereby avoiding the very efficiency that this Court sought to promote by entering the Case Management Order. Corrales' counsel have cited no proper basis for their instant motion. Corrales' counsel did not seek an appeal of this Court's Order. Nor did Corrales' counsel file a motion for reconsideration. Rather, Corrales' counsel have created their own method for moving before this Court. The rules of the Court and the orders of the Court are important. This was a concern this Court expressed during the January hearing: "[I]t's not too much to ask that somebody who appears pro hac vice be familiar with the rules of this Court." Transcript of hearing of 1/23/06, p.37. Apparently, Corrales' counsel do not agree. In fact, Corrales' counsel did not even follow Local Rule 7.1(A)(2), which requires a conference and a good faith effort to resolve and narrow the issues raised by their motion.

Corrales' counsel base their objection on their claim that the Consolidated Complaint must allege each cause of action set forth in the individual complaints and must plead separate subclasses for each of the 50 states. Not so. The Consolidated Complaint does not replace the complaints previously filed by the individual complainants. Rather, the Consolidated Complaint serves as a vehicle for this MDL proceeding to conduct the pretrial proceedings effectively and efficiently. In the event one or more of the individual plaintiffs are displeased with the handling of and the resolution of the class action through the MDL proceeding, that plaintiff may opt out and pursue his own case against Gillette. In the event that the case is not resolved, Corrales' complaint will return to its original forum for trial. *Lexicon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 33 (1998). In any

event, it is common practice for consolidated complaints to be filed in MDL proceedings. *See In Re High Sulfur Content Gasoline Products Liability Litigation*, MDL No. 1632 (Consolidated and Amended Class Action Complaint, filed June 22, 2005) (out of over 100 plaintiffs and approximately 28 individual cases, only 6 plaintiffs were named in the consolidated complaint).

Corrales' attack on the MDL process, established law, and the considered rulings of this Court, is not something that occurs in a vacuum. In that regard, letters sent contemporaneously to Liaison Counsel with the filing of Corrales' motion not only shed light on the matter and the true motivation behind this motion, but give further support for the need for the order previously entered by this Court, the wisdom inherent in the MDL process, and the propriety of the Consolidated Complaint. See Exhibit 1, attached hereto (May 11, 2006 and May 18, 2006 letters from attorney Taras Kick).

## ARGUMENT

### I. The Consolidated Complaint Does Not Need to Allege Subclasses

The crux of Corrales' counsels' stated argument is based on the incorrect proposition that the Consolidated Complaint restricts the Named Plaintiffs from later pursuing and gaining approval from this Court for subclasses, should they ever become advisable or necessary. Corrales' counsel incorrectly contend that Co-Lead Counsel is now restricted to seeking nationwide class certification. Corrales' counsels' position arguably works against the interests of the Class by claiming that certification of a nationwide class would not be allowed under Federal Rule of Civil Procedure 23. While ideally a nationwide class is the more appealing method of handling this litigation,

particularly in the event that an early settlement can be reached,[5] the Consolidated Complaint does not preclude Co-Lead Counsel from asking this Court to certify subclasses at the appropriate time. Indeed, by their own admission, Corrales' counsels' analysis of decisional authority is limited to opinions at later stages of litigation, *e.g.*, at a minimum, at the class certification stage. Mem. p. 11-12. On its face, therefore, Corrales' counsels' argument is premature. It is also potentially adverse to the interests of consumers in that it lodges a plaintiff counsels' position in favor of sub-classes, usually a position advanced by defendants trying to put roadblocks in the path of class certification.

As stated, to the extent Corrales' counsel argue that the Consolidated Complaint exclusively seeks a nationwide class, their argument is premature. This Court will likely have ample opportunity to address whether the creation of subclasses is appropriate when it later considers and decides issues concerning class certification, if that issue gets raised, as is often done by defendants in these situations. In the course of its prospective choice of law analysis of the states' consumer statutes, this Court may or may not reach the determination that subclass(es) are suitable. That analysis is not ripe at this point in the litigation. Courts have, in fact, held that a resolution of choice of law issues is premature even at the class certification stage of litigation. *See In re Synthroid Marketing Litig.*, 188 F.R.D. 295, 302 (N.D. Ill. 1999) ("speculation that choice-of-law problems may defeat the

---

[5]    Consumer class actions involving state law consumer claims are routinely approved as nationwide classes where it fosters the public policy favoring class action settlements. *In re Wireless Telephone Federal Cost Recovery Fees Litig.*, Case No. 02-921-FJG, 2004 U.S. Dist. LEXIS 23342, *45-46 (W.D. Mo.); *see also Williams v. GE Capital Auto Lease, Inc.*, 159 F.3d 266 (7th Cir. 1998) (nationwide class settlement of claims of inadequate disclosures and unreasonable early termination charges); *Tropp v. Western-Southern Life Ins. Co.*, 2003 U.S. Dist. LEXIS 12565, No. 02 C 8341, (N.D. Ill. July 18, 2003) (nationwide class settlement of consumer fraud claims of improper insurance billing practices); *Schwab v. America Online, Inc.*, in the Circuit Court of Cook County, Illinois, Case No. 96 CH 13732 ("AOL Access litigation"), Final Judgment (Schiller, J. Mar. 11, 1998) (granting final approval of a national settlement); *Boland, et al., v. Simon Marketing and McDonald's Corporation*, in the Circuit Court of Cook County, Illinois, Case No. 01 CH 13803, Final Judgment and Order of Dismissal (Schiller, J. Apr 8, 2003) (granting final approval of a national settlement).

predominance of common issues later is insufficient to avoid certification now"); *Hickey v. Great Western Mortgage Corp.*, 158 F.R.D. 603, 612 (N.D. Ill. 1994) (declining to decide the choice of law issue on a motion for class certification); *Lobo Exploration Co. v. Amoco Prod. Co.,* 991 P.2d 1048, 1052 (Okla. Ct. App. 1999) (refusing to consider choice of law issues at the class certification stage, but "reserved that issue for determination upon reaching the merits"); *In re Crazy Eddie Sec. Litig.*, 135 F.R.D. 39, 41 (E.D.N.Y. 1991) (stating that "this court declines to decide choice of law issues on a class certification motion and holds that the application of the laws of different states, if necessary, does not preclude class action litigation of this case"); *Maywalt v. Parker & Parsley Petroleum Co.*, 147 F.R.D. 51 (S.D.N.Y. 1993) (same).

Even if the Court ultimately determines that sub-classes are necessary, there is no requirement that the Consolidated Complaint plead subclasses, *e.g.* on a state-by-state or group-of-states basis. The United States Supreme Court has held that should a court later determine, in connection with a motion for class certification, that subclasses are needed, it can order plaintiffs to amend the pleadings. *See Phillips Petroleum v. Shutts*, 472 U.S. 797, 810 (1985) (finding that "the court may amend the pleadings to ensure that all sections of the class are adequately represented"); *see also Hnot v. Willis Group Holding, Ltd.*, 01 Civ. 6558 (GEL), 2004 U.S. Dist. LEXIS 15734 (S.D.N.Y. 2004) (granting plaintiffs motion to amend the complaint for the "deletion of certain class representatives and the addition of causes of action based on state law," even though "[t]he complaint was filed more than three years ago, discovery has been essentially completed, and motions by plaintiffs to certify a class and by defendants for summary judgment have been made and are in the process of being briefed"); *Twyman v. Rockville Housing Authority*, 99 F.R.D. 314 (D. Md.

1983) (allowing amendments to the complaint in order to remedy class certification concerns).

Finally, if this Court later determines that multiple state statutes apply, "the Court has the ability to adjudicate a class action litigation that could involve the application of numerous states' laws." *In re Nig. Charter Flights Contract Litig.*, 233 F.R.D. 297, 306 (E.D.N.Y. 2006). Other courts have similarly noted that even if "choice of law rules required a court to apply the law of all fifty states, this would not render the trial per se unmanageable" as "it is certainly possible to apply the laws of many states in a single class action." *Steinberg v. Nationwide Mut. Ins. Co.,* 224 F.R.D. 67, 79 (E.D.N.Y. 2004) (holding that common questions of fact existed as to breach of contract claims since all putative class members signed substantively identical agreements) [citations and internal quotations omitted]. Moreover, "even if a substantial variation in applicable state laws were to arise, 'the Court may employ subclasses or decertify those state law subclasses whose adjudication becomes unmanageable.'" *In re Nig. Charter Flights*, 233 F.R.D. at 306, *quoting In re LILCO Secs. Litig.*, 111 F.R.D. 663, 670 (E.D.N.Y. 1986). In this regard, this Court may likewise determine that the possibility that differences between relevant state laws might arise should not deter certification of a class.[6]

---

[6]   Of course, that question is not currently posed to this Court and will not be addressed by this Court until, at a minimum, the class certification stage.

II.    **The Consolidated Complaint Does Not Need to Name All Consolidated Plaintiffs**

In general, it is entirely proper for a consolidated complaint in a class action to name only a select number of plaintiffs, or even only a lone plaintiff. Corrales' counsel misleadingly argue that it is improper to drop the names of the plaintiffs of the individually filed actions and that, by doing so, Co-Lead Counsel essentially dismissed the claims of those plaintiffs. Again, not so.

A consolidated complaint for the purposes of, *inter alia*, discovery and other pretrial proceedings does not render the individual complaints moot, nor does it constitute a dismissal of those actions. Those cases, to the contrary, are simply stayed in the interest of judicial economy and efficiency.

Under the United States Supreme Court holding in *Lexicon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 33 (1998), a court presiding over a MDL has control over the consolidated actions for pretrial proceedings, including discovery and settlement negotiations. Only after the pretrial stages of the litigation and efforts to settle the consolidated actions are complete must the transferee court remand the individual cases to their original courts for trial. *Id.; see also In re Joann Patenaude*, 210 F.3d 135, 142 (3d Cir. 2000) (stating that transferee courts have broad pretrial authority); *In re Wilson*, No. 05-4040, 2006 U.S. App. LEXIS 11989, *29 (3d Cir. 2006) (finding that a MDL court's obligation to remand when the case reaches trial is "impervious to judicial discretion," but when "remand is sought before the conclusion of coordinated or consolidated pretrial proceedings, the [court]'s authority is discretionary."); *In re Silica Prods. Liab. Litig.*, 398 F. Supp. 2d 563, 668 (D. Tex. 2005) ("Remand is inappropriate, for example, when continued

consolidation will 'eliminate duplicative discovery, prevent inconsistent pretrial rulings, and conserve the resources of the parties, their counsel and the judiciary'") (*citing In re Heritage Bonds Litig.*, 217 F. Supp. 2d 1369, 1370 (J.P.M.L. 2002)).

This Court clearly expressed its agreement with this notion[7] and, in fact, Corrales' counsel seemed to comprehend it[8] (but nevertheless filed their instant Objection and Motion). In this regard, none of the individual complainants are prejudiced by the filing of the Consolidated Complaint or the MDL through the pretrial process. Corrales' counsel concedes as much. In fact, Corrales' counsel also represents plaintiff Adoure, whose case was transferred to this Court as part of the MDL. In direct contradiction to their position here that Co-Lead Counsel improperly dismissed Adoure's claim by not including him in the Consolidated Complaint, the very next day after filing the instant motion, Corrales' counsel acknowledged that the Adoure claim was still very much alive, in that they moved to dismiss the Adoure complaint in order to facilitate an interlocutory appeal. That action would not have been necessary if Corrales' counsel actually believed that their clients' complaints were dismissed because they were not included as named plaintiffs in the Consolidated Complaint.

Corrales' counsel cite several cases (none of which are even remotely applicable) to support the absurd notion that Co-Lead Counsel were required to list all plaintiffs, including, of course, Corrales, in the Consolidated Complaint. Mem. p.6, FN4. None of the

---

[7]  The Court stated: "And, so, there will be a consolidation. What you will see is that all the cases except Dearman are going to be terminated, but that's an issue for docketing. ***It's not that the cases are going away.*** But there will be that form of dealing with that." Transcript of 1/23/06 hearing, p. 24. This Court made it unequivocally clear that the individual complaints were not – and will not be – dismissed, so that they are preserved in the event this Court must remand those complaints to their respective transferee courts for trial.

[8]  "Kanner: Under, for example, *Lexicon*, you're only going to try cases that started here." Transcript of 1/23/06 hearing, p. 13. Corrales' counsel seemed to express an understanding of the MDL process: this Court maintains control of all the consolidated actions throughout the pretrial process. Yet, despite the fact that the litigation remains in the pretrial stage, Corrales' counsel has already called this Court's authority into question.

decisions relied upon by Corrales' counsel, however, state that it was improper to remove the name of a plaintiff from an original complaint in a ***class action*** setting. Notably, *Att Sys. Co. v. Tylman*, Case No. 03 C 50326, 2004 U.S. Dist. LEXIS 20857 (N.D. Ill. 2004), and *Jones v. Board of Trustees of the Univ. of Illinois*, No. 83 C 9344, 1986 U.S. Dist. LEXIS 26472, *2 (N.D. Ill. 2006), are not even class action cases. In *Att Sys.*, the court simply presumed that by the absence of certain plaintiffs from the original complaint, those individuals no longer sought to pursue their case. In *Jones*, a ***defendant***, not a plaintiff, was excluded from the amended complaint. Moreover, in *Jones*, plaintiff filed a motion to voluntarily withdraw the defendant from the action. In *Alexis v. District of Columbia*, 44 F. Supp. 2d 331 (D.D.C. 1999), the court footnoted the fact that defendants mistakenly listed the name of a plaintiff that was not identified in the caption. The decisions relied upon by Corrales' counsel, therefore, have absolutely no relevance to the issue at hand.

In addition to the fact that Co-Lead Counsel are under no obligation to name each plaintiff of the individual complaints in the Consolidated Complaint, doing so would be wasteful and strategically unsound. Defendant Gillette has already issued discovery demands and deposition notices on the select number of plaintiffs named in the Consolidated Complaint. Hopefully, Corrales' counsel would not suggest that each individual plaintiff in each of the transferred cases in the MDL proceeding should be subjected to the same line of questioning and scrutiny. Corrales' counsels' Objection and Motion, in essence, calls for Co-Lead Counsel to conduct unnecessary discovery, make duplication and inefficiency the watchwords for this litigation, and hinder this Court's ability to implement an expedited discovery track. *See Shutts*, 472 U.S. at 810 (noting that

"absent plaintiff class members are not subject to other burdens imposed upon defendants").

Co-Lead Counsel's decision to name some, and not all, of the plaintiffs for the Consolidated Complaint does not weaken the action against Gillette and does not dismiss or withdraw the claims of the unnamed plaintiffs.  In a class action, the complaint represents the interests of all class members equally.  In the contest for lead counsel appointment, the Court raised the issue of whether having too many lawyers in charge would result in inefficiency, etc., and whether an Iraqi-type situation would arise.  But, of all the attorneys in this litigation, it appears that only the same one or two attorneys from that group that exhibited a high level of early dispute now pursue conduct that would make that concern come true.[9]  A requirement that every plaintiff be named, all needing to review pleadings, all needing to see all discovery, all needing final say, all needing to have their individual lawyers approve each step of the litigation, would lead to what is transpiring from Corrales' counsel, and what this Court has clearly and repeatedly set forth should not happen.  It is exactly the reason consolidated complaints are commonplace in MDL proceedings and why this Court's Order was, without question, correct.

## III.    The Consolidated Complaint Does Not Drop Any Valid Common Law or Statutory Claims

Corrales' counsel would like this Court to believe that they represent the interests of the California class members and that the Consolidated Complaint fails to do so.  Mem.

---

[9]    In a telephone conversation with Plaintiffs Steering Committee ("PSC") member C. Donald Amamgbo, the attorney selected by the Adoure group to be on the PSC, he advised that he was not aware of attorney Kick's letters.  In fact, he pointed out that he had reviewed the Consolidated Complaint, was aware of the position seeking that all plaintiffs should be named, that he felt his views concerning naming all plaintiffs who filed complaints had been considered with respect to Co-Lead Counsel's decision on the Consolidated Complaint, and that the Consolidated Complaint was acceptable to him.  Attorney Amamgbo had previously advised that his selection as the Adoure group's PSC member was unanimous; that vote would have included both Mr. Kick and Mr. Kanner.

p. 2, 8, 10; *see also* attorney Kick's letters dated May 11, 2006 and May 18, 2006,

addressed to Shapiro, wherein, in part, he attempts to speak for all California consumers:

> . . . I would caution you that I really do think opposing our motion would mean staking out a position adverse to my fellow California consumers who you are purporting to want to represent from that Boston perch of yours three thousand miles away, so please be very careful if you really are filing an opposition to this well taken motion not to stake out a position which might hurt us Californians.

***

> Although you must know this, let there be no question: this breach of your duties as liaison counsel is undermining our ability to prepare Mr. Corrales' case.  Further, it is having a negative effect on at least all California consumers, and they expressly reserve all their rights towards your firm and lead counsels' firms as well if lead counsel have any part in this refusal to turn over the documents.

*See* Exhibit 1.

By Corrales' counsels' own admission, however, the Consolidated Complaint names a

California plaintiff, Matthew Marr.  Also, contrary to Corrales' counsels' contention (Mem.

p. 6), the Consolidated Complaint does not limit the allegations to violation of the

Massachusetts consumer protection statute.   Rather, in accordance with adequate

pleading, the Consolidated Complaint refers to deceptive trade practices statutes,

deceptive advertising statutes, and consumer protection statutes in effect in all states

nationwide. ¶¶1, 48, 81-90.  In fact, as part of its basis for damages, the Consolidated

Complaint seeks corrective advertising, which is a potential form of recourse that Corrales'

counsel emphasizes.  ¶¶40-42, Prayer for Relief (d).[10]  Clearly, the Consolidated Complaint

---

[10]    For example, Corrales' complaint pleads causes of action under the California consumer protection and false advertising statutes.  The Consolidated Complaint, among other causes of action, pleads violation of the deceptive trade practices statutes, deceptive advertising statutes, and consumer protection statutes in effect in all states nationwide, effectively encompassing Corrales' allegations.

does not abandon any legitimate cause of action, nor does it give up the desire for a national class certification, something Corrales' counsels' approach arguably intrudes upon.

The Consolidated Complaint accomplished precisely what its name suggests; it consolidated the causes of action of the numerous complaints that were filed and alleges six, all-encompassing, counts, including: (1) negligent misrepresentation; (2) intentional misrepresentation; (3) breach of express warranty; (4) breach of implied warranty; (5) unjust enrichment; and (6) violations of deceptive trade practices statutes, deceptive advertising statutes and consumer protection statutes in effect in **all states** nationwide. Pleading in this fashion not only satisfied Co-lead Counsel's obligation to ensure that all valid causes of action were alleged in the Consolidated Complaint, but also satisfied the applicable pleading requirements contained in the Federal Rules of Civil Procedure, including Fed. R. Civ. P. 8. Notably, Corrales' counsel does not – because they cannot – claim that the Consolidated Complaint fails to allege any cause of action contained in Corrales' complaint. Rather, Corrales' counsels' gripe seems to be that the Consolidated Complaint does not explicitly mention the California statutes. However, by alleging violations of all consumer protection statutes nationwide, the Consolidated Complaint *does* include the California statutes.

In support of their argument that Corrales should be entitled to proceed with his own complaint in lieu of the Consolidated Complaint, Corrales' counsel rely largely on three cases: *In re Storage Technology Corp. Sec. Litig.*, 630 F. Supp. 1072 (D. Co. 1986); *In re Energy Systems Equipment Leasing Sec. Litig.*, 642 F. Supp. 718 (E.D.N.Y. 1986); *In re Equity Funding Corp. of Am. Sec. Litig.*, 416 F. Supp. 161 (C.D. Cal. 1976). Mem. p. 2-3,

9.  These decisions are inapposite to the instant matter and Corrales' counsels' misuse and mischaracterization of these decisions is obvious.

First, in *In re Storage Technology*, the court's decision simply stated that one plaintiff objected to the consolidated complaint, but the court's opinion made no mention, and there is no analysis whatsoever, as to whether the objection was granted.  Second, in *In re Energy Systems,* the court did not transfer two of seven transferred actions to the venue in which they were originally commenced for the ***pretrial proceedings***.  Instead, the court stated that all seven cases were being handled together, but that for two select cases "although in front of this Court for all pretrial and discovery matters, will ultimately be returned for trial to the forums in which they were originally commenced."

Finally, in *Equity Funding Corp.,* the court did not, as Corrales' counsel would like this Court to believe, order the separation of the complaints.  The decision to separate the complaints was made by the plaintiffs.  The court, in fact, wrote:

> As an appendix to the Complaint, the plaintiffs have provided a list of sixteen "actions not integrated with unified and consolidated actions," with a brief description of the nature of those non-integrated actions. They include actions presenting individual factual or legal issues that do not fit the pattern cut by the Complaint. ***Since the filing of the Complaint, a number of other actions have been transferred to this Court by the Judicial Panel or filed in the Central District of California and transferred to this Court pursuant to Local Rules.*** This opinion is not addressed to the non-integrated or "tag-along" actions, except insofar as any ruling with regard to the Complaint will be followed if similar issues are raised by the "tag-along" or non-integrated complaints. The Court now turns to the motions directed to the sufficiency of the Complaint and other issues properly raised at this stage of the proceedings.

416 F.Supp. at 175.

Notably (and not disclosed by Corrales' counsel), the complaints in *In re Equity* that were not originally included in the MDL were later transferred and became under the control of

a single court. Furthermore, the related decision by the Judicial Panel on Multidistrict Litigation stated that all of the cases should be handled in a single court in order to maintain the just and efficient conduct of the litigation. *See In re Equity Funding Corp. of America Sec. Litigation*, 375 F. Supp. 1378, 1381 (J.P.M.L. 1974).

## CONCLUSION

Corrales' Objection and Motion should be seen for what it truly is: an attempt to circumvent this Court's prior order and create unwarranted inefficiency. For the reasons set forth herein, the motion and objection should be denied in their entireties.

Dated: May 25, 2006                    Respectfully submitted,

**/s/Thomas G. Shapiro**
Thomas G. Shapiro (BBO #454680)
Theodore M. Hess-Mahan (BBO #557109)
Shapiro Haber & Urmy LLP
53 State Street
Boston, MA  02109
617-439-3939

*Liaison Counsel*

Samuel H. Rudman
Robert M. Rothman
Mark S. Reich
Lerach Coughlin Stoia Geller
      Rudman & Robbins LLP
58 South Service Road, Suite 200
Melville, NY  11747
631-367-7100

Ben Barnow
Barnow and Associates, P.C.
One North LaSalle Street
Suite 4600
Chicago, IL 60602
312-621-2000

*Co-Lead Counsel*

**CERTIFICATE OF SERVICE**

I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing ("NEF") and paper copies will be sent to those indicated as non-registered participants on the 25th day of May, 2006.

**/s/Thomas G. Shapiro**

Thomas G. Shapiro

EXHIBIT 1

THE KICK LAW FIRM

A PROFESSIONAL CORPORATION

660 SOUTH FIGUEROA STREET, SUITE 1800
LOS ANGELES, CALIFORNIA 90017
213 624 1588 / Fax 213 624 1589

May 11, 2006

**<u>Via U.S. Mail & Facsimile To (617) 439-0134</u>**
Thomas G. Shapiro, Esq.
Shapiro Haber & Urmy LLP
Exchange Place
53 State Street
Boston, Massachusetts 02109

  Re: *In re M3 Power Razon Systems Marketing & Sales Practices Litig.*
    *MDL No. 1704*

Dear Tom:

On Tuesday, May 9, 2006, you asked that I grant you a two week extension to file an opposition to our motion related to your proposed amended complaint. When I asked you why you needed an extension, you told me it was because your co-counsel Rob Rothman had just returned from a one week vacation.

Tom, you will recall that when we were vying for the lead counsel position before Judge Woodlock, one of the things you emphasized to the Judge was how your group had so many highly qualified attorneys in it, and therefore resources to get work done would never be an issue with your group. Now, just a short while later, you are telling me because *one* attorney in your group took a vacation for one week, you do not have the resources to timely oppose one rather straightforward motion. This is troubling to me, as it clearly indicates your group does not have the necessary resources, or at least the necessary commitment, to work this case up properly on behalf of the affected consumers. My firm, on the other hand, as you can see from the filing itself, continues to remain committed to this case, and to protecting the rights of the consumers.

Notwithstanding this serious concern I now have, as a professional courtesy to you, I am willing to grant you a one week extension to file your opposition to our motion, an extension which is equal in time to the one week vacation of your co-counsel Mr. Rothman.

However, I would caution you that I really do think opposing our motion would mean staking out a position adverse to my fellow California consumers who you are purporting to want to represent from that Boston perch of yours three thousand miles away, so please be very careful if you really are filing an opposition to this well taken motion not to stake out a position which might hurt us Californians.

Finally, would you be so kind at this point to finally send to me a copy of the documents I requested from you a long time ago, and reiterated by letter on May 5? Specifically, as you know, I am talking

Thomas G. Shapiro, Esq.                                                              2
*Re: In re M3 Power Razon Systems Marketing & Sales Practices Litig.*
*MDL No. 1704*
May 11, 2006

about the production by Gillette pursuant to its initial disclosure.

I am happy to be able to extend this professional courtesy to you, and will wait to hear from you as to whether yo have accpeted it.

Very truly yours,

Taras Kick

THE KICK LAW FIRM

A PROFESSIONAL CORPORATION

660 SOUTH FIGUEROA STREET, SUITE 1800
LOS ANGELES, CALIFORNIA 90017
213 624 1588 / FAX 213 624 1589

May 18, 2006

**Via U.S. Mail & Facsimile To (617) 439-0134**
Thomas G. Shapiro, Esq.
Shapiro Haber & Urmy LLP
53 State Street
Boston, MA 02109

Re:    *In re M3Power Razor System Marketing & Sales Practices Litigation,*
Civil Action No. 05-11177-DPW (Lead Case), MDL Docket No. 1704

Dear Tom:

I was not only disappointed, but actually quite surprised by your refusal in your May 12, 2006, letter, reiterated in your letter of earlier today, to provide documents to us that have been produced in this litigation by Gillette, and which we requested. This refusal by you is completely contrary to the duties of a liaison counsel, and shows a fundamental misunderstanding by you of the duties of liaison counsel to other counsel in this case. It causes me great concern about your fitness to continue to act in the role of liaison counsel.

A liaison counsel does not have the right to deny one of the parties with a case pending in multi-district litigation access to documents that have been produced in the case by the defendant. In fact, it is literally the opposite: the liaison counsel is supposed to *facilitate* the access to these documents, not *block* it. Your fundamental misunderstanding of this basic tenet of the duties of a liaison counsel brings under serious question your qualification to continue in this capacity.

Although you must know this, let there be no question: this breach of your duties as liaison counsel is undermining our ability to prepare Mr. Corrales' case. Further, it is having a negative effect on at least all California consumers, and they expressly reserve all their rights towards your firm and lead counsels' firms as well if lead counsel have any part in this refusal to turn over the documents.

Regarding your purported concern that providing documents to counsel might lead to unnecessary hours being spent working on the case, this demonstrates not only a gross misunderstanding by you of the duties of a liaison counsel, but also of the way coordinated litigation in general works. In case you do not know, in a class action it is not the liaison counsel that decides who gets paid for what hours were worked on a case, but rather the judge; in this case, if and when there is a settlement which is approved by Judge Woodlock, Judge Woodlock will decide whose hours were appropriate and whose were not.[1] I am not sure why you believe you get to usurp Judge Woodlock's role.

---

[1] Given that your hours to date seem largely to have been spent planning how to seize control of the case and push through a pre-arranged settlement, I suspect your hours may be scrutinized by Judge Woodlock with especial care.

Thomas G. Shapiro, Esq.                                                                                 2
*Re: In re M3Power Razor System Marketing & Sales Practices Litigation,*
Civil Action No. 05-11177-DPW (Lead Case), MDL Docket No. 1704
May 18, 2006

As you know, the real reason you are trying to block access to these documents in contravention of your duties to other counsel in this case and in contravention of your fiduciary duties to the consumers in this case, is because, as you previously admitted to me, you already have a largely pre-negotiated national settlement with the defendant in this case, subject only to fine tuning, and are now trying to create only the minimum amount of cover you perceive necessary to try to push through this national settlement. Limiting as much as possible the access to Gillette's documents that others would then be able to provide to Judge Woodlock to point out the inadequacies of your pre-arranged settlement is consistent with that plan. Let me know if I am wrong about this.

In sum, you have a duty as liaison counsel to provide access to the documents to us. If we do not receive a copy of the documents from you by Tuesday, May 13, 2006, we will file a motion to compel such access on Friday, May 26, 2006.

At that same time, we also will have no alternative but to file a motion to remove you as liaison counsel from this case, based not only on your dereliction of duties, but also on your obvious fundamental misunderstanding of the role of a liaison counsel in coordinated litigation.

Providing the documents by this Tuesday will not alone be enough to prevent our filing of this motion to remove you as liaison counsel. Rather, because you have shown such a total lack of acting in the manner required of a liaison counsel (starting with refusing to provide a speaker phone at the hotel meeting in Boston over the summer to those who wanted to participate by phone to now actively trying to prevent a party in the litigation from getting a copy of the documents produced by the defendant), to avoid such a motion I need from you in writing the case name and number of every case in which you previously served as liaison counsel, along with a list of counsel in that case. I will then call all of the counsel from those cases to determine whether you acted similarly in those cases, that being trying to ram through a settlement on behalf of lead counsel and yourself at the expense of the consumers, and in dereliction of your duties to other counsel. Depending on the information I receive from those attorneys, I will then decide on whether to file the motion to remove you. If I do not receive any such list from you, I will assume you never before have served in the capacity of liaison counsel, and will file the motion next Friday.

It is my preference to avoid filing both motions, and therefore I hope we receive the documents and necessary information from you to avoid them. However, given your conduct up to now, no doubt motivated by the pre-arranged deal with Gillette, it would take a complete reversal of your conduct to date for this to occur.

Very truly yours,

Taras Kick