# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

_____
                                        |
In re:                                  |    MASTER DOCKET
                                        |    Civil Action No. 05-11177
M3 POWER RAZOR SYSTEM                    |    (Lead Case)
MARKETING & SALES PRACTICES             |
LITIGATION                              |    MDL Docket No. 1704
_____ |
                                        |
THIS DOCUMENT RELATES TO:               |
ALL ACTIONS                             |    Jury Trial Demanded
_____ |

### PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND PUBLISHING OF NOTICE, AND SETTING OF A FINAL FAIRNESS HEARING

NOW COME plaintiffs Mark Dearman, Anthony DeBiseglia, Matthew Marr, Adam Kline, Greg Besinger, Collin L. McGeary, Javier Tunon, and Jean-Sebastien Elie (the "Representative Plaintiffs"), individually and on behalf of the Settlement Class (as defined in the Settlement Agreement and stated below), by and through Ben Barnow, Barnow and Associates, P.C., and Robert M. Rothman, Lerach Coughlin Stoia Geller Rudman & Robbins LLP (together, "Settlement Class Counsel"), and as their Memorandum in Support of Motion for Preliminary Approval of Class Action Settlement and Publishing of Notice, and Setting of a Final Fairness Hearing, state as follows:

## I.    THE LITIGATION

Commencing in or about February 2005, lawsuits were filed in various state and federal jurisdictions in the United States, as well as in Canada, which arose from the same complained-of conduct, _to-wit_, Gillette's conduct in the advertising and marketing of the Mach 3 Power Razor ("M3Power Razor"). By Order dated October 27, 2005, the Judicial Panel on Multi-District Litigation transferred each of the pending cases coming under its jurisdiction to the United States

District Court for the District of Massachusetts ("the Court").[1]  On April 18, 2006, a Consolidated

Class Action Complaint ("the Complaint") was filed alleging six counts: negligent

misrepresentation, intentional misrepresentation, breach of express warranty, breach of implied

warranty of fitness for a particular purpose, unjust enrichment, and violations of each of the 50

states' deceptive trade practices statutes, deceptive advertising statutes, and consumer fraud statutes,

and identifying Mark Dearman, Anthony DeBiseglia, Matthew Marr, Adam Kline, Greg Besinger,

Collin L. McGeary, and Javier Tunon  as the named representative plaintiffs. In conjunction with the

filing of the Settlement Agreement, an Amended Consolidated Class Action Complaint is being filed

alleging these same claims, as well as adding similar claims under Canadian law, and also adding

Jean-Sebastien Elie, a resident of Canada, as a named representative plaintiff.

## II.    SUMMARY OF THE SETTLEMENT

After extensive and arm's-length negotiations, a proposed Settlement Agreement has been

reached which will provide fair, reasonable, and adequate relief to members of the Settlement Class.

The Settlement Agreement provides for The Gillette Company ("Defendant" or "Gillette") to make

available cash and other benefits totaling $7,500,000[2] (the "Settlement Fund") for distribution to

Authorized Claimants and for the payment of certain expenses of notice, Claims Administration, and

other distribution costs as set forth in the Settlement Agreement. *See* Settlement Agreement, attached

hereto as Exhibit 1, at ¶2.1. The portion of the Settlement Fund for costs of notice, together with the

costs of Claims Administration, is not to exceed $2.45 million. *Id.* at ¶2.5; ¶3.2.  If the costs of notice

---

[1] It is believed that twenty-five cases have been consolidated in these MDL proceedings before the Court.

[2] All dollar amounts are in United States dollars, unless otherwise expressly stated. *See* Settlement Agreement, attached hereto as Exhibit 1, at ¶10.15. The terms defined in the Settlement Agreement have the same meanings herein as specified in the Settlement Agreement.

and Claims Administration exceed $2.45 million, Gillette will pay those additional amounts. *Id.* at ¶3.2.

Settlement Class Members have a choice between receiving a refund check or receiving up to two cash rebates in a single check. A Settlement Class Member whose M3Power Razor was purchased in the United States, whose claim has been allowed pursuant to the terms of the Settlement Agreement, and who chooses a refund, would receive a check for $13[3] plus $2, for postage and handling for the return of the M3Power Razor, *i.e.*, a check in the total amount of $15 (a Settlement Class Member whose M3Power Razor was purchased in Canada, whose claim has been allowed pursuant to the terms of the Settlement Agreement, and who chooses a refund, would receive a check in the amount of $16.25 in Canadian dollars[4] plus, for postage and handling for the return of the M3Power Razor, the Canadian dollar equivalent of $2 in US dollars at the prevailing commercial exchange rate in effect at the time of distribution). *Id.* at ¶2.1(b)(i).

Alternatively, and without sending in their M3Power Razor, a Settlement Class Member may choose to receive up to two $5 cash rebates in a check (up to a total of $10) for any purchases of M3Power blades during the period beginning May 1, 2004 (when the M3Power Razor went on the market), and/or Fusion Razors (manual or battery powered) during the period beginning January 1,

---

[3] If a Settlement Class Member submits a receipt showing he paid more than $13 in US dollars or $16.25 in Canadian dollars for the M3Power razor being returned, the Settlement Class Member shall receive a check in the currency and amount of the actual price paid, plus $2 (or, for Settlement Class Members whose M3Power Razor was purchased in Canada, the Canadian dollar equivalent of $2 in US dollars at the prevailing commercial exchange rate in effect at the time of distribution) for postage and handling.

[4] The difference in the amounts of the refunds to be paid to those whose M3Power Razor was purchased in the United States versus those whose M3Power Razor was purchased in Canada is a result of the currency exchange rate; $13 in US dollars equals $16.25 in Canadian dollars at the average prevailing commercial exchange rate over the period May 1, 2004 through October 31, 2005 (approximately 0.8).

2006 (when the Fusion Razor went on the market), through the end of the Initial Claim Period. *Id.* at ¶2.1(b)(ii). Rebate checks to Settlement Class Members living in Canada will be issued in the Canadian dollar equivalent at the prevailing commercial exchange rate in effect at the time of distribution.

If the $7,500,000 Settlement Fund is not exhausted during the Initial Claim Period, after satisfaction of the claims for refunds and rebates made and satisfaction of the permitted costs of notice and Claims Administration, then Gillette will distribute new Fusion manual razors with its blade cartridge ("Settlement Razors"), as provided in ¶¶2.3(a) – (c) of the Settlement Agreement. Any Settlement Razors distributed pursuant thereto shall include, in each package, coupons with a total value of $4, in US dollars if redeemed in the United States, and $4 in Canadian dollars if redeemed in Canada, good for the purchase of Gillette shaving-related products.[5] *Id.* at ¶2.3(d). The benefit to Settlement Class Members provided by these coupons is in addition to, and the redemption of these coupons will not be credited against, the Settlement Fund. *Id.*

As awarded by the Court, Defendant is obligated to pay and will not oppose attorneys' fees, costs, and expenses up to the amount of $1,850,000, and incentive awards in the following amounts: up to $1,000 to each Representative Plaintiff who was deposed; up to $750 to each other Representative Plaintiff who is a resident of the United States, and the Canadian dollar equivalent (at the prevailing commercial exchange rate in effect at the time of distribution of the incentive awards) to the Representative Plaintiff who is a resident of Canada; and up to $500 to each of the other Named Plaintiffs who are residents of the United States, and the Canadian dollar equivalent (at the prevailing commercial exchange rate in effect at the time of distribution of the incentive awards) to

---

[5] It is agreed that no portion of these coupons shall be considered in determining any award of attorneys' fees, costs, or expenses, or plaintiff incentive awards. *Id.* at 2.3(d).

the Named Plaintiff in the Canadian Action, as that term is defined in ¶9.5 of the Settlement Agreement who has, through his counsel, acknowledged consent to this Settlement Agreement. *Id.* at ¶7.2 and ¶7.3.

All parts of this settlement are separately-funded responses by Gillette to provide the Settlement Class with consideration and are not part of any existing or planned promotion and no future promotion will be reduced to reimburse Gillette for any distribution of refunds, rebates, or razors under the settlement. *Id.* at ¶2.4. For a detailed explanation of the settlement terms, see Section IV below.

The settlement provides valuable relief to members of the Settlement Class and is well within the range of reasonableness. As such, the settlement more than satisfies the standard for preliminary approval. *Manual for Complex Litig.* § 30.41, at 237 (explaining the standard for preliminary approval); s*ee also In re NASDAQ Market-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997); *In re Mid-Atlantic Toyota Antitrust Litig.*, 564 F. Supp. 1379, 1383-85 (D. Md. 1983). Therefore, by the accompanying motion, Representative Plaintiffs and Settlement Class Counsel respectfully move the Court for entry of an order: (1) certifying the Settlement Class; (2) appointing Mark Dearman, Anthony DeBiseglia, Matthew Marr, Adam Kline, Greg Besinger, Collin L. McGeary, Javier Tunon, and Jean-Sebastien Elie as the Representative Plaintiffs; (3) appointing Ben Barnow, Barnow and Associates, P.C., and Robert M. Rothman, Lerach Coughlin Stoia Geller Rudman & Robbins LLP, as Settlement Class Counsel; (4) preliminarily approving the settlement set forth in the Settlement Agreement; (5) approving the Notice Program to the Settlement Class; (6) appointing Complete Claim Solutions, LLC, as the Claims Administrator; and (7) scheduling a hearing to consider final approval of the settlement and any related matters.

## III.    CERTIFICATION OF A SETTLEMENT CLASS

"The settlement class device has been recognized throughout the country as the best, most practical way to effectuate settlements involving large numbers of claims," where the claims are small. *In re Prudential Sec. Limited Partnership Litig.*, 163 F.R.D. 200, 205 (S.D.N.Y. 1995); s*ee also In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liability Litig.*, 55 F.3d 768, 784 (3d Cir. 1995) (holding that courts should favor the use of devices, including settlement classes, that foster negotiated conclusions to class actions). In fact, a settlement class in complex litigation "actually enhances absent class members' opt-out rights because the right to exclusion is provided simultaneously with the opportunity to accept or reject the terms of a proposed settlement." *In re Prudential*, 163 F.R.D. at 205.

Accordingly, the parties have stipulated to the definition of a Settlement Class. Subject to the exclusions that follow and for settlement purposes only (Settlement Agreement at ¶2.6), the "Settlement Class" is defined as follows:

> All Persons in the United States of America or Canada who purchased or otherwise acquired for use and not resale an M3Power Razor in the United States during the period May 1, 2004 through September 30, 2005, or in Canada during the period May 1, 2004 through October 31, 2005.

Settlement Agreement at ¶1.20. Excluded from the definition of Settlement Class are Gillette, any entity in which Gillette has a controlling interest or which has a controlling interest in Gillette, Gillette's attorneys, successors, or assigns, the directors and officers of Gillette and the directors and officers of any entity in which Gillette has a controlling interest or which has a controlling interest in Gillette. *Id.* Also excluded from the definition of Settlement Class are those Persons who timely and validly request exclusion from the Settlement Class. *Id.*

Where a court is passing on the certification question in the context of a proposed settlement class, questions regarding the manageability of the case for trial purposes are not considered. *See Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 619 (1997) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, see Fed. Rule Civ. Proc. 23(b)(3)(D), for the proposal is that there be no trial."); *MacNamara v. Bre-X*, 214 F.R.D. at 427 (same, *citing Amchem*); *In re Lease Oil Antitrust Litigation*, 186 F.R.D. 403, 418 (S.D. Tex. 1999) (same, *citing Amchem*). The remaining requirements under Rule 23 must still be met in settlement-only certification situations, however. *Id.* The inquiry pursuant to Rule 23 should not extend to the merits of a case. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177 (1974). As demonstrated below, this case readily satisfies Rule 23, serves the policies that support it, and should be certified as a class action for settlement purposes.

A.    **The proposed Settlement Class Meets All the Requirements for Class Certification Pursuant to Rule 23(a) of the Federal Rules of Civil Procedure.**

The Settlement Class meets all of the requirements for class certification pursuant to Federal Rules of Civil Procedure, Rule 23(a). Rule 23(a) sets forth the following prerequisites for certifying a class: "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." F.R.C.P., Rule 23(a).

First, since Gillette sold the razors at issue to millions of consumers throughout the United States and Canada, the Settlement Class is clearly so numerous that joinder of all members is impractical.

- 7 -

Second, the same legal and factual questions are present for each member of the Settlement Class. "The threshold of 'commonality,' is not high." *In re Lupron Marketing and Sales Practices Litig.*, 228 F.R.D. 75, 88 (D. Mass. 2005) (citation omitted). "[T]he rule requires only that resolution of the common questions affect all or a substantial number of class members." *Id.* (citation omitted). The questions of law and fact common to the Settlement Class, include, *inter alia*, whether Gillette engaged in unfair methods of competition and deceptive acts in advertising the M3Power Razors; whether said conduct violated unfair trade practices statutes; whether Gillette was unjustly enriched by its improper conduct; whether Gillette negligently or intentionally misrepresented to consumers the capabilities of the M3Power Razors; whether Gillette breached express and implied warranties; and whether Representative Plaintiffs and other members of the Settlement Class have sustained damages, and, if so, the proper measure of those damages.

In regard to the third factor, "[a] sufficient nexus is established [to show typicality] if the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory." *In re Lupron Marketing and Sales Practices Litig.*, 228 F.R.D. at 89 (citations omitted). The claims of the Representative Plaintiffs are typical of the claims of the members of the Settlement Class, as they all purchased the concerned razors and their claims arise from the same course of conduct of Gillette.

The fourth factor is whether the representative parties will fairly and adequately protect the interests of the class. Satisfaction of this factor requires that the moving party show that: (1) the interests of Representative Plaintiffs do not conflict with the interests of any other member of the Settlement Class; and (2) the counsel chosen by the Representative Plaintiffs are qualified, experienced and able to vigorously conduct the proposed class action litigation. *Andrews v. Bechtel Power Corp.*, 780 F.2d 124, 130 (1st Cir. 1985). The interests of Representative Plaintiffs do not

conflict with the interests of any other Settlement Class Member, as they all seek relief from their purchases of M3Power Razors. By appointing Ben Barnow and Robert M. Rothman as Plaintiffs' Co-Lead Counsel, the Court has already determined that said counsel are qualified and experienced. Further, as demonstrated by the efforts of proposed Settlement Class Counsel to date, they have vigorously protected the interests of Representative Plaintiffs and Settlement Class Members and will continue to do so.

**B.    The proposed Settlement Class Meets the Requirements of Rule 23(b)(1)(A) and (b)(3).**

"In addition to the Rule 23(a) requirements of numerosity, commonality, typicality, and adequacy of representation, the party seeking to obtain class certification must demonstrate that the action may be maintained under Rule 23(b)(1), (2), or (3)." *In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 68 (D. Mass. 2005) (citations omitted). The Settlement Class here satisfies the requirements of Rule 23(b)(1)(A) and (b)(3).

As required by Rule 23(b)(1)(A), a class action will prevent possible inconsistent or varying adjudications which could occur if individual members had to prosecute separate actions.

The Settlement Class also satisfies the requirements of Rule 23(b)(3). "In adding 'predominance' and 'superiority' to the qualification-for-certification list, the Advisory Committee sought to cover cases 'in which a class action would achieve the economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *In re Lupron Marketing and Sales Practices Litig.*, 228 F.R.D. at 92 (*citing Amchem Products, Inc. v. Windsor*, 521 U.S. at 615). "The superiority analysis dovetails with the predominance analysis." *Id.* at 92. "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *In re Lupron Marketing and Sales Practices Litig.*, 228 F.R.D. at 91

- 9 -

(*citing Amchem Products, Inc. v. Windsor*, 521 U.S. at 623). "Predominance is a test readily met in certain cases alleging consumer or securities fraud or violations of anti-trust laws." *Id.* "Under First Circuit case law, predominance under Rule 23(b)(3) does not require an entire universe of common issues, but does require 'a sufficient constellation' of them." *In re Relafen Antitrust Litig.*, 231 F.R.D. at 70 (citation omitted). These factors are readily satisfied here. For example, whether Gillette engaged in improper conduct in marketing and advertising its M3Power Razors, whether this conduct violated the laws set forth in the Consolidated Class Action Complaint, and whether the conduct caused damage to members of the Settlement Class, are all common questions that predominate over any individual ones that may exist. Additionally, a class action is superior to other available methods as the amount of damages incurred by each Settlement Class Member is insufficient to justify the costs of pursuing an individual action. *Id.* at 92.

## IV.    TERMS OF THE SETTLEMENT AGREEMENT

### A.    Refund Checks

To receive the refund, a Settlement Class Member must return the M3Power Razor, but may and should retain the M3Power blade(s) and batteries, and certify that the M3Power Razor was purchased or otherwise acquired by the Settlement Class Member during the Settlement Class Period. *See* Exhibit 1, at ¶2.1(a), ¶2.1(b)(i). The required certification may be provided by submission of a proof of claim in either the form attached as Exhibit B to the Settlement Agreement (the "Proof of Claim") or by a writing containing substantially the same information. *Id.* at ¶2.1(c). A Settlement Class Member whose M3Power Razor was purchased in the United States, who chooses a refund, and whose claim has been allowed pursuant to the terms of the Settlement Agreement, shall receive $13 in cash, plus $2 in cash for postage and handling for the return of the M3Power Razor, for a total of $15. *Id.* at ¶2.1(b)(i). A Settlement Class Member whose M3Power

- 10 -

Razor was purchased in Canada, who chooses a refund, and whose claim has been allowed pursuant to the terms of the Settlement Agreement, shall receive a check in the amount of $16.25 in Canadian dollars plus, for postage and handling for the return of the M3Power Razor, the Canadian dollar equivalent of $2 in US dollars at the prevailing commercial exchange rate in effect at the time of distribution.[6] *Id.* If a Settlement Class Member submits a receipt showing he paid more than $13 in US dollars or $16.25 in Canadian dollars for the M3Power Razor being returned, the Settlement Class Member shall receive a check in the currency and amount of the actual price paid, plus $2 (or, for Settlement Class Members whose M3Power Razor was purchased in Canada, the Canadian dollar equivalent of $2 in US dollars at the prevailing commercial exchange rate in effect at the time of distribution) for postage and handling. *Id.* Refunds made in Canadian dollars will be credited against the Settlement Fund at the exchange rate in effect at the time of distribution. *Id.* at ¶2.1(a)(iii)

### B.    Cash Rebates

As an alternative to sending in the M3Power Razor and receiving a refund, a Settlement Class Member can instead elect to receive up to two $5 rebates in a check (rebate checks to Settlement Class Members living in Canada will be issued in the Canadian dollar equivalent at the prevailing commercial exchange rate in effect at the time of distribution) for any purchases of M3Power blades during the period beginning May 1, 2004, and/or Fusion Razors (manual or battery powered) during the period beginning January 1, 2006, through the end of the Initial Claim Period. *Id.* at ¶2.1(b)(ii). If a Settlement Class Member chooses this form of relief, then he must (1) submit the required certification, which is to include a statement that he has not submitted a claim for a refund, and (2) provide either a UPC code(s) from the package(s) of M3Power blades and/or Fusion

---

[6] *See* footnote 3, *infra*, for an explanation of the difference in the amounts of the refunds to be paid to those whose M3Power Razor was purchased in the United States versus Canada.

Razor or a receipt(s) showing they were purchased prior to the end of the Initial Claim Period. *Id.* at ¶2.1(b)(ii). A Settlement Class Member is limited to two such $5 rebates, totaling a $10 rebate in U.S. dollars (for Settlement Class Members living in Canada, such rebates will be issued in the Canadian dollar equivalent at the prevailing commercial exchange rate in effect at the time of distribution). *Id.*

### C.    Delivery of Settlement Razors in the Event that the Settlement Fund is Not Depleted by the Issuance of Refunds and Rebates

If the $7,500,000 Settlement Fund is not exhausted after satisfaction of the claims for refunds and rebates made during the Initial Claim Period and satisfaction of the permitted costs of notice and Claims Administration, then, as provided in the Settlement Agreement at ¶2.3(a), and, if triggered (*i.e.*, the Settlement Fund is still not exhausted), in ¶¶2.3(b) and (c), Gillette will distribute new Fusion manual razors with their blade cartridges ("Settlement Razors") in the manner provided in the Settlement Agreement and explained immediately below. The credit against the Settlement Fund for each such Settlement Razor distributed pursuant to ¶¶2.3 (a) through (c) of the Settlement Agreement will be $6.25, plus $0.75 per Settlement Razor for Gillette's postage, packaging, and administrative costs, for a total credit of $7.00 per Settlement Razor. *Id.* at ¶2.3(a – c). Any Settlement Razors distributed, pursuant to the aforementioned paragraphs in the Settlement Agreement, shall include, in each package, coupon(s) with a total value of $4, in US dollars if redeemed in the United States, and $4, in Canadian dollars if redeemed in Canada, off the purchase of Gillette shaving-related product(s).[7] *Id.* at ¶2.3(d). The benefit to Settlement Class Members provided by these coupons is in addition to, and the redemption of these coupons shall not be

---

[7] It is agreed that no portion of these coupons shall be considered in determining any award of attorneys' fees, costs, or expenses, or plaintiff incentive awards. *Id.* at ¶2.3(d).

credited against, the Settlement Fund. *Id.* In the event the credit against the Settlement Fund for the distribution of Settlement Razors to Authorized Claimants would exceed the remaining balance of the $7,500,000 Settlement Fund as calculated in ¶2.1(d), Gillette shall mail Settlement Razors to a statistically random sample of Authorized Claimants until the remaining balance is exhausted. *Id.* at ¶2.3(a).

If the first distribution of Settlement Razors to Authorized Claimants occurs and thereafter the Settlement Fund is still not depleted, then commencing immediately after the elapse of the 2 weeks for said mailing of Settlement Razors (as provided in the Settlement Agreement at ¶2.3(a)), Gillette shall place a link on its M3Power Razor webpage inviting Settlement Class Members who did not previously submit a claim during the Initial Claim Period to obtain a free Settlement Razor. *Id.* at ¶2.3(b). To be eligible to receive a free Settlement Razor, the Settlement Class Member must provide his name and mailing address, and further certify electronically that he (i) purchased or otherwise acquired an M3Power Razor during the Settlement Class Period, and (ii) has not previously submitted a claim under the settlement. *Id.* at ¶2.3(b). The website link shall be maintained for a period of up to 90 days (*i.e.*, the Residual Claim Period). *Id.* Under this distribution, free Settlement Razors shall remain available until each eligible claim submitted through the website link, for a maximum of 90 days, is satisfied, or until the credit for such distribution exhausts the balance of the Settlement Fund, whichever occurs first. *Id.*

If the aforementioned distributions of Settlement Razors occur and thereafter the Settlement Fund is still not depleted, then the remaining balance in the Settlement Fund shall fund the distribution by Gillette of Settlement Razors to a group to be selected by Gillette and Settlement Class Counsel, and in the event they cannot agree, by the Court. *Id.* at ¶2.3(c). Said distribution is to

be made proportionally to the populations of the various states and Canada, to the extent reasonable and practicable. *Id.*

### D.    Notice

As provided by the Settlement Agreement, the Court's authorization is sought for the publishing of notice to the Settlement Class. *Id.* at ¶3.1(c). Gillette shall pay for and shall assume the administrative responsibility of providing notice to the Settlement Class in accordance with the Order of Preliminary Approval and Publishing of Notice of a Final Fairness Hearing, and the costs of said notice, together with the costs of Claims Administration, shall be paid from the Settlement Fund, but within the limit of $2.45 million. *Id.* at ¶3.2. All such costs of notice and Claims Administration over the $2.45 million will be separately, and additionally, borne by Gillette. *Id.*

A plan for dissemination of notice (the "Notice Program") has been designed by Kinsella/Novak Communications, Ltd., and it includes a customary form of summary notice (the "Summary Notice") and a customary long form of notice ("Notice"). *See* Declaration of Andrew J. Novak In Support of Notice Plan and Exhibit 1 thereto: Notice Program by Kinsella/Novak Communications, Ltd., attached hereto as Exhibit 2. As required by the Settlement Agreement (*see* Exhibit 1 at ¶3.2), the Notice Program is designed to have a reach of not less than approximately 80% of the putative class in both the United States and Canada (s*ee* Exhibit 2 attached hereto), through publication of a Summary Notice in the form attached to the Settlement Agreement at Exhibit D, and, if approved by the Court, published in a range of consumer magazines, newspapers, and/or newspaper supplements to be designated by the Claims Administrator and approved by the Court. Additionally, the Claims Administrator shall establish a dedicated settlement website, and shall maintain and update the website throughout the Claim Period, with the Summary Notice, Notice, and Proof of Claim approved by the Court, as well as the Settlement Agreement. *See* Exhibit

1 at ¶3.2. The Claims Administrator also will provide copies of the forms of Summary Notice, Notice, and Proof of Claim, as well as the Settlement Agreement, upon a request by a putative Settlement Class Member made by phone to a toll-free number established by the Claims Administrator or made by a written request mailed to the Claims Administrator. *Id.* As explained below in Section V, the contents of the notice and the plan for dissemination of the notice satisfy due process requirements.

Additionally, as explained in Section V.C. below, pursuant to the Class Action Fairness Act, Gillette is required to serve the appropriate Federal and State officials with notice of the proposed settlement of this class action.

### E. Incentive Awards to Named Plaintiffs and Plaintiffs' Counsel's Attorneys' Fees, Costs, and Expenses.

Prior to agreeing upon all other terms of the Settlement Agreement, Gillette and Settlement Class Counsel did not discuss attorneys' fees, costs, or expenses, or reasonable incentive awards to the Representative Plaintiffs and Named Plaintiffs, other than that Gillette would pay them and that they would be paid over and above the $7,500,000 Settlement Fund. *Id.* at ¶7.1. Thereafter, the parties negotiated the amounts, subject to Court approval, for attorneys' fees, costs, and expenses, and the Representative Plaintiffs' and Named Plaintiffs' incentive awards, that Gillette would pay to Settlement Class Counsel. *Id.* Subject to Court approval, Defendant is obligated to pay and will not oppose attorneys' fees, costs, and expenses up to the amount of $1,850,000, and incentive awards in the following amounts: up to the amount of $1,000 to each Representative Plaintiff who was deposed; up to the amount of $750 to each other Representative Plaintiff who is a resident of the United States, and the Canadian dollar equivalent (at the prevailing commercial exchange rate in effect at the time of distribution of the incentive awards) to the Representative Plaintiff who is a resident of Canada; and up to $500 to each of the other Named Plaintiffs who are residents of the

United States, and the Canadian dollar equivalent (at the prevailing commercial exchange rate in effect at the time of distribution of the incentive awards) to the Named Plaintiff in the Canadian Action, as that term is defined in ¶9.5 of the Settlement Agreement who has, through his counsel, acknowledged consent to this Settlement Agreement. *Id.* at ¶7.2 and ¶7.3.

The amount(s) of any award of attorneys' fees, costs, and expenses, and the amount(s) of any incentive awards, are intended to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the settlement. *Id.* at ¶7.5. No order of the Court or modification or reversal or appeal of any order of the Court concerning the amount(s) of any attorneys' fees, costs, or expenses awarded by the Court to Settlement Class Counsel, or the amount(s) of any incentive awards awarded by the Court, shall affect the finality of the Judgment or constitute grounds for cancellation or termination of the Settlement Agreement. *Id.* at ¶7.5.

## V.    NOTICE

Pursuant to Rule 23(e)(1)(B), "[t]he court must direct notice in a reasonable manner to all class members who would be bound by a proposed settlement . . ." F.R.C.P., Rule 23(e)(1)(B). The proposed form of notice and plan for publishing are reasonable and designed to advise members of the Settlement Class of their rights.

### A.    Contents of the Notice

The proposed Summary Notice and the proposed Notice (hereinafter, collectively, "Notice") are Exhibits D and E, respectively, to the Settlement Agreement. The Notice includes a fair summary of the parties' respective litigation positions, the general terms of the settlement as set forth in the Settlement Agreement, instructions for how to opt-out of or object to the settlement, the process and instructions for making a claim, and the date, time, and place of the Final Fairness Hearing. *Id.* at ¶3.1(c). The date that the Court sets for the Final Fairness Hearing should take into consideration

that the Class Action Fairness Act requires that "[a]n order giving final approval of a proposed settlement may not be issued earlier than 90 days after the later of the dates on which the appropriate Federal official and the appropriate State official are served with the notice required under [28 U.S.C.A. §1715(b)]". 28 U.S.C.A. §1715(d). As explained below in subsection C, the notifications to Federal and State officials required under the Class Action Fairness Act must be served within 10 days of this filing.

### 1.    Opting Out

Any member of the Settlement Class who wishes to opt out of the Settlement Class must individually sign and timely submit written notice ("notice of exclusion") clearly manifesting his intent to be excluded from the Class. *Id.* at ¶4.1. The notice of exclusion must be mailed to either of the Post Office Boxes designated by the Claims Administrator and must be postmarked at least 21 days prior to the date set in the Notice for the Final Fairness Hearing. *Id.* If the aggregate number of Persons who submit valid and timely requests for exclusion from the Settlement Class exceeds 4% of the number of units of M3Power Razors sold at retail in the United States and Canada during the Settlement Class Period, then Gillette, in its sole discretion, shall have the option to terminate the Settlement Agreement. *Id.* at ¶9.3.

### 2.    Objections

Any member of the Settlement Class who wishes to object to the settlement shall submit a timely written notice of his objection, which will set forth the reasons for the Settlement Class Member's objection, and further state whether the objector intends to appear at the Final Fairness Hearing. The objection also must provide information identifying the objector as a Settlement Class Member, such as proof of purchase (*e.g.*, a store receipt), or an affidavit setting forth, in as much detail as the objector remembers, the fact of purchase(s), the product(s) purchased, the price paid for

the product(s), the approximate date of said purchase(s), and the place of said purchase(s). To be timely, written notice of an objection in appropriate form must be filed with the Clerk of the U.S. District Court for the District of Massachusetts, John Joseph Moakley U.S. Courthouse, 1 Courthouse Way, Boston, MA 02210, 21 days prior to the date set in the Notice for the Final Fairness Hearing, and served concurrently therewith upon Settlement Class Counsel (Ben Barnow, Barnow and Associates, P.C., One North LaSalle Street, Suite 4600, Chicago, IL 60602, or Robert M. Rothman, Lerach Coughlin Stoia Geller Rudman & Robbins LLP, 58 South Service Road, Suite 200, Melville, NY 11747) and Counsel for Gillette (Harvey J. Wolkoff, Ropes & Gray LLP, One International Place, Boston, MA, 02110). *Id.* at ¶5.1.

### B.    Publication of Notice

In *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950), the United States Supreme Court described the due process standard for notice as "[n]otice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id.* at 314. *See also Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985). This standard is met in the present matter. The plan for publishing of the Summary Notice shall be designed to have a reach of not less than approximately 80% of the putative class in both the United States and Canada. Exhibit 1, at ¶3.2; *see also* Section IV.D., *infra*. As shown above, the Notice provides Settlement Class Members with the requisite information to make an informed decision regarding their rights. Notice need only be made by the "best practicable" means. Here, Notice is reasonably calculated to reach not less than approximately 80% of potential Settlement Class Members and, thus, qualifies as the best notice practicable.

### C.     Notifications to Appropriate Federal and State Officials

Pursuant to the Class Action Fairness Act, within 10 days of this filing, Gillette must serve notice of the proposed settlement on the appropriate Federal and State officials. 28 U.S.C.A. §1715. The relevant provision of the Class Action Fairness Act states as follows:

> (b) IN GENERAL.--Not later than 10 days after a proposed settlement of a class action is filed in court, each defendant that is participating in the proposed settlement shall serve upon the appropriate State official of each State in which a class member resides and the appropriate Federal official, a notice of the proposed settlement consisting of--
>
> (1) a copy of the complaint and any materials filed with the complaint and any amended complaints (except such materials shall not be required to be served if such materials are made electronically available through the Internet and such service includes notice of how to electronically access such material);
>
> (2) notice of any scheduled judicial hearing in the class action;
>
> (3) any proposed or final notification to class members of--
>
> > (A)(i) the members' rights to request exclusion from the class action;  or
> >
> > (ii) if no right to request exclusion exists, a statement that no such right exists;  and
> >
> > (B) a proposed settlement of a class action;
>
> (4) any proposed or final class action settlement;
>
> (5) any settlement or other agreement contemporaneously made between class counsel and counsel for the defendants;
>
> (6) any final judgment or notice of dismissal;
>
> (7)(A) if feasible, the names of class members who reside in each State and the estimated proportionate share of the claims of such members to the entire settlement to that State's appropriate State official;  or

(B) if the provision of information under subparagraph (A) is not feasible, a reasonable estimate of the number of class members residing in each State and the estimated proportionate share of the claims of such members to the entire settlement; and

(8) any written judicial opinion relating to the materials described under subparagraphs (3) through (6).

28 U.S.C.A. §1715(b). In this case, because Gillette is not "a Federal depository institution, a State depository institution, a depository institution holding company, a foreign bank, or a nondepository institution subsidiary of the foregoing", 28 U.S.C.A. §1715(a)(1)(B), the appropriate Federal official is the Attorney General of the United States. 28 U.S.C.A. §1715(a)(1)(A). Because the Settlement Class includes Class Members from the 50 states, the appropriate State officials are the 50 State attorneys general. 28 U.S.C.A. §1715(a)(2) ("If there is no primary regulator, supervisor, or licensing authority, or the matters alleged in the class action are not subject to regulation or supervision by that person, then the appropriate State official shall be the State attorney general.").

## VI.    THE APPROVAL PROCESS

Courts look favorably on settlement of disputed claims and settlement is especially favored in class actions because it minimizes the litigation expenses of all parties and reduces the strain on judicial resources. "Particularly in class action suits, there is an overriding public interest in favor of settlement." *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977). Under Rule 23(e)(1)(A), however, the Court still "must approve any settlement, voluntary dismissal, or compromise of the claims, issues, or defenses of a certified class." F.R.C.P., Rule 23(e)(1)(A).

A two-step approach to the settlement process for class actions has been adopted by federal courts throughout the country. *See Alvarado Partners, L.P. v. Mehta*, 723 F. Supp. 540 (D. Colo. 1989), *appeal dismissed*, 936 F.2d 582 (10th Cir. 1991); s*ee also In re Vitamins Antitrust Litig.*, 1999 WL 1335318, 1999-2 Trade Cases (CCH) ¶ 72,726 (D.D.C. Nov. 23, 1999); *In re Vitamins*

*Antitrust Litig.*, 2000 WL 1737867, 2000-1 Trade Cases (CCH) ¶ 72,862 (D.D.C. Mar. 31, 2000). Furthermore, this is a method recommended by the preeminent class action authorities. *See Manual for Complex Litig.* (Third) § 30.41 (1995); H. Newberg & A. Conte, 2 *Newberg on Class Actions*, §§ 11.25, 11.26 (3d ed. 1992).

The first step is preliminary approval, whereby the court reviews the proposed settlement for obvious deficiencies, schedules a formal final fairness hearing, and approves a method for providing the class with notice of the proposed settlement and hearing on final approval of the settlement. The second step involves the court considering final approval of the proposed settlement at the previously noticed and scheduled fairness hearing. The final fairness hearing is where arguments and evidence are presented favoring or opposing the proposed settlement.

In reviewing the Settlement Agreement for preliminary approval, this Court must determine whether it is within the range of fair, reasonable and adequate. *Manual for Complex Litig.* § 30.41, at 237. The authority to approve a settlement of a class action is entirely within the discretion of this Court. *City P'ship Co. v. Atlantic Acquisition Ltd. P'ship.*, 100 F.3d 1041, 1043-44 (1st Cir. 1996). However, in approving the settlement, it is not the Court's role to decide whose assertions of law and fact are correct. *Id.* Additionally, "[w]hen sufficient discovery has been provided and the parties have bargained at arms-length, there is a presumption in favor of the settlement." *Id.* at 1043.

## VII.    PRELIMINARY APPROVAL OF THE SETTLEMENT AGREEMENT IS APPROPRIATE.

To further the policy in favor of settlement, courts have adopted a relaxed standard for preliminary approval of class action settlements:

> If the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment of class representatives or of segments of the class, or excessive compensation for attorneys, and appears to fall within the range of possible approval, the court should direct that notice under [Federal] Rule 23(e) be given to the class members of a

formal fairness hearing, at which arguments and evidence may be presented in support of and in opposition to the settlement.

*Manual for Complex Litig.* § 30.41, at 237; s*ee also In re NASDAQ Market-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997); *In re Mid-Atlantic Toyota Antitrust Litig.*, 564 F. Supp. 1379, 1383-85 (D. Md. 1983).

Where, as here, the proposed settlement is the result of serious, arm's-length negotiations between the parties, has no obvious deficiencies, falls within the range of possible approval, and does not grant preferential treatment to the Representative Plaintiffs or segments of the class, courts generally grant preliminary approval and direct that notice of a formal fairness hearing be given to class members. *See Williams Foods, Inc. v. Eastman Chemical Co.*, 2001-2 Trade Cases (CCH) ¶ 73,414, 2001 WL 1298887 (D. Kan. Aug. 8, 2001); s*ee also In re Minolta Camera Prods. Antitrust Litig.*, 668 F. Supp. 456, 459-60 (D. Md. 1987); *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 205 (5th Cir. 1981).

Although not required at this stage, the settlement also meets the standard for final approval as being fair, reasonable, and adequate. F.R.C.P. Rule 23(e)(1)(C). "There is no single test in the First Circuit for determining the fairness, reasonableness, and adequacy of a proposed class action settlement." *In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 216 F.R.D. 197, 206 (D. Maine 2003). However, Federal Courts in the District of Massachusetts have analyzed the factors originally set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974), *overruled on other grounds by Missouri v. Jenkins*, 491 U.S. 274 (1989). *See In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 72 (D. Mass. 2005); *In re Lupron Marketing and Sales Practices Litig.*, 228 F.R.D. 75, 95 (D. Mass. 2005). The *Grinnell* factors are as follows:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of

establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*City of Detroit v. Grinnell Corp.*, 495 F.2d at 463. The reaction of the class to the settlement can only be determined after notice has been accomplished. Thus, this factor is not analyzed here. Additionally, the risks of maintaining the class action through the trial are also not considered here since *Amchem* does not require a manageability inquiry in a settlement context. *See In re Lupron Marketing and Sales Practices Litig.*, 228 F.R.D. 75, 95 n. 39 (D. Mass. 2005) (*citing Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 619 (1997), and noting that this *Grinnell* factor is largely irrelevant in settlement-only cases and declining to consider it). As shown by the following analysis of the remaining *Grinnell* factors, the settlement is fair, reasonable, and adequate, and in the best interests of the Settlement Class.

### A.    The Complexity, Expense and Likely Duration of the Litigation.

Representative Plaintiffs and Settlement Class Counsel recognize and acknowledge the expense and length of continued proceedings necessary to prosecute the litigation against Gillette through motion practice, trial and potential appeals. Indeed, the Scheduling Order entered by the Court contemplates that the hearing on a motion for class certification would be set in October 2006 and the hearing on a motion for summary judgment would be set at the end of August 2007. *See* Scheduling Order dated Mar. 7, 2006.[8] Additionally, delays are inherent in such litigation. Given

---

[8] After engaging in settlement discussions and entering into a Non-Binding Memorandum of Understanding reflecting most of the essential terms of a settlement, the parties filed a Joint Motion for Suspension of the Scheduling in the Scheduling Order of March 7, 2006, which the Court granted on July 31, 2006.

the nature of the case, it is almost assured that any decision on the merits would be appealed, which would then cause further delay as it would require briefing, oral argument (if requested by the appeals court), and awaiting a decision. In contrast, the settlement provides for significant benefits for the members of Settlement Class without the delays described herein. Thus, this factor favors approval of the settlement.

### B. The Stage of the Proceedings and the Amount of Discovery Completed.

After consideration of briefing by counsel for the numerous plaintiffs who filed individual complaints against Gillette, and after entertaining oral argument at two separate hearings, on March 7, 2006, the Court ordered the consolidation of the complaints and entered a scheduling order. A Consolidated Class Action Complaint was filed on April 18, 2006. Co-Lead Counsel and Liaison Counsel have pursued discovery in this litigation. Initial disclosures were made. As the Court is aware, there was a separate action based on the same underlying dispute filed by a competitor of Gillette in which substantial discovery had occurred. As a part of initial disclosures, Plaintiffs obtained production from that earlier proceeding; that included thousands of pages of document production and copies of deposition and hearing transcripts. Valuable informal discovery occurred during the negotiation of the Settlement Agreement and it was appropriately targeted at information relevant to the settlement. *See* Manual for Complex Litigation, Fourth, at section 13.12 (recognizing that the benefits of settlement are diminished if it is postponed until discovery is completed and approving of targeting early discovery at information needed for settlement negotiations). Informal discovery is a recognized method of minimizing the cost, delay, and burden associated with formal discovery. *See* Manual for Complex Litigation, Fourth, at section 11.423. Indeed, to further such ends, Courts are to "encourage counsel to exchange information, particularly relevant documents, without resort to formal discovery." *Id.* Significantly, the Settlement Agreement provides that

Representative Plaintiffs shall be entitled to reasonable additional confirmatory discovery to be conducted by Settlement Class Counsel beginning on the date of the Settlement Agreement and lasting for a period of 30 days thereafter. Settlement Agreement at ¶10.4. In the event that Settlement Class Counsel determines in good faith that the information learned in confirmatory discovery is materially contrary to the representations made in the negotiations leading up to the Settlement Agreement, Settlement Class Counsel shall have the right to report the same to the Court under seal and withdraw their support for the settlement. *Id.* Settlement Class Counsel agrees to make any such report to the Court and withdrawal of support for the settlement, and concurrently provide actual notice thereof to Gillette, no later than 5 business days after the close of confirmatory discovery. *Id.* Gillette may defer incurring costs for notice under ¶3.2 of the Settlement Agreement, and/or providing such notice under ¶3.2 of the Settlement Agreement, until the period for Settlement Class Counsel to withdraw their support for the settlement pursuant to this paragraph has expired without Settlement Class Counsel taking such action, or, in the event of such withdrawal, until promptly after the date upon which the withdrawal, for whatever reason, is found to have been ineffective or is rescinded. *Id.*

In view of the informal discovery that has occurred to date and the safeguard in the Settlement Agreement for additional confirmatory discovery, this factor favors approval of the Settlement Agreement.

## C.    The Risks of Establishing Liability and Damages.

The Representative Plaintiffs believe that the claims asserted in the litigation have merit. *See* Counts I-VI of the Consolidated Class Action Complaint. However, Settlement Class Counsel have taken into account the uncertain outcome and the risk of further litigation. Settlement Class Counsel are also mindful of the inherent problems of proof and possible

defenses to the claims asserted in the litigation.  Due to the significant risks in this litigation and the uncertainty of prevailing on the merits and of establishing damages, this factor favors approval of the Settlement Agreement.

**D.    The Ability of Defendant to Withstand a Greater Judgment.**

Given that Gillette is a multi-billion dollar company, the ability of Gillette to withstand a greater judgment neither favors nor disfavors approval of the Settlement Agreement. *See In re Relafen Antitrust Litig.*, 231 F.R.D. at 73 (finding that this factor is largely neutral where the defendant is one "with classic deep pockets," *citing In re Lupron Marketing and Sales Practices Litig.*, 228 F.R.D. at 97).

**E.    The Amount of the Settlement Fund in Contrast to the Best Possible Recovery.**

"A fine-tuned equation by which to determine the reasonableness of the size of a settlement fund does not exist." *In re Relafen Antitrust Litig.*, 231 F.R.D. at 73 (citations omitted). Here, actual damages could be measured pursuant to the "benefit of the bargain" rule. *Aspinall v. Philip Morris Companies,* Inc., 442 Mass. 381, 399, 813 N.E.2d 476, 490 (Mass. 2004) (finding that "'the benefit of the bargain' damages, if proved with reasonable certainty, would be appropriate" in a case where plaintiffs alleged deceptive trade practices against manufacturer and marketer of light cigarettes).[9] Under the "benefit of the bargain" rule, actual damages are measured by "the monetary difference between the actual value of the product at the time of purchase and what its value would have been if the representations had been true." *Id.* Using this formula, the damages would be the difference

_____

[9] The *Aspinall* case also discusses the possibility of statutory damages under Mass. Gen. Laws ch. 93A. *Id.* at 402. However, establishing liability and an entitlement to statutory damages is not necessarily a certainty and likely would entail protracted litigation, including appeal, in contrast to the certain and substantial relief provided under the Settlement Agreement, which is unburdened by years of delay.

between the actual value of the M3Power razors at the time of purchase and the retail price paid by Settlement Class Members. Clearly, as alleged in this litigation, the actual value of the M3Power razors at the time of purchase was something less than the amount Settlement Class Members paid as said razors do not have the properties that Gillette represented they had. Even without quantifying a dollar amount of the actual value of the M3Power razors at the time of purchase, it is apparent that the availability of a refund in the currency and amount of the actual price paid where a Settlement Class Member provides a receipt, plus $2 in U.S. dollars or the Canadian equivalent (as explained above) for shipping and handling for the return of the concerned razor, meets or exceeds Settlement Class Members' actual damages or, at very least, is a reasonable compromise of same.

Furthermore, as explained above, where a Settlement Class Member does not provide a receipt evidencing the price he paid, the terms of the Settlement Agreement provide that, for those Settlement Class Members whose M3Power Razor was purchased in the United States, they may receive a refund in the amount of $13 in U.S. dollars and, for those Settlement Class Members whose M3Power Razor was purchased in Canada, they may receive a refund in the amount of $16.25 in Canadian dollars, plus $2 in U.S. dollars or the Canadian equivalent (as explained above) for shipping and handling for the return of the M3Power razor. This provides, for example, a total of $15 in U.S. dollars to Settlement Class Members whose M3Power Razor was purchased in the United States. Alternatively, without the return of the M3Power razor, the Settlement Agreement makes available up to two $5 rebate checks (in U.S. dollars, except such rebate checks to Settlement Class Members living in Canada will be issued in the Canadian dollar equivalent at the prevailing commercial exchange rate in effect at the time of distribution). Settlement Agreement, at ¶2.1(b). Thus, a Settlement Class Member could receive a rebate check in the total amount of $10. Settlement Agreement, at ¶2.1(b). Significantly, if the $7,500,000 Settlement Fund is not exhausted during the

Initial Claim Period, then Settlement Razors will be distributed as provided in paragraphs 2.3(a) through (c) of the Settlement Agreement. The settlement provides substantial benefits in contrast to the possibility of no relief should the claims of Representative Plaintiffs be denied; the Settlement Agreement is a reasonable compromise of Settlement Class Members' claims. Thus, this factor favors approval of the settlement.

## VIII.   CONCLUSION

As the analysis of the *Grinnell* factors shows, the Settlement Agreement is clearly within the range of final approval. Therefore, Representative Plaintiffs, individually and on behalf of the proposed Settlement Class, pray that this Honorable Court enter an order:

(a)    granting class certification of a Settlement Class as requested herein;

(b)    appointing Ben Barnow and Robert M. Rothman as Settlement Class Counsel and appointing plaintiffs Mark Dearman, Anthony DeBiseglia, Matthew Marr, Adam Kline, Greg Besinger, Collin L. McGeary, Javier Tunon, and Jean-Sebastien Elie as Representative Plaintiffs;

(c)    preliminarily finding that the Settlement Agreement is fair, reasonable, and adequate, and in the best interest of the Class;

(d)    authorizing the Notice of class certification and preliminary approval of settlement to the Settlement Class in the manner set forth in the Settlement Agreement and in the forms attached as Exhibits D and E to the Settlement Agreement;

(e)    appointing Complete Claims Solutions, LLC, as the Claims Administrator;

(f)    setting a date for the Final Fairness Hearing to consider entry of a final order approving the Settlement Agreement and the request for attorneys' fees, costs, and expenses and incentive awards; and

(g)    granting such other and additional relief as the Court may deem just and appropriate.

Respectfully submitted,


/s/ Ben Barnow

- 28 -

One of Co-Lead Counsel

Ben Barnow
Barnow and Associates, P.C.
One North LaSalle Street
Suite 4600
Chicago, IL 60602
(312) 621-2000

Robert M. Rothman
Lerach Coughlin Stoia Geller
      Rudman & Robbins LLP
58 South Service Road, Suite 200
Melville, NY 11747
(631) 367-7100

*Co-Lead Counsel*

Thomas G. Shapiro (BBO #454680)
Shapiro Haber & Urmy LLP
53 State Street
Boston, MA 02109
(617) 439-3939

*Liaison Counsel*

CERTIFICATE OF SERVICE

I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing ("NEF") and paper copies will be sent to those indicated as non-registered participants on the 8th day of October, 2006.

/s/  Ben Barnow_____

LIST OF EXHIBITS

Exhibit 1:      Settlement Agreement

    Exhibit A:  proposed Judgment

    Exhibit B:  Proof of Claim

    Exhibit C:  Order of Preliminary Approval and Publishing of Notice of a Final
            Fairness Hearing

    Exhibit D:  Summary Notice

    Exhibit E:  Long form Notice

Exhibit 2:      Declaration of Andrew J. Novak In Support of Notice Plan and Exhibit 1 thereto:
      Notice Program by Kinsella/Novak Communications, Ltd.

## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| In re: | | MASTER DOCKET |
| | | Civil Action No. 05-11177 |
| M3POWER RAZOR SYSTEM | | (Lead Case) |
| MARKETING & SALES PRACTICES | | |
| LITIGATION | | MDL Docket No. 1704 |
| THIS DOCUMENT RELATES TO: | | |
| ALL ACTIONS | | |

## SETTLEMENT AGREEMENT

This Settlement Agreement, dated as of October 6, 2006 (the "Settlement Agreement"), is made and entered into by and among the following Settling Parties (as defined further in ¶1.24 hereof) to the above-captioned consolidated action: (i) Mark Dearman, Anthony DeBiseglia, Matthew Marr, Adam Kline, Greg Besinger, Collin L. McGeary, Javier Tunon, and Jean-Sebastien Elie (the "Representative Plaintiffs"), individually and on behalf of the Settlement Class (as defined herein in ¶1.20), by and through Ben Barnow, Barnow and Associates, P.C., and Robert M. Rothman, Lerach Coughlin Stoia Geller Rudman & Robbins LLP (together, "Settlement Class Counsel"); and (ii) The Gillette Company ("Gillette"), by and through its counsel of record, Harvey J. Wolkoff, Ropes & Gray LLP. The Settlement Agreement is intended by the Settling Parties fully, finally, and forever to resolve, discharge, and settle the Released Claims (as defined below), upon and subject to the terms and conditions hereof.

## I. THE LITIGATION

Beginning in or about February 2005, and continuing through October 2005, lawsuits were filed in various state and federal jurisdictions in the United States, as well as in Canada, challenging Gillette's advertising and marketing of the M3Power Razor (the "Litigation"). Pursuant to an order

by the Judicial Panel on Multi-District Litigation dated October 27, 2005, those actions pending in federal district courts across the United States not otherwise subsequently dismissed were transferred to and consolidated in the United States District Court for the District of Massachusetts (the "Court"). On April 18, 2006, a Consolidated Class Action Complaint (the "Complaint") was filed alleging six counts, *i.e.*, negligent misrepresentation, intentional misrepresentation, breach of express warranty, breach of implied warranty of fitness of particular purpose, unjust enrichment, and violations of each of the 50 states' deceptive trade practices statutes, deceptive advertising statutes, and consumer fraud statutes, and identifying Mark Dearman, Anthony DeBiseglia, Matthew Marr, Adam Kline, Greg Besinger, Collin L. McGeary, and Javier Tunon as the named representative plaintiffs. In conjunction with the filing of this Settlement Agreement, an Amended Consolidated Class Action Complaint (the "Amended Consolidated Complaint") has been filed alleging these same claims, as well as adding similar claims under Canadian law, and also adding Jean-Sebastien Elie, a resident of Canada, as a named representative plaintiff.

## II.    CLAIMS OF THE REPRESENTATIVE PLAINTIFFS AND BENEFITS OF SETTLEMENT

The Representative Plaintiffs believe that the claims asserted in the Litigation as set forth in the Amended Consolidated Complaint have merit. Representative Plaintiffs and Settlement Class Counsel, however, recognize and acknowledge the expense and length of continued proceedings necessary to prosecute the Litigation against Gillette through motion practice, trial, and potential appeals. Settlement Class Counsel also have taken into account the uncertain outcome and the risk of further litigation, as well as the difficulties and delays inherent in such litigation. Settlement Class Counsel are also mindful of the inherent problems of proof and possible defenses to the claims asserted in the Litigation. Settlement Class Counsel believe that the settlement set forth in this Settlement Agreement confers substantial benefits upon the Settlement Class (as defined herein in

- 2 -

¶1.20). Settlement Class Counsel have determined that the settlement set forth in this Settlement Agreement is fair, reasonable, and adequate, and in the best interests of the Settlement Class.

## III.    GILLETTE'S DENIAL OF WRONGDOING AND LIABILITY

Gillette denies each and all of the claims and contentions alleged in the Litigation as set forth in the Amended Consolidated Complaint and believes that these claims and contentions are without merit. Specifically, Gillette denies all charges of wrongdoing or liability as alleged in the Litigation, and specifically denies that its advertising or marketing campaigns for the M3Power Razor were false or misleading. Gillette has also denied and continues to deny, *inter alia*, the allegations that the Representative Plaintiffs or the members of the Settlement Class have suffered damages as a result of, or were harmed by, the conduct alleged in the Amended Consolidated Complaint.

Nonetheless, Gillette has concluded that further conduct of the Litigation would be protracted and expensive, and that it is desirable that the Litigation be fully and finally settled in the manner and upon the terms and conditions set forth in this Settlement Agreement. Gillette also has taken into account the uncertainty and risks inherent in any litigation, especially in class action cases such as this Litigation. Gillette has, therefore, determined that it is desirable and beneficial that the Litigation be settled in the manner and upon the terms and conditions set forth in this Settlement Agreement.

## IV.    TERMS OF SETTLEMENT

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED, by and among the Representative Plaintiffs, individually and on behalf of the Settlement Class, by and through Settlement Class Counsel, and Gillette that, subject to the approval of the Court, the Litigation and the Released Claims shall be finally and fully compromised, settled, and released, and the Litigation shall be dismissed with prejudice as to all Settling Parties, upon and subject to the terms and conditions of this Settlement Agreement, as follows.

- 3 -

## 1.    Definitions

As used in the Settlement Agreement, the following terms have the meanings specified below:

1.1    "Authorized Claimant" means any Settlement Class Member (as that term is defined in ¶1.22 herein) whose claim for recovery has been allowed pursuant to the terms of the Settlement Agreement.

1.2    "Claimant" means any Settlement Class Member (as that term is defined in ¶1.22 herein) who, within the Claim Period (as that term is defined in ¶1.3 herein), certifies to the purchase or acquisition of an M3Power Razor during the Settlement Class Period (as that term is defined in ¶1.23 herein).

1.3    "Claim Period" means the Initial Claim Period as that term is defined in ¶1.9 below and, if it arises, the Residual Claim Period as that term is defined in ¶1.19 below.

1.4    "Claims Administration" means the processing of claims received from Settlement Class Members (as that term is defined in ¶1.22 herein) by the Claims Administrator (as that term is defined in ¶1.5 herein), and "costs of Claims Administration" means all actual costs associated with or arising from Claims Administration.

1.5    "Claims Administrator" means Complete Claim Solutions, LLC, Palm Beach Gardens, Florida.

1.6    "Effective Date" means the first date by which all of the events and conditions specified in ¶9.1 hereof have occurred and have been met.

1.7    "Final" means the occurrence of all of the following events: (i) the settlement pursuant to this Settlement Agreement is approved by the Court; (ii) the Court has entered a Judgment (as that term is defined in ¶1.10 herein); (iii) the time to appeal or seek permission to appeal from the Court's Judgment has expired or, if appealed, the appeal has been dismissed in its

- 4 -

entirety, or the Judgment has been affirmed in its entirety by the court of last resort to which such appeal may be taken, and such dismissal or affirmance has become no longer subject to further appeal or review. Notwithstanding the above, any order modifying or reversing any fee award made in this case should not affect the finality of the judgment as to any other aspect of the judgment.

1.8    "Gillette" or "Defendant" means The Gillette Company.

1.9    "Initial Claim Period" means six months from the date of the first publication of notice of the Final Fairness Hearing.

1.10    "Judgment" means the judgment to be rendered by the Court, in the form attached hereto as Exhibit A, or a judgment substantially similar to such form.

1.11    "Named Plaintiff" means each Person (as defined in ¶1.13 herein) who is named as a plaintiff in any pending case against Gillette arising out of the same alleged operative facts as the Amended Consolidated Complaint and who, prior to October 16, 2006, or such other date as agreed to by Settlement Class Counsel and Gillette's Counsel, joins in this settlement by affirming in a writing (which will be filed with the Court by the Settling Parties) that he and his counsel approve and join in this settlement.

1.12    "Opt-Out Date" means the date by which members of the Settlement Class (as that term is defined in ¶1.20 herein) must mail their requests to be excluded from the Settlement Class in order for that request to be effective.  The postmark date shall be the mailing date.

1.13    "Person" means an individual, corporation, partnership, limited partnership, limited liability company or partnership, association, joint stock company, estate, legal representative, trust, unincorporated association, government or any political subdivision or agency thereof, and any business or legal entity, and their respective spouses, heirs, predecessors, successors, representatives, or assignees.

1.14 "Plaintiffs' Counsel" means Settlement Class Counsel and Liaison Counsel as previously appointed by the Court, and all other attorneys who represent Persons who have joined in this settlement.

1.15 "Related Parties" means Gillette's past or present directors, officers, employees, principals, attorneys, predecessors, successors, parents, subsidiaries, affiliates and related or affiliated entities, including, without limitation, Procter & Gamble, Gillette Canada Company, and any other Person who could have been named as a defendant in any of the United States or Canadian actions in the Litigation.

1.16 "Released Claims" shall collectively mean any and all claims (including Unknown Claims as defined in ¶1.25), actions, allegations, demands, rights, liabilities, and causes of action of every nature and description whatsoever, whether contingent or non-contingent, and whether at law or equity, including those arising under state or federal law of the United States or under provincial or federal law of Canada (including, without limitation, any causes of action under Mass. Gen. Laws ch. 93A, the California Business & Professional Code § 17200 *et seq.* and § 17500 *et seq.*, California Civil Code § 1750 *et seq.*, and any similar statutes in effect in any other states in the United States, the Competition Act of Canada, the Quebec Civil Code, the Quebec Consumer Protection Act, the Ontario Sale of Goods Act, and any similar statutes in effect in Canada or the provinces of Canada; negligent misrepresentation; intentional misrepresentation; breach of express warranty; breach of implied warranty of fitness of particular purpose; and unjust enrichment), and including, but not limited to, any and all claims in any state or federal court of the United States, or any provincial or federal court of Canada, for damages, injunctive relief, disgorgement, declaratory relief, equitable relief, attorneys' fees and expenses, and any other form of relief, that either have been asserted or could have been asserted against Gillette and its Related Parties based on, relating to, or arising out

- 6 -

of the allegations, facts, or circumstances alleged in the Litigation. Released Claims shall not include the right of any Settlement Class Member or Gillette to enforce the terms of the settlement contained in the Settlement Agreement. Released Claims shall not include alleged bodily injury claims, if any, of any Settlement Class Member arising from the purported use of an M3Power Razor.

1.17  "Released Persons" means Gillette and its Related Parties.

1.18  "Representative Plaintiffs" means Mark Dearman, Anthony DeBiseglia, Matthew Marr, Adam Kline, Greg Besinger, Collin L. McGeary, Javier Tunon, and Jean-Sebastien Elie.

1.19  "Residual Claim Period" means the period of up to 90 days during which certain Settlement Class Members may have the opportunity to submit a claim to obtain a Fusion manual razor pursuant to ¶2.3(b) herein.

1.20  "Settlement Class" means all Persons in the United States of America or Canada who purchased or otherwise acquired for use and not resale an M3Power Razor in the United States during the period May 1, 2004 through September 30, 2005, or in Canada during the period May 1, 2004 through October 31, 2005. Excluded from the definition of Settlement Class are Gillette, any entity in which Gillette has a controlling interest or which has a controlling interest in Gillette, Gillette's attorneys, successors, or assigns, the directors and officers of Gillette and the directors and officers of any entity in which Gillette has a controlling interest or which has a controlling interest in Gillette. Also excluded from the definition of Settlement Class are those Persons who timely and validly request exclusion from the Settlement Class.

1.21  "Settlement Class Counsel" means Ben Barnow, Barnow and Associates, P.C., and Robert M. Rothman, Lerach Coughlin Stoia Geller Rudman & Robbins LLP.

1.22    "Settlement Class Member(s)" means a Person(s) who falls within the definition of the Settlement Class.

1.23    "Settlement Class Period" means, for all Persons in the United States of America who purchased or otherwise acquired an M3Power Razor in the United States for use and not resale, the period May 1, 2004 through September 30, 2005, and for all Persons in Canada who purchased or otherwise acquired an M3Power Razor in Canada for use and not resale, the period May 1, 2004 through October 31, 2005.

1.24    "Settling Parties" means, collectively, Gillette, on behalf of itself and its Related Parties, and the Representative Plaintiffs, individually and on behalf of the Settlement Class.

1.25    "Unknown Claims" means any of the Released Claims that any Representative Plaintiff and/or any Settlement Class Member does not know or suspect to exist in his favor at the time of the release of the Released Persons which, if known by him, might have affected his settlement with and release of the Released Persons, or might have affected his decision not to object to and/or participate in this settlement. With respect to any and all Released Claims, the Settling Parties stipulate and agree that, upon the Effective Date, the Representative Plaintiffs expressly shall have, and each of the Settlement Class Members shall be deemed to have, and by operation of the Judgment shall have, waived the provisions, rights, and benefits conferred by California Civil Code § 1542, and also any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States or Canada, or principle of common law or international or foreign law, including Canadian law, which is similar, comparable, or equivalent to California Civil Code §1542, which provides:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN

- 8 -

BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

The Representative Plaintiffs and Settlement Class Members, and any of them, may hereafter discover facts in addition to or different from those that they, and any of them, now know or believe to be true with respect to the subject matter of the Released Claims, but the Representative Plaintiffs expressly shall have, and each Settlement Class Member shall be deemed to have, and by operation of the Judgment shall have, upon the Effective Date, fully, finally, and forever settled and released any and all Released Claims. The Settling Parties acknowledge, and the Settlement Class Members shall be deemed by operation of the Judgment to have acknowledged, that the foregoing waiver is a material element of the settlement of which this release is a part.

2.     **The Settlement**

2.1     Gillette shall make available cash and other benefits totaling $7,500,000 (the "Settlement Fund") for distribution to Authorized Claimants, and the payment of expenses of notice, Claims Administration, and other distribution costs set forth herein. Distribution shall be as follows:

During the Initial Claim Period, a Settlement Class Member:

(a)     must certify (as set forth in ¶2.1(c)) that the Settlement Class Member purchased or otherwise acquired an M3Power Razor during the Settlement Class Period; and

(b)     must select either, and only one, of the following forms of relief:

(i)     Refund. To claim a refund, a Settlement Class Member must send in an M3Power Razor and certify (as set forth in ¶2.1(c)) that the M3Power Razor was purchased or otherwise acquired by the Settlement Class Member during the Settlement Class Period. Any Settlement Class Member is entitled to and should retain any M3Power blade(s) and batteries. A Settlement Class Member whose M3Power Razor was purchased in the United States and who selects and complies with the requirements for this form of relief shall receive a check in the amount

of $13, plus $2 for postage and handling, for a check in the total amount of $15. A Settlement Class Member whose M3Power Razor was purchased in Canada and who selects and complies with the requirements for this form of relief shall receive a check in the amount of $16.25 in Canadian dollars (*i.e.*, $13 in US dollars equals $16.25 in Canadian dollars at the average prevailing commercial exchange rate over the period May 1, 2004 through October 31, 2005, approximately 0.8), plus, for postage and handling, the Canadian dollar equivalent of $2 in US dollars at the prevailing commercial exchange rate in effect at the time of distribution. If a Settlement Class Member submits a receipt showing that the M3Power Razor being returned was purchased in the United States and that more than $13 in US dollars was paid for it, the Settlement Class Member shall receive a check in US dollars for the amount of the actual price paid, plus $2 for postage and handling. If a Settlement Class Member submits a receipt showing that the M3Power Razor being returned was purchased in Canada and that more than $16.25 in Canadian dollars was paid for it, the Settlement Class Member shall receive a check in Canadian dollars for the actual price paid, plus, for postage and handling, the Canadian dollar equivalent of $2 in US dollars at the prevailing commercial exchange rate in effect at the time of distribution.

**or**

(ii)      Rebates.   In the alternative, and without sending in an M3Power Razor, any Settlement Class Member who has made and submitted the certification required under ¶2.1(a) (as set forth in ¶2.1(c)), instead can elect to receive up to two $5 rebates in a check for any purchases of M3Power blades during the period beginning May 1, 2004, and/or Fusion Razors (manual or battery powered) during the period beginning January 1, 2006, through the end of the Initial Claim Period. To receive such rebate(s), a Settlement Class Member must provide the UPC code(s) from the package(s) of M3Power blades and/or any Fusion razor (manual or battery

- 10 -

powered), or a receipt showing that such package of M3Power blades was purchased during the period beginning May 1, 2004 through the end of the Initial Claim Period, or such Fusion razor was purchased during the period beginning January 1, 2006 through the end of the Initial Claim Period. Settlement Class Members cannot receive two rebates on the purchase of a single item. A Settlement Class Member claiming rebate(s) under this sub-paragraph must certify (as set forth in ¶2.1(c)) that no claim has been submitted under ¶2.1(b)(i) for a refund. Checks to Settlement Class Members living in Canada for such rebates will be issued in the Canadian dollar equivalent at the prevailing commercial exchange rate in effect at the time of distribution.

(iii)     <u>Credit against Settlement Fund</u>.  For any payment to a Settlement Class Member by Gillette under this ¶2.1(b), the credit against the Settlement Fund will be the total US dollar amount paid to the Settlement Class Member, or, for a Settlement Class Member receiving payment in Canadian dollars, the US dollar equivalent of such total Canadian dollar amount at the prevailing commercial exchange rate in effect at the time of distribution.

(c)     The settlement benefit under ¶¶2.1(b)(i) and 2.1(b)(ii) is limited to one such claim per Person and a maximum of three claims per household.  Certifications required under this ¶2.1 shall be provided by submission of a proof of claim in either the form attached hereto as Exhibit B (the "Proof of Claim") or by a writing containing substantially the same information.

(d)     Within 75 days after the close of the Initial Claim Period, or within 75 days after the Effective Date of the settlement, whichever is later, the credits against the Settlement Fund resulting from the distributions to occur pursuant to ¶¶2.1(b)(i) and 2.1(b)(ii) shall be totaled. Payments by check under ¶¶2.1(b)(i) and 2.1(b)(ii) shall be mailed to Authorized Claimants within 2 weeks after the end of such 75 day period in which such credits are totaled.  Gillette and/or the Claims Administrator may request and obtain reasonable extensions of such time frames, as

necessary, for good cause, to process the claims and accomplish such distribution, upon approval of the Court.

2.2    The settlement payments under ¶¶2.1(b)(i) and 2.1(b)(ii) shall be reduced, on a pro-rata basis, to the extent the $7,500,000 Settlement Fund is exceeded by the sum of (a) credits for claims made under ¶¶2.1(b)(i) and 2.1(b)(ii), *supra*, plus (b) the lesser of the actual cost of notice and Claims Administration as authorized hereunder or $2.45 million.

2.3    If the $7,500,000 Settlement Fund is not exhausted after satisfaction of the claims made during the Initial Claim Period, as set forth above in ¶2.1(d), and satisfaction of the cost of notice and Claims Administration, then the excess amount shall be allocated as follows:

(a)    Within two weeks of completion of the mailing referenced in the second sentence of ¶2.1(d), Authorized Claimants shall be mailed a new Fusion manual razor (with its blade cartridge) ("Settlement Razor"). The credit against the Settlement Fund for each such Settlement Razor will be $6.25, plus $0.75 per Fusion manual razor for Gillette's postage, packaging, and administrative costs, for a total credit of $7.00 per Settlement Razor. In the event the credit against the Settlement Fund for the distribution of Settlement Razors to all Authorized Claimants would exceed the remaining balance of the $7,500,000 Settlement Fund as calculated in ¶2.1(d) above, Gillette shall mail Settlement Razors to a statistically random sample of Authorized Claimants until the remaining balance is exhausted; and

(b)    If after distribution of the Settlement Razors to Authorized Claimants pursuant to ¶2.3(a), the Settlement Fund is still not depleted, then commencing immediately after the elapse of the 2 weeks for mailing Settlement Razors as provided for in ¶2.3(a), Gillette shall place a link on its M3Power Razor webpage inviting Settlement Class Members who did not previously submit a claim during the Initial Claim Period to obtain a free Settlement Razor. To be eligible to receive a free

Settlement Razor, the Settlement Class Member must provide his name and mailing address, and further certify electronically that he (i) purchased or otherwise acquired an M3Power Razor during the Settlement Class Period; and (ii) has not previously submitted a claim under the settlement. Any such information submitted shall be provided by Gillette to the Claims Administrator for determination of the claim. Eligible claims are further limited to one per Person and a maximum of three per household. The credit against the Settlement Fund for each Settlement Razor claimed pursuant to this sub-paragraph will be $6.25, plus $0.75 per Fusion manual razor for Gillette's postage, packaging, and administrative costs, for a total credit of $7.00 per Settlement Razor. The website link shall be maintained for a period of up to 90 days (*i.e.*, the Residual Claim Period). Free Settlement Razors pursuant to this sub-paragraph shall remain available until each eligible claim submitted through the website link, for a maximum of 90 days, is satisfied, or until the credit for such distribution exhausts the balance of the Settlement Fund, whichever occurs first. Gillette shall mail Settlement Razors to Authorized Claimants who submit claims under this sub-paragraph within two weeks of the close of the Residual Claim Period, except that Gillette and/or the Claims Administrator may request and obtain a reasonable extension of such time frame, as necessary, for good cause, to process the claims and accomplish such distribution, upon approval of the Court.

(c)    Within 30 days after the end of the distribution of Settlement Razors following the Residual Claim Period, if any, if there remains any unclaimed balance in the $7,500,000 Settlement Fund, Gillette shall distribute Settlement Razors to a group to be selected by Gillette and Settlement Class Counsel, and in the event they cannot agree, by the Court. Distribution is to be made proportionally to the populations of the various states and Canada, to the extent reasonable and practicable. The credit against the Settlement Fund will be $6.25, plus $0.75 per

Fusion manual razor for Gillette's postage, packaging, and administrative costs, for a total credit of $7.00 per Settlement Razor.

        (d)     Any Settlement Razors distributed pursuant to this ¶2.3 shall include, in each package, coupon(s) with a total value of $4, in US dollars if redeemed in the United States, and $4 in Canadian dollars if redeemed in Canada, off the purchase of Gillette shaving-related product(s). The benefit to Settlement Class Members provided by these coupons is in addition to, and the redemption of these coupons shall not be credited against, the Settlement Fund. It is agreed that no portion of these coupons shall be considered in determining any award of attorneys' fees, costs, or expenses, or plaintiff incentive awards.

      2.4     All parts of this settlement are separately-funded responses by Gillette to provide the Settlement Class with valuable consideration and are not part of any existing or planned promotion and no future promotions will be reduced to reimburse Gillette for any distribution of refunds, rebates, or razors under this settlement.

      2.5     All costs associated with notice to the Settlement Class and Claims Administration shall be paid from the Settlement Fund, said costs charged to the Settlement Fund not to exceed the sum of $2.45 million.

      2.6     The Settling Parties agree, for purposes of this settlement only, to the certification of the Settlement Class. If the settlement set forth in this Settlement Agreement is not approved by the Court, or if the settlement is terminated or cancelled pursuant to the terms of this Settlement Agreement, then this Settlement Agreement, and the certification of the Settlement Class provided for herein, will be vacated and the Litigation shall proceed as though the Settlement Class had never been certified, without prejudice to any party's position on the issue of class certification or any other issue.

2.7    The Settling Parties agree that, except for confirmatory discovery as expressly provided for herein, the Litigation shall be stayed pending final approval by the Court of the settlement set forth in this Settlement Agreement. Settlement Class Counsel agree that Gillette's time to answer or otherwise respond to the Amended Consolidated Complaint is extended without date.

## 3.    Order of Preliminary Approval and Publishing of Notice of a Final Fairness Hearing

3.1    As soon as practicable after the execution of the Settlement Agreement, Settlement Class Counsel and counsel for Gillette shall jointly submit this Settlement Agreement to the Court and shall apply for entry of an order (the "Order of Preliminary Approval and Publishing of Notice of a Final Fairness Hearing"), in the form attached hereto as Exhibit C, or an order substantially similar to such form, requesting, *inter alia*,

(a)    certification of the Settlement Class for settlement purposes only pursuant to ¶2.6;

(b)    preliminary approval of the settlement as set forth herein;

(c)    approval of the publication of a customary form of summary notice (the "Summary Notice") in the form attached hereto as Exhibit D, and a customary long form of notice ("Notice") in the form attached hereto as Exhibit E, which together shall include a fair summary of the parties' respective litigation positions, the general terms of the settlement set forth in the Settlement Agreement, instructions for how to object to or opt-out of the settlement, the process and instructions for making a claim, and the date, time, and place of the Final Fairness Hearing;

(d)    appointment of Complete Claim Solutions, LLC as Claims Administrator; and

(e)    approval of the Proof of Claim attached hereto as Exhibit B.

- 15 -

3.2    Gillette shall pay for and shall assume the administrative responsibility of providing notice to the Settlement Class in accordance with the Order of Preliminary Approval and Publishing of Notice of a Final Fairness Hearing, and the costs of such notice, together with the costs of Claims Administration, shall be paid from the Settlement Fund, but within the limit of $2.45 million. All such costs of notice and Claims Administration over the $2.45 million will be separately, and additionally, borne by Gillette. The notice program shall be designed to have a reach of not less than approximately 80% of the putative class in both the United States and Canada through publication of a Summary Notice in the form attached hereto as Exhibit D, and which if approved by the Court, in a range of consumer magazines, newspapers, and/or newspaper supplements to be designated by the Claims Administrator and approved by the Court. The Claims Administrator shall establish a dedicated settlement website, and shall maintain and update the website throughout the Claim Period, with the forms of Summary Notice, Notice, and Proof of Claim approved by the Court, as well as this Settlement Agreement. The Claims Administrator also will provide copies of the forms of Summary Notice, Notice, and Proof of Claim approved by the Court, as well as this Settlement Agreement, upon request. Prior to the Final Fairness Hearing, the Settling Parties shall cause to be filed with the Court an appropriate affidavit or declaration with respect to complying with this provision of notice.

3.3    The Settling Parties shall request that after notice is given, the Court hold a hearing (the "Final Fairness Hearing") and grant final approval of the settlement set forth herein.

3.4    The Settling Parties further agree that the proposed Order of Preliminary Approval and Publishing of Notice of a Final Fairness Hearing shall contain, among other things, the following provisions: All discovery and pretrial proceedings in this Litigation, other than confirmatory discovery provided for herein, are stayed and suspended until further order of this

- 16 -

Court. Pending the final determination of the fairness, reasonableness, and adequacy of the settlement set forth in the Settlement Agreement, no Settlement Class Member, either directly, representatively, or in any other capacity, shall institute, commence, or prosecute against the Released Parties any of the Released Claims in any action or proceeding in any court or tribunal.

**4.    Opt-Out Procedures**

4.1    Each Person wishing to opt out of the Settlement Class shall individually sign and timely submit written notice of such intent to either of the designated Post Office boxes established by the Claims Administrator. The written notice must clearly manifest an intent to be excluded from the Settlement Class. To be effective, written notice must be postmarked at least 21 days prior to the date set in the Notice for the Final Fairness Hearing.

4.2    All Persons who submit valid and timely notices of their intent to be excluded from the Settlement Class, as set forth in ¶4.1 above, referred to herein as "Opt-Outs," shall not share in the distribution of the Settlement Fund and shall neither receive any benefits of nor be bound by the terms of this Settlement Agreement. All Persons falling within the definition of the Settlement Class who do not request to be excluded from the Settlement Class in the manner set forth in ¶4.1 above shall be bound by the terms of this Settlement Agreement and Judgment entered thereon.

**5.    Objection Procedures**

5.1    Each Settlement Class Member wishing to object to the settlement shall submit a timely written notice of his objection which shall set forth the reasons for the Settlement Class Member's objection, and further state whether the objector intends to appear at the Final Fairness Hearing. The objection also must provide information identifying the objector as a Settlement Class Member, such as proof of purchase (*e.g.*, a store receipt), or an affidavit setting forth, in as much detail as the objector remembers, the fact of purchase(s), the product(s) purchased, the price paid for the product(s), the approximate date of said purchase(s), and the place of the purchase(s). To be

- 17 -

timely, written notice of an objection in appropriate form must be filed with the Clerk of the United States District Court for the District of Massachusetts, John Joseph Moakley U.S. Courthouse, 1 Courthouse Way, Boston, MA 02210, 21 days prior to the date set in the Notice for the Final Fairness Hearing, and served concurrently therewith upon Settlement Class Counsel (Ben Barnow, Barnow and Associates, P.C., One North LaSalle Street, Suite 4600, Chicago, IL 60602, or Robert M. Rothman, Lerach Coughlin Stoia Geller Rudman & Robbins LLP, 58 South Service Road, Suite 200, Melville, NY 11747) and Counsel for Gillette (Harvey J. Wolkoff, Ropes & Gray LLP, One International Place, Boston, MA, 02110).

### 6.    Releases

6.1    Upon the Effective Date, as defined in ¶1.6 hereof, the Representative Plaintiffs and each of the Settlement Class Members shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished, and discharged all Released Claims against the Released Persons. Further, upon the Effective Date of the settlement, and to the fullest extent permitted by law, the Representative Plaintiffs and each Settlement Class Member shall, either directly, indirectly, representatively, as a member of or on behalf of the general public, or in any capacity, be permanently barred and enjoined from commencing, prosecuting, or participating in any recovery in, any action in this or any other forum (other than participation in the settlement as provided herein) in which any of the Released Claims is asserted.

6.2    Upon the Effective Date, as defined in ¶1.6 hereof, each of the Released Persons shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished, and discharged, Representative Plaintiffs, each and all of the Settlement Class Members, Settlement Class Counsel, and all other plaintiffs' counsel who have consented to and joined in the settlement, from all claims, including Unknown Claims, based upon or arising out of the institution, prosecution, assertion, settlement or resolution of the Litigation or the Released

- 18 -

Claims, except that the Released Persons expressly reserve all rights to enforce the settlement contained in the Settlement Agreement and shall not have, or been deemed to have, released, relinquished, or discharged any Representative Plaintiff, Settlement Class Member, or plaintiffs' counsel who have consented to and joined in the settlement from any claim based on or arising out of any act of fraud, misrepresentation, or other misconduct in connection with the submission of any claim pursuant to the settlement set forth in this Settlement Agreement, or any claim based on or arising out of any failure to abide by the terms of the Settlement Agreement.

### 7.    Plaintiffs' Counsel's Attorneys' Fees, Costs, and Expenses, and Incentive awards

7.1    Gillette and Settlement Class Counsel did not discuss attorneys' fees, costs, and expenses, or reasonable incentive awards to the Representative Plaintiffs and Named Plaintiffs, as provided for in ¶7.2 and ¶7.3, until after the substantive terms of the settlement had been agreed upon other than that they would be paid by Gillette and that they would be paid over and above the $7,500,000 Settlement Fund. Gillette and Settlement Class Counsel then negotiated and agreed as follows:

7.2    Gillette has agreed to pay, subject to Court approval, up to the amount of $1,850,000 to Settlement Class Counsel for attorneys' fees, costs, and expenses. Settlement Class Counsel, in their sole discretion, to be exercised reasonably, shall allocate and distribute the amount of attorneys' fees, costs, and expenses awarded by the Court among Plaintiffs' Counsel.

7.3    Gillette has agreed to pay, subject to Court approval, incentive awards to the Representative Plaintiffs and other Named Plaintiffs in the following amounts: (a) $1,000 to each Representative Plaintiff who was deposed; (b) $750 to each other Representative Plaintiffs who is a resident of the United States, and the Canadian dollar equivalent (at the prevailing commercial exchange rate in effect at the time of distribution of the incentive awards) to the Representative

Plaintiff who is a resident of Canada; and (c) $500 to each of the other Named Plaintiffs who are residents of the United States, and the Canadian dollar equivalent (at the prevailing commercial exchange rate in effect at the time of distribution of the incentive awards) to the Named Plaintiff in the Canadian Action, as that term is defined in ¶9.5 who has, through his counsel, acknowledged his consent to this Settlement Agreement.

7.4     Within 21 days of the Effective Date, Gillette shall pay the attorneys' fees, costs, and expenses, as well as the plaintiffs' incentive awards, as set forth above in ¶¶ 7.2 and 7.3, respectively, to the account of Barnow and Associates, P.C., or its successor(s). Settlement Class Counsel shall thereafter distribute the award of attorneys' fees, costs, and expenses consistent with ¶7.2, and shall be responsible for promptly distributing the plaintiff incentive awards, provided, however, Settlement Class Counsel shall not distribute any incentive award to the Named Plaintiff in the Canadian Action, as that term is defined in ¶9.5 herein, until such action is dismissed as set forth in the third sentence of ¶9.5 herein.

7.5     The amount(s) of any award of attorneys' fees, costs, and expenses, and the amount(s) of any incentive awards under ¶7.3, are intended to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the settlement. No order of the Court or modification or reversal or appeal of any order of the Court concerning the amount(s) of any attorneys' fees, costs, or expenses awarded by the Court to Settlement Class Counsel or the amount(s) of any incentive awards under ¶7.3 awarded by the Court shall affect the finality of the Judgment or constitute grounds for cancellation or termination of this Settlement Agreement.

8.    **Administration of Claims and Supervision and Distribution of Settlement Fund**

8.1    The Claims Administrator shall administer and calculate the claims submitted by Settlement Class Members during the Claim Period, except as provided in ¶ 2.3(b). Any distribution of Settlement Razors shall be handled by Gillette. Settlement Class Counsel and Gillette shall be given reports as to both claims and distribution, and have the right to review and obtain supporting documentation and challenge such reports if they believe them to be inaccurate.

8.2    Except as otherwise ordered by the Court, all Settlement Class Members who fail to timely submit a Proof of Claim within the Claim Period, or such other period as may be ordered by the Court, or otherwise allowed, shall be forever barred from receiving any payments or benefits pursuant to the settlement set forth herein, but will in all other respects be subject to and bound by the provisions of the Settlement Agreement, the releases contained herein, and the Judgment.

8.3    If all conditions of the Settlement Agreement are satisfied and the settlement becomes Final, no portion of the Settlement Fund will be returned to Gillette.

8.4    No Person shall have any claim against the Claims Administrator, Gillette, or Settlement Class Counsel based on distributions made substantially in accordance with the Settlement Agreement and the settlement contained herein, or further order(s) of the Court.

9.    **Conditions of Settlement, Effect of Disapproval, Cancellation or Termination**

9.1    The Effective Date of the settlement shall be conditioned on the occurrence of all of the following events:

(a)    the Court has entered the Order of Preliminary Approval and Publishing of Notice of a Final Fairness Hearing, as required by ¶3.1, hereof;

(b)    Gillette has not exercised its option to terminate the Settlement Agreement pursuant to ¶9.3 hereof;

- 21 -

(c)     the Court has entered the Judgment granting final approval to the settlement; and

(d)     the Judgment has become Final, as defined in ¶1.7, hereof.

9.2     If all of the conditions specified in ¶9.1 hereof are not satisfied, then the Settlement Agreement shall be canceled and terminated subject to ¶9.4 hereof, unless Settlement Class Counsel and counsel for Gillette mutually agree in writing to proceed with the Settlement Agreement.

9.3     Within 7 days after the deadline established by the Court for Persons to request exclusion from the Settlement Class, Settlement Class Counsel shall furnish to counsel for Gillette a complete list of all timely and valid requests for exclusion (the "Opt-Out List"). Gillette, in its sole discretion, shall have the option to terminate this Settlement Agreement if the aggregate number of Persons who submit valid and timely requests for exclusion from the Settlement Class exceeds 4% of the number of units of M3Power Razors sold at retail in the United States and Canada during the Settlement Class Period.

9.4     In the event that the Settlement Agreement is not approved by the Court or the settlement set forth in the Settlement Agreement is terminated in accordance with its terms, the Settling Parties shall be restored to their respective positions in the Litigation, except that all scheduled litigation deadlines shall be reasonably extended so as to avoid prejudice to any Settling Party or litigant. In such event, the terms and provisions of the Settlement Agreement shall have no further force and effect with respect to the Settling Parties and shall not be used in the Litigation or in any other proceeding for any purpose, and any judgment or order entered by the Court in accordance with the terms of the Settlement Agreement shall be treated as vacated, *nunc pro tunc*. Notwithstanding any statement in this Settlement Agreement to the contrary, no order of the Court or modification or reversal on appeal of any order reducing the amount of attorneys' fees, costs, and

- 22 -

expenses awarded to Settlement Class Counsel, and/or the amount of incentive awards under ¶7.3 awarded by the Court, shall constitute grounds for cancellation or termination of the Settlement Agreement.

9.5    The Settling Parties acknowledge that the Litigation includes a lawsuit filed as a putative class action in Canada by Eric Hall, a resident of Canada, as putative class representative, which lawsuit is captioned, *Eric Hall v. Gillette Canada Company and The Gillette Company*, Court File 40721 (Ontario Superior Court of Justice, London, Ontario) (the "Canadian Action"). Eric Hall agrees to the terms of the settlement set forth in this Settlement Agreement, including, without limitation, ¶6.1 hereinabove and this ¶9.5, as signified by the signature of his counsel herein below. The Settling Parties, with Eric Hall, stipulate and agree to a stay of the Canadian Action pending implementation of the settlement contained in this Settlement Agreement and, upon the Effective Date, to dismissal of the Canadian Action with prejudice, and further stipulate and agree to use their best efforts to secure such orders from the Canadian court as may be necessary to implement the foregoing. In the event that final approval of the settlement is granted as to the United States part of the Settlement Class, but final approval of the settlement is not secured in the consolidated proceedings in Massachusetts with respect to the Canadian part of the Settlement Class, *i.e.*, the Court's entry of Judgment does not grant final approval of the settlement as to the Canadian part of the Settlement Class and finds that the Release provided for in Section 6 hereof does not apply to the Canadian part of the Settlement Class, the settlement will proceed with respect to the United States portion of the settlement only, as modified as follows:

(a)    The $7.5 million Settlement Fund shall be reduced by (i) the actual cost of notice in Canada with at least an approximate 80% reach; (ii) the anticipated cost of Claims Administration in Canada; and (iii) a pro rata Canadian share of the balance of the Settlement Fund

remaining after the cost of notice and Claims Administration, as measured by the percentage of M3Power Razor retail unit sales in Canada during the Canadian Settlement Class Period versus the total M3Power Razor retail unit sales in the United States and Canada during the respective class periods. Notwithstanding the foregoing, the amount of the reduction in the $7.5 million Settlement Fund pursuant to ¶¶9.5(a)(i) and 9.5(a)(ii) shall not exceed a cumulative total of $650,000, and all such costs in excess thereof shall be borne by Gillette.

(b)    Further, Jean-Sebastien Elie shall withdraw as a plaintiff, and the Canadian claims shall be withdrawn, from the consolidated proceedings in Massachusetts, and Eric Hall, Jean-Sebastien Elie, Gillette, and their respective counsel shall use best efforts to secure prompt approval of a parallel settlement of the Canadian claims, on the same terms, from the Canadian court in the Canadian Action.

**10.    Miscellaneous Provisions**

10.1    The Settling Parties:  (a) acknowledge that it is their intent to consummate this agreement; and (b) agree to cooperate to the extent reasonably necessary to effectuate and implement all terms and conditions of this Settlement Agreement, and any applicable requirements under the Class Action Fairness Act of 2005, and to exercise their best efforts to accomplish the terms and conditions of this Settlement Agreement.

10.2    The parties intend this settlement to be a final and complete resolution of all disputes between them with respect to the Litigation.  The settlement compromises claims which are contested and shall not be deemed an admission by any Settling Party as to the merits of any claim or defense.  The Settling Parties each agree that the settlement was negotiated in good faith by the Settling Parties, and reflects a settlement that was reached voluntarily after consultation with competent legal counsel.  The Settling Parties reserve their right to rebut, in a manner that such party

- 24 -

determines to be appropriate, any contention made in any public forum that the Litigation was brought or defended in bad faith or without a reasonable basis.

10.3     Neither the Settlement Agreement nor the settlement contained therein, nor any act performed or document executed pursuant to or in furtherance of the Settlement Agreement or the settlement: (a) is or may be deemed to be or may be used as an admission of, or evidence of, the validity or lack thereof of any Released Claim, or of any wrongdoing or liability of Gillette or any of its Related Parties, including, without limitation, any of its subsidiaries or affiliates; or (b) is or may be deemed to be or may be used as an admission of, or evidence of, any fault or omission of Gillette or any of its Related Parties, including, without limitation, any of its subsidiaries or affiliates, in any civil, criminal, or administrative proceeding in any court, administrative agency, or other tribunal. Gillette or any of its Related Parties may file the Settlement Agreement and/or the Judgment in any action that may be brought against them in order to support a defense or counterclaim based on principles of *res judicata*, collateral estoppel, release, good faith settlement, judgment bar or reduction or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

10.4     Representative Plaintiffs shall be entitled to reasonable confirmatory discovery to be conducted by Settlement Class Counsel. The period for confirmatory discovery shall begin as of the date this Settlement Agreement is fully executed and shall last for a period of 30 days thereafter. In the event that Settlement Class Counsel determines in good faith that the information learned in confirmatory discovery is materially contrary to the representations made in the negotiation of this Settlement Agreement, Settlement Class Counsel shall have the right to report the same to the Court under seal and withdraw their support for the settlement. Settlement Class Counsel agrees that it shall make any such report to the Court and withdrawal of support for the settlement, and

concurrently provide actual notice thereof to Gillette, no later than 5 business days after the close of confirmatory discovery. Gillette may defer incurring costs for notice under ¶3.2, and/or providing such notice under ¶3.2, until the period for Settlement Class Counsel to withdraw their support for the settlement pursuant to this paragraph has expired without Settlement Class Counsel taking such action, or, in the event of such withdrawal, until promptly after the date upon which the withdrawal, for whatever reason, is found to have been ineffective or is rescinded.

10.5    All documents and materials provided by Gillette in confirmatory discovery shall be returned to Gillette, pursuant to ¶20 of the Stipulated Protective Order entered by the Court on March 17, 2006, within 60 days of the Effective Date.

10.6    The Settlement Agreement may be amended or modified only by a written instrument signed by or on behalf of all Settling Parties or their respective successors-in-interest.

10.7    This Settlement Agreement, together with the Exhibits attached hereto, constitutes the entire agreement among the parties hereto and no representations, warranties, or inducements have been made to any party concerning the Settlement Agreement other than the representations, warranties, and covenants contained and memorialized in such document. Except as otherwise provided herein, each party shall bear its own costs.

10.8    Settlement Class Counsel, on behalf of the Settlement Class, are expressly authorized by the Representative Plaintiffs to take all appropriate actions required or permitted to be taken by the Settlement Class pursuant to the Settlement Agreement to effectuate its terms and also are expressly authorized to enter into any modifications or amendments to the Settlement Agreement on behalf of the Settlement Class which they deem appropriate.

10.9    Each counsel or other Person executing the Settlement Agreement on behalf of any party hereto hereby warrants that such Person has the full authority to do so.

- 26 -

10.10  The Settlement Agreement may be executed in one or more counterparts. All executed counterparts and each of them shall be deemed to be one and the same instrument. A complete set of original executed counterparts shall be filed with the Court.

10.11  The Settlement Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of the parties hereto.

10.12  The Court shall retain jurisdiction with respect to implementation and enforcement of the terms of the Settlement Agreement, and all parties hereto submit to the jurisdiction of the Court for purposes of implementing and enforcing the settlement embodied in the Settlement Agreement.

10.13  This Settlement Agreement shall be considered to have been negotiated, executed and delivered, and to be wholly performed, in the Commonwealth of Massachusetts, and the rights and obligations of the parties to the Settlement Agreement shall be construed and enforced in accordance with, and governed by, the internal, substantive laws of the Commonwealth of Massachusetts without giving effect to that State's choice of law principles.

10.14  As used herein, "he" means "he, she, or it;" "his" means "his, hers, or its," and "him" means "him, her, or it."

10.15  All dollar amounts are in United States dollars, unless otherwise expressly stated.

10.16  All agreements made and orders entered during the course of the Litigation relating to the confidentiality of information shall survive this Settlement Agreement.

IN WITNESS WHEREOF, the parties hereto have caused the Settlement Agreement to be executed, by their duly authorized attorneys, dated as of October 6, 2006.

BEN BARNOW
BARNOW AND ASSOCIATES, P.C.

_____
BEN BARNOW
Co-Lead Counsel

One North LaSalle Street, Suite 4600
Chicago, IL 60602
Telephone: 312/621-2000
312/641-5504 (fax)

ROBERT M. ROTHMAN
LERACH COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP

_____
ROBERT M. ROTHMAN
Co-Lead Counsel

58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)

THOMAS G. SHAPIRO (BBO #454680)
SHAPIRO HABER & URMY LLP

*Thomas G. Shapiro by RB with permission*
THOMAS G. SHAPIRO
Plaintiffs' Liaison Counsel

- 28 -

IN WITNESS WHEREOF, the parties hereto have caused the Settlement Agreement to be executed, by their duly authorized attorneys, dated as of October 6, 2006.

BEN BARNOW
BARNOW AND ASSOCIATES, P.C.

_____
BEN BARNOW
Co-Lead Counsel

One North LaSalle Street, Suite 4600
Chicago, IL 60602
Telephone: 312/621-2000
312/641-5504 (fax)

ROBERT M. ROTHMAN
LERACH COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP

_____
ROBERT M. ROTHMAN
Co-Lead Counsel

58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)

THOMAS G. SHAPIRO (BBO #454680)
SHAPIRO HABER & URMY LLP

_____
THOMAS G. SHAPIRO
Plaintiffs' Liaison Counsel

- 28 -

53 State Street
Boston, MA 02109
Telephone: 617/439-3939
617/439-0134 (fax)


HARVEY J. WOLKOFF
ROPES & GRAY LLP


_____
HARVEY J. WOLKOFF
One International Place
Boston, MA 02110-2624
Telephone: 617/951-7000
617/951-7050 (fax)

Attorneys for Defendant, The Gillette Company


For ERIC HALL, pursuant to ¶9.5 herein above:


_____
HARRISON PENSA LLP
Barristers and Solicitors
450 Talbot Street
London, Ontario N6A 4K3
David B. Williams (LSUC #21482V)
Jonathan J. Foreman (LSUC #45087H)
Telephone: 519/679-9660
519/667-3362 (fax)

Solicitors for Eric Hall

53 State Street
Boston, MA  02109
Telephone:  617/439-3939
617/439-0134 (fax)


HARVEY J. WOLKOFF
ROPES & GRAY LLP


HARVEY J. WOLKOFF

One International Place
Boston, MA  02110-2624
Telephone:  617/951-7000
617/951-7050 (fax)

Attorneys for Defendant, The Gillette Company


For ERIC HALL, pursuant to ¶9.5 herein above:

HARRISON PENSA LLP
Barristers and Solicitors
450 Talbot Street
London, Ontario N6A 4K3
David B. Williams (LSUC #21482V)
Jonathan J. Foreman (LSUC #45087H)
Telephone:  519/679-9660
519/667-3362 (fax)

Solicitors for Eric Hall


- 29 -

EXHIBIT A

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| In re: | ) | CIVIL ACTION NO. 05-11177-DPW |
| M3POWER RAZOR SYSTEM | ) | (LEAD CASE) |
| MARKETING & SALES PRACTICES | ) |  |
| LITIGATION | ) | MDL Docket No. 1704 |
|  | ) |  |
|  | ) |  |
| THIS DOCUMENT RELATES TO: | ) |  |
| **ALL CASES** | ) |  |
|  | ) |  |

## [PROPOSED] JUDGMENT

WHEREAS, the Representative Plaintiffs and the defendant The Gillette Company ("Gillette") entered into a Settlement Agreement dated October 6, 2006;

WHEREAS, on October ___, 2006, the Court entered a Preliminary Approval Order and Publishing of Notice of Final Fairness Hearing ("Preliminary Approval Order") that, among other things, (a) preliminarily certified, pursuant to Fed. R. Civ. P. 23, a class for the purposes of settlement only; (b) approved the form of notice to Settlement Class Members, and the method of dissemination thereof; (c) directed that appropriate notice of the settlement be given to the Settlement Class; and (e) set a hearing date for final approval of the settlement;

WHEREAS, the notice to the Settlement Class ordered by the Court in its Preliminary Approval Order has been provided, as attested to in the declaration of _____ filed with the Court on [**date**];

WHEREAS, the governmental notice required by the Class Action Fairness Act, 28 U.S.C. § 1715, has been provided, as attested to in the declaration of _____ filed with the Court on [**date**]; and

WHEREAS, on **[date]**, a hearing was held on whether the settlement set forth in the Settlement Agreement was fair, reasonable, adequate, and in the best interests of the Settlement Class, such hearing date being a due and appropriate number of days after such notice to the Settlement Class and the requisite number of days after such governmental notice;

NOW THEREFORE, having reviewed and considered the submissions presented with respect to the settlement set forth in the Settlement Agreement and the record in these proceedings, having heard and considered the evidence presented by the parties and the argument of counsel, having determined that the settlement set forth in the Settlement Agreement is fair, reasonable, adequate, and in the best interests of the Settlement Class, and noting that, as set forth in Paragraph 7.5 of the Settlement Agreement, the application of Settlement Class counsel for an award of fees, costs and expenses, and the applications of Representative Plaintiffs for incentive awards, are separate from the issue of whether final approval should be given to settlement set forth in the Settlement Agreement, and good cause appearing therefore,

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED:

1.     The Court incorporates by reference the definitions set forth in the Settlement Agreement.  Without limiting the effect of that incorporation, the following terms used in this Judgment have the following meanings defined in the Settlement Agreement:

a.     The term "Released Claims" has the following meaning:

Any and all claims (including Unknown Claims), actions, allegations, demands, rights, liabilities, and causes of action of every nature and description whatsoever, whether contingent or non-contingent, and whether at law or equity, including those arising under state or federal law of the United States or under provincial or federal law of Canada (including, without limitation, any causes of action under Mass. Gen. Laws. Ch. 93A, the California Business & Professional Code § 17200 *et seq.* and § 17500 *et seq.*, California Civil Code § 1750 *et seq.*, and any similar statutes in effect in any other states in the United States, the

Competition Act of Canada, the Quebec Civil Code, the Quebec
Consumer Protection Act, the Ontario Sale of Goods Act, and any
similar statutes in effect in Canada or the provinces of Canada;
negligent misrepresentation; intentional misrepresentation; breach
of express warranty; breach of implied warranty of fitness of
particular purpose; and unjust enrichment), and including, but not
limited to, any and all claims in any state or federal court of the
United States, or any provincial or federal court of Canada, for
damages, injunctive relief, disgorgement, declaratory relief,
equitable relief, attorneys' fees and expenses, and any other form
of relief, that either have been asserted or could have been asserted
against Gillette and its Related Parties  based on, relating to, or
arising out of the allegations, facts, or circumstances alleged in the
Litigation. Released Claims shall not include the right of any
Settlement Class Member or Gillette to enforce the terms of the
settlement contained in the Settlement Agreement. Released
Claims shall not include alleged bodily injury claims or damages,
if any, of any Settlement Class Member arising from the purported
use of an M3Power Razor.

b.      The Term "Unknown Claims" has the following meaning:

Any of the Released Claims that any Representative Plaintiff
and/or any Settlement Class Member does not know or suspect to
exist in his favor at the time of the release of the Released Persons
which, if known by him, might have affected his settlement with
and release of the Released Persons, or might have affected his
decision not to object to and/or participate in this settlement. With
respect to any and all Released Claims, the Settling Parties
stipulate and agree that, upon the Effective Date, the
Representative Plaintiffs expressly shall have, and each of the
Settlement Class Members shall be deemed to have, and by
operation of the Judgment shall have, waived the provisions,
rights, and benefits conferred by California Civil Code § 1542, and
also any and all provisions, rights, and benefits conferred by any
law of any state or territory of the United States or Canada, or
principle of common law or international or foreign law (including
Canadian law), which is similar, comparable, or equivalent to
California Civil Code §1542, which provides:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS
WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT
TO EXIST IN HIS OR HER FAVOR AT THE TIME OF
EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM
OR HER MUST HAVE MATERIALLY AFFECTED HIS OR
HER SETTLEMENT WITH THE DEBTOR.

-3-

The Representative Plaintiffs and Settlement Class Members, and any of them, may hereafter discover facts in addition to or different from those that they, and any of them, now know or believe to be true with respect to the subject matter of the Released Claims, but the Representative Plaintiffs expressly shall have, and each Settlement Class Member shall be deemed to have, and by operation of the Judgment shall have, upon the Effective Date, fully, finally, and forever settled and released any and all Released Claims. The Settling Parties acknowledge, and the Settlement Class Members shall be deemed by operation of the Judgment to have acknowledged, that the foregoing waiver is a material element of the settlement of which this release is a part.

c.      The term "Released Persons" has the following meaning:

Gillette and its Related Parties.

d.      The Term "Related Parties" has the following meaning:

Gillette's past or present directors, officers, employees, principals, attorneys, predecessors, successors, parents, subsidiaries, affiliates and related or affiliated entities, including, without limitation, Procter & Gamble, Gillette Canada Company, and any other Person who could have been named as a defendant in any of the United States or Canadian actions in the Litigation.

2.      The Court has subject matter jurisdiction of this matter and all claims asserted against Gillette.

3.      The form, content, and method of dissemination of the notice given to the Settlement Class were adequate and reasonable, and constituted the best notice practicable under the circumstances. The notice, as given, provided valid, due, and sufficient notice of the proposed settlement, the terms and conditions set forth in the Settlement Agreement, and these proceedings to all Persons entitled to such notice, and said notice fully satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure and due process.

4.      Pursuant to Fed. R. Civ. P. 23 and this Court's Preliminary Approval Order, for the purposes of settling the Released Claims against the Released Persons in accordance with the Settlement Agreement, the following Persons are members of the Settlement Class:

-4-

All Persons in the United States of America or Canada who purchased or otherwise acquired for use and not resale an M3Power Razor in the United States during the period May 1, 2004 through September 30, 2005, or in Canada during the period May 1, 2004 through October 31, 2005. Excluded from the definition of Settlement Class are Gillette, any entity in which Gillette has a controlling interest or which has a controlling interest in Gillette, Gillette's attorneys, successors, or assigns, the directors and officers of Gillette and the directors and officers of any entity in which Gillette has a controlling interest or which has a controlling interest in Gillette. Also excluded from the definition of Settlement Class are those Persons who timely and validly request exclusion from the Settlement Class.

5.    Excluded from the Settlement Class are those Persons identified in Exhibit ___

hereto who submitted timely and valid requests for exclusion from the Settlement Class ("Opt-

Outs"). Opt-Outs shall neither share in the distribution of the Settlement Fund nor receive any

benefits of the terms of the Settlement Agreement, and shall not be bound by this Judgment.

6.    The Representative Plaintiffs and Settlement Class Counsel fairly and adequately

represented the interests of Settlement Class Members in connection with the Settlement.

7.    All objections to the settlement set forth in the Settlement Agreement having been

considered and having been found either to be mooted by the settlement or not supported by

credible evidence, the settlement set forth in the Settlement Agreement is in all respects, fair,

adequate, reasonable, proper, and in the bests of the Settlement Class, and is hereby approved.

8.    Representative Plaintiffs, Gillette, and Settlement Class Members shall

consummate the settlement according to the terms of the Settlement Agreement. The Settlement

Agreement, and each and every term and provision thereof, shall be deemed incorporated herein

as if explicitly set forth herein and shall have the full force and effect of an order of this Court.

9.    The Amended Consolidated Class Action Complaint and all the claims alleged in

the Litigation are hereby dismissed with prejudice, each party to bear his own costs, except as

may be expressly provided in the Settlement Agreement.

10.    Each Released Claim of each Settlement Class Member, irrespective of whether such Settlement Class Member submitted a claim for payment or a claim for a Settlement Razor under paragraph 2.3(b) of the Settlement Agreement, is hereby extinguished as against the Released Persons. Representative Plaintiffs and each Settlement Class Member shall be deemed conclusively to have compromised, settled, discharged, and released the Released Claims against the Released Persons upon the terms and conditions provided in the Settlement Agreement.

11.    Settlement Class Members, irrespective of whether a Settlement Class Member submitted a claim for payment or a claim for a Settlement Razor under paragraph 2.3(b) of the Settlement Agreement, shall be and hereby are permanently barred and enjoined from, either directly, indirectly, representatively, as a member of or on behalf of the general public, or in any capacity, commencing, prosecuting, or participating in any recovery in, any action in this or any other forum (other than participation in the settlement as provided herein) in which any of the Released Claims against the Released Persons is asserted.

12.    The Released Persons shall be deemed conclusively to have fully, finally, and forever released, relinquished, and discharged the Representative Plaintiffs, the Settlement Class Members, Settlement Class Counsel, and all other plaintiffs' counsel who have consented to and joined in the settlement, from all claims based upon or arising out of the institution, prosecution, assertion, settlement or resolution of the Litigation or the Released Claims, except as set forth in the Settlement Agreement.

13.    Neither this Judgment, the Settlement Agreement, the settlement contained therein, nor any act performed or document executed pursuant to or in furtherance of the Settlement Agreement or the settlement: (a) is or may be deemed to be or may be used as an admission of, or evidence of, the validity or lack thereof of any Released Claim, or of any

-6-

wrongdoing or liability of Gillette or any of its Related Parties, including, without limitation, any of its subsidiaries or affiliates; or (b) is or may be deemed to be or may be used as an admission of, or evidence of, any fault or omission of Gillette or any of its Related Parties, including, without limitation, any of its subsidiaries or affiliates, in any civil, criminal, or administrative proceeding in any court, administrative agency, or other tribunal. Gillette or any of its Related Parties may file the Settlement Agreement and/or this Judgment in any action that may be brought against them in order to support a defense or counterclaim based on principles of *res judicata*, collateral estoppel, release, good faith settlement, judgment bar or reduction or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

14.    The Court has reviewed the attorneys' fees, costs and expenses petition filed by Co-Lead Settlement Class Counsel on behalf of all Plaintiffs' Counsel and awards fees, costs, and expenses in the amount of $1,850,000. Further, the Court awards incentive awards in the amount of (a) $1,000 in U.S. dollars to each Representative Plaintiff who was deposed; (b) $750 in U.S. dollars to each other Representative Plaintiffs who is a resident of the United States, and the Canadian dollar equivalent (at the prevailing commercial exchange rate in effect at the time of distribution of the incentive awards) to the Representative Plaintiff who is a resident of Canada; and (c) $500 in U.S. dollars to each of the other Named Plaintiffs who are residents of the United States, and the Canadian dollar equivalent (at the prevailing commercial exchange rate in effect at the time of distribution of the incentive awards) to the Named Plaintiff in the Canadian Action who has, through his counsel, acknowledged his consent to the Settlement Agreement, such latter amount not due until dismissal of the Canadian Action with prejudice. All fee, cost, and expense payments by Gillette shall be made to Co-Lead Settlement Class Counsel. The Court recognizes that Messrs. Barnow and Rothman are most familiar with the

-7-

participation and contributions of Plaintiffs' Counsel in this litigation, and, accordingly hereby

orders and provides that they shall be and are hereby authorized to allocate and distribute said

funds amongst Plaintiffs' Counsel in their discretion to be reasonably applied. Any dispute

concerning said allocations shall be under the jurisdiction of this Court.

15.    The parties have stipulated and the Court has determined that the Court's decision

to grant final approval of the settlement set forth in the Settlement Agreement is separate from

the issues raised by Settlement Class Counsel's petition for fees, costs, and expenses, as well as

plaintiff applications for incentive awards.

16.    Without affecting the finality of this Judgment in any way, this Court retains

continuing jurisdiction over the Settling Parties and the Settlement Class for the administration,

consummation, and enforcement of the terms of the Settlement Agreement.

17.    In the event the Effective Date does not occur, this Judgment shall be rendered

null and void and shall be vacated and, in such event, as provided in the Settlement Agreement,

this Judgment and all orders entered in connection herewith shall be vacated and null and void.

SO ORDERED.

_____

Honorable Douglas P. Woodlock
United States District Court Judge

Dated: _____

EXHIBIT B

*In re M3Power Razor System Marketing & Sales Practices Litigation,*
Civil Action No. 05-11177 (Lead Case)
United States District Court for the District of Massachusetts

## CLAIM FORM
## LIMITED TO ONE PER PERSON, AND THREE PER HOUSEHOLD

**MUST BE POSTMARKED NO LATER THAN [DATE] and SENT TO EITHER:**

| | | |
|---|---|---|
| M3POWER SETTLEMENT ADMINISTRATOR<br>C/O COMPLETE CLAIMS SOLUTIONS, LLC<br>P.O. BOX XXX<br>WEST PALM BEACH, FL  33416 | -OR- | M3POWER SETTLEMENT<br>ADMINISTRATOR<br>C/O COMPLETE CLAIMS SOLUTIONS, LLC<br>P.O. BOX XXX<br>XXXX, CANADA  XXXX |

**A.    NAME AND ADDRESS:**

First Name: _____    Middle Initial: _____    Last Name:_____

Mailing Address: _____

City/Town: _____    State/Province: ____    Zip Code/Postal Code: _____

**B.    CERTIFICATION:**  BY SIGNING BELOW, I CERTIFY THAT I LIVE IN THE UNITED STATES OR CANADA, AND THAT I ACQUIRED FOR USE AND NOT RESALE AN M3POWER RAZOR (CHECK ONE):

_____    IN THE UNITED STATES BETWEEN MAY 1, 2004 AND SEPTEMBER 30, 2005, OR

_____    IN CANADA BETWEEN MAY 1, 2004 AND OCTOBER 31, 2005.

I ALSO HEREBY CERTIFY THAT I AM NOT SUBMITTING ANY OTHER CLAIM FOR A REFUND OR REBATE.

**C.    CHOICE BETWEEN REFUND OR REBATES:**

CHOOSE EITHER THE <u>REFUND OPTION</u>, *OR* THE <u>REBATES OPTION</u>.  YOU MAY <u>NOT</u> CHOOSE BOTH.

| REFUND OPTION. | REBATES OPTION. |
|---|---|
| I am enclosing the M3Power Razor that I purchased or otherwise acquired.  YES _____   NO _____ | I am claiming: One Rebate _____.  Two Rebates _____. |
| The refund is $13 U.S. or $16.25 Canadian. | The rebates are $5 U.S. each, or the equivalent in Canadian dollars, on purchase(s) of M3Power blades *and/or* Fusion razors (manual or battery powered). |
| OPTIONAL:  To claim a higher refund, you MUST ALSO submit a receipt for the M3Power Razor showing that the price paid was more than $13 US or $16.25 Canadian. | You MUST enclose the UPC code *or* a receipt for each purchase to claim a rebate.  You cannot receive two rebates on the purchase of a single item. |

See the Notice of Class Action Settlement for details,
available at www.m3powersettlement.com or by calling 1-800-xxx-xxxx.

**D.    I DECLARE UNDER PENALTIES OF PERJURY THAT THE ABOVE IS TRUE AND CORRECT.**

Signature: _____    Date:_____

EXHIBIT C

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| In re: | ) | CIVIL ACTION NO. 05-11177-DPW |
| M3POWER RAZOR SYSTEM | ) | (LEAD CASE) |
| MARKETING & SALES PRACTICES | ) |  |
| LITIGATION | ) | MDL Docket No. 1704 |
|  | ) |  |
|  | ) |  |
| THIS DOCUMENT RELATES TO: | ) |  |
| **ALL CASES** | ) |  |
|  | ) |  |

## [PROPOSED] ORDER OF PRELIMINARY APPROVAL AND PUBLISHING OF NOTICE OF FINAL FAIRNESS HEARING

Before the Court is a joint petition by the Representative Plaintiffs and by the defendant

The Gillette Company ("Gillette"), and a brief in support thereof submitted by the Representative

Plaintiffs requesting that the Court enter an Order (i) preliminarily certifying pursuant to Fed. R.

Civ. P. 23 a class for the purposes of settlement only; (ii) preliminarily approving pursuant to

Fed. R. Civ. P. 23(e) the proposed settlement set forth in the Settlement Agreement, and exhibits

thereto, which was filed with the Court on October ___, 2006; (iii) appointing representatives of,

and co-lead counsel for, the Settlement Class; (iv) approving the summary form of notice

("Summary Notice") and long form of notice ("Notice") attached as Exhibits D and E to the

Settlement Agreement, respectively; (v) appointing Complete Claims Solutions, LLC as Claims

Administrator; and (vi) approving the proof of claim attached as Exhibit B to the Settlement

Agreement ("Proof of Claim").

Having reviewed and considered the Settlement Agreement, the joint motion for

preliminary approval of the settlement and the supporting brief, and having heard and considered

the argument of counsel, the Court makes the findings and grants the relief set forth below,

preliminarily approving the settlement contained in the Settlement Agreement upon the terms

and conditions set forth in this Order. Terms and phrases in this Order shall have the same

meaning as defined in the Settlement Agreement.

NOW, THEREFORE, IT IS HEREBY ORDERED:

1.    Having made the findings set forth below, the Court hereby certifies a plaintiff

class for settlement purposes only in accordance with the terms of the Settlement Agreement (the

"Settlement Class"). The Settlement Class is defined as:

> All Persons in the United States of America or Canada who
> purchased or otherwise acquired for use and not resale an
> M3Power Razor in the United States during the period May 1,
> 2004 through September 30, 2005, or in Canada during the period
> May 1, 2004 through October 31, 2005. Excluded from the
> definition of Settlement Class are Gillette, any entity in which
> Gillette has a controlling interest or which has a controlling interest
> in Gillette, Gillette's attorneys, successors, or assigns, the directors
> and officers of Gillette and the directors and officers of any entity
> in which Gillette has a controlling interest or which has a
> controlling interest in Gillette. Also excluded from the definition
> of Settlement Class are those Persons who timely and validly
> request exclusion from the Settlement Class.

"Settlement Class Member(s)" means a Person(s) who falls within the definition of the

Settlement Class.

As provided for in the Settlement Agreement, if this Court does not grant final approval

of the settlement set forth in the Settlement Agreement, or if the settlement is terminated or

cancelled pursuant to the terms of the Settlement Agreement, then the Settlement Agreement,

and the certification of the Settlement Class provided for herein, will be vacated and the

Litigation shall proceed as though the Settlement Class had never been certified, without

prejudice to any party's position on the issue of class certification or any other issue.

2.    The Settlement Class is so numerous that joinder of all members is impracticable.

3.    The Court finds, based on the terms of the settlement described in the Settlement Agreement that:

a.    There are questions of law and fact common to the Settlement Class.

b.    The claims of the Representative Plaintiffs are typical of the claims of the Settlement Class.

c.    The Representative Plaintiffs and Settlement Class Counsel will fairly and adequately represent the interests of the Settlement Class.  There are no conflicts of interest between members of the Settlement Class.

d.    Questions of law and fact common to the Settlement Class Members predominate over any questions affecting only individual members of the Settlement Class.

e.    Certification of the Settlement Class is superior to other methods for the fair and efficient adjudication of this controversy.

4.    Accordingly, the Court hereby certifies the Settlement Class, for settlement purposes only, pursuant to Rule 23 of the Federal Rules of Civil Procedure.

5.    The Court preliminarily approves the settlement set forth in the Settlement Agreement as fair, reasonable, and adequate within the meaning of Rule 23 of the Federal Rules of Civil Procedure and the Class Action Fairness Act of 2005 ("CAFA"), subject to final consideration at the Final Fairness Hearing provided for below.

6.    Mark Dearman, Anthony DeBiseglia, Matthew Marr, Adam Kline, Greg Besinger, Collin L. McGeary, Javier Tunon, and Jean-Sebastien Elie are appointed as representatives of the Settlement Class ("Representative Plaintiffs").  Ben Barnow, Barnow and Associates, P.C., and Robert M. Rothman, Lerach Coughlin Stoia Geller Rudman & Robbins LLP, are appointed as co-lead counsel for the Settlement Class ("Settlement Class Counsel").

-3-

7.    A hearing (the "Final Fairness Hearing") shall be held before this Court on **[date]** at **[time]** in Courtroom _____ of the United Stated District Court for the District of Massachusetts, One Courthouse Way, Boston, Massachusetts, to determine (a) whether the settlement set forth in the Settlement Agreement is fair, reasonable, adequate, and in the best interests of the Settlement Class; (b) whether a Judgment as provided in the Settlement Agreement should be entered granting final approval of the Settlement; (c) whether, and in what amount, attorneys' fees and expenses should be awarded to Settlement Class Counsel; (d) whether, and in what amount, incentive awards should be made to the Representative Plaintiffs. The Court may adjourn and/or continue the Final Fairness Hearing without further notice to Settlement Class Members.

8.    The Court approves as to form and content the Summary Notice and Notice in the forms attached as Exhibit D and E to the Settlement Agreement, respectively.

9.    The Court approves and appoints Complete Claim Solutions, LLC, Palm Beach Gardens, Florida, as Claims Administrator as set forth in the Settlement Agreement.

10.    The Court approves as to form and content the Proof of Claim in the form attached as Exhibit B to the Settlement Agreement.

11.    The parties have agreed that confirmatory discovery may extend for a period of 30 days from execution of the Settlement Agreement, and that any right to withdraw support for the settlement based on such confirmatory discovery must be exercised by Settlement Class Counsel (with actual notice thereof provided concurrently to Gillette) within 5 business days thereafter. Gillette may defer incurring costs for notice of the proposed settlement to the Settlement Class, and may defer providing such notice, until promptly after the time for such withdrawal expires without Settlement Class Counsel taking such action, or, in the event of such

-4-

withdrawal, until promptly after the date upon which the withdrawal, for whatever reason, is found to have been ineffective or is rescinded.

At such time as notice of the proposed settlement to the Settlement Class proceeds under the immediately proceeding paragraph, Gillette shall cause the Summary Notice to be published with a reach of not less than approximately 80% of the putative class in both the United States and Canada, through publication in a range of consumer magazines, newspapers, and/or newspaper supplements to be designated by the Claims Administrator consistent with the publication plan submitted in support of the motion for issuance of this order, and the Claims Administrator shall establish a dedicated settlement website, and shall maintain and update the website throughout the Claim Period, with the forms of Summary Notice, Notice, Proof of Claim, and the Settlement Agreement.

12.    The Court finds that the publication of the Summary Notice and the availability of the Notice in the matter set forth herein is the best notice practicable under the circumstances, and constitutes due and sufficient notice of this Order to all persons entitled thereto and is in full compliance with the requirements of Fed. R. Civ. P. 23, applicable law, and due process.

13.    No later than 10 calendar days before the final Fairness Hearing, counsel for Gillette shall file with the Court one or more declarations stating that, in accordance with the terms of this Order, the Summary Notice was published and that the Notice was posted at a dedicated settlement website.

14.    Gillette shall comply with its obligations to give notice under CAFA, 28 U.S.C. § 1715, in connection with the proposed settlement. No later than 10 calendar days before the Final Fairness Hearing, counsel for Gillette shall file with the Court one or more declarations stating that Gillette has complied with its notice obligations under 28 U.S.C. § 1715.

15.    Each Person wishing to opt out of the Settlement Class shall individually sign and timely submit a written notice of such intent to a designated Post Office box established by the Claims Administrator, as set forth in the Notice. The written notice must clearly manifest an intent to be excluded from the Settlement Class. To be effective, written notice must be postmarked at least 21 days prior to the date of the Final Fairness Hearing as set forth in the Notice, [**date**].

16.    Within 7 days after the deadline for Persons to request exclusion from the Settlement Class, Settlement Class Counsel shall furnish to counsel for Gillette a complete list of all timely and valid requests for exclusion (the "Opt-Out List").

17.    All Persons falling within the definition of the Settlement Class who do not request to be excluded from the Settlement Class shall be bound by the terms of this Settlement Agreement, the Judgment entered thereon, and all Orders entered by the Court in connection with the settlement set forth in the Settlement Agreement. All Persons who submit valid and timely notices of their intent to be excluded from the Settlement Class shall not share in the distribution of the Settlement Fund and shall neither receive any benefits nor be bound by the terms of the Settlement Agreement.

18.    Settlement Class Members who wish to participate in the settlement and submit a claim for a refund or rebate(s) shall send to the Claims Administrator, postmarked by the last day of the Initial Claim Period, either a Proof of Claim, completed in accordance with the instructions on the Proof of Claim, or a written request containing substantially the same information. All Settlement Class Members who fail to submit either a Proof of Claim or a written request containing substantially the same information within the Initial Claim Period or who fail to submit a claim for a Settlement Razor pursuant to ¶2.3(b) of the Settlement

-6-

Agreement within the Residual Claim Period shall be forever barred from receiving any payments or benefits pursuant to the settlement set forth in the Settlement Agreement but will in all other respects be subject to and bound by the provisions of the Settlement Agreement, the releases contained therein, and the Judgment.

19.      Each Settlement Class Member wishing to object to the settlement shall submit a timely written notice of his objection, which shall set forth the reasons for the Settlement Class Member's objection, and further state whether the objector intends to appear at the Final Fairness Hearing.  The objection also must provide information identifying the objector as a Settlement Class Member, such as proof of purchase (*e.g.*, a store receipt), or an affidavit setting forth, in as much detail as the objector remembers, the fact of purchase(s), the product(s) purchased, the price paid for the product(s), the approximate date of said purchase(s), and the place of the purchase(s).  To be timely, written notice of an objection in appropriate form must be filed with the Clerk of the United States District Court for the District of Massachusetts, John Joseph Moakley U.S. Courthouse, 1 Courthouse Way, Boston, MA  02210, 21 days prior to the date set for the Final Fairness Hearing in the Notice, [**date**], and served concurrently therewith upon Settlement Class Counsel (Ben Barnow, Barnow and Associates, P.C., One North LaSalle Street, Suite 4600, Chicago, IL 60602, or Robert Rothman, Lerach Coughlin Stoia Geller Rudman & Robbins LLP; 58 South Service Road, Suite 200, Melville, NY  11747) and counsel for Gillette (Harvey J. Wolkoff, Ropes & Gray LLP, One International Place, Boston, MA, 02110).

20.      All discovery and pretrial proceedings in this Litigation, other than confirmatory discovery provided for in the Settlement Agreement, are stayed and suspended until further order of this Court.  The Court further orders that Gillette's time to answer or otherwise respond to the Amended Consolidated Complaint is extended without date.

21.     Pending the final determination of the fairness, reasonableness, and adequacy of the settlement set forth in the Settlement Agreement, no Settlement Class Member, either directly, representatively, or in any other capacity, shall institute, commence, or prosecute against the Released Parties any of the Released Claims in any action or proceeding in any court or tribunal.

22.     Neither the Settlement Agreement nor the settlement contained therein, nor any act performed or document executed pursuant to or in furtherance of the Settlement Agreement or the settlement: (a) is or may be deemed to be or may be used as an admission of, or evidence of, the validity or lack thereof of any Released Claim, or of any wrongdoing or liability of Gillette or any of its Related Parties, including, without limitation, any of its subsidiaries or affiliates; or (b) is or may be deemed to be or may be used as an admission of, or evidence of, any fault or omission of Gillette or any of its Related Parties, including, without limitation, any of its subsidiaries or affiliates, in any civil, criminal, or administrative proceeding in any court, administrative agency, or other tribunal.

23.     In the event the Court does not grant final approval of the Settlement Agreement or the settlement set forth in the Settlement Agreement is terminated in accordance with its terms, the Settling Parties shall be restored to their respective positions in the Litigation, except that all scheduled litigation deadlines shall be reasonably extended so as to avoid prejudice to any Settling Party or litigant. In such event, the terms and provisions of the Settlement Agreement shall have no further force and effect with respect to the Settling Parties and shall not be used in the Litigation or in any other proceeding for any purpose, and any judgment or order entered by the Court in accordance with the terms of the Settlement Agreement shall be treated as vacated, *nunc pro tunc*.

-8-

SO ORDERED.

_____

Honorable Douglas P. Woodlock
United States District Court Judge

Dated:  October ___, 2006

# EXHIBIT D

<u>**LEGAL NOTICE**</u>

# If You Acquired a Gillette M3Power Razor between May1, 2004 and October 31, 2005

## You May Be Entitled To Benefits From A Class Action Settlement

There is a proposed settlement with The Gillette Company in a class action lawsuit, *In re M3Power Razor System Marketing & Sales Practices Litigation*, Civil Action No. 05-11177 (MDL No. 1704) (U.S. Dist. Ct. of Mass.).

**What is the Class Action Lawsuit About?**
The lawsuit challenges the accuracy of Gillette's advertisements for the M3Power Razor ("M3P"). Plaintiffs claim Gillette's advertisements that the M3P "raises or stimulates hair up and away from the skin" were false and misleading and violated consumer-related laws in the USA and Canada. In mid-2005, Gillette deleted those representations from its ads. Gillette denies all the allegations but has agreed to the proposed settlement to resolve this class action.

**Who Is A Class Member?**
Settlement Class Members include all persons in the USA or Canada who obtained an M3P in the USA between May 1, 2004 and **September 30, 2005**, or in Canada between May 1, 2004 and **October 31, 2005**. Persons who purchased the M3P for re-sale are **excluded** from the Class.

**What Does The Proposed Settlement Provide?**
Gillette has agreed to make $7,500,000 available to a Settlement Fund. The fund will be used to provide Settlement Class Members who submit a valid, timely claim with **either** a refund (a minimum of $13 US or $16.25 Canadian, depending on the place of purchase) for their M3P, **or** up to two $5 US rebates (up to a total of $10 US, or the equivalent in Canadian dollars) for any M3Power blades and/or any Fusion razor purchased before **Month Date, Year,** and other relief.

Claims are limited to one per person and three per household. If claims exceed the amount available for settlement benefits, the refunds and rebates will be reduced pro-rata. If claims do not exceed the amount available for settlement benefits, class members may receive additional benefits. For more information about how to file a claim, read the *Notice of Proposed Class Action Settlement* referred to below.

**Who Represents Me?**
The Court has appointed Ben Barnow, Barnow and Associates, P.C., One North LaSalle Street, Suite 4600, Chicago IL 60602, and Robert M. Rothman, Lerach Coughlin Stoia Geller Rudman & Robbins LLP, 58 South Service Road, Suite 200, Melville, NY 11747, as Settlement Class Counsel to represent the Settlement Class. Subject to Court approval, Gillette will pay fees, costs, and expenses of Settlement Class Counsel, as well as incentive awards to the Representative Plaintiffs and Named Plaintiffs, that the Court

awards. These amounts will not be deducted from the settlement fund. You may hire your own attorney, if you wish, at your own expense.

**What Are My Legal Rights?**
- If you do not want to be legally bound by the proposed settlement, you must exclude yourself in writing, postmarked by **Month Date, 2007,** and sent to the Settlement Administrator at one of the addresses below.

- If you stay in the Settlement Class, you may file a claim. Your claim must be postmarked by **Month Date, 2007.** You may object to any aspect of the proposed settlement. Your written objection must be postmarked by **Month Date, 2007,** and filed and mailed as set out in the *Notice of Proposed Class Action Settlement* referred to below. You also may request in writing to appear at the Final Fairness Hearing.

For further details, read the *Notice of Proposed Class Action Settlement.*

**Will the Court Approve the Proposed Settlement?**
The Court will hold a Final Fairness Hearing on _____ at _____ to consider whether the proposed settlement is fair, reasonable, and adequate and the motion for attorneys' fees, costs, and expenses. If objections have been received, the Court will consider them at this time.

**How Do I Obtain Further Information?**
This is only a summary of the proposed settlement. For a more detailed *Notice of Proposed Class Action Settlement*, additional information on the proposed settlement, a copy of the Settlement, and how to file a claim:

**Call 1-800-xxx-xxxx (Se Habla Espanol), Visit: www.m3powerettlement.com,**
**or Write:  M3Power Settlement Administrator, [U.S. P.O. Box address] or**
**M3Power Settlement Administrator, [Canadian P.O. Box address]**

EXHIBIT E

# If You Acquired a Gillette M3Power Razor Between May 1, 2004 and October 31, 2005,

## You May Be Entitled To Benefits From a Proposed Class Action Settlement.

*The District Court has authorized this Notice. It is not a solicitation from a lawyer. You are not being sued.*

[Insert in both French and Spanish: For More Information On this Proposed Settlement Visit www.xxxx ]

- There is a proposed settlement with The Gillette Company ("Defendant") in a class action lawsuit, *In re M3Power Razor System Marketing & Sales Practices Litigation*, Civil Action No. 05-11177. The case is about Gillette's advertising for the M3Power Razor.

- The lawsuit challenges the accuracy of Gillette's advertisements for the M3Power Razor. Plaintiffs claim Gillette's advertisements that the M3Power Razor "raises or stimulates hair up and away from the skin" were false and misleading and violated consumer-related laws in the USA and Canada. In mid-2005, Gillette deleted those representations from its ads. Gillette denies all the allegations but has agreed to the proposed settlement to resolve this class action.

- The proposed settlement offers benefits (including cash refunds and cash rebates) to people in the United States or Canada who purchased or otherwise acquired for use and not resale an M3Power Razor in the United States between May 1, 2004 and **September 30, 2005**, or in Canada between May 1, 2004 and **October 31, 2005**, and who submit valid and timely claims. For a refund, you must send in your M3Power Razor, and you will receive a minimum of $13 US or $16.25 Canadian, depending on place of purchase, plus postage and handling. If you are claiming rebates, you must send in the UPC Code or a receipt for each purchase, and for each rebate you will receive $5 US, up to a total of $10 US (or the equivalent in Canadian dollars).

- The Court will decide whether to order final approval of the proposed settlement with Gillette in this case on **[date of final fairness hearing]**.

Questions? Call Toll-Free 1-800-###-#### or visit www._____.com
Para Una Notification En Espanol, Visite Nuestro Sitio De Internet
**[Insert Similar Instructions in French]**

# A Summary of Your Rights and Choices:

*Your Legal Rights Are Affected Even If You Do Not Act.*
*Read This Notice Carefully.*

| You May: | Explanation | Due Date: |
|---|---|---|
| ***Remain in the Settlement Class*** | ***You stay in the lawsuit***<br>If you wish to stay in the Settlement Class, you can seek to obtain the benefits offered by the settlement, but you will not be able to sue Gillette for the claims in this lawsuit and you will also be bound by the Court's decisions concerning the proposed settlement. **See Question XX.** | *N/A* |
| ***Exclude Yourself*** | ***You get out of the Class.***<br>You can write and ask to get out of the Settlement Class and keep your right to sue Gillette on your own about the claims in the lawsuit. **See Questions XXXX.** | *Postmarked by Month Date 2007* |
| ***Object to the Proposed Settlement*** | ***You object to the proposed settlement.***<br>If you do not exclude yourself, you can appear and speak in the lawsuit on your own or through your own lawyer at your own expense to object to the proposed settlement. **See Question XX.** | *Postmarked by Month Date 2007* |

-2-

# WHAT THIS NOTICE CONTAINS

**BASIC INFORMATION**
1.  Why is this Notice being provided?........................................................................ X
2.  What is the lawsuit about? ................................................................................... X
3.  Why is this a class action? ................................................................................... X
4.  Why is there a proposed settlement? .................................................................... X

**WHO IS IN THE PROPOSED SETTLEMENT**
5. How do I know if I am part of the proposed settlement?............................................ X
6. Are there exceptions to being included?................................................................X
7. What if I am not sure whether I am included?.........................................................X

**THE PROPOSED SETTLEMENT BENEFITS – WHAT YOU GET**
8.  What does the proposed settlement provide and what may I receive? ...................... X
9.  What happens if the proposed settlement benefits remain available after the refund and
    rebate claims are paid?......................................................................................X
10. What am I giving up as part of the proposed settlement?..........................................X

**HOW TO GET A PAYMENT – SUBMITTING A CLAIM FORM**
11. How can I get a payment?....................................................................................X
12. When will I get my check? ..................................................................................X
13. What happens if the proposed settlement is not approved or does not go into effect?.X

**EXCLUDING YOURSELF FROM THE PROPOSED SETTLEMENT?**
14. If I exclude myself, can I get anything for this proposed settlement? .........................X
15. If I do not exclude myself, can I sue later? ............................................................X
16. How do I get out of the proposed settlement? ........................................................ X

**THE LAWYERS REPRESENTING YOU**
17. Do I have a lawyer in the case? ...........................................................................X
18. How will the lawyers be paid?..............................................................................X

**OBJECTING TO THE PROPOSED SETTLEMENT**
19. How do I tell the Court if I do not like the proposed settlement?................................X
20. What is the difference between objecting and asking to be excluded?........................X

**THE COURT'S FINAL FAIRNESS HEARING**
21. When and where will the Court decide whether to approve the
    proposed settlement?..........................................................................................X
22. Do I have to come to the hearing? ........................................................................X
23. May I speak at hearing? ...................................................................................... X

**IF I DO NOTHING**

24. What happens if I do nothing at all?...........................................................................X

**GETTING MORE INFORMATION**

25.    Where do I get more information about the proposed settlement?..............................    X

## BASIC INFORMATION

### 1.    Why is this Notice being provided?

A Court authorized this notice because you have a right to know about a proposed settlement of this class action lawsuit and about all of your options before the Court decides whether to give "final approval" to the proposed settlement. If the proposed settlement is ultimately approved, refunds, rebates, and/or Settlement Razors (*see* Question ___) will be mailed to everyone who submitted a valid and timely claim. This notice explains the lawsuit, the proposed settlement, your legal rights, what benefits are available, who may be eligible for those benefits, and how to get them.

Judge Douglas P. Woodlock of the United States District Court for the District of Massachusetts in the United States is overseeing this consolidated class action. The case is known as *In re M3Power Razor System Marketing & Sales Practices Litigation*, Civil Action No. 05-11177 (Lead Case), MDL 1704. The people who sued are called the "Plaintiffs," and the company they sued, Gillette, is called the "Defendant."

### 2.    What is this lawsuit about?

This lawsuit challenges Defendant's advertising and marketing of the M3Power Razor. Plaintiffs claim that Defendant's advertisements for the M3Power Razor were false and misleading.

Specifically, Plaintiffs allege that Defendant's print advertisements and television commercials misleadingly claimed that the M3Power Razor "raises or stimulates hair up and away from skin." This includes animations in Defendant's television commercials that, according to Plaintiffs, misleadingly showed hair on the face to change angle or to be extended by an exaggerated amount.

Plaintiffs claim that had they known that these claims were inaccurate, they either would not have bought an M3Power Razor or would have paid less for an M3Power Razor than they actually did. As a result, Plaintiffs contend that Defendant violated consumer-related statutes in the United States and Canada. Plaintiffs also claim that Gillette made negligent and intentional misrepresentations, breached express and implied warranties, and was unjustly enriched. This lawsuit is not about the safety of the M3Power Razor.

Defendant denies all of Plaintiffs' claims and says that it did nothing wrong. Specifically, Defendant disagrees with the allegations and says that it has many defenses, that it is not liable to Plaintiffs, and that Plaintiffs are not entitled to any money or benefits from this litigation. In mid-2005, Gillette deleted the statements and animation that Plaintiffs complain about in this lawsuit from its ads.

The proposed settlement is not an admission of wrongdoing or an indication that any law was violated. Defendant states that it has entered into this proposed settlement solely to avoid further expense, inconvenience, and the burden of this litigation and any other present or future litigation arising out of the facts that allegedly gave rise to this litigation. Defendant wishes to avoid the

-5-

distractions and diversion of its personnel and resources. It also wishes to put to rest this controversy and to avoid the risks inherent in uncertain complex litigation. The Court has not ruled on the merits of Plaintiffs' claims or on the defenses made by Defendant.

### 3.    Why is this a class action?

In a class action, one or more people called "Representative Plaintiffs" sue on behalf of people who have similar claims. All of these people are a "Settlement Class" or "Settlement Class Members." One court resolves the issues for all class members, except for those who decide to and then proceed to timely exclude themselves from the class.

### 4.    Why is there a proposed settlement?

The Court did not decide in favor of Plaintiffs or Defendant. Instead, both sides agreed to settle this case to avoid the cost and risk of trial. The proposed settlement does not mean that any law was violated or that Defendant did anything wrong. Defendant denies all legal claims in this case. The Representative Plaintiffs and their attorneys think that the proposed settlement is in the best interests of all Settlement Class Members.

## <u>WHO IS IN THE PROPOSED SETTLEMENT</u>

To see if you will be affected by this proposed settlement or if you will get money or other benefits from the proposed settlement, you first have to determine if you are a Settlement Class Member.

### 5.    How do I know if I am part of the proposed settlement?

The Court decided that the Settlement Class includes all Persons in the United States or Canada who purchased or otherwise acquired for use and not resale an M3Power Razor in the United States during the period May 1, 2004 through September 30, 2005, or in Canada during the period May 1, 2004 through October 31, 2005. If you fall in this category, you are a Settlement Class Member.

### 6.    Are there exceptions to being included?

The following people and entities are excluded from the Settlement Class:

- Any entity in which Defendant has a controlling interest or which has a controlling interest in Defendant.
- Defendant's attorneys, successors, or assigns.
- The directors and officers of Defendant.
- The directors and officers of any entity in which Defendant has a controlling interest or which has a controlling interest in Defendant.
- Anyone who specifically and timely asks to be excluded, as described in more detail below.

7.    **What if I am not sure whether I am included in the proposed settlement?**

If you are not sure whether you are in the Settlement Class, or have any other questions about the proposed settlement, call the toll free number 1-800-###-####.  You also may write with questions to [**name/address of claim administrator**].

## THE PROPOSED SETTLEMENT BENEFITS – WHAT YOU GET

8.    **What does the proposed settlement provide and what may I receive?**

Gillette has agreed to make $7,500,000 in cash and other benefits available as a Settlement Fund to resolve this class action.  The Settlement Fund will be used to provide Settlement Class Members who submit a valid, timely claim for **either** a refund for the purchase price of the M3Power Razor **or** up to 2 rebates for M3Power blades and/or a Fusion razor (manual or battery powered) purchased before **Month Date, Year**.  The costs to provide notice and administer claims for refunds and rebates will also be paid out of this Fund (those costs will not exceed $2,450,000; amounts over $2,450,000 will be borne separately and additionally by Gillette).

**If you would like a refund**, you must send in your M3Power Razor to the Settlement Administrator along with a claim for payment (see Question X for more information on filing a claim).  You are entitled to and should keep the M3Power blade(s) and batteries.  In return, a Settlement Class Member whose M3Power Razor was purchased in the United States shall receive a check in the amount of $13, plus $2 for postage and handling, for a check in the total amount of $15.  A Settlement Class Member whose M3Power Razor was purchased in Canada shall receive a check in the amount of $16.25 in Canadian dollars, plus, for postage and handling, the Canadian dollar equivalent of $2 in US dollars at the exchange rate in effect at the time of distribution.  If, along with the razor, you send in a receipt showing that the actual price paid for the M3Power Razor was more than $13 (or $16.25 Canadian dollars), you will receive a refund check in the currency and amount of the actual price paid, plus $2 (or the Canadian equivalent, if the M3Power Razor was purchased in Canada) for postage and handling.

**If you would like a rebate**, rather than a refund, you can receive up to two $5 rebates for any M3Power blades that you purchased during the period beginning May 1, 2004, and/or Fusion razor (manual or battery powered) that you purchased during the period beginning January 1, 2006, through **Month Date, Year**.  To receive a rebate, you must send in either the UPC code(s) or receipt(s) from the package(s) of M3Power blades or Fusion razor (manual or battery powered) along with a claim for payment (see Question X for more information on filing a claim).  You cannot receive two rebates on the purchase of a single item.  Settlement Class Members living in Canada shall receive rebate checks in Canadian dollars at the exchange rate in effect at the time of distribution.

Claimants must certify that they are members of the Settlement Class (see Question 5) and that they are claiming a refund OR rebates, but not both.

Claims are limited to one claim (refund or rebates) per person and three claims per household.

If the valid and timely refund and rebate claims exceed the amount available for proposed settlement benefits, the refunds and rebates will be reduced on a *pro rata* basis.

-7-

**9.   What happens if proposed settlement benefits remain available after the refund and rebate claims are paid?**

If the refund and rebate claims, plus the total cost of notice and claims administration, does not exceed $7,500,000, you may receive additional benefits, in the form of a new, free Fusion manual razor, with its razor blade cartridge (a "Settlement Razor").

Specifically, after payments for valid and timely refund and rebate claims are distributed, the amount remaining for proposed settlement benefits will be calculated. If the amount remaining for proposed settlement benefits permits, Gillette will send a Settlement Razor to every Settlement Class Member who submitted a valid and timely claim. If the amount remaining for proposed settlement benefits is not enough to send a Settlement Razor to every Settlement Class Member who submitted a valid and timely claim, Gillette will send Settlement Razors to a statistically random sample of the Settlement Class Members who submitted a valid and timely claim, until the amount remaining for proposed settlement benefits is fully distributed.

After this distribution of Settlement Razors, if any of the amount remaining for proposed settlement benefits is still not distributed, then Gillette will place a link on its M3Power Razor Web site (www.XXXXXXXX.com) inviting Settlement Class Members who had not submitted a claim for a refund or rebate to submit a claim to receive a Settlement Razor. Those who respond to that invitation will have to provide their name and mailing address, and will have to certify electronically through the Web site link that they are a member of the Settlement Class, and that they had not previously submitted a claim for a refund or rebate. The Web site link will remain available for 90 days, or until enough valid claims are submitted so as to exhaust the amounts remaining for proposed settlement benefits, whichever occurs first. Eligible claims are limited to one per person and a maximum of three per household.

Thereafter, if the amount remaining for proposed settlement benefits is still not fully distributed, Defendant will distribute new Fusion manual razors to a group to be chosen by Gillette and Settlement Class Counsel, and in the event they cannot agree, by the Court, until full distribution is achieved.

In addition, each Settlement Razor that is sent out will include coupons for $4 in US dollars if redeemed in the United States, or $4 in Canadian dollars if redeemed in Canada, redeemable on the purchase of Gillette shaving-related products. The coupons -- whether redeemed or not -- are in addition to the amount of proposed settlement benefits being distributed.

**10.   What am I giving up as part of the proposed settlement?**

If the proposed settlement becomes final, Settlement Class Members will be releasing Defendant and all related people and entities from all of the claims described and identified in paragraphs 1.15, 1.24 and section 6 of the Settlement Agreement. This means you will no longer be able to sue Gillette regarding any of the claims described in the Settlement Agreement.

The Settlement Agreement is available at www.XXXXXXX.com. The Settlement Agreement provides more detail regarding the release and describes the released claims with specific descriptions in necessary, accurate legal terminology, so read it carefully. You can talk to the law firms representing the Settlement Class listed in Question ___ for free or you can, at your

own expense, talk to your own lawyer if you have any questions about the released claims or what they mean.

## HOW TO GET A PAYMENT – SUBMITTING A CLAIM FORM

### 11.    How can I get a payment?

To ask for a payment, you must complete and submit a claim form, or a written request that contains substantially the same information as the claim form. You can get a claim form by calling 1-800-###-#### or at www._____.com. The claim form describes in detail what you must provide to prove your claim and receive a payment. Please read the instructions carefully.

If you submit a claim other than by using the claim form, it must be in writing and include the following information:

(1) your full name;

(2) your mailing address;

(3) your signature;

(4) state that you acquired for use and not resale an M3Power Razor in the United States between May 1, 2004 and September 30, 2005, or in Canada between May 1, 2004 and October 31, 2005, and that you are not submitting any other claim for a refund or rebate;

(5) if you are claiming a refund, enclose your M3Power Razor and also state that it is the M3Power Razor that you purchased or otherwise acquired;

(6) if you are claiming a higher refund, also enclose a receipt for the M3Power razor showing that the price paid was more than $13 US or $16.25 Canadian.

(7) if you are claiming rebate(s) instead, please state the number of rebates you are claiming (one or two), and for each rebate, enclose the UPC code from the package of M3Power blades and/or any Fusion razor (manual or battery powered), or a receipt showing that such package of M3Power blades was purchased during the period beginning May 1, 2004 through [the end of the Initial Claim Period], or such Fusion razor was purchased during the period beginning January 1, 2006 through [the end of the Initial Claim Period]. You cannot receive two rebates on the purchase of a single item.

Claims for payment must be postmarked by **Month Date, Year** and mailed to:  [**insert addresses**].

### 12.    When will I get my check?

Checks will be mailed to Settlement Class Members who send in valid claim forms on time **after** the settlement is ultimately approved and becomes final. Please be patient.

13.    **What happens if the proposed settlement is not approved or does not go into effect?**

No proposed settlement benefits will be distributed and the lawsuit will resume. In that event, those persons who have sent in their razor will be notified on the website about any Court order concerning any rights they may have to the return of their razor.

## EXCLUDING YOURSELF FROM THE PROPOSED SETTLEMENT

If you do not want a payment from this proposed settlement and you want to keep the right to sue Defendant about the legal issues in this case, then you must take steps to get out of the proposed settlement. This is called asking to be excluded from – or sometimes called "opting out" of – the Settlement Class.

14.    **If I exclude myself, can I get anything from this proposed settlement?**

No. If you exclude yourself, you cannot get anything from this proposed settlement and you should not send in a claim form to request a refund or rebate. If you ask to be excluded, you will not get any benefits, including a refund or a rebate, under the proposed settlement and you cannot object to the proposed settlement. If you ask to be excluded, however, you may sue or be part of a different lawsuit against Defendant in the future. You will not be bound by anything that happens in this lawsuit.

15.    **If I do not exclude myself, can I sue later?**

No. Unless you exclude yourself, you give up the right to sue Defendant for all of the claims that this proposed settlement resolves. You must exclude yourself from this Settlement Class to start your own lawsuit or be part of any different lawsuit relating to these claims.

16.    **How do I get out of the proposed settlement?**

To exclude yourself from the proposed settlement, you must send a letter or other written document by mail saying that you want to be excluded from *In re M3Power Razor System Marketing & Sales Practices Litigation*, Civil Action No. 05-11177 (Lead Case). In your letter or other written document, be sure to include the following information:

(1) your full name;
(2) your address;
(3) how many M3Power razors you purchased or otherwise acquired;
(4) approximately when you purchased or otherwise acquired each M3Power Razor;
(5) where each M3Power Razor was purchased;
(6) approximately how much was paid for each M3Power razor;
(7) your signature; and
(8) the date of your letter asking to be excluded.

You cannot ask to be excluded on the phone, by email, or at the website.

You must mail your exclusion request postmarked by **Month Date, Year** to:  **[insert addresses]**.

-10-

## THE LAWYERS REPRESENTING YOU

### 17.    Do I have a lawyer in the case?

The Court appointed Ben Barnow, Barnow and Associates, P.C., and Robert M. Rothman, Lerach Coughlin Stoia Geller Rudman & Robbins LLP as "Settlement Class Counsel" to represent you and other Settlement Class Members. You will not be charged for these lawyers. If you want to be represented by your own lawyer in this case, you may hire one at your own expense.

### 18.    How will the lawyers be paid?

Gillette has agreed to benefit the Settlement Class further by being responsible for and paying Settlement Class Counsel's reasonable fees, costs, and expenses in the amount of $1,850,000. Settlement Class Counsel also will ask for payments ranging from $750 to $1,000 for each of the Representative Plaintiffs and $500 for each of the other Named Plaintiffs. The Court may award less than these amounts. Defendant will separately pay the fees, costs, and expenses, and incentive awards that the Court orders. **These payments will not reduce the amount available for distribution to Settlement Class Members.**

## OBJECTING TO THE PROPOSED SETTLEMENT

### 19.    How do I tell the Court if I do not like the proposed settlement?

If you disagree with any aspect of the proposed settlement, you may express your views to the Court through a written response to the proposed settlement. The Court will consider your views.

You must object to the proposed settlement in writing. In your written objection, be sure to include the following information:

(1) the name and title of the lawsuit, *In re M3Power Razor System Marketing & Sales Practices Litigation*, Civil Action No. 05-11177 (Lead Case);
(2) your full name;
(3) your address;
(4) your signature; and
(5) proof of purchase of an M3Power Razor (for example, a store receipt) **or** an affidavit setting forth in as much detail as you can remember:
        (a) how many M3Power razors you purchased or otherwise acquired;
        (b) when you purchased or otherwise acquired each M3Power Razor;
        (c) where each M3Power Razor was purchased;
        (d) how much was paid for each M3Power razor.

Your written objection also should include the reasons why you object to the proposed settlement, and any documentation supporting your objection, as well as a statement of whether you intend to appear at the Final Fairness Hearing in Boston, Massachusetts.

Send copies of any objections to the Court, Defendant's Counsel, and either of Settlement Class Counsel (please see below) postmarked no later than **Month Date, Year**

| Court | Settlement Class Counsel | Defendant's Counsel |
|---|---|---|
| Clerk<br>United States District Court for the District of Massachusetts<br>John Joseph Moakley<br>U.S. Courthouse<br>1 Courthouse Way<br>Boston, MA  02210 | Ben Barnow, Esq.<br>Barnow and Associates, P.C.<br>One North La Salle Street<br>Suite 4600<br>Chicago, IL  60602<br><br>**-OR-**<br><br>Robert M. Rothman, Esq.<br>Lerach Coughlin Stoia Geller Rudman & Robbins LLP<br>58 South Service Road<br>Suite 200<br>Melville, NY  11747 | Harvey J. Wolkoff, Esq.<br>Ropes & Gray LLP<br>One International Place<br>Boston, MA  02110 |

**20.    What is the difference between objecting and asking to be excluded?**

Objecting is simply telling the Court that you do not like something about the proposed settlement. You can object only if you stay in the Settlement Class. Excluding yourself is telling the Court that you do not want to be part of the Settlement Class. If you exclude yourself, you cannot object to the proposed settlement because the case no longer affects you, and you will not receive any benefits under the proposed settlement.

## THE COURT'S FINAL FAIRNESS HEARING

**21.    When and where will the Court decide whether to approve the proposed settlement?**

The Court will hold a Final Fairness Hearing at [**time**] on [**date**], at the United States District Court for the District of Massachusetts, Court Room No. [**x**], 1 Courthouse Way, Boston, Massachusetts. At the Final Fairness Hearing, the Court will consider whether the proposed settlement is fair, reasonable, and adequate. The Court also will consider Settlement Class Counsel's request for attorneys' fees, costs, and expenses, as well as awards for the Representative Plaintiffs and Named Plaintiffs. If there are objections, the Court will consider them. After the Final Fairness Hearing, the Court will decide whether to approve the proposed settlement and how much to award to Settlement Class Counsel as fees, costs, and expenses and how much to award to the Representative Plaintiffs and Named Plaintiffs as incentive awards.

The Final Fairness Hearing may be moved to a different date without additional notice so it is a good idea periodically to check www._____.com for updated information.

-12-

22.    **Do I have to come to the hearing?**

No. Settlement Class Counsel will answer any questions the Court may have. However, you are welcome to attend the hearing at your own expense. If you send in a written objection, you do not have to come to the Final Fairness Hearing to talk about it. As long as you mailed your written objection on time, the Court will consider it. You also may pay your own lawyer to attend the Final Fairness Hearing, but it is not necessary.

23.    **May I speak at the hearing?**

To speak at the Final Fairness Hearing, you must send a letter or other written document saying that the letter or document is your "Notice of Intent to Appear" in *In re M3Power Razor System Marketing & Sales Practices Litigation*, Civil Action No. 05-11177 (Lead Case). Be sure to include your name, address, telephone number, and your signature. You also must include information about what you intend to say at the hearing. Please send copies of your "Notice of Intent to Appear" to the three addresses listed in Question ___ above. It must be postmarked no later than **Month Date, Year**. The Court will decide if you will be allowed to speak at the Final Fairness Hearing.

## IF YOU DO NOTHING

24.    **What happens if I do nothing at all?**

You have the right to do nothing. If you do nothing, however, you will not get any payment or benefit under this proposed settlement. In addition, unless you exclude yourself, you will not be able to start a lawsuit, continue with a lawsuit, or be part of any other lawsuit, including any other class action lawsuit, against Defendant about the legal issues in this case.

## GETTING MORE INFORMATION

25.    **How do I get more information about the proposed settlement?**

This notice summarizes the proposed settlement. More details are in the Settlement Agreement. You can get a copy of the Settlement Agreement at www._____.com. You also may write with questions to [**address**]. You can get a claim form at the Web site, or by calling the toll free number, 1-800-###-####. Or, you can call Settlement Class Counsel, identified in Question ___.