UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re: | CIVIL ACTION NO. 05-11177-DPW (LEAD CASE) |
| M3POWER RAZOR SYSTEM MARKETING & SALES PRACTICES LITIGATION | MDL Docket No. 1704 |
| THIS DOCUMENT RELATES TO: ALL CASES | |

## PLAINTIFF CARLOS CORRALES'S OPPOSITION TO MOTION FOR PRELIMINARY APPROVAL

Plaintiff Carlos Corrales ("Plaintiff") hereby opposes the motion for preliminary approval of the Settlement. *See* Herr, David F., ANNOTATED MANUAL FOR COMPLEX LITIGATION (4th ed. West 2006) § 21.632, p. 21.633 ("In settlement classes . . . it is often prudent to hear [at the hearing on the motion for preliminary approval] not only from counsel but also from the named plaintiffs, from other parties, and from attorneys who represent individual class members but did not participate in the settlement negotiations").

## MEMORANDUM OF REASONS

The Court should deny the motion for preliminary approval.

First, the motion is filed in violation of Local Rule 7.1(b)(2). In this case this is not just a technical violation of inconsequence, but rather its violation has caused the interested parties to have insufficient time to analyze and respond to the motion for preliminary approval and the settlement, a motion which is a first step in attempting to extinguish rights related to literally

1

hundreds of millions of dollars of sales.

Second, the motion as filed not only fails to provide the interested parties and the Court with sufficient information to decide whether or not to grant preliminary approval to the settlement substantively (there literally is no admissible evidence whatsoever presented regarding the substance justification for the proposed settlement), but is also missing necessary information related to the proposed notice procedure.

Third, on its face the proposed settlement is largely a marketing plan by Gillette, with payment of attorney fees to class counsel, and is inadequate. As discussed further below, it actually attempts to require putative class members to literally mail in their wet used razors if they are to be eligible for a cash refund, and if they do not, they will only receive coupons for other Gillette products.

Fourth, and finally, the settlement class does not meet the requirements for certification pursuant to Rule 23. Not only do Class Counsel admit they have obtained no pricing information for the M3 Power Razors specific to any state (to demonstrate, for example, that California's average retail price for these razors was not higher than the national average price), but even attempt to have this Court include states in which class actions are prohibited and a sovereign country as a part of this Court's settlement.

I. THE COURT SHOULD DENY THE MOTION FOR PRELIMINARY APPROVAL BECAUSE THE INTERESTED PARTIES HAVE NOT BEEN PROVIDED SUFFICIENT TIME TO ASSESS THE SETTLEMENT.

The Court should deny the motion for preliminary approval because insufficient time has

been afforded to assess the settlement. The Court set the October 18 hearing date for the motion based on the representation by Lead Counsel and Gillette to the Court that the proposed settlement and motion for preliminary approval would be filed "on or about September 27, 2006." (*See* Exhibit A hereto, a copy of the September 15, 2006 Updated Joint Status Report submitted by Gillette and Lead Counsel.) This would have afforded the interested parties with 21 days to review the motion and settlement, in line with the notice requirements for motions. The motion and settlement, however, were filed almost *two weeks late*, on Sunday, October 8, 2006, just ten days before the scheduled hearing date.

The late filing violates Rule 7.1(b)(2) of this Court. More substantively importantly, the late filing precludes adequate time for the interested parties, including plaintiff Carlos Corrales, to carefully review and assess the motion and to prepare adequately a responsive filing.

Preliminary approval of the settlement should not be rushed. This is especially true in this case, for at least three reasons.

First, preliminary approval should not be rushed because "up to" $2.45 million of the $7.5 million settlement fund is to be used for the cost of notice to class members and claims administration. (*See* Settlement Agreement ¶ 2.2.) This means that, if notice has to be resent, the fixed $7.5 million Settlement Fund will be further drained, leaving even less money to class members should the Settlement be finally approved.

The proponents of the settlement have not disclosed the estimated cost of the notice, but Plaintiff Corrales is informed and believes that notice is estimated to cost $1.25 million. If the settlement is not finally approved and the class has to be re-noticed, then, for practical purposes,

this will result in the class losing $1.25 million because Gillette likely would take this cost into account into agreeing to any revised settlement.

Second, if final approval is not granted, then the result in this case would be an administrative nightmare in light of the claims requirements. This is because under the terms of the proposed settlement there exists an incredibly cumbersome procedure (which is discussed in further detail *infra.* and which this plaintiff believes is meant to intentionally keep the claims participation rate artificially low) pursuant to which the putative class members are required to send in their M3 Power razors in order to receive a refund.

As currently written, the proposed settlement agreement requires the putative class members to mail their razors before the fairness hearing.

Whereas there is no legitimate need for requiring class members to send their wet used razors to Gillette (as discussed *infra.*), if this Court preliminarily approves this proposed settlement with this requirement in place, what happens to the razors if the Court denies final approval of the fairness hearing? Will Gillette mail each of the razors back to putative class members?

If this Court does not order the removal of this requirement to actually send in used razors to receive a cash refund, this administrative nightmare counsels that the Court should take time to receive all the information which is not yet available to the Court, and give greater scrutiny to the proposed settlement before deciding whether or not to grant preliminary approval.

4

Third, preliminary approval should not be rushed because by class counsel's own admission *confirmatory discovery* has not taken place. Preliminary approval therefore puts the cart before the horse. While Gillette may delay providing notice to the proposed Settlement Class until five days after "confirmatory" discovery has been completed, *i.e.*, until *November 10, 2006*, Gillette is not obligated to delay notice. As explained in the motion:

> "Significantly, the Settlement Agreement provides that Representative Plaintiffs shall be entitled to reasonable additional confirmatory discovery to be conducted by Settlement Class Counsel beginning on the date of the Settlement Agreement and lasting for a period of 30 days thereafter [*i.e.*, 30 days after October 6, 2006]. In the event that Settlement Class Counsel determines in good faith that the information learned in confirmatory discovery is materially contrary to the representations made in negotiations leading up to the Settlement Agreement, Settlement Class Counsel shall have the right to report the same to the Court under seal and withdraw their support for the settlement. Settlement Class Counsel agrees to make any such report to the Court and withdrawal of support for the Settlement, and concurrently provide actual notice thereof to Gillette, no later than 5 days after the close of confirmatory discovery. Gillette may defer incurring costs for notice under ¶ 3.2 of the Settlement Agreement, and/or providing notice under ¶ 3.2 of the Settlement Agreement, until the period for Settlement Class Counsel to withdraw their support for the settlement pursuant to this paragraph has expired without Settlement Class Counsel taking such action, or, in the event of such withdrawal, until promptly after the date upon which the withdrawal, for whatever reason, is found to have been ineffective or is rescinded." (Motion at 24-25 (citations omitted).)

So why not wait to decide upon preliminary approval at least until after completion of confirmatory discovery?

In short, there is no reason to rush the preliminary approval process, other than to deprive the interested parties of sufficient time to review the settlement and to deprive them of the opportunity to adequately prepare a response and full and critical analysis of the settlement.

## II. THE COURT SHOULD DENY THE MOTION FOR PRELIMINARY APPROVAL BECAUSE THE MOTION FAILS TO PROVIDE THE COURT WITH THE NECESSARY INFORMATION.

The Court should deny the motion for preliminary approval because the motion fails to provide the Court with the necessary information.

### A. The motion fails to provide any evidence for the Court to determine whether or not it should grant preliminary approval.

Highly unusual is that the motion fails to provide any evidence whatsoever for the Court to determine whether or not it should grant preliminary approval. Literally no evidence supports the motion, other than a declaration regarding the proposed notice program.

There is no evidence, let alone anything other than boilerplate discussion, of the likelihood of the putative class prevailing at trial,[1] of the size of the class, and of the estimated amount of the class's damages should plaintiffs prevail at trial. And, admittedly, there has been no confirmatory discovery of the informal discovery regarding the class's damages, let alone a description of the "valuable informal discovery" that occurred during the negotiation of the

---

[1] The proponents of the settlement offer no analysis of the merits of the litigation and likelihood of success, other than to state that litigation would take more time, and, other than the following generic language: "The Representative Plaintiffs believe that the claims asserted in the litigation have merit. However, Settlement Class Counsel have taken into account the uncertain outcome and the risk of further litigation. Settlement Class Counsel are also mindful of the inherent problems of proof and possible defenses to the claims asserted in the litigation. Due to the significant risks in this litigation and the uncertainty of prevailing on the merits and of establishing damages, this factor factors approval of the Settlement Agreement." This literally looks like it could have been cut and pasted from another class action, and not this one.
   Further, the proponents of the settlement fail to remind the Court of the fact that at least three other courts already have granted motions for preliminary injunction filed by Schick regarding the same conduct in question in these lawsuits.

settlement.

Without this basic information, the Court is left in the dark as to whether or not the proposed settlement is fair, reasonable, and adequate, and even whether or not the settlement falls within the range of reasonableness.

### B.   The proposed notice is inadequate.

First, the proposed notice to putative class members is deficient. Specifically, the contemplated press release has not been submitted for the Court's review and approval, and the question-answer script for the proposed 1-800 operators has not been submitted for the Court's review and approval.

Even more important, the short notice – which has been submitted for the Court's review and approval – is deficient because, *inter alia*, it: (i) does not inform the class members that up to $2.45 million of the $7.5 million settlement fund may be used for the cost of notice and administration as opposed to payment to class members; (b) does not inform the class members of the clear-sailing attorney fee provision in the settlement of $1.85 million, which represents over 36.6% of the $5.05 million actual value to the putative class members; (c) does not inform the class members that the reason, "[i]n mid-2005, Gillette deleted those misrepresentations from its ads" is because the United States District Court in Connecticut, in the Schick litigation, ordered Gillette to cease making the representation; and (d) fails to include in the notice itself all the information needed for class members to object to the settlement.

There is no reason the Short Notice should omit this information.

///

III. **THE COURT SHOULD DENY THE MOTION FOR PRELIMINARY APPROVAL BECAUSE THE SETTLEMENT IS PATENTLY NOT FAIR, REASONABLE, OR ADEQUATE, AND DOES NOT FALL WITHIN THE RANGE OF REASONABLENESS.**

The Settlement is patently not fair, reasonable, or adequate, and does not fall within the range of reasonableness. The following language from *Sylvester v. Cigna Corp.*, 369 F. Supp. 2d 34, 52-53 (D. Me. 2005), a decision from a sister court within the First Circuit Court of Appeal, is instructive:

> "Unfortunately, when this matter first came before the Court from preliminary approval in July 2004, the Court was not independently aware (nor did any proponent of the settlement bring to the Court's attention) what the parties and the Settlement Administrator already knew -- namely, that 'claims made' settlements regularly yield response rates of 10 percent or less. . . . Of course, this cap and the parties' expectations of a low response rate gives the reverter clause real value for Defendants. Likewise, the clear sailing provision, which guarantees that Defendants will not object to Plaintiffs' Counsel essentially seeking 30 percent of the entire settlement fund -- regardless of how much is disbursed to the class, gives this settlement real value for Plaintiffs' Counsel.
> 
> The Court does not mean to suggest that each of these features (i.e., claims made settlements, payout caps based on 100 percent response rates, reverter clauses, or clear sailing provisions) is per se unacceptable. However, this case provides a telling example of how these features can work in concert to produce a settlement that is unfair, inadequate and unreasonable and that in practice yields comparably little value for the Class."

A. **The Settlement is a marketing promotion.**

First, the essence of the Settlement, at its core, is really a marketing promotion for Gillette's newest razor, the Fusion. This is a function not only of the Settlement's laborious claim requirements, but also of the Settlement's cy pres (fluid recovery) provision.

Specifically, the proposed Settlement as currently written requires class members to mail

8

their used and wet M3 Power razors in order to obtain a cash refund.[2] The result will be an incredibly low participation rate, even lower than the 10% participation rate in consumer class actions already criticized by the Court in *Sylvester v. Cigna Corp.*, 369 F. Supp. 2d 34, 52-53 (D. Me. 2005) where the claim requirement did not even impose such a burdensome hurdle.

Thus, there is no doubt that only a few class members will receive a cash refund, leaving the overwhelming balance of the $7.5 million settlement fund not used for publication or claims administration.

However, the Settlement provides that, instead of paying the balance of the $7.5 million fund in cash, Gillette will instead provide Fusion razors with its blade cartridge (see Settlement at paragraph 2.3), which razors will be credited against the Settlement Fund at $7 each, and which will also include coupons for a total value of $4 for the purchase of Gillette shaving-related products.

In addition to being an attempt around CAFA's prohibition of coupon settlements when class counsel attempts to get paid in cash rather than coupons, this is really just a marketing promotion for Gillette in which Gillette has coopted the filed lawsuits, with the assistance of class counsel.

This is not an idle accusation, but rather one essentially admitted by the defendant itself because it is asserted by defendant itself that the razors it sells are loss leaders; the profit comes

---

[2] The settlement provides that class members must return the M3 Power Razor to obtain a refund of $13 plus $2 for postage and handling. Otherwise, class members get two $5 cash rebates (total of $10) for any purchase of blades for M3 Power blades and/or Fusion Razors made during the class period, if and only if the class member provides either a UPC code from the package or a receipt.

from the blades. No less than Gillette's own Peter Hoffman, president of the global grooming unit, *i.e.*, the shaving business unit at Gillette, is reported as stating that a user of the Fusion might spend about $50 a year, or about 20 cents a shave, on blade cartridges after buying the razor system. (The Cincinnati Enquirer (Ohio), October 11, 2005, Tuesday Final Edition, page 1A.)

In short, the "free" razors are the functional equivalents of coupons, designed to hook consumers into buying the Fusion system and then incurring the expensive cost of the replacement blades.

This is a portion of the settlement different than those circumstances under which literally $5 coupons would be mailed to participating consumers.

    B.    **The attorneys' fees of $1,850,000 do not appear to be reasonable.**

The clear-sailing provision for attorneys' fees of $1,850,000 does not appear to be reasonable. This amount is just over 36.6% of the $5,050,000 actual value to the settlement class members, and this is even assuming an actual cash value for the coupons being sent and the Fusion razors being sent. (The problem with assuming a cash value for coupons and razors in conjunction with a request for attorney fees would be developed further if Plaintiff Corrales had full opportunity as afforded pursuant to Rule 7.1(b)(2).)

But even if that $5,050,000 were cash, which it is not, the attorney fees without further explanation appear to be a high percentage given that these consumer class actions by class counsel appear to have completely piggy-backed on the Schick actions, were filed after Schick already obtained a well-publicized preliminary injunction in Connecticut, and relied on no

discovery of their own, only Schick discovery, and filed no motions for class certification or preliminary injunction, neither their own or even borrowed from Schick.

Additionally, to date, Lead Counsel fails to provide lodestar information to enable to Court to cross-check the numbers.

      **C.**    **The incentive awards to class members are incentives to consent to the settlement, not true incentive awards.**

The incentive awards for the unnamed plaintiffs in the amount of $500 is an incentive to consent to the settlement, not true incentive awards.

Specifically, lead counsel have stated that the unnamed plaintiffs will receive the "incentive" award only if they sign off on the settlement.

Plaintiff Corrales's counsel is investigating whether this sort of offer might even run afoul of California and Massachusetts criminal laws. If provided adequate Notice, Plaintiff would have been prepared to present this research in its brief to the Court.

## IV.    THE SETTLEMENT CLASS DOES NOT MEET THE REQUIREMENTS FOR CLASS CERTIFICATION UNDER RULE 23.

The settlement class, including all residents of the United States and Canada, and treating all residents of the United States the same, does not meet the requirements for class certification. The different state laws prevents the class from satisfying the predominance, typicality, and adequacy requirements.

For example, Alabama and Virginia do not even allow for class actions, and Iowa does not allow a private cause of action under its consumer protection statute. So what possible

justification is there for California consumers having to share a finite class action settlement pot with consumers from states in which class actions are not even allowed!

Additionally, Class Counsel has admitted to Plaintiff Corrales it has not obtained any pricing information specific to California, so how have California consumers been adequately protected in this rushed attempted settlement?

It is acknowledged, "California's consumer protection laws are among the strongest in the country." Wershba v. Apple Computer, 91 Cal.App.4th 224, 242 (Cal. App. 2000). This is not hyperbole, or *dicta*.

Rather, California's Consumers Legal Remedies Act (Cal. Civ. Code §§ 1750 *et seq.* (the "CLRA")) affords consumers the remedies of restitution, actual damages in the minimum amount of $1,000, punitive damages (uncapped other than by *Campbell v. State Farm*), and attorneys' fees. Cal. Civil Code §1780(a) and (d). And, a consumer is entitled to a jury trial on his/her CLRA claim. *See, e.g.*, Brockey v. Moore, 107 Cal.App.4th 86, 98 (2003). The rights and remedies afforded by the CLRA are so enshrined in California's public policy that California's Legislature expressly provided in the statute that "[a]ny waiver by a consumer of the provisions of [the CLRA] is contrary to public policy and shall be unenforceable and void." Cal. Civ. Code § 1751.

California's Unfair Competition Law (Cal. Bus. & Prof. Code §§ 17200 *et seq.* (the "UCL")) and California's False Advertising Statute (Cal. Bus. & Prof. Code §§ 17500 *et seq.* (the "FAL")) afford consumers the remedies of restitution, disgorgement, as well as fluid recovery (*cy pres*) to ensure that a defendant does not retain its illicit profits. Corbett v. Superior

Court, 101 Cal.App.4th 649, 655 (Cal. App. 2002).

In contrast, under the Massachusetts Consumer Protection Act: (i) the plaintiff has no right to a jury trial (*see, e.g.,* Santos v. Sunrise Medical Inc., 351 F.3d 587, 590 n. 2 (1st Cir. 2003); Nei v. Burley, 446 N.E.2d 674, 679 (Mass. 1983)); (ii) punitive damages are not allowed (*see, e.g.,* Prudential Ins. Co. v. Turner & Newall P.L.C., 1998 U.S.Dist.LEXIS 15960, *44-47 (D. Mass. 1998); and (iii) while treble damages are allowed, the court can order double damages instead (Mass. Gen. Laws Ch. 93(A) § 9(3)).[3]

Thus, under California's choice-of-law analysis (or any state's choice-of-law analysis),[4] the Massachusetts Consumer Protection Act cannot be applied to California class members in lieu of California's consumer protection statutes because there is a fundamental conflict with California law and California has a materially greater interest in having its consumer protection acts govern the claims of California class members. *See, e.g.,* Washington Mutual Bank v.

---

[3] The vast majority of other states' consumer protection statutes also do not afford the remedy of punitive damages. e.g., Arkansas, Colorado, Florida, Hawaii, Illinois, Indiana, Kansas, Louisiana, Arizona, Maine, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Montana, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Ohio, Oklahoma, Pennsylvania, South Carolina, South Dakota, Tennessee, Texas, Utah, Virginia, Washington, West Virginia, Wisconsin, and Wyoming. Alabama and Virginia do not even allow for class actions, and Iowa does not allow a private cause of action under its consumer protection statute.

[4] "It is a well established principle that a federal court sitting in diversity must apply the choice-of-law rules of the forum state in determining which state's substantive law to apply in the case. Klaxon v. Stentor Elec. Mfg. Co., Inc., 313 U.S. 487 (1941). In the MDL setting, the forum state is usually the state in which the action was initially filed before it was transferred to the court presiding over the MDL proceedings" – which, in the case of Corrales and Adoure is California. In re Propulsid Prods. Liab. Litig., 208 F.R.D. 133, 140 (E.D. La. 2002); *see also* Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 822-23 (holding that an individualized choice-of-law analysis must be applied to each plaintiff's claim in a class action).

Superior Court, 24 Cal.4th 906, 916-17 (2001); America Online, Inc. v. Superior Court, 90 Cal.App.4th 1, 25 (2001); *see also* Delaventura v. Columbia Acorn Trust, 2006 U.S.Dist.LEXIS 3620, *14 (D. Mass. Feb. 1, 2006) ("Once trial is no longer a realistic alternative, bargaining shifts in ways that inevitably favor the defense. After all, a major goal of nearly every defendant is to avoid a public jury trial of the plaintiff's claims. Fact finding is relegated to a subsidiary role, and bargaining focuses instead on ability to pay, the economic consequences of the litigation, and the terms of the minimum payout necessary to extinguish the plaintiff's claims").

Likewise, the proposed settlement fails to account and provide for the greater rights afforded by California law, rendering it patently not fair, reasonable, and adequate. *See, e.g.*, In re Heritage Bond Litig., 2005 U.S.Dist.LEXIS 13555, *37-38 (C.D. Cal. 2005) (reasonableness of settlement depends on whether it allocates "more of the settlement to class members with stronger claims on the merits"); In re Bankamerica Corp. Secs. Litig., 210 F.R.D. 694, 712 (E.D. Mo. 2002) (denying settlement approval because the plan of allocation fails to account for "the strength of [class members'] claims under California law"); In re Oracle Sec. Litig., 1994 U.S.Dist.LEXIS 21593, *3-4 (N.D. Cal. 1994) (reasonable to allocate more of the settlement to class members with stronger claims).

Additionally, Plaintiff is informed and believes that average retail sales price in California for these products was higher than the average national sales price. This would have been developed further for the Court by Plaintiff Corrales had the Motion For Preliminary Approval been filed in compliance with the notice provisions of Rule 7.1(b)(5). Class Counsel has admitted that it has not made any attempt to obtain state specific pricing information. The bottom line is, even without this further development, no justification has been offered as to why

Californians ought to accept a lower average price than they paid.

Dated: October 17, 2006               Respectfully submitted,

                              By:    /s/ Taras Kick
                                    Taras P. Kick
                                    G. James Strenio
                                    THE KICK LAW FIRM, APC
                                    660 South Figueroa Street, Suite 1800
                                    Los Angeles, California 90017
                                    (213) 624-1588
                                    taras@kicklawfirm.com
                                    james@kicklawfirm.com
                                    Counsel for Plaintiff
                                    CARLOS CORRALES

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document, was served electronically through the ECF System on the registered participants as identified on the Notice of Electronic Filing ("NEF"), on October 17, 2006.

/s/ Taras Kick
Taras Kick

**EXHIBIT A**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| In re:<br>M3POWER RAZOR SYSTEM<br>MARKETING & SALES PRACTICES<br>LITIGATION | CIVIL ACTION NO. 05-11177-DPW<br>(LEAD CASE)<br><br>MDL Docket No. 1704 |
| THIS DOCUMENT RELATES TO:<br>ALL CASES |  |

## UPDATED JOINT STATUS REPORT

Plaintiffs' Co-Lead Counsel and counsel for defendant The Gillette Company ("Gillette") hereby jointly report that they anticipate executing the settlement agreement by on or before September 22, 2006, and filing the settlement agreement, along with a motion for preliminary approval (with ancillary documents), on or about September 27, 2006. Plaintiffs' Co-Lead Counsel and Gillette's counsel respectfully suggest that a hearing on preliminary approval be scheduled for an appropriate date as soon as practicable thereafter.

10198199_2

Respectfully submitted,

/s/ Mark P. Szpak
Harvey J. Wolkoff (BBO #532880)
Mark P. Szpak (BBO #546261)
Emily C. Shanahan (BBO # 643456)
ROPES & GRAY LLP
One International Place
Boston, Massachusetts 02110-2624
(617) 951-7000

*Counsel for Defendant The Gillette Company*

/s/ Thomas G. Shapiro
Thomas G. Shapiro (BBO #454680)
Theodore M. Hess-Mahan (BBO #557109)
SHAPIRO HABER & URMY LLP
53 State Street
Boston, MA 02109
(617) 439-3939

*Plaintiffs' Liaison Counsel*

/s/ Robert Rothman
Robert Rothman
LERACH COUGHLIN STOIA GELLER
RUDMAN & ROBBINS LLP
58 South Service Road, Suite 200
Melville, NY 11747
(631) 367-7100

- and -

/s/ Ben Barnow
Ben Barnow
BARNOW AND ASSOCIATES, P.C.
One North LaSalle Street, Suite 460
Chicago, IL 60602
(212) 349-7950

*Plaintiffs' Co-Lead Counsel*

Dated: September 15, 2006