UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____

In re:                                     )        CIVIL ACTION NO. 05-11177-DPW
M3POWER RAZOR SYSTEM                        )        (LEAD CASE)
MARKETING & SALES PRACTICES                )
LITIGATION                                 )        MDL Docket No. 1704
_____)
                                           )
THIS DOCUMENT RELATES TO:                  )
**ALL CASES**                              )
_____)

## DEFENDANT GILLETTE'S MOTION TO IMPOUND EXHIBITS TO THE DECLARATION OF KEVIN MCNAMARA

Pursuant to Local Rule 7.2 and paragraph 9 of the Stipulated Protective Order, entered by the court on March 17, 2006, defendant The Gillette Company ("Gillette") hereby moves that the following documents, which are attached as Exhibits A and B to the Declaration of Kevin McNamara (the "McNamara Declaration"), be impounded until further order of the Court. Gillette respectfully requests that all of the material below be maintained under seal. However, because the information attached as Exhibit B to the McNamara Declaration and designated as HIGHLY CONFIDENTIAL is among the most sensitive information that Gillette maintains -- consisting of product line profit margins and average wholesale prices that are not available to competitors and that competitors could use to undercut Gillette's position in negotiations for shelf space with retailers and distributors -- Gillette requests that any disclosure ordered by the Court, if deemed to be necessary, be limited to the materials designated as CONFIDENTIAL and, in particular, not include the documents designated as HIGHLY CONFIDENTIAL.

(A) DOCUMENTS DESIGNATED AS CONFIDENTIAL:

      1.      M3Power Razors, Retail Sales & Avg. Price
                   (Bates Nos. GLTE 000001-02)

- 1 -

2.      M3Power Blades, Retail Sales & Avg. Price per Cartridge
        (Bates Nos. GLTE 000008, 000034)

3.      Mach3 Turbo Razor – Avg. Retail Price
        (Bates Nos. GLTE 000009, 000033)

4.      Mach3 Turbo Blades – Avg. Retail Price per Cartridge
        (Bates Nos. GLTE 000010, 000034)

5.      M3Power, Historical Media
        (Bates Nos. GLTE 000012-13)

6.      Total Fusion (manula) Average Retail Prices:  Launch to Aug '06
        (Bates Nos. GLTE 000014)

(B) DOCUMENTS DESIGNATED AS HIGHLY CONFIDENTIAL:

1.      Blades & Razors Global Business Unit, M3Power – Profit on Retail Sales
        United States (Bates Nos. GLTE 000003-04),
        Canada (Bates Nos. GLTE 000005-06), and
        United States & Canada Combined (Bates No. GLTE 000007)

2.      Mach3 Turbo and M3Power, Average Wholesale Price (Net Sales per Unit)
        USA & Canada Combined (Bates Nos. GLTE 000011, 000035).

As grounds for this Motion, Gillette states as follows:

1.      In this action, a proposed class of consumers has brought claims against Gillette

based on alleged misrepresentations in its advertisements for the M3Power Razor.  The parties

have reached a proposed settlement and now seek the court's preliminary approval.

2.      In the course of settlement discussions, and as part of confirmatory discovery,

Gillette provided Co-Lead Counsel with financial information relating to plaintiffs' assessment

of alleged damages, and supporting information for various financial components of the

proposed settlement.  Under paragraph 2 of the Stipulated Protective Order, either party may

designate material for protection as either "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL."

Gillette has designated the financial information provided to Co-Lead Counsel as

"CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" because it determined, "reasonably and in good faith," that the documents contain "highly sensitive . . . business information," including "product sales and pricing information, strategic business plans . . ., and information or documents that relate to any Gillette products that are under development."  Stipulated Protective Order ¶ 2.

3.    In particular, Gillette produced data on monthly M3Power Razor retail sales and average retail price in the United States and Canada (and combined) over the class period; average retail price figures for M3Power blades in the United States and Canada over the class period; average retail price of the MACH3 Turbo razors and blades in the United States and Canada (and combined) over the class period; data on the average retail price of manual Fusion razors; and historical media data.  All of the foregoing represent internal Gillette data not generally publicly available, which Gillette designated as CONFIDENTIAL under the Stipulated Protective Order.  These materials are attached as Exhibit A to the McNamara Declaration.

4.    In additional, Gillette also produced two additional sets of data:  profits on the number of M3Power Razors and blades sold at retail in the United States and Canada (and combined) over the class period, and average wholesale price figures on the M3Power Razor and MACH3 Turbo razor in the United States and Canada (and combined) over the class period.  These data again represent internal Gillette data not generally available, but which Gillette designated as HIGHLY CONFIDENTIAL under the Stipulated Protective Order in this case.  These materials are attached as Exhibit B to the McNamara Declaration.

5.    In support of the pending motion for preliminary approval of the proposed settlement, Gillette now submits, for review by the Court, all of the data identified in paragraphs 2 and 3 above.

10253905_1

The Confidential Materials Identified as Exhibit A.

6.     Those materials designated CONFIDENTIAL appear in Exhibit A hereto and contain, for the most part, retail sales volumes and average retail prices for its M3Power, Mach3 Turbo and Fusion razors.  For the M3Power razor and Mach3 Turbo razor, data is provided on a month-by-month basis for the class period.  Otherwise, the data is provided as an aggregate for the settlement class period.

7.     Good cause exists for the impoundment of the documents attached to the McNamara Declaration as Exhibit A.  These documents reveal precisely the type of "product sales and pricing information" that the Stipulated Protective Order was designed to protect.  As explained in the accompanying McNamara Declaration, the information in these documents contains data obtained from retailers under a promise of confidentiality.  *See* McNamara Declaration ¶ 4.  Because of this, Gillette has treated these documents as confidential.  *See id.*

The Highly Confidential Documents Identified as Exhibit B.

8.     Those materials designated as HIGHLY CONFIDENTIAL appear in Exhibit B hereto.  These documents reflect information about the amount that it costs Gillette to produce the razors that are then sold to retailers for a profit, and they provide the average wholesale prices at which Gillette sells its razors to distributors and retailers.  McNamara Declaration ¶ 5.  Information of this sort either constitutes or, could be used to infer or project, Gillette's profit and loss on a product-by-product basis.  McNamara Declaration ¶¶ 5-10.  Though the data in question relates to the proposed Settlement Class Period, i.e., from May 2004 to September/October 2005, even data that is more than two years old can be used to assist competitors in making predictions about both current and future profits and losses.  McNamara Declaration ¶ 8.

9.      Gillette permits only very limited access to such data in the course of its business. Though Gillette publicly reports aggregate profit data for its overall Blades and Razors Global Business Unit, it never reports such data for individual razor lines.  McNamara Declaration ¶ 11. Indeed, even within Gillette, manufacturing cost, profit and average wholesale price data for individual lines of razors and blades is available only within the Blades and Razors Global Business Unit, and is access is further limited within that business unit.  McNamara Declaration ¶ 11.

## ARGUMENT

The decision to grant a motion to impound lies within the Court's sound discretion.  See Siedle v. Putnam Investments, Inc., 147 F.3d 7, 10 (1st Cir. 1998).  Under Fed. R. Civ. P. 26(c)(7), the Court may—upon a showing of "good cause"—enter an order protecting "trade secret or other confidential research, development, or commercial information."  Good cause is established when the litigant has demonstrated "compelling reasons."  Poliquin v. Garden Way, Inc., 989 F.2d 527, 533 (1st Cir. 1993) (internal quotation marks omitted).  Because the public's right to inspect judicial records "is not absolute," courts often "refuse[] to permit their files to serve as . . . sources of business information that might harm a litigant's competitive standing." Nixon v. Warner Communications, Inc., 435 U.S. 589, 598 (1978) (internal citations omitted). Thus, courts regularly enter protective orders when they determine that the competitive harm caused by disclosure of confidential business information would outweigh the interest in public access to judicial records.  See Nault's Auto. Sales, Inc. v. Am. Honda Motor Co., 148 F.R.D. 25, 44 (D.N.H. 1993), implied overruling on other grounds recognized in Colonial Imports Corp. v.

<u>Volvo Cars of North Am., Inc.</u>, No. Civ. 98-342-B, 2001 WL 274808, *8 (D.N.H. 2001)[1]

(reviewing factors courts should consider).

      Relevant to this case, courts have specifically recognized the need to protect sensitive

financial information pertaining to cost structure and profits in order to prevent competitive

injury.  <u>See, e.g.</u>, <u>Bank of N.Y. v. Meridien BIAO Bank Tanzania Ltd.</u>, 171 F.R.D. 135, 144

(S.D.N.Y. 1997) (citing cases in which courts found pricing and revenue information to be

entitled to a protective order, and finding internal corporate manuals to be confidential); <u>Iron

Clad, L.P. v. Poly-America, Inc.</u>, No. 98-2600, 2000 WL 1400762, *15 (N.D. Tex. 2000)

(granting motion to seal all documents relating to defendant's "cost structure and financial

information" used "for the purposes of determining [defendant's] profits"); <u>see also</u> <u>Gelb v. Am.

Tel. & Tel. Co.</u>, 813 F. Supp. 1022, 1035 (S.D.N.Y. 1993) (granting motion to seal "potentially

valuable commercial information which . . . could alter defendant['s] competitive position" as

well as documents that could cause "competitive injury" and cause "commercial harm"); <u>Nault's

Auto. Sales, Inc.</u>, 148 F.R.D. at 45  (recognizing need to protect "sensitive financial or other

competitive data," but finding that movant had not established such a need).

      The need to protect such financial information is self-evident.  "Confidential or

commercial information includes market strategy and financial information of suppliers or

distributors.  Such commercial information, which encompasses strategies, techniques, goals and

plans, can be the lifeblood of a business.  This type of financial information may also be

particularly deserving of protection if the disclosing corporation is vulnerable to competitors."

<u>Brittain v. Stroh Brewery Co.</u>, 136 F.R.D. 408, 415 (M.D.N.C. 1991).  Indeed, one federal court

has suggested that a <u>per se</u> standard may apply to such disclosure, noting that it "obviously

---

[1] The overruling of <u>Nault's</u> on Fed. R. Civ. P. 11 grounds was recognized in <u>Young v. City of Providence</u>, 301 F. Supp. 2d 187 (D.R.I. 2004), but that decision was itself vacated on appeal.  <u>See</u> <u>Young v. City of Providence</u>, 404 F.3d 33 (1st Cir. 2005).

constitute[s] a clearly defined and serious injury." <u>United States v. Dentsply Int'l, Inc.</u>, 187

F.R.D. 152, 159 (D. De. 1999) (referring to disclosure of financial forecasts, margin, pricing, and

cost information).

     When deciding whether information is entitled to protection, courts typically examine

multiple factors, such as "(1) the extent to which information is known outside the business; (2)

the extent to which information is known to those inside the business; (3) the measures taken to

guard the secrecy of the information; and (4) the value of the information to the business and its

competitors." <u>Meridien BIAO Bank Tanzania Ltd.</u>, 171 F.R.D. at 144.  In this case, all four

factors weigh in favor of granting Gillette's Motion.

     First, none of this information is known outside of the business, and even within Gillette

only a limited number of individuals have access to the information.  Gillette has also taken

extensive measures to guard the secrecy of its financial and product development data, further

reflecting its sensitive nature.  Even where selected, aggregate information is available or

disclosed, this does not mean that other information, not yet made public, is either stale or not

entitled to the Court's protection.  <u>Cf.</u> <u>Blanchard & Co. v. Barrick Gold Corp.</u>, No. 02-3721,

2004 WL 737485, *8-10 (E.D. La. 2004) (finding that although defendant had disclosed certain

terms of hedging contracts to the public, many of the details remained non-public and

confidential).  Indeed, the fact that Gillette has not released such information only serves to

underscore its sensitivity.

     Pursuant to Local Rule 7.2(a) and (c), Gillette also respectfully requests that if the Court

issues an order lifting the impoundment, the materials should be returned to the custody of

Gillette's counsel as noted below:

                                       Emily C. Shanahan
                                       Ropes & Gray LLP

One International Place
Boston, MA 02110-2624
(617) 951-7000

Gillette further asks the Clerk to advise Ms. Shanahan if the impoundment is lifted and allow

reasonable time to retrieve the materials from the Court.

WHEREFORE, Gillette requests that this Court grant its Motion to Impound.

Respectfully submitted,


THE GILLETTE COMPANY
By its attorneys

/s/ Harvey J. Wolkoff
/s/ Mark P. Szpak
Harvey J. Wolkoff (BBO #532880)
Mark P. Szpak (BBO #546261)
Emily C. Shanahan (BBO #643456)
ROPES & GRAY LLP
One International Place
Boston, Massachusetts 02110-2624
(617) 951-7000


Dated:  November 6, 2006

## CERTIFICATE OF COMPLIANCE WITH L.R. 7.1

I hereby certify that counsel for the Defendant Gillette Company has conferred with counsel for the plaintiff and have attempted in good faith to resolve or narrow the issue.

/s/ Harvey J. Wolkoff

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document, filed through the ECF system, will be served electronically through the ECF System on the registered participants as identified on the Notice of Electronic Filing ("NEF"), and that paper copies of the above document will be sent via first class mail to those identified as non-registered participants on the NEF on November 6, 2006.

/s/ Harvey J. Wolkoff