UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| In re:<br>M3POWER RAZOR SYSTEM<br>MARKETING & SALES PRACTICES<br>LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br>**ALL CASES** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CIVIL ACTION NO. 05-11177-DPW<br>(LEAD CASE)<br><br>MDL Docket No. 1704 |

**THE GILLETTE COMPANY'S SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT OF PRELIMINARY APPROVAL OF PROPOSED SETTLEMENT**

**Preliminary Statement**

Defendant Gillette Company ("Gillette") respectfully submits this memorandum of law to correct the plaintiff Corrales' characterization at oral argument of the Seventh Circuit's decision in *Mirfasihi v. Fleet Mortgage Corp.*, 450 F.3d 745 (7th Cir. 2006).

**Statement Of Position**

Corrales relied principally on *Mirfasihi* at oral argument in asserting that this Court must examine the consumer protection laws of all fifty states in order to preliminarily approve the parties' proposed settlement.

However, *Mirfasihi* does not support Corrales' position. *Mirfasihi* involved a nationwide class action against Fleet Bank for improperly selling personal information about its mortgage customers to telemarketers, who then used that information to attempt to sell products to those customers. 450 F.3d at 746-47. Customers who actually purchased products held claims for their out-of-pocket costs. *Id.* Customers who made no purchases held claims only for invasion of privacy, stemming from the disclosure of their personal information to the telemarketers. *Id.*

The settlement included two classes and provided a monetary benefit to the class of customers who had actual damages but no benefit whatsoever for the class of customers who made no purchase and therefore did not incur actual damages. *Id.*

In approving the settlement, the district court in *Mirfasihi* reasoned that the claims of the "no purchase" class were valueless -- in effect, that those consumers had no "ticket" permitting them to participate in the settlement. *Id.* at 747. Certain objectors argued that some members of the "no purchase" class could still recover by invoking the "minimum statutory damages" available under the provisions of their consumer protection statutes, but the district court rejected that contention based on a review of the consumer protection statutes in only four states. *Id.* at 749-50.

The Seventh Circuit refused to approve the settlement, holding that the statutes of all pertinent states' consumer protection laws should have been examined to determine if the privacy-only claimants had a claim. *Id*. at 751.

*Mirfasihi*, thus, is similar to *In re Relafen Antitrust Litig.*, 231 F.R.D. 52 (D. Mass. 2005), where Judge Young had to determine whether class members whose claims were not recognized under certain states' antitrust laws could nonetheless receive some recovery under the settlement.[1] *See id*. at 75. In both *Relafen* and *Mirfasihi,* an analysis of pertinent state laws was required solely to determine whether certain class members were entitled to <u>any</u> remedy under the laws of their states. Those decisions in no way suggest that preliminary -- or even final -- approval of a class settlement requires a 50-state analysis of the different amounts of recovery claimants could receive under their particular state's law.

---

[1] The Supreme Court decision in *Illinois Brick v. Illinois,* 431 U.S. 720 (1977), meant that some states recognized claims on behalf of indirect purchasers, whereas others did not. *Id*. at 75-76.

To the contrary, the fact that some states may provide better remedies to their consumers does *not* mean that those states' class members should be treated differently in the settlement context.[2]  For example, in *In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1022 (N.D. Ill. 2000), objections were asserted on the ground that the proposed settlement was not fair to California class members, who were arguably entitled to a better recovery under California consumer protection laws.  *Id*. at 1022-27.  The court held that the plaintiff's contention that California state laws arguably provided a better recovery was without merit and did not "militate against approval of the settlement."  *Id.* at 1027.  On appeal, the Seventh Circuit affirmed the district court's decision, holding that the plaintiffs had not shown that the application of various aspects of California law to that case "would have either increased the recovery or demonstrated the inappropriateness of class treatment."  *In re Mexico Money Transfer Litig.*, 267 F.3d 743, 747 (7th Cir. 2001).  As the Seventh Circuit noted, "[g]iven the settlement, no one need draw fine lines among state-law theories of relief . . . Many opinions, of which *Amchem* is one, give consumer fraud as an example of a claim for which class treatment is appropriate."[3]  *Id.* (citation omitted).  *Accord In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231, 257 (D.Del. 2002) (concluding that the recovery of treble or punitive damages under certain consumer protection statutes does not have to be taken into account in calculating the reasonable range of recovery for purposes of settlement, because such damages are purely speculative); *Lorazepam & Clorazepate Antitrust Litig.*, 205 F.R.D. 369, 376 (D.D.C. 2002) ("[T]he standard for evaluating

---

[2] Gillette submits, again, that Corrales has failed to demonstrate that California class members have superior available remedies - - and, they do not.  *See* **Gillette Br.** at 24-27.

[3] In *Mexico Money Transfer,* the principal claim was a claim under federal law, which lent uniformity to the claims of the entire class.  *In re Mexico Money Transfer Litig.,* 267 F.3d 743, 747 (7th Cir. 2002)  In the settlement before the Court here, as Gillette noted at the hearing on preliminary approval, the uniformity across class members arises from the fact that all allege the same basic misrepresentation claim.

settlement involves a comparison of the settlement amount with the estimated single damages," not treble damages); *In re Prudential Ins. Co. of Am.*, 148 F.3d 283, 315 (3d Cir. 1998) (certifying a national settlement class and noting that variances in the laws of the fifty states do not defeat certification in the settlement context); *In re Pharm. Ind. Average Wholesale Price Litig.*, 230 F.R.D. 61, 84 (D. Mass. 2005) (agreeing with *Warfarin* that variances in state laws are not relevant in a class action settlement). Gillette has not found a single case in which the court accounted for "better" remedies in one state versus another by establishing sub-classes, in the context of approval of a class action settlement.

## Conclusion

Gillette respectfully submits that *Mirfasihi v. Fleet Mortgage Corp.,* 450 F.3d 745 (7th Cir. 2006), supports Gillette's -- not Corrales' -- position that neither a subclass nor an examination of the remedies under various consumer protection statutes is required or appropriate in order to preliminarily approve this settlement.

                                      Respectfully submitted,

                                      THE GILLETTE COMPANY
                                      By its attorneys

                                      /s/ Harvey J. Wolkoff
                                      /s/ Mark P. Szpak
                                      Harvey J. Wolkoff (BBO #532880)
                                      Mark P. Szpak (BBO #546261)
                                      Emily C. Shanahan (BBO #643456)
                                      ROPES & GRAY LLP
                                      One International Place
                                      Boston, Massachusetts 02110-2624
                                      (617) 951-7000

Dated:  December 1, 2006

-5-

## **CERTIFICATE OF SERVICE**

      I hereby certify that a true copy of the above document, filed through the ECF system, will be served electronically through the ECF System on the registered participants as identified on the Notice of Electronic Filing ("NEF"), and that paper copies of the above document will be sent via first class mail to those identified as non-registered participants on the NEF on December 1, 2006.

      /s/ Mark P. Szpak  
      Mark P. Szpak