**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

_____
                               )
In re:                           )     CIVIL ACTION NO. 05-11177-DPW
                               )     (LEAD CASE)
M3POWER RAZOR SYSTEM     )
MARKETING & SALES PRACTICES   )     MDL Docket No. 1704
LITIGATION                  )
_____)
                               )
THIS DOCUMENT RELATES TO:   )
**ALL CASES**                 )
_____)

**<u>PLAINTIFF CARLOS CORRALES'</u>**
**<u>*EX PARTE* APPLICATION FOR LEAVE TO FILE SUPPLEMENTAL BRIEF</u>**

The purpose of Gillette's supplemental brief is not to respond to case law mentioned by

Plaintiff Carlos Corrales in oral argument for the first time, because, in his Opposition To

Motion For Preliminary Approval, at page 16, Plaintiff cited <u>Mirfasihi v. Fleet Mortgage Corp.</u>,

450 F.3d 745, 749 (7th Cir. 2006), and quoted therein the identical language quoted at the

Preliminary Approval Hearing.

The true purpose of Gillette's supplemental brief – filed by Gillette after the Preliminary

Approval Hearing, on Friday, December 1, 2006 – is to argue further the issues relating to the

variations of state law, which impact both settlement class certification and settlement approval.

After all, Gillette's supplemental brief is not limited to a discussion of <u>Mirfasihi</u>, but instead

continues to argue further its position and cite additional cases it contends supports its position.

In fact, it is the settlement proponents' new polestar case – In re Mexico Money Transfer Litig. (Western Union and Orlandi Valuta), 164 F.Supp.2d 1002 (N.D. Ill. 2000) – that was not visible in the settlement proponents' briefing, but instead is cited by them for the first time during the Preliminary Approval Hearing.

In response to Gillette's supplemental brief, Plaintiff, pursuant to Local Rule 7.1(b)(3), respectfully moves this Court to grant him leave to file a supplemental brief for this Court's consideration, which is limited to issues relating to the variations of state law, and which presents the legal framework, demanded by the Due Process Clause and Rule 23, to properly analyze the issues raised and cases cited by the parties.  Plaintiff further requests that this Court deem filed Plaintiff's supplemental brief attached hereto as Exhibit A.

Dated: December 8, 2006                    Respectfully submitted,

                              By:     /s/ G. James Strenio                    
                                      Taras P. Kick
                                      G. James Strenio
                                      THE KICK LAW FIRM, APC
                                      900 Wilshire Blvd., Suite 230
                                      Los Angeles, California 90017
                                      (213) 624-1588
                                      taras@kicklawfirm.com
                                      james@kicklawfirm.com
                                      Counsel for Plaintiff
                                      CARLOS CORRALES

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

In re:                                    )          CIVIL ACTION NO. 05-11177-DPW
                                          )          (LEAD CASE)
M3POWER RAZOR SYSTEM                       )
MARKETING & SALES PRACTICES               )          MDL Docket No. 1704
LITIGATION                                )
                                          )
                                          )
THIS DOCUMENT RELATES TO:                 )
ALL CASES                                 )
                                          )

PLAINTIFF CARLOS CORRALES'
SUPPLEMENTAL BRIEF
IN SUPPORT OF OPPOSITION TO MOTION FOR PRELIMINARY APPROVAL

I.    **CALIFORNIA LAW GOVERNS THE CLAIMS OF CALIFORNIA MEMBERS OF THE PUTATIVE SETTLEMENT CLASS.**

A.    **The Due Process Clause of the United States Constitution mandates that each class member is entitled to have his or her claims governed by the law dictated by the applicable choice of law.**

The Due Process Clause of the United States Constitution mandates that the claims of

each member of a putative nationwide class action be governed by only the law dictated by

the applicable choice-of-law analysis. Phillips Petroleum Co. v. Shutts. 472 U.S. 797, 821-

23 (1985).

Without a choice-of-law analysis establishing that one state's laws can be

constitutionally applied to all the members of the putative class, application of one state's

laws to all the class members – let alone application of no law whatsoever, as urged by the

settlement proponents in this case – violates the Due Process Clause: in the absence of such

a choice-of-law analysis. application of each state's laws to the respective class members is

constitutionally mandated. *See* Phillips Petroleum. 472 U.S. at 821-23.[1]

---

[1]  In re St. Jude Medical, Inc., Silzone Heart Valve Products Liability Litigation. 425 F.3d 1116. 1119-20 (8th Cir. 2005) ("The district court's class certification was in error because the district court did not conduct a thorough conflicts-of-law analysis with respect to each plaintiff class member before applying Minnesota law. The Supreme Court has held an individualized choice-of-law analysis must be applied to each plaintiff's claim in a class action"): In re Prempro Prods. Liab. Litig.. 230 F.R.D. 555, 561-62 (E.D. Ark. 2005) ("the question of which law governs is crucial in making a class certification determination. Not only must the choice-of-law issue be addressed at the class certification stage – it must be tackled at the front end since it pervades every element of FRCP 23. FRCP 23 makes no reference to choice-of-law issues. but. in nationwide class actions, choice-of-law constraints are constitutionally mandated because a party has a right to have her claims governed by the state law applicable to her particular case. Therefore. choice-of-law issues may be present in any number of FRCP 23's subsections – and they are pervasive in this case. So, . . . identifying the state substantive laws that may control the outcome of the litigation is a threshold matter when making findings regarding class certification"): In re Managed Care Litig.. 298 F.Supp.2d 1259, 1296-97 (S.D. Fla. 2003) ("These are fundamental substantive limits on the scope of state regulatory jurisdiction – limits that the procedural vehicle of a class action cannot justify transgressing") (citing Phillips Petroleum and Bridgestone /

2

**B.    Because this case involves an MDL proceeding, the choice-of-law analysis for each of the transferred actions must be based on the choice-of-law rules of each of the transferor forum states.**

In an MDL proceeding, the transferee court must apply, for each transferred action,

the state law, including its choice-of-law rules, of the forum of the transferor court (*e.g.*,

California's choice-of-law rules for the *Corrales* action). *See* Van Dusen v. Barrack, 376

U.S. 612, 639 (1964); In re Air Crash Disaster at Boston, Massachusetts on July 31, 1973,

399 F.Supp. 1106, 1107 (D. Mass. 1975) ("a United States District Court to which an action

is transferred pursuant to 28 U.S.C.A. § 1407 must apply the substantive law of the transferor

state . . . Therefore, the applicable damage provisions must be determined in each case by

applying the substantive law of the original forum, including its choice of law rules")

(citations omitted).[2, 3]

---

Firestone); Lyon v. Caterpillar, Inc., 194 F.R.D. 206, 213, 217 (E.D. Pa. 2000); *see also* In re Rhone-Poulenc Rorer Inc., 51 F.3d 1293, 1302 (7th Cir. 1995) ("The diversity jurisdiction of the federal courts is, after [Erie R.R. v. Tompkins, 304 U.S. 64, 78-80 (1938)], designed merely to provide an alternative forum for the litigation of state-law claims, not an alternative system of substantive law for diversity cases. But under the district judge's plan the thousands of members of the plaintiff class will have their rights determined . . . under a law that is merely an amalgam, an averaging, of the nonidentical negligence laws of 51 jurisdictions. . . . The point of Erie is that Article III of the Constitution does not empower the federal courts to create such a regime for diversity cases").

[2] Also *see* In re Temporomandibular Joint (TMJ) Implants Prods. Liab. Litig., 97 F.3d 1050, 1055 (8th Cir. 1996); In re Propulsid Pros. Liab. Litig., 208 F.R.D. 133, 141-42 (E.D. La. 2002); In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig., 175 F. Supp. 2d 593, 606 n. 20 (S.D. N.Y. 2001).

[3] "Van Dusen furthers Erie's policies by insuring that a pre-trial transfer under § 1407 does not lead to the application of a state substantive law that differs from the law applicable in the jurisdiction where the case was properly filed. As the Court stated: 'the 'accident' of federal diversity jurisdiction does not enable a party to utilize a transfer to achieve a result in federal court which could not have been achieved in the courts of the State where the action was filed.' Van Dusen, 376 U.S. at 638." Menowitz v. Brown, 991 F.2d 36, 40 (2nd Cir. 1993) (citation omitted).

C.    **California's choice-of-law rules mandate application of California law to the *Corrales* action.**

California's choice-of-law rules mandate application of California law to the *Corrales* action.

*First*, under California's choice-of-law rules, the law of California applies unless the party invoking the law of a foreign state establishes that California's governmental interest test mandates application of the foreign law. Washington Mutual Bank, FA v. Superior Court, 24 Cal.4th 906, 919 (Cal. 2001) ("Under the first step of the governmental interest approach, the foreign law proponent must identify the applicable rule of law in each potentially concerned state and must show it materially differs from the law of California"); Isuzu Motors Ltd. v. Consumers Union of United States, Inc., 12 F.Supp.2d 1035, 1043 (C.D. Cal. 1998); In re MDC Holdings Sec. Litig., 754 F.Supp. 785, 803-04 (S.D. Cal. 1990); In re Activision Sec. Litig., 621 F.Supp. 415, 430-31 (N.D. Cal. 1985).

The settlement proponents have not invoked any other state's law, and, indeed, assert they are not invoking any law.[4]  Under California's choice-of-law rules, California law therefore indisputably applies to the putative class members residing in California.

*Second*, even if the settlement proponents had invoked another state's law, under California's governmental interest approach,[5] California law would still apply due to

---

[4] *See* Plaintiffs' Supplemental Memorandum In Support Of Motion For Preliminary Approval Of Class Action Settlement And Publishing Of Notice, And Setting Of A Final Fairness Hearing, dated November 6, 2006, at 10-11 ("where the class sought to be certified is for settlement purposes only, and standards of due process have been met, there is no need to apply the substantive laws of any particular state, for the parties have voluntarily agreed to forego the boundless uncertainties of litigation and proceed to settle contested claims. . . . Massachusetts law . . . is not even being applied substantively to Plaintiffs' claims").

[5] "[I]n analyzing a choice-of-law issue, California courts apply the so-called governmental interest analysis, under which a court carefully examines the governmental interests or

4

California's greater interest in protecting its residents. *See, e.g.*, <u>Klussman v. Cross Country Bank</u>, 134 Cal.App.4th 1283, 1296 (Cal. App. 2005) (emphasizing "the fundamental nature of California's concern with protecting consumers from unscrupulous practices, particularly when only small individual amounts are at issue") (holding that California's "fundamental public policy interest in protecting its residents" from out-of-state businesses is materially greater and outweighs Delaware's interest in uniform regulation of the business practices of banks incorporated under its laws).[6]

## II    CALIFORNIA'S CONSUMER PROTECTION LAWS AFFORD GREATER RIGHTS AND REMEDIES THAN THOSE OF OTHER STATES, PRECLUDING CLASS CERTIFICATION IN THIS CASE.

### A.    The settlement proponents, as class certification proponents, bear the burden of showing that state law variations do not bar certification.

The settlement proponents, as class certification proponents, bear the burden of establishing, through an extensive analysis, that state law variations do not bar certification, which necessarily entails an examination of each of the applicable state laws (in this case, the laws of all 50 states):

---

purposes served by the applicable statute or rule of law of each of the affected jurisdictions to determine whether there is a 'true conflict.' If such a conflict is found to exist, the court analyzes the jurisdictions' respective interests to determine which jurisdiction's interests would be more severely impaired if that jurisdiction's law were not applied in the particular context presented by the case." <u>Kearney v. Smith Barney, Inc.</u>, 39 Cal.4th 95, 100 (Cal. 2006) (citations omitted).

[6] Parenthetically, the result would be the same under Massachusetts' choice-of-law rules. *See, e.g.*, <u>In re Pharmaceutical Industry Average Wholesale Price Litig.</u>, 230 F.R.D. 61, 83 (D. Mass. 2005) (concluding that the laws of the home states of the class members would apply even though the defendants made the alleged misrepresentations in the states of their principal place of business, because the significant contacts are the place where the misrepresentations were received, the place of action in reliance, and the place of the plaintiffs' domicile, and because the state consumer protection statutes are designed to protect consumers rather than to regulate corporate conduct).

- "Appellees see the 'which law' matter as academic. They say no variations in state warranty laws relevant to this case exist. A court cannot accept such an assertion 'on faith.' Appellees, as class action proponents, must show that it is accurate. ... A considered predomination determination by the District Court ... must be made. As the Third Circuit observed in [In re School Asbestos Litigation, 789 F.2d 996 (3rd Cir. 1986)] to establish commonality of the applicable law, nationwide class action movants must creditably demonstrate, through an 'extensive analysis' of state law variances, 'that class certification does not present insuperable obstacles.' As appellees themselves at one point accurately observed: 'The issue can only be resolved by first specifically identifying the applicable state law variations and then determining whether such variations can be effectively managed through creation of a small number of subclasses grouping the states that have similar legal doctrines.'" Walsh v. Ford Motor Co., 807 F.2d 1000, 1017 (D.C. Cir. 1986).

- "'Plaintiffs bore the burden of providing an 'extensive analysis' of state law variations to determine whether there are 'insuperable obstacles' to class certification.' [Quoting In re Ford Motor Co. Ignition Switch Products Liab. Litig., 174 F.R.D. 332 (D. N.J. 1997) and citing Walsh.] Attempts at such 'extensive analysis' often include model jury instructions and verdicts forms, as well as an attempt to group state laws by their relevant differences. Plaintiffs made no such showing here, despite being challenged in defendants' answering brief to do so, except to say that they would be prepared to do so should the Court rule against them on this point, .... an assertion that was too little, too late." In re Rezulin Prods. Liab. Litig., 210 F.R.D. 61, 71 (S.D. N.Y. 2002).

- "Put another way, the court cannot accept 'on faith' an assertion that variations in state laws relevant to the case do not exist or are insignificant: rather, the party seeking certification must affirmatively demonstrate the accuracy of the assertion. [Citing Castano, 84 F.3d at 741-742; Walsh, 807 F.2d at 1016.] Moreover, it is insufficient to merely refer the district court to densely worded articles, graphs, and charts pertaining to each state's laws." Washington Mutual Bank, F.A. v. Superior Court, 24 Cal.4th 906, 924-25 (Cal. 2001).

- "Where there are state law variances, a plaintiff seeking class certification bears the burden of demonstrating how subclasses can be formed to alleviate the variation-of-law problem. [Citing Walsh, 807 F.2d at 1016-1017 and Ford Motor, 174 F.R.D. at 350.] This is not a 'factual' issue -- as real parties assert -- but one requiring plaintiffs to create a viable plan for subclassing the various states' conflicting laws that would effectively prevent individual issues from predominating." Canon U.S.A., Inc. v. Superior Court, 68 Cal.App.4th 1, 8 (Cal. App. 1998).

This Court must consider whether the variations of the state laws of the 50 states bar

certification:

6

- "In a multi-state class action, variations in state law may swamp any common issues and defeat predominance. Accordingly, a district court must consider how variations in state law affect predominance and superiority." <u>Castano v. The American Tobacco Co.</u>, 84 F.3d 734, 741 (5th Cir. 1996) (citations omitted).

- "[E]ven if it is true that the laws of the various states governing fraud are substantively similar, that will still require the court to examine the laws of each state to reach that determination." <u>Commander Properties Corp. v. Beech Aircraft Corp.</u>, 164 F.R.D. 529, 541 (D. Kan. 1995).

<i>See</i> <u>Waste Management Holdings, Inc. v. Mowbray</u>, 208 F.3d 288, 295, 298 (1st Cir. 2000) (citing <u>Castano</u> approvingly for the proposition that "'a court must understand the claims, defenses, relevant facts, and applicable substantive law in order to make a meaningful determination of the certification issues'"; "a district court must formulate some prediction as to how specific issues will play out in order to determine whether common or individual issues predominate in a given case").

**B.    The consumer protection laws of the 50 states vary.**

Suffice to say, the settlement proponents have not met their burden of establishing that variations of the states' consumer protection laws do not bar certification.

Consumer protection laws vary among the states, as repeatedly recognized by the courts. <i>See, e.g.,</i> <u>In re Bridgestone / Firestone, Inc.</u>, 288 F.3d 1012, 1018 (7th Cir. 2002) ("[s]tate consumer-protection laws vary considerably, and courts must respect these differences rather than apply one state's law to sales in other states with different rules"); <u>Block v. Abbott Laboratories</u>, 2002 U.S.Dist.LEXIS 5453, *15 (N.D. Ill. 2002) ("across the country, states have enacted consumer protection statutes which vary on a wide range of important issues, including subtleties in standards of proof, procedure, and remedies"); <u>Lilly v. Ford Motor Co.</u>, 2002 U.S. Dist. LEXIS 5698 (N.D. Ill. 2002); <u>Lyon v. Caterpillar, Inc.</u>,

194 F.R.D. 206. 219-20 (E.D. Pa. 2000); <u>Tylka v. Gerber Products Co.</u>, 178 F.R.D. 493

(N.D. Ill. 1998); <u>In re Stucco Litig.</u>, 175 F.R.D. 210. 216-17 (E.D. N.C. 1997).[7]

Although many of these cases couch the issue as one of trial manageability. variation

of state laws impact the other requirements for class certification. including adequacy and

predominance:

> "The Court's analysis of the choice of law issue and its implications for the pending
> motion is confirmed by the Seventh Circuit's recent decision in <u>Matter of
> Bridgestone/ Firestone, Inc.</u> . . . [The Seventh Circuit] held that. under the forum
> state's choice of law rules. the laws of the various states in which the class members
> resided would govern. Most states. it concluded. do not permit recovery for the sort
> of financial injury of which plaintiffs complained – the enhanced risk of product
> failure – when `tort law fully compensates those who are physically injured.` In any
> case. it observed. `state consumer-protection laws vary considerably. and courts must
> respect these differences rather than apply one state's law to sales in other states with
> different rules.` *And it held that `because these claims must be adjudicated under the
> law of so many jurisdictions, a single nationwide class is not manageable.` This of
> course is another way of saying that the individual issues arising by virtue of the
> multiplicity of varying state laws predominated over the common issues. So too
> here.*"

<u>Rezulin</u>. 210 F.R.D. at 71 (emphasis added. footnotes omitted).

### C.    California's consumer protection laws afford greater rights and remedies than those of other states.

"In fact California's consumer protection laws are *among the strongest in the

country.*" <u>Wershba v. Apple Computer, Inc.</u>. 91 Cal.App.4th 224, 242-43 (Cal. App. 2001)

(noting. among other things. the remedy of disgorgement of profits under the UCL and the

remedy of punitive damages under the CLRA) (emphasis added); *see* <u>America Online, Inc.</u>

---

[7] *See also* <u>Knudsen v. Liberty Mutual Ins. Co.</u>, 435 F.3d 755, 756 (7th Cir. 2006) (suggesting that the state court erred in granting class certification of a nationwide class by disregarding any differences in insurance and workers' compensation laws across the 50 states and ignoring decisions by both the Supreme Court of Illinois and the Seventh Circuit "describing the grave problems with class actions for damages under multiple states' laws") (citing <u>Avery v. State Farm Mutual Automobile Insurance Co.</u>. 216 Ill. 2d 100. 835 N.E.2d 801. 296 Ill. Dec. 448 (2005). and <u>Bridgestone/Firestone</u>).

v. Superior Court, 90 Cal.App.4th 1, 11, 14-15 (Cal. App. 2001) (referring to the CLRA's

remedies for statutory damages, restitution, injunctive relief, punitive damages, and

attorneys' fees as *"strong"* and *"extraordinary remedies"*: explaining that "the CRLA is a

legislative embodiment of a desire to protect California consumers and furthers a strong

public policy of this state"; and noting that "the cumulative importance of even [the more

nuanced and] less significant differences" between the non-remedial aspects of the California

and Virginia consumer protection statutes are "substantial") (emphasis added);

Clothesrigger, Inc. v. GTE Corp., 191 Cal.App.3d 605, 616 (Cal. App. 1987) (reasoning that

the trial court abused its discretion by denying the plaintiff's motion to certify a nationwide

class action because it failed to apply California choice of law rules, under which California

law might be applied to nonresidents because *"California's more favorable laws* may

properly apply to benefit nonresident plaintiffs when their home states have no identifiable

interest in denying such persons full recovery") (emphasis added).

     Unlike the law of many other states, California's consumer protection laws include

the remedies of: (1) punitive damages: (2) restitutionary disgorgement of profits; (3) fluid

recovery; (4) attorneys' fees; (5) corrective advertising; (6) a class action;[8] and (6) a jury

trial.

     Plaintiff will not repeat here the discussion regarding these superior rights and

remedies, other than to emphasize that the fluid recovery method in this case violates

---

[8] *See* Discover Bank v. Superior Court, 36 Cal.4th 148, 157 and 174 (Cal. 2005) (affirming
the "important role of class action remedies in California law" and referring to the statutory
right to bring a CLRA claim as a class action as "the CLRA class action remedy" which
furthers a "'strong public policy of this state'"): Klussman v. Cross Country Bank, 134
Cal.App.4th 1283, 1296 (Cal. App. 2005) ("[t]he right to seek classwide redress is more than
a mere procedural device in California"): Aral v. Earthlink, Inc., 134 Cal.App.4th 544, 564
(Cal. App. 2005) (emphasizing the importance of "the right to pursue a class action
remedy").

California law. The California Supreme Court explains, in a case involving a class action settlement:

> "*The propriety of fluid recovery in a particular case depends upon its usefulness in fulfilling the purposes of the underlying cause of action.* Fluid recovery may be essential to ensure that the policies of disgorgement or deterrence are realized. Without fluid recovery, defendants may be permitted to retain ill gotten gains simply because their conduct harmed large numbers of people in small amounts instead of small numbers of people in large amounts. . . . In order to assess the propriety of the fluid recovery method selected by the trial court in the present case, it is necessary to review briefly the available alternatives. The principal methods include a rollback of the defendant's prices, escheat to a governmental body for either specified or general purposes, establishment of a consumer trust fund, and claimant fund sharing. *All of these methods promote the policies of disgorgement and deterrence by ensuring that the residue of the recovery does not revert to the wrongdoer.* . . . In determining which method to employ, the courts should consider: (1) the amount of compensation provided to class members, including nonclaiming (or 'silent') members; (2) the proportion of class members sharing in the recovery; (3) *the extent to which benefits will 'spill over' to nonclass members and the degree to which the spillover benefits will effectuate the purposes of the underlying substantive law;* and (4) the costs of administration." (Emphasis added.)

A fluid recovery provision that allows the defendant to profit, as in this case, violates California's law regarding fluid recovery by violating the underlying principles of the consumer protection statutes – disgorgement and deterrence. *Cf.* In re Microsoft I-V Cases, 135 Cal.App.4th 706, 729 (Cal. App. 2006) (affirming approval of settlement where the fluid recovery "shows significant usefulness in effectuating the deterrent and disgorgement purposes of the cause of action" and "would not 'inappropriately benefit Microsoft or extend its market power'" because the vouchers could be used for competitors products and the amount of the voucher "still effectively surrenders any profit it might otherwise have realized from that purchase when it redeems that voucher"); In re Vitamin Cases, 107 Cal.App.4th 820, 824 (Cal. App. 2003) (approving class action settlement where the fluid recovery provision provided that "$ 38 million was to be distributed to charitable, governmental and

nonprofit organizations that promote the health and nutrition of consumer class members or

that otherwise further the purposes underlying the lawsuit").[9]

## III.    BECAUSE CALIFORNIA'S CONSUMER PROTECTION LAWS AFFORD GREATER RIGHTS AND REMEDIES THAN THOSE OF OTHER STATES, A SETTLEMENT ALLOCATION THAT TREATS CALIFORNIA CLASS MEMBERS EQUALLY IS NOT FAIR, REASONABLE, OR ADEQUATE.

### A.    To determine whether a settlement is fair, reasonable, and adequate, the Court must compare the value of the settlement to the value of the class members' respective claims.

To determine whether a settlement is fair, reasonable, and adequate, the Court must

compare the value of the settlement to the value of the class members' respective claims.

See, e.g., Synfuel Technologies, Inc. v. DHL Express (USA), Inc., 463 F.3d 646, 653-54 (7th

Cir. 2006); Mirfasihi v. Fleet Mortgage Corp., 450 F.3d 745, 749 (7th Cir. 2006); Cotton v.

United States Pipe & Foundry Co. Coke By-Products Plaint, 559 F.2d 1326, 1330 (5th Cir.

1977) ("The relief sought in the complaint may be helpful to establish a benchmark by which

to compare the settlement terms").

The point of Mirfasihi is not, as Gillette argues, that it is fair to treat each class

member the same regardless of their different remedies so long as they have a "ticket." The

point of Mirfasihi is that the Court must evaluate the true value of each of the class members'

claims, including the value of statutory damages, to determine whether or not the settlement

amount is fair, reasonable, and adequate in light of that value. There, in approving the

---

[9] See also Cal. Civ. Proc. Code § 384 ("(a) It is the intent of the Legislature in enacting this section to ensure that the unpaid residuals in class action litigation are distributed, to the extent possible, in a manner designed either to further the purposes of the underlying causes of action, or to promote justice for all Californians. . . . (b) . . . The court shall ensure that the distribution of any unpaid residual derived from multistate or national cases brought under California law shall provide substantial or commensurate benefit to California consumers").

settlement. the district court improperly valued certain class members' claims at $0.00 by not accounting for the value of their remedy of ***statutory damages*** under state law. 450 F.3d 745. 749. <u>Mirfasihi</u> therefore undermines Gillette's argument that the value of a claim should not include remedies such as statutory damages or punitive damages.[10]

The additional point of <u>Mirfasihi</u> is that. when each of the claims in a nationwide class action are governed by the law of the class members' home states, the settlement must be evaluated in light of the value of each of the class members' claims under the law of the class members' home states, which necessarily requires the settlement proponents to inform the court of the remedies afforded under each of those states' laws.[11]

### B.   Consistently, a settlement allocation must respect the difference in the value of the class members' claims due to the greater rights and remedies afforded under California law.

Consistently, a settlement allocation must respect the difference in value of the class members' claims due to the varying strengths of their claims:

> "'A plan of allocation is evaluated by the same standards applied to the settlement as a whole: fairness. reasonableness, and adequacy. . . .' `A plan of allocation should be based on the nature and extent of class members' provable damages.' <u>In re Luxottica Group S.p.A. Secs. Litig.</u>. 233 F.R.D. 306. 316-17. 2006 U.S. Dist. LEXIS 6133. at *33 (E.D.N.Y. 2006). `. . . Of course. nothing requires a settlement to benefit all class members equally. Such a rule would itself result in an inequitable

---

[10]  A proper estimate of the value of the claims necessarily entails an estimate of the value of the different remedies afforded under each of the claims. *e.g.*. punitive and statutory damages. *See*, *e.g.*. <u>In re Warfarin Sodium Antitrust Litig.</u>, 391 F.3d 516, 530 (3rd Cir. 2003) ("any material variations [among the remedies of the states' laws. including punitive damages and statutory damages]. could be considered in the context of calculating damages as well as in assessing the fairness of the settlement").

[11]  <u>Id.</u> ("The likely reason for this truncated analysis [analysis of only four states' laws] was that the parties did not draw the district court's attention to a compiled fifty-state survey of consumer protection statutes. which was one in a large series of exhibits to the parties' joint motion for approval of the Second Settlement. Not surprisingly. the district court's opinion makes no mention of the reliability of this fifty-state survey, nor does it apply the survey to its claims evaluation").

> windfall to certain class members, to the detriment of others.' In re Global Crossing
> Sec. & ERISA Litig., 225 F.R.D. 436, 462-63, 2004 U.S. Dist. LEXIS 23946, at *89-
> 90 n.4 (S.D.N.Y. 2004). Although the Levitt Plaintiffs object to the allocation of the
> settlement, the plan will distribute the settlement proceeds to class members based on
> the varying strengths of their claims."

Levitt v. Bear Stearns & Co. (In re Sterling Foster & Co. Sec. Litig.), 2006 U.S.Dist.LEXIS

80861, *17-19 (E.D. N.Y. Oct. 31, 2006); see, e.g., Stoneridege Inv. Partners LLC v.

Charter Communs., Inc. (In re Charter Communs., Inc.), 2005 U.S.Dist.LEXIS 14772, *33

(E.D. Mo. June 30, 2005) ("it is appropriate for interclass allocations to be based upon,

among other things, the relative strengths and weaknesses of class members' individual

claims"); In re BankAmerica Corp. Sec. Litig., 210 F.R.D. 694, 712 (E.D. Mo. 2002) ("The

Court finds that to be fair, reasonable and adequate, any proposed allocation to the October

purchasers must reflect both the strength of their claims under California law -- which are not

subject to the PSLRA bounce-back provision--and the strength of their 10(b) and 10b-5

claims, which are subject to the bounce-back. Additionally, the plan of allocation should

reflect the strength of all of the October purchasers' claims as compared to the strength of all

of the claims of other plaintiffs"); In re Oracle Sec. Litig., 1994 U.S.Dist.LEXIS 21593, *3-

4 (N.D. Cal. June 16, 1994) ("It is also reasonable to allocate more of the settlement to class

members with stronger claims on the merits").

    The same rule applies when, as here, the value of class members' claims vary due to

differences among state law. This conclusion flows inexorably from the requirements of

Rule 23 for class certification and Rule 23 for approval of a settlement and from the dictates

of the United States Supreme Court, as this Court itself recognizes in In re Relafen Antitrust

Litig., 225 F.R.D. 14, 21-22 (D. Mass. 2004):

"*Nor is the Court convinced that the present settlement posture renders it wholly inappropriate to address the strength of class claims.*' Pls.' Supp. Mem. at 6. . . . [U]nder Eisen v. Carlisle & Jacquelin, [417 U.S. 156] (1974), the certification inquiry may not involve a 'preliminary hearing into the merits.' Id. at 177. But the suggestion that Eisen bars all consideration of disparities between class members' claims 'reads too much into too little.' *See* Waste Management Holdings, Inc. v. Mowbray, 208 F.3d 288. 298 (1st Cir. 2000). In fact, the Supreme Court's subsequent opinion in Ortiz v. Fibreboard Corp., [527 U.S. 815] (1999). noted that one of several factors *counseling against certification of the settlement class was the fact that certain claimants 'had more valuable claims* . . . [,] the consequence being a second instance of disparate interests.' Id. at 857. Thus, *as the Supreme Court recognized in Ortiz, absent at least some consideration of the 'value' of class members' claims -- which here varies according to differences in state law -- a certifying court cannot assure 'fair and adequate representation.'* Id. at 856 (quoting Amchem, [521 U.S. at 627]): *see* Carrington & Apanovitch. supra. at 471 ('The modification of rights from those that can be enforced at trial to those that will be measured by weak conjecture (at settlement) effects a transfer of wealth from class members with clearly meritorious claims to those whose claims are more dubious. . . . The wealth transfer is most apparent when the court-approved settlement treats diverse class members as if their claims were of equal worth.'). In addition to raising adequacy concerns. *differences in state law may undermine predominance, 'compounding' the questions that affect only individual members. Amchem.* [521 U.S. at 624]. . . . Humility does not. as the end payor plaintiffs suggest. require the Court to favor recovery. Rather, it requires the Court to apply state law ``as it exists.'' Wright, Miller & Cooper. supra. § 4507 (quoting Burris Chem., Inc. v. USX Corp.. 10 F.3d 243, 247 (4th Cir. 1993)). . . . Thus. in the more likely event that the fund is sufficient . . .. consumers would be treated 'all the same.' Ortiz. [527 U.S. at 857]. *As noted in Ortiz, this 'itself is an allocation decision with results almost certainly different from the results that those with (more valuable claims) would have chosen.'* Id.; *accord* Amchem ('The disparity between . . . categories of plaintiffs. and the diversity within each category are not made insignificant by the District Court's finding that petitioners' assets suffice to pay claims under the settlement. Although this is not a limited fund' case certified under Rule 23(b)(1)(B). the terms of the settlement reflect essential allocation decisions designed to confine compensation and to limit defendants' liability.''' (Certain citation omitted)).

*Cf.* Lucas v. Kmart Corp.. 2006 U.S.Dist.LEXIS 51439, *14. 29-30 (D. Colo. July 27. 2006) (approving settlement as fair, reasonable, and adequate where the allocation plan was based on the variations of class members' statutory damages); In re Relafen Antitrust Litig.. 231 F.R.D. 52. 76 (D. Mass. 2005) ("In response to this Court's concerns about a nationwide settlement class. class counsel established the Allocation Committee and approached

independent counsel for each group of states. This Committee 'engaged in intense

negotiation for approximately two weeks.' before making its initial recommendations. and

reconvened following the October 5. 2004 hearing").

Thus, a settlement that treats the claims of California consumers the same as the

claims of consumers of other states is not fair. reasonable. or adequate. In other words, it

would not be fair, reasonable, or adequate to sell (release) the tickets (claims) of California

consumers for the same price as the tickets of consumers from other states. The tickets of

California consumers are worth more.

Viewed from the opposite side of the same coin. a failure to treat claims of California

consumers differently from those of class members from other states effectively abandons

California consumers' superior remedies in violation of the adequacy of representation

requirement. *See. e.g.*, Relafen. 225 F.R.D. at 27-28 (holding that treating claims with

statutory damages under state law equally with claims without such statutory damages

effectively waives the right to statutory damages; recognizing that the right to opt-out is not

a meaningful right for class members who have small claims not viable absent a class

action); In re Relafen Antitrust Litig.. 221 F.R.D. 260. 280 and 286 (D. Mass. 2004)

("'Indeed, named plaintiffs who would intentionally waive or abandon potential claims of

absentee plaintiffs have interests antagonistic to those of the class'"); Clement v. American

Honda Fin. Corp.. 176 F.R.D. 15, 23-24 (D. Conn. 1997) (denying certification where, as a

condition of class treatment. members were forced to forego their claims for unfair trade

practices and statutory damages); *see also* Janik v. Rudy, Exelrod & Zieff. 199 Cal.App.4th

930 (Cal. App. 2004) (holding that plaintiff stated a claim against class counsel for legal

malpractice for omitting a consumer statute claim).

C.    **The cases relied upon by the settlement proponents are readily distinguishable.**

The cases relied upon by the settlement proponents are readily distinguishable.

In the settlement proponents' polestar case, <u>In re Mexico Money Transfer Litig. (Western Union and Orlandi Valuta)</u>, 164 F.Supp.2d 1002 (N.D. Ill. 2000), the court carefully considered the argument that the claims of California class members entitled them to a greater allocation. The court did *not* dismiss this argument because all class members had a "ticket" and therefore could all be treated equally, which is the flawed legal construct urged by the settlement proponents in this case. Instead, the court dismissed the argument because, after careful consideration of the rights and remedies under California law, the court believed that the California claims in that case did not justify a greater allocation because the claims were based on California law that did not apply (such as the California Financial Code), were weak on the merits (such as the absence of a material misrepresentation or a duty to disclose to support the CLRA claim), or did not provide for greater remedies in contrast to the RICO claim shared by all class members. <u>Id.</u> at 1022-1027.

Moreover, the United States Court of Appeal for the Seventh Circuit, in affirming, emphasized that: (1) the class representatives "relied principally on federal substantive law," *i.e.*, RICO; (2) the state law theories were "marginal theories;" (3) the claims based on the California Financial Code did not give the California consumers any advantage over RICO: (4) all the claims "had only nuisance value"; and (5) the state law consumer fraud claims were not supported by any duty to disclose because in that case there was no misrepresentation and because "[n]o state or federal law requires either currency exchanges or wire-transfer firms to disclose the interbank rate at which they buy specie, as opposed to

16

the retail rate at which they sell currency (and the retail price is invariably disclosed)." In re Mexico Money Transfer Litig., 267 F.3d 743, 747-79 (7th Cir. 2001).[12]

In short, Mexico Money Transfer does not stand, as the settlement proponents suggest, for the proposition that, as a matter of law, California law does not provide consumers with greater rights and remedies or that differences in state law never warrant denial of a nationwide class action settlement.

Here, in contrast to Mexico Money Transfer, no violation of federal law has been alleged, and the class representatives relied principally on state consumer protection statutes. See, e.g., Rezulin, 210 F.R.D. at 69 ("Finally, the proposed class doubtless includes members from all fifty states, and plaintiffs' claims overwhelmingly arise under state rather than federal law. This dictates that the claims of individual class members be decided under state law. And this only compounds the problems noted already").[13]

---

[12] In re Western Union Money Transfer Litig., 2004 U.S.Dist.LEXIS 29377 (E.D. N.Y. 2004) is to the same effect, and, instead of addressing the issue of variations among state law, relied upon Mexico Money Transfer.

[13] For example, Co-Lead Counsel, Robert Rothman, in his *Dearman/DeBiseglia* complaint, along with Liaison Counsel, Thomas Shapiro, alleged a class composed of two subclasses (a Florida sub-class and a New York sub-class), and alleged only two causes of action for each sub-class, one for violation of the consumer protections statutes for Florida and New York respectively, and the second for unjust enrichment. (Complaint in *Dearman v. The Gillette Company*, Case No. 05-11177DPW in this Court.) Co-Lead Counsel, Ben Barnow, in his *Besinger* complaint, alleged a national class, and alleged only two causes of action, one for violation of consumer protection statutes and a second for unjust enrichment. (Complaint in *Besinger and Zavala v. The Gillette Company*, Case No. 06CH10474 in the Circuit Court of Cook County, Illinois County Department, Chancery Division.) Liaison Counsel, in his *Tuñon/Kline* complaint, alleged a class composed of two subclasses (a Georgia sub-class and a Massachusetts sub-class), and alleged only a single cause of action for unjust enrichment. (Complaint in *Tuñon and Kline v. The Gillette Company*, Case No. 05-11208DPW in this Court.) And, putative class representative Collin McGeary alleged a national class and only a single cause of action for unjust enrichment. (Complaint in *McGeary v. The Gillette Company*, Case No. 05-11319DPW in this Court.)

17

Furthermore, the state law claims have real and substantial value (in fact, Judge Hall found in ruling on Schick's motion for a preliminary injunction that Gillette's representations were deceptive and literally false), and California's consumer protection statutes provide in this case greater remedies than the consumer protections statutes of other states.

In In re Lupron® Marketing and Sales Practices Litig., 228 F.R.D. 75 (D. Mass. 2005), like Mexico Money Transfer, the civil RICO statute was "the mainstay of the Consolidated Amended Complaint." 228 F.R.D. at 88. Moreover, the objectors in that case did not present the court with the substantial variations among states' laws but instead appear to have made the argument as a throw-away, "finally not[ing] some differences" in the state consumer protection laws. Consistent with the lack of development of the objector's argument, the court relegated its entire discussion of the issue to a mere footnote (n. 33).

In Warfarin, 391 F.3d 516, like Mexico Money Transfer and Lupron, the case centered on violations of federal law affording treble damages, in that case violations of the Sherman Act and the Clayton Act resulting in overpayment for a prescription drug.

Moreover, Warfarin, when carefully read, actually supports Plaintiff's position. The Court of Appeal, reviewing the order granting class certification under an abuse of discretion standard, and limiting its holding to the facts of the case, expressly recognized that, in some cases, certification of a national class action violates Rule 23 because of the differences among the states' laws, and further recognized that, in other factual situations, state law variations may impact Rule 23 requirements other than simply trial manageability:

> "Nonetheless, *we recognize that problems beyond those of just manageability may exist when a district court is asked to certify a single nationwide class action suit, even for settlement purposes, when claims arise under the substantive laws of the fifty states. Although there may be situations where variations in state laws are so*

18

> *significant so as to defeat commonality and predominance even in a settlement*
> *class certification, this is not such a case.*" Id. at 529-30.[14]

In Warfarin, the Court of Appeal was careful to note that variations in rights and remedies

may be sufficiently reconciled by the fact that "*any material variations could be considered*

*in the context of calculating damages as well as in assessing the fairness of the*

*settlement.*" Id. at 530 (emphasis added).[15]

In re Lorazepam & Clorazepate Antitrust Litig., 205 F.R.D. 369 (D. D.C. 2002), like

Warfarin, was centered on violations of federal antitrust law, and, additionally, was

supported by the FTC and the attorney general's offices of all 50 states. Id. at 372. And,

while the court in Lorazepam noted that it was not considering treble damages allowed under

state law to determine whether the settlement amount was fair, it did so relying on a case

---

[14]  Notably, the district court in the underlying case of In re Warfarin Sodium Antitrust Litig., 212 F.R.D. 231 (D. Del. 2002), in order to avoid the issues arising from variations of state law, applied the Delaware consumer protection act to all of the class members without engaging in the requisite choice-of-law analysis demanded by Phillips Petroleum. Id. at 248-49 and n. 15 and 16 and 251-52.

[15]  While In re Pharmaceutical Industry Average Wholesale Price Litig., 230 F.R.D. 61 (D. Mass. 2005). ("AWP"), in passing, cited Warfarin for the proposition that variations in state law are irrelevant to certification of a settlement class due to the absence of the manageability requirement, AWP did not involve a settlement (much less a settlement allocation that treated all claims the same despite the disparate remedies afforded the class members) making this statement *dicta*. and, the plaintiffs supported separate grouping of states with similar laws for trial. Id. at 83-84.  Additionally, AWP recognized that, in addition to issues of trial manageability, "`in a multistate class action, variations in state law may swamp any common issues and defeat predominance,'" and AWP cited Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 624 (1997) for the proposition that "`differences in state law . . . compound . . . the disparate questions undermining class cohesion in this case.'"  Id. at 82 (ellipses in original).  AWP limited its holding that predominance existed to the facts of that case because "in the context of the claims of consumer-patients under Medicare B, these variations in legal standards are unlikely to be material," because the court excluded consumers whose consumer protection statutes do not allow a private cause of action or a class action, the plaintiffs were not alleging that the defendants representation was negligent, and variations relating to the reliance element would not matter because of the facts of that case.  Id. at 84-85.

stating that this is the rule "in an antitrust settlement" (and, in any event, the court considered treble damages "far from certain." Id. at 377.

In re Prudential Ins. Co. of America, 148 F.3d 283, 315 (3rd Cir. 1998), like Mexico Money Transfer , Lupron, Warfarin, and Lorazepam, involved violations of federal law, in addition to violations of state law, in that case, violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934. Additionally, all of the insurance regulators from the fifty states and the District of Columbia endorsed the settlement (id. at 317), and before the fairness hearing, the defendant reached an agreement with the state objectors, including California, whereby enhancements were made to the settlement and additional fines and penalties were paid to California. Id. at 298. Also, the Court of Appeal emphasized that the objector "failed to demonstrate that the differences in applicable state law were sufficient" to preclude predominance, the discussion regarding variations of state law was limited to differences among the elements (as opposed to the remedies) of the "'common law'" claims, and the district court concluded that "any differences fall into a limited number of predictable patterns." Id. at 315. Finally, the settlement contained "additional remediation amounts" which were the functional equivalent of punitive damages. Id. at 289, 317.[16]

---

[16] Like Prudential, Varacallo v. Massachusetts Mutual Life Ins. Co., 226 F.R.D. 207 (D. N.J. 2005), Bussie v. Allmerica Financial Corp., 50 F.Supp.2d 59 (D. Mass. 1999), and Duhaime v. John Hancock Mutual Life Ins. Co., 177 F.R.D. 54 (D. Mass. 1997). In re Metropolitan Life Ins. Co. Sales Practices Litig., 1999 U.S.Dist.LEXIS 22688 (W.D. Pa. 1999), Manners v. American General Life Ins. Co., 1999 U.S.Dist.LEXIS 22880 (M.D. Tenn. 1999), and Elkins v. Equitable Life Ins. Co., 1998 U.S.Dist.LEXIS 1557 (M.D. Fla. 1998), are all insurance sales practices cases, where, except in Elkins, the plaintiffs alleged claims for violations of federal law – RICO, TILA, or federal securities laws.

Notably, *none* of these cases appear to have involved violations of state consumer protection statutes, but instead only state common law. Moreover, in Varacallo, the court did not receive any objections regarding predominance and therefore did not engage in an analysis of state law variations but instead relied on Warfarin and Prudential. 226 F.R.D. at 232 n. 17. Also, in Bussie and Duhaime, the ADR claims process was designed so that "each

In conclusion, in this case, inclusion of California class members in the proposed settlement class and the proposed settlement violates the requirements of Rule 23 and the Due Process Clause.

Dated: December 8, 2006               Respectfully submitted,

By:    /s/ G. James Strenio
        Taras P. Kick
        G. James Strenio
        THE KICK LAW FIRM, APC
        900 Wilshire Blvd., Suite 230
        Los Angeles, California 90017
        (213) 624-1588
        taras@kicklawfirm.com
        james@kicklawfirm.com
        Counsel for Plaintiff
        CARLOS CORRALES

---

claim is adjudicated on its objective merits and awarded relief that not only reflects the nature and strength of the claim but also is untethered to the volume, nature, and relative strength of the other claims that have been adjudicated." 50 F.Supp.2d at 74; *see* 177 F.R.D. at 70. And, in Duhaime, an objection made by the California Insurance Commissioner was withdrawn after the settlement was amended to meet the objection. 177 F.R.D. at 70-71.

In Elkins, the court concluded that all class members' claims would likely be governed by the law of Iowa. 1998 U.S.Dist.LEXIS 1557, * 51-54. Likewise, in O'Keefe v. Mercedes-Benz USA, LLC, 214 F.R.D. 266 (E.D. Pa. 2003), the court concluded that "[w]e have little doubt that [under Pennsylvania's choice of law] New Jersey law wold govern the claims brought by all members of plaintiff's class" (id. at 274), and limited its analysis of variations of state law to the issue of trial manageability (id. at 291). And, In re St. Jude Medical, Inc., Silzone Heart Valves Prods. Liab. Litig., 2006 U.S.Dist.LEXIS 74797, *7-21 (D. Minn. 2006), the plaintiffs provided a "detailed analysis of consumer protection statutes, and the court, ignoring Van Dusen, applied Minnesota choice-of-law rules to determine that Minnesota law applied to all the claims.

The additional cases relied upon by the settlement proponents are inapposite. Perez-Funez v. INS, 611 F.Supp. 990 (C.D. Cal. 1984) was an immigration law case, involving claims for violations of due process; variations in state law were not involved. And, Steinberg v. Nationwide Mutual Ins. Co., 224 F.R.D. 67, 76 (E.D. N.Y. 2004) involved only a breach of contract claim, and the court distinguished Bridgestone / Firestone on that basis.