```
 1                    UNITED STATES DISTRICT COURT
                       DISTRICT OF MASSACHUSETTS
 2

 3

 4                                          )
                                            )
 5   IN RE: M3 POWER RAZOR SYSTEM           )
     MARKETING & SALES PRACTICES            )
 6   LITIGATION                             )  No. 1:05-cv-11177-DPW
                                            )
 7                                          )
                                            )
 8                                          )

 9

10   BEFORE:   THE HONORABLE DOUGLAS P. WOODLOCK

11

12                        STATUS CONFERENCE

13

14

15        John Joseph Moakley United States Courthouse
                         Courtroom No. 1
16                     One Courthouse Way
                        Boston, MA 02210
17                    Monday, April 28, 2008
                           2:30 p.m.
18

19


20
                  Brenda K. Hancock, RMR, CRR
21                   Official Court Reporter
          John Joseph Moakley United States Courthouse
22                     One Courthouse Way
                        Boston, MA 02210
23                       (617)439-3214
          Mechanical Steno - Transcript by Computer
24

25
```

```
 1      APPEARANCES:

 2
           BARNOW AND ASSOCIATES
 3         By Ben Barnow, Esq.
           One North LaSalle Street
 4         Suite 4600
           Chicago, IL 60602
 5         On behalf of the Plaintiffs Dearman, Besinger, Zavala,

 6         COUGHLIN, STOIA, GELLER, RUDMAN & ROBBINS, LLP
           By: Mark S. Reich, Esq.
 7         58 South Service Road, Suite 200
           Melville, NY 11747
 8         On behalf of Plaintiff Dearman, Debesiglia, Kline, Tunon
           Windom,
 9
           THE KICK LAW FIRM, APC
10         By:  G. James Strenio, Esq.
           900 Wilshire Boulevard, Suite 230
11         Los Angeles, CA 90017
           On behalf of the Plaintiff Corrales
12
           ALAN L. KOVACS, ESQ.
13         2001 Beacon Street, Suite 106
           Boston, MA 02135
14         On behalf of the Plaintiffs Johnson, Hirsch, Friedman

15         HARKE & CLASBY, LLP
           By: Lance A. Harke, P.A.
16         155 South Miami Avenue, Suite 600
           Miami, Florida 33130
17         On behalf of the Plaintiff McGeary

18         SHAPIRO HABER & URMY LLP
           By: Adam M. Stewart, Esq.
19         53 State Street
           Boston, MA 02109
20         On behalf of Plaintiffs Marr, Tunon, Kline, Besinger,
           Debiseglia, Elie
21
           ROPES & GRAY
22         By: Harvey J. Wolkoff, Esq.
               Mark P. Szpak, Esq.
23         One International Place
           Boston, MA 02110-2624
24         On behalf of the defendant The Gillette Company

25
```

P R O C E E D I N G S:

THE CLERK: All rise. This Honorable Court is now in session. You may be seated. Calling the case 05-11177, *In re: M3 Power Razor Systems Marketing and Sales Practices Litigation.*

THE COURT: Well, I called you in, as I think alerted you by the notice, because this is an opinion that won't write itself for me, and I think it is the ghost of *Amchem* that is haunting me, but the short of it is, and I think the First Circuit's opinion in the Canadian motor vehicle case illustrates it, that, particularly, the appellate courts are quite formal and rigorous in their analysis of cases in which there is a disparity, potential disparity among the applicable law.

Let me start with what I think is where I want to go, but I offer you the opportunity, obviously, to reform this. My sense of the choice-of-law that's disputed is that this Court, applying Massachusetts law choice-of-law would look to the law of the several jurisdictions that are culled out here as being subject to the class resolution.

I did some fairly close analysis of Massachusetts and California, because the one stated objection focused on that. I'm not of the view that there are material differences between the law of Massachusetts and the law of California sufficient

1    to give pause about equitable treatment of the several members
2    of the class, but I'm simply not in a position to say with
3    respect to the remaining jurisdictions, which would be 49, 48
4    other states and -- well, actually, more than 49, I guess it
5    would be 51, 48 states and two provinces and one Federal cause
6    of action in Canada, and, so, I think that what I want to do is
7    put the onus back on the proponents of the class settlement to
8    put together almost in the form of an Excel spreadsheet and
9    with a memorandum of the applicable law, focusing on points of
10   difference and similarity among the several jurisdictions that
11   are involved here.
12           Now, I'll step back a bit.  From my perspective, this
13   settlement makes eminent good sense, but eminent good sense is
14   not the standard, something much more theological seems to be
15   involved in the decisions of the appellate courts, and it seems
16   to me that I have to have satisfied myself even or, perhaps,
17   especially in a settlement-class circumstance, that there is no
18   substantial difference in the law involved, or if there are
19   differences, that it is not an unfairness to some member of the
20   class who is, say, a resident of Kansas for whom Kansas law
21   would be applicable.
22           Now, one of the things that has provided me with some
23   degree of interest and evaluation is an ongoing project of the
24   American Law Institute, called the *Principles of the Law of*
25   *Aggregate Litigation,* which is going to be presented to the ALI

1   at the meeting next month in now its tentative draft form.
2   There have been discussion drafts that have been circulated.
3   The tentative draft, which I think just became available last
4   week, is dated April 7th.  I assume it's available from the
5   ALI, even for nonmembers of the ALI, but there are two
6   particular sections that I draw your attention to, because
7   they're shaping my view.
8          The first is Section 306, which deals with the
9   approval of a settlement class, and here the reporters, I think
10  candidly, state that they are departing from and think it's
11  appropriate to depart from Federal Law.  They may be able to, I
12  can't, but in any event, that's a place that talks a bit about
13  what the criteria should be as opposed to what they are.  Well,
14  it talks about what they are in the federal courts as well.
15         More pertinent, however, is Section 205, more
16  pertinent to my particular concern, Section 205, which deals
17  with choice-of-law, and here the advisors suggest, and I think
18  this is consistent with the trend, if not the atmospherics of
19  appellate court decisions, that a court may authorize aggregate
20  treatment of multiple claims when the Court determines, and
21  then it has three potential circumstances, one, that a single
22  body of law applies to all the claims and issues.  That's not
23  true here, or maybe someone will argue with me that it is, but
24  I don't think it is.  The second is that different claims or
25  issues are subject to different bodies of law that are the same

```
 1   in functional content, and that's the issue that I want to have
 2   teed up and presented to me.  An alternative way of looking at
 3   it is that different claims or issues are subject to different
 4   bodies of law that are not the same in functional content but
 5   do present a limited number of patterns that would make it
 6   manageable for trial.
 7            Now, on this third one, this, I think, is a way of
 8   trying to deal with the recognition in Amchem that all of the
 9   standards for settlement class are the same as the standards
10   generally for class certification, with the exception of
11   manageability for trial.  I'm not sure that that's applicable,
12   but I'm seeking some assistance on this.
13            The real focus for me is Subsection B2 of Section 205,
14   which is that different claims and issues are subject to
15   different bodies of law that are the same in functional
16   content.  The alternative, of course, is sub-classes.  That, it
17   seems to me, creates a Rube Goldberg machine for the resolution
18   of this case, but if that's the case, then I'm going to look at
19   it.
20            Now, what I think I would like to have, as I said, is
21   a chart-like, call it an Excel spreadsheet if you want, outline
22   of the law that is applicable in the several jurisdictions,
23   showing differences on questions of reliance, on whether or not
24   actual injury has to be shown, availability of punitive
25   damages, any of the issues that you tease out of the law, but,
```

1   you know, you'd have to just have fallen off the turnip truck
2   not to understand that Gillette wants to get the fullest
3   possible universal resolution of this to raise the potential
4   for *res judicata* in every possible jurisdiction.
5       Nevertheless, I'm presented with representative plans
6   that do not represent every possible jurisdiction.  Here, in
7   particular, there is not someone from Canada, and, so, I
8   believe that it is necessary for me, initially, and as part of
9   the notice to the members of the class to have available a
10  document that members of the class can consult to make their
11  own decision about whether or not they are being fairly
12  treated.  The argument, of course, was made, with respect to
13  California plaintiffs, that they have a much more generous
14  consumer protection regime.  I don't believe that to be the
15  case as between California and Massachusetts in substance, but,
16  nevertheless, there may well be jurisdictions, and while I
17  started to undertake this, it seems to me that this is the
18  responsibility of the proponents of the settlement to satisfy
19  initially me, for purposes of preliminary approval, and then
20  members of the class for purposes of ensuring that they have
21  full and fair disclosure of what's involved regarding what the
22  potential disparities would be.
23      So, that's the outline of what's on my mind.  Now,
24  obviously, I'm interested in what the parties have to say about
25  this and also trying to get a schedule in place so that we can

1  undertake this.  As I said, I'll start with the kind of gut
2  response, which is that this is an eminently reasonable,
3  sensible resolution of the case, but that's not the standard,
4  as far as I can see.
5           MR. WOLKOFF:  Yes, your Honor.  Harvey Wolkoff,
6  representing Gillette.  Obviously, your Honor, we've read the
7  motor vehicles case as well, and we certainly, without
8  question, I think it's true of all of the parties here, all of
9  the proponents and all of the parties, that we want to do
10 things correctly and we want to do things certainly in
11 conformity with Federal Law.
12          With regard to the questions that your Honor has
13 raised, of course the *Mexico Money Transfer* case in the Seventh
14 Circuit, it makes the point that if there are to be differences
15 in the law that need to be pointed out, that it is up to
16 objectors to come in and point them out.  So, for example, with
17 regard to Canada, your Honor quite correctly points out that we
18 have two provinces, and we have a federal or national claim
19 under Canadian law, but we also have a Canadian counsel, and
20 the Canadian counsel has signed off on this settlement.
21          THE COURT:  Let me just pause.  I mean, I recognize
22 the force and also the reference to the idea that there should
23 be objectors.  If there aren't objectors, then there are two
24 ways of looking at it, one there's nothing to object to, the
25 other is this is a tree falling in the forest without an

1  objector around, and why I say I'm haunted by *Amchem* is that
2  *Amchem* can be read as requiring more vigilance on the part of
3  the court rather than less because of the danger, which I don't
4  see or no one has brought to my attention here, of some form of
5  collusion and, so, the mere fact of lack of objection I've come
6  to believe is not enough for me.
7         MR. WOLKOFF:  Yes, and I'm not suggesting to the
8  contrary, your Honor.  I am saying that, to the extent that it
9  would give the Court any solace, there is Canadian counsel
10 who's representing the Canadian class here, and Canadian
11 counsel has signed off on the settlement.
12         THE COURT:  Right.
13         MR. WOLKOFF:  The other thing I think that we can draw
14 some solace from, apart from the fact that it is, I believe, an
15 eminently reasonable settlement, is that the one objection that
16 has been made here about California law and California law
17 being so much different, I think your Honor has said before, in
18 sum and substance, just paraphrasing, obviously, that there
19 isn't a sufficient difference between California law, if indeed
20 there is any material difference, to cause any different
21 treatment for California residents.
22         The other point that we would make is that, for
23 example, under the *Warfarin* case in the Third Circuit, the
24 *Prudential* cases, there are a number of them, *Lupron*, your
25 Honor is familiar with all of these cases, there can be a

```
 1   difference, and what would, at least at first blush, strike one
 2   as being a somewhat material difference in the state law.
 3           So, in Warfarin, for example, the Third Circuit
 4   recognized that in some state jurisdictions, the consumers of
 5   the drugs at issue in that case could have gotten all of their
 6   money back, while in most of the other states you would just
 7   get the difference between what you paid for the proprietary
 8   drug versus the generic drug, and the Court there, as your
 9   Honor knows, said, well, that's a difference, but it's not a
10   material difference, given the type and breadth and nature of
11   the settlement at issue.
12           So, looping back, again, your Honor, we want to make
13   sure, and we did work very hard, in an adversarial way, with
14   regard to the settlement.  We achieved what we thought was an
15   appropriate and a fair and reasonable and equitable settlement
16   to everybody involved.  Issues were raised about California, no
17   other issues were raised.  We fully briefed that.  We come
18   back, your Honor, to the motor vehicle case, which, of course,
19   was a litigation class that involved big questions about
20   predominance and manageability, as your Honor is aware.
21           All of that being said, we are happy to respond to
22   your Honor with a brief.  We think that we could probably, we
23   talked about this before, when we got your Honor's order,
24   talked about it with the other -- with plaintiffs' counsel, not
25   Mr. Strenio, but with the proponents and we agreed that we
```

1   could get a brief into your Honor within 30 days from today, a
2   brief or briefs.  We think probably it could be two briefs;
3   possibly we would be able to do one, if we don't have any
4   disagreement about what the state or Canadian law says.
5           So, as I say, we have looked at the state law, we have
6   looked at the Canadian law, certainly Canadian counsel looked
7   at Canadian law before this was entered into as being a fair
8   and reasonable settlement.  We didn't see, frankly, material
9   differences.  We would conform, we think, with the ALI
10  provision, although I must say and confess that I haven't seen
11  it yet, your Honor refers to it, I need to look at it, but we
12  do want to do things appropriately here.  So, your Honor we
13  would suggest, if we could have, and I don't mean to speak for
14  the proponents and certainly not for Mr. Strenio, if we could
15  have 30 days from today, we could submit your Honor, we hope,
16  just the very type of brief responsive to your Honor's request
17  that your Honor's talking about.
18          THE COURT:  I appreciate that, and I think that I'm
19  talking about a brief but also a very extensive, I say very
20  extensive, but certainly detailed consideration of all the
21  relevant law that you're asking me to deal with so that I can
22  make a reasoned judgment on this.  You're satisfied, I can't
23  say that I am yet, not because there's something here, but
24  because I just don't know, and, as I said, I started down the
25  path of trying to figure it out and then decided that the

```
 1   adversarial system generally is of assistance to judges in
 2   things like this.  So, Mr. Barnow.
 3          MR. BARNOW:  Yes.  Thank you, your Honor.  My
 4   colleague reminds me to stand up.
 5          THE COURT:  I know the differences between the
 6   northern district and this district.
 7          MR. BARNOW:  Well, I apologize.  In any event, we
 8   received your order, and we did read the case that your Honor
 9   referenced.  Respectfully, it's not really for me to say, but I
10   have to say it, I truly appreciate the Court's scrutiny and
11   diligence, because the reality is the better the record the
12   better the resolution and more informed.  We look forward to
13   providing not only the brief but the chart that you indicated,
14   and, hopefully, we will address all of the concerns that the
15   Court rightfully has in mind.
16          You know, we go along and things change and ideas come
17   about, and in this situation, frankly, the Court saw, perhaps,
18   some cracks in the presentation, and, again, in a slightly
19   different way to say it, we appreciate the opportunity to fill
20   those and hopefully to satisfy the Court.
21          THE COURT:  Well, I think, you know, I feel, in
22   candor, feel uncomfortable, because I don't want to impose
23   additional transaction costs on a matter like this, and, as I
24   say, if left to my own devices, on terms of practicality, I
25   wouldn't be raising this, but I started this by saying this is
```

1  an opinion that won't write, and it is because I keep
2  encountering these residual concerns, and, frankly, although
3  obviously the Canadian motor vehicle case is not directly on
4  point on a variety of different issues, it is a straw in the
5  wind about the way in which the First Circuit is going to, I
6  think, fall in line on a rather formalistic approach to these
7  things.
8  　　　　MR. BARNOW:  Well, again, I appreciate the Court's
9  concern for our expense and transaction costs, but the reality
10 is money is well spent to do a good job, and we did a good job,
11 and now we're going to do an even better job, and if it's any
12 solace to the Court, because in the normal course lawyers have,
13 a number of us have recently done in other contexts and for our
14 own edification, because the issue sometimes comes up before
15 you, if I have a case, etc., these charts.  So, why do we have
16 to always look at it carefully?  Because they change, as your
17 Honor knows, when an opinion comes down.  I assure the Court
18 that not only is it a task that we're pleased to do, but I do
19 not believe it will be overly burdensome, and it's the wise
20 thing, and I agree.
21 　　　　THE COURT:  Okay.  Mr. Strenio.
22 　　　　MR. STRENIO:  Thank you, your Honor, and I thank your
23 Honor for its memorandum and order, and I think that the winds
24 have been blowing for a long time, starting with *Amchem*, also
25 recognized in the First Circuit with the *Waste Management*

1  *Holdings versus Mowbray* case, where the First Circuit cited
2  *Castano* for the proposition that "a court must understand the
3  claims, defenses, relevant facts and applicable substantive law
4  in order to make a meaningful determination of the
5  certification issues," and in a settlement class, as *Amchem*
6  points out, the Court's burden is actually greater as opposed
7  to less, because the class isn't subject to the litigation,
8  contested litigation that otherwise would occur.
9       As a housekeeping matter, I would ask the Court to
10 grant our *ex parte* application for leave to file the
11 supplemental brief that we -- -
12      THE COURT:  I don't know that I've seen that.
13      MR. STRENIO:  You have, your Honor.  It was filed a
14 long time ago in direct response to the supplemental brief
15 filed by the defendants.  The defendants did not ask permission
16 to file a supplemental --
17      THE COURT:  I'll tell you what.  That seems to me to
18 be the water over the dam or under the bridge.  I think maybe
19 the better practice is to take the 30-day period for the
20 proponents to file and then have an opposition or a response in
21 some period of time.
22      MR. STRENIO:  I think the Court may not be
23 understanding me.  The defendants, right after the last hearing
24 we had, filed a supplemental brief.  We then filed an *ex parte*
25 application, attaching our proposed supplemental brief, which

```
 1   addressed choice-of-law issues.
 2           THE COURT:  I think -- not think, I know I've read it.
 3   I mean, if it hasn't been allowed, it should have been allowed.
 4           MR. STRENIO:  Okay.  That's my only housekeeping issue
 5   on that.
 6           THE COURT:  Right.
 7           MR. STRENIO:  Because it does address the Warfarin
 8   case, and when the Court goes back and looks at all of these
 9   cases where the defendants are relying on them, the Court will
10   note a distinction that is present in those cases that are not
11   present here, and that is, in those cases, they have primarily
12   Federal Law, in other words, the gestalt of the action or the
13   motivating force or the primary weight and legal claims being
14   pushed by the plaintiffs in those cases were Federal Law, where
15   the Federal Law, such as RICO or the Sherman Act, where you had
16   antitrust issues, all afforded the class members triple damage,
17   treble damages, in which case, when you compare a state's
18   remedies versus a remedy that affords treble damages, then it's
19   easy to think, okay, well, the relative differences among the
20   states aren't that great, because they are all going to be
21   protected by this federal statute --
22           THE COURT:  I think, Mr. Strenio, I understand those
23   issues and it, perhaps, should be obvious, I think it's
24   obvious, that they're on my mind, and what I'm looking for now
25   is, you know, to set up a structure for dealing with it and
```

1  give the parties an opportunity to make arguments more
2  specifically directed toward what is, you know, this is a class
3  action fairness case, it's not a federal question case.
4          MR. STRENIO:  Sure, and thank you for that, and I just
5  raise the issue in direct response to the defendants trying to
6  make their argument already at this hearing and just in direct
7  response to that.
8          One last point in the Court's reference to a person
9  not having to have fallen off the turnip truck to recognize
10 that Gillette wants a global resolution of all of the claims, I
11 would direct the Court's attention to the settlement agreement
12 and specifically as it relates to Canada, because there's a
13 specific provision there that says, well, if for any reason the
14 Court feels that it doesn't have jurisdiction over the claims
15 of Canada we'll sever Canada, and that's just in direct
16 response, because Gillette certainly would want resolution of
17 all claims, but if it's not possible, they're mentally, at
18 least, as evident by that settlement provision, willing to do
19 so at least piecemeal, take the United States and not Canada,
20 take Canada out.
21         THE COURT:  I understand that part of it, and,
22 frankly, I don't think I have to, but the parties may think
23 otherwise, direct myself to the question of the *res judicata*
24 effect or the aggregate effect of finding a settlement here as
25 to Canadian class members, if some non -- some Canadian class

1    member then brings an action in Canada, separate action in
2    Canada.  I don't know what the effect of that is, we had a
3    modest talk about that.  Certainly, the full faith and credit
4    act or provisions don't apply to that, but I recognize that
5    there are bits and pieces that could conceivably be cut off
6    here or treated as a sub-class.  I'm not interested in, as I've
7    indicated, in a Rube Goldberg machine, but I've, you know, I've
8    been watching and actually talking to Judge Hornby about how he
9    was dealing with the motor vehicle case, and sometimes you have
10   to dismiss claims, and sometimes you have to have 15 separate
11   damage classes in order to make the thing run.  I don't know if
12   this case requires that.  It doesn't seem to me to, but this is
13   the opportunity for the parties to address it.
14           MR. STRENIO:  Thank you, your Honor, and the point I
15   raise is just to dissuade the Court of the notion that Gillette
16   would be unwilling to entertain a settlement where there's a
17   distinction and treatment among all the jurisdictions currently
18   part of the settlement, because, obviously, they're willing to
19   sever Canada off, and our suggestion would be to sever
20   California off, or if we don't go that route, which we do
21   advocate, at least to go the sub-class route and to negotiate
22   with the defendants having a representative for those
23   sub-classes so that you can insure that those sub-classes have
24   the most vigorous representation made on their behalf as
25   opposed to representatives who are advocating a proposition

Case 1:05-cv-11177-DPW    Document 131    Filed 05/06/2008    Page 18 of 20

18

```
 1    where that they reduce any differences to the most common

 2    denominator and not vigorously represent any of those interests

 3    in the disparity of the --

 4            THE COURT:  Well, here, of course, we do have a

 5    California representative, a class member, but all of that I

 6    think I understand.  The question is now what, and, so, they've

 7    proposed 30 days, which would have a brief due May 28th.  Would

 8    two weeks after be sufficient?

 9            MR. STRENIO:  They're asking 30 days with the benefit

10    of a lot of counsel.  I would just ask 21 days.

11            THE COURT:  Sure, sure.  They're doing the laboring

12    or, you know, carrying the laboring, or maybe this is the wrong

13    metaphor, but they're the ones who are going to have to mine

14    all of these separate shafts.

15            MR. STRENIO:  Sure, and we'll also have a ship in that

16    harbor, and we will be navigating that.

17            THE COURT:  Okay.  So, June 18th for a response, and

18    then I will give the final word to the proponents July 2nd, and

19    let me just say with respect to notice, while I wouldn't want

20    to have -- assuming that I would be prepared to at some point

21    thereafter preliminarily approve the proposed settlement, I do

22    think that there should be available in some fashion and culled

23    out in any notice the availability of the chart I keep

24    referring to for class members to consult and make their own

25    determinations or have their counsel make their own
```

1   determinations on it.  So, think in those terms, and if you
2   could, perhaps, with the final or with the initial briefs give
3   me proposals with respect to notice.  That's not prejudging it,
4   simply to try to move it, because it hasn't moved, from your
5   perspective it hasn't.  There's been a lot of motion but no
6   movement in my consideration of this.
7            All right?  Now, is there anything else that we need
8   to address?  Then, I will commit to, if the commitment is worth
9   anything, get this out as promptly as I can after this briefing
10  is concerned, and I don't mean to treat an ALI first tentative
11  draft as wholly writ, but it does seem to me to cull or pull
12  together these various issues, and it's one of the lenses
13  through which I'll be refracting the illumination that you're
14  providing me on this additional briefing.  All right?  Thank
15  you very much.  We'll be in recess.
16            THE CLERK:  All rise.
17            (Hearing concluded at 3:00 p.m.)
18
19
20
21
22
23
24
25

1     C E R T I F I C A T E

4     I, Brenda K. Hancock, RMR, CRR and Official Reporter
5     of the United States District Court, do hereby certify that the
6     foregoing transcript, from Page 1 to Page 19, constitutes, to
7     the best of my skill and ability, a true and accurate
8     transcription of my stenotype notes taken in the matter of In
9     Re: M3 Power Razor Systems Marketing and Sales Practices
10    Litigation, 1:05-cv-11177-DPW

13        /s/ *Brenda K. Hancock*
14        Brenda K. Hancock, RMR, CRR
15        Official Court Reporter