## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re: | CIVIL ACTION NO. 05-11177-DPW |
| | (LEAD CASE) |
| M3POWER RAZOR SYSTEM | |
| MARKETING & SALES PRACTICES | MDL Docket No. 1704 |
| LITIGATION | |
| | |
| THIS DOCUMENT RELATES TO: | |
| **ALL CASES** | |

## PLAINTIFF CARLOS CORRALES' RESPONSE TO SETTLEMENT PROPONENTS' BRIEFING RE VARIATION OF THE CONSUMER PROTECTION STATUTORY AND COMMON LAWS OF THE STATES AND CANADIAN PROVINCES

## I.    INTRODUCTION

The Settlement Proponents offer the Court a "joint" chart they themselves each disavow,[1] even though they bear the burden of "credibly" demonstrating the "accuracy" of the assertion that there are no material variations among the elements and remedies of the claims of each of the 63 jurisdictions.[2]  The joint chart does not reflect the viewpoint of either Plaintiffs or Gillette of the elements and remedies of the claims in each of the 63 jurisdictions.

Instead, the chart is a *chimera*, created by two parties motivated to mask any variations in the laws in order to treat consumers in each of the 63 jurisdictions identically.  It is therefore little more than "merely an amalgam, an averaging, of the nonidentical" laws.  In re Rhone-Poulenc Rorer Inc., 51 F.3d 1293, 1302 (7th Cir. 1995).  And, at best, it is a *Finlandization* of the elements and remedies, an acquiescence to Gillette's interpretation of the elements and remedies of the states law claims – most readily apparent in the chart's erroneous discussion of the elements and remedies under California law, erroneously stating that intent is a requirement

---

[1]    *See* Representative Plaintiffs' Supplemental Brief In Support Of Preliminary Approval Of Class Action Settlement Agreement at 3 n.3;  The Gillette Company's Memorandum Of Law Reviewing The Relevant Laws Of The Fifty States Of The United States, The District of Columbia And Certain Provinces And Federal Law Of Canada, at 4 n.2.

[2]    Walsh v. Ford Motor Co., 807 F.2d 1000, 1016-17 (D.C. Cir. 1986) (the class action proponents "must show that [the assertion that there are no state law variations] is accurate" and "must credibly demonstrate" "commonality of the applicable law" through an extensive analysis of state law variances");  *accord* Klay v. Humana, Inc., 382 F.3d 1241, 1251 (11th Cir. 2004); *see* Washington Mutual Bank, F.A. v. Superior Court, 24 Cal.4th 906, 924-25 (Cal. 2001) (the class action proponents "must affirmatively demonstrate the accuracy" of the assertion that variations in state laws do not exist or are insignificant) (citing Castano, 84 F.3d at 741-742);  In re Ford Motor Co. Ignition Switch Products Liab. Litig., 174 F.R.D. 332 (D. N.J. 1997);  In re Rezulin Prods. Liab. Litig., 210 F.R.D. 61, 71 (S.D. N.Y. 2002);  Canon U.S.A., Inc. v. Superior Court, 68 Cal.App.4th 1, 8 (Cal. App. 1998).

under California's Consumers Legal Remedies Act (<u>Cal. Civ. Code</u> § 1750 *et seq.*),[3] erroneously

stating that punitive damages are available for the intentional misrepresentation claim for only

outrageous conduct when fraud or intent to cause injury is sufficient (<u>Cal. Civ. Code</u> § 3294(a),

(c)(3), (c)(1), erroneously stating that reliance is required under the UCL, and erroneously

omitting the remedy of attorneys' fees under the CLRA (<u>Cal. Civ. Code</u> § 1780(d)).  *See*, *e.g.*,

<u>Doll v. Chi. Title Ins. Co.</u>, 246 F.R.D. 683, 694 (D. Kan. 2007) ("the Court cannot sanction

plaintiffs' attempt to compromise virtually every class member's claim by forcing the entire

class to satisfy a menu  of the toughest standards plucked [by the defendant] from the laws of

various states.  Such a conflict destroys typicality and renders these plaintiffs inadequate to

represent fairly and ably the interests of the entire class").

      Nobody truly believes that, in this case, a nationwide class containing all six claims in the

consolidated complaint could be certified without subclasses.[4]  None of the "representative"

plaintiffs filed a nationwide class containing all six claims in the consolidated complaint.  In

---

[3]  Intent is not required under the the CLRA (or the UCL).  The Settlement Proponents misinterpret "intended" in Section 1770(a) of the CLRA, which provides that "[t]he following unfair methods or competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer are unlawful . . .."  The "intended" language modifies the transaction, not the intent of the defendant.  In other words, the "intended" language is intended to limit the CLRA to transactions that are intended to result ultimately in transactions with consumer.  The only "intent" requirement is for certain of the prescribed practices.  <u>Cal. Civ. Code</u> §1770(a)(9), 10). No "intent" requirement exists for the other prescribed practices, such as "[r]epresenting that goods or services have . . . characteristics, ingredients, uses, benefits, or quantities which they do not have . . .."  <u>Cal. Civ. Code</u> § 1770(a)(5).

[4]  The Gillette Company's Memorandum Of Law Reviewing The Relevant Laws Of The Fifty States Of The United States, The District of Columbia And Certain Provinces And Federal Law Of Canada, at 4 n.2 ("Gillette joined in submitting a comparison chart in connection with the proposed settlement herein, and notes that in the event a litigation class were at issue, or litigation in another context arose, the positions stated therein might change").

fact, most or the "representative" plaintiffs, like the other plaintiffs, filed a state-only class, including the "representative" plaintiffs represented by co-lead class counsel Lerach Coughlin (now Coughlin Stoia Geller Rudman & Robbins LLP): "Representative" Plaintiffs *Dearman* and *Debiseglia*, represented by Lerach Coughlin: ***state-only classes*** for Florida and New York for only unjust enrichment and Florida's and New York's respective consumer protection statutes; "Representative" Plaintiffs *Tunon* and *Kline*: ***state-only classes*** for Georgia and Massachusetts for only unjust enrichment; Plaintiff *Moore*: ***state-only class*** for Tennessee; Plaintiff *Adkison*: ***state-only class*** for Arkansas for only unjust enrichment, the Arkansas consumer protection act, breach of express and implied warranties, and negligence and gross negligence; Plaintiff *Rosenthal*: ***state-only class*** for Maryland for only unjust enrichment and the Maryland consumer protection statute; Plaintiff *McGlynn*: ***state-only class*** for Pennsylvania for only unjust enrichment, breach of express warranty, breach of implied warranty, and the Pennsylvania consumer protection statute; Plaintiff *Huskic*: ***state-only class*** for Missouri for only unjust enrichment and the Missouri consumer protection statute; Plaintiff *Falkner*: ***state-only class*** for Ohio for only unjust enrichment, fraud, and the Ohio consumer protection statute; Plaintiff *Lipper*: ***state-only class*** for California for only California's UCL; Plaintiff *Gorea*: ***state-only class*** for Tennessee; Plaintiff *Jackson*: ***state-only class*** for Texas for the Texas consumer protection statute, intentional misrepresentation, and negligent misrepresentation; Plaintiffs *Kennessky* and *Meyers*: ***state-only classes*** for California and New Jersey, for only unjust enrichment, violation of the UCL, and violation of the New Jersey consumer protection statute; Plaintiffs *Saunders*, *Fisher*, *Fellersen*, and *Herbstman*: ***state-only classes*** for Texas, Minnesota, and Illinois for only unjust enrichment, and Texas, Minnesota, and Illinois' respective consumer protection statutes; Plaintiffs *Johnson*, *Hirsch*, and *Friedman*: ***state-only classes*** for California,

3

Ohio, and Illinois, for only unjust enrichment, violation of California's UCL and FAL, the Ohio

consumer protection statute, and the Illinois consumer protection statute;  Plaintiff *Geiss*: **state-**

**only class** for Connecticut for the Connecticut consumer protection statute;  "Representative"

Plaintiff *Elie*: **Canadian class**.

Although co-lead class counsel Ben Barnow filed a nationwide class action complaint on

behalf of "Representative" Plaintiff *Besinger* and Plaintiff *Zavala*, the claims were limited to

only unjust enrichment and violation of the Illinois consumer protection act.  And,

"Representative" Plaintiff *McGeary*'s nationwide class action complaint, like that of Plaintiff

*Windom*, was limited to only a claim for unjust enrichment, while "Representative" Plaintiff

*Marr*'s nationwide class action complaint was limited to unjust enrichment, negligent

misrepresentation, and a violation of California's UCL.  Two other plaintiffs who filed

nationwide class action complaints, actually alleged **sub-classes** for each of the states:  Plaintiff

*Atkins* and Plaintiff *Pruitt*, both alleging claims for only unjust enrichment and each states'

consumer protection statutes in each of their respective complaints.  And, acknowledging that

groupings of the consumer protection statutes are necessary because of variations among the

states and conceding implicitly that California and Massachusetts belong in a class by

themselves another plaintiff, Plaintiff *Coleman*, filed a **multi-state class excluding California**

**and Massachusetts** for each of the states' respective consumer protection statutes (Connecticut,

District of Columbia, Iowa, Michigan, Minnesota, Missouri, Nebraska, New Hampshire, New

Jersey, New Mexico, New York, Pennsylvania, Rhode Island, South Carolina, Vermont,

Washington, and West Virginia).

And, Gillette limits its stipulation to adequacy and predominance to only a settlement class, although such a distinction is not intellectually honest as the requirements apply equally and even more forcefully to a settlement class, as <u>Amchem</u> teaches.

## II. THE LAWS OF THE 63 JURISDICTIONS MATERIALLY VARY.

"Our [federalist] system contemplates differences between different states' laws . . .." <u>Murphy v. F.D.I.C.</u>, 208 F.3d 959, 965 (11th Cir. 2000). The courts have repeatedly held that the states' statutory and common law consumer protection laws materially vary, precluding certification of nationwide class actions where, as here, a choice of law analysis leads to the application of the laws of each jurisdiction and subclasses have not been offered. *See* <u>Estate of Felts v. Genworth Life Ins. Co.</u>, 2008 U.S.Dist.LEXIS 40835, *28 (W.D. Wash. 2008) ("`[s]tate and federal courts have overwhelmingly rejected class certification when multiple states' laws must be applied'") (quoting with approval <u>Henry Schein, Inc. v. Stromboe</u>, 102 S.W.3d 675, 698-99 (Tex. 2002) (citing more than 50 cases)). The following is but an example:

- "State **<u>consumer-protection laws</u>** vary considerably, and courts must respect these differences rather than apply one state's law to sales in other states with different rules." <u>In re Bridgestone / Firestone, Inc.</u>, 288 F.3d 1012, 1018 (7th Cir. 2002).

- "Plaintiffs' assertion of predominance relied primarily on the textual similarities of each jurisdiction's applicable law and on the general availability of legal protection in each jurisdiction for **<u>express and implied warranties</u>**. Plaintiffs' largely textual presentation of legal authority oversimplified the required analysis and glossed over the glaring substantive legal conflicts among the applicable laws of each jurisdiction. As we explain below, there are numerous variations in the substantive laws of express and implied warranty among the fifty-one jurisdictions that the plaintiffs failed to `extensively analyze' for their impact on predominance. Although plaintiffs assert that the laws of the fifty-one jurisdictions are `virtually the same' . . ., we note that many of the variations in state law raise the potential for the application of multiple and diverse legal standards . . .. Specifically, the laws of the jurisdictions vary with regards to [w]hether plaintiffs must demonstrate reliance, [w]hether plaintiffs must provide notice of breach, [w]hether there must be privity of contract, [and] [w]hether merchantability may be presumed . . .. Plaintiffs failed to articulate adequately how these variations in state law would not preclude predominance in this case. . . . Given these significant

5

variations in state law and the multiple individualized legal and factual questions they present, we conclude that plaintiffs have failed to carry their burden in establishing predominance and that the district court abused its discretion in certifying the class action." Cole v. General Motors Corp., 484 F.3d 717, 725-26, 730 (5th Cir. 2007) (citations omitted).

● There are a "a multitude of different standards and burdens of proof with regard to plaintiffs' **warranty**, **fraud** and **consumer protection** claims." In re Ford Motor Co. Ignition Switch Prods. Liab. Litig., 174 F.R.D. 332, 350-51 (D.N.J. 1997); *accord* Spence v. Glock, GES.m.b.H., 227 F.3d 308, 313 n. 8 (5th Cir. 2000) (quoting Ford Motor Co. Ignition Switch with approval).

● "claims brought under a variety of state **deceptive trade practices acts** are ill suited for class action treatment because differences in state laws and individual questions of reliance and causation will overwhelm any common issues." M.S. Wholesale Plumbing, Inc. v. Univ. Sports Publs. Co., Inc., 2008 U.S.Dist.LEXIS 4159, *15 (E.D. Ark. 2008).

● "it appears from the face of the complaint that denial of class certification is a virtual certainty. The Court of Appeals for the Seventh Circuit has repeatedly disapproved nationwide class actions in **consumer products misrepresentation and breach of warranty actions**: `No class action is proper unless all litigants are governed by the same legal rules. Otherwise the class cannot satisfy the commonality and superiority requirements of Fed. R. Civ. P. 23(a), b(3). Yet state laws about theories such as those presented by our plaintiffs differ, and such differences have led us to hold that other warranty, fraud, or products liability suits may not proceed as nationwide class actions.'" Porcell v. Lincoln Wood Prods., 2008 U.S.Dist.LEXIS 34339, *5 (W.D. Wisc. 2008).

● "Across the country, states have enacted **consumer protection statutes** which vary on a wide range of important issues, including subtleties in standards of proof, procedure, and remedies", such as what conduct is actionable, whether individual reliance is required, what level of scienter is required, whether a class action is allowed, whether a written demand is required, whether involvement of the state attorney general is required, and what statute of limitations applies. Block v. Abbott Laboratories, 2002 U.S.Dist.LEXIS 5453, *15 (N.D. Ill. 2002).

● "State **consumer protection acts** vary on a range of fundamental issues [such as what conduct is actionable, whether intent is required, and whether a class action is available]. . . . In sum, the consumer fraud acts of the various states are not uniform." Lyon v. Caterpillar, Inc., 194 F.R.D. 206, 219-20 (E.D. Pa. 2000); *see* Zapka v. Coca-Cola Co., 2000 U.S.Dist.LEXIS 16552, *4 (N.D. Ill. 2000) (discussing the variations in the intent element of the states' consumer protection statutes (some do not have an intent element, some require actual knowledge of the falsity, some require that the defendant knew or should have known of the falsity)).

● "[Defendant] argues that individual issues of law will predominate if the court certifies a nationwide class possibly involving the separate application of 50 **consumer fraud statutes** and 50 **common law fraud torts**. The court agrees. . . . [A] brief review of the applicable statutes reveals not only nuances, but differing standards of proof, procedure, substance, and remedies. . . . Therefore, individual issues of law predominate which preclude certification of a nationwide class seeking redress under the various states' consumer fraud statutes and common law fraud causes of action." Tylka v. Gerber Products Co., 178 F.R.D. 493, 497 (N.D. Ill. 1998); *see* In re Dalkon Shield IUD Prods. Liab. Litig., 693 F.2d 847, 850 (9th Cir. 1982) (questioning commonality where 50 states' punitive damages laws applied to class claims).

● "'The laws of **unjust enrichment** vary from state to state and require individualized proof of causation.' Unjust enrichment is an equitable doctrine. There would be individualized questions as to whether a particular class member is subject to equitable defenses. `Moreover, variances exist in state common laws of unjust enrichment. The actual definition of `unjust enrichment' varies from state to state. Some states do not specify the misconduct necessary to proceed, while others require that the misconduct include dishonesty or fraud. . . . Other states only allow a claim of unjust enrichment when no adequate legal remedy exists. . . . Many states, but not all, permit an equitable defense of unclean hands. Those states that permit a defense of unclean hands vary significantly in the requirements necessary to establish the defense.'" Lilly v. Ford Motor Co., 2002 U.S.Dist.LEXIS 5698, *5 (N.D. Ill. 2002) (quoting Clay, 188 F.R.D. at 500-01); *see* In re Conagra Peanut Butter Prods. Liab. Litig., 2008 U.S.Dist.LEXIS 40753, *36-38 (N.D. Ga. 2008) (the law of unjust enrichment of some jurisdictions require a direct benefit, *i.e.*, direct privity).

● "Not only are there variations among the states' laws regarding the legal elements and potential defenses, there are also differences as to who may bring an **unjust enrichment** claim. Three jurisdictions preclude indirect purchasers from asserting claims for unjust enrichment unless they have conferred a benefit directly on the defendant. In these states, the rationale for the requirement is to insulate a defendant that is far removed from any wrongdoing from liability for a benefit he may have inadvertently or unknowingly received. In contrast, nine other states have explicitly determined that an indirect benefit is enough. These states have allowed indirect purchasers to establish claims for unjust enrichment so long as they can prove that the defendant benefitted at the plaintiff's expense, even if the benefit flowed indirectly from the plaintiff to the defendant. The remaining states' laws have either implicitly accepted unjust enrichment claims based on an indirect benefit or have not addressed the issue." Powers v. Lycoming Engines, 245 F.R.D. 226, 232 (E.D. Pa. 2007).

● "Variations in state [**warranty**] law present further problems for the proposed class. The Fifth Circuit [in *Castano*] has warned that `in a multi-state class action, variations in state law may swamp any common issues and defeat predominance. . . . [The fact that all the states except Louisiana have adopted Section 2-313 of the Uniform Commercial Code] is insufficient. . . . `The Uniform Commercial Code is not uniform.' . . .

Plaintiffs' unfair and deceptive trade practices subclass consists of the District of Columbia and the forty-six states which have (1) enacted statutes prohibiting unfair and deceptive business practices; (2) allow a private cause of action; and (3) do not require reliance. By excluding from this subclass states requiring reliance, plaintiffs have removed one significant difference in state law. There are, however, other differences [such as what conduct is actionable and what level of intent if any is required.] In re Stucco Litig., 175 F.R.D. 210, 216-17 (E.D. N.C. 1997).

● "Plaintiff provides a detailed description of each state's breach of **warranty** law and divides them into the following sub-classes based on their requirements: (1) reliance necessary, pre-litigation notice necessary; (2) reliance necessary, pre-litigation notice not necessary; (3) reliance not necessary, pre-litigation notice necessary; and (4) reliance not necessary, pre-litigation notice not necessary. The laws in the first three of plaintiff's proposed sub-classes require a determination of whether each individual class member relied on the warranty and/or provided pre-litigation notice to the defendant. To make these determinations would appear to require a relatively intensive factual inquiry into each individual case. Variations in the laws within the sub-classes would further complicate the matter. Thus, as to the first three proposed sub-classes, it seems likely that a significant part of each member's claim would have to be resolved on an individual basis, thus defeating the purpose of a class action. Sub-class (4) however includes laws that do not require proof of reliance or pre-litigation notice. Under such laws, it appears that the principal issues would relate to the warranty and the alleged defect, which issues seem capable of fairly simple resolution on a class basis. Thus, as to plaintiff's fourth proposed sub-class but not as to the first three, I conclude that common legal questions predominate over individual issues." Barden v. Hurd Millwork Co., Inc., 2008 U.S.Dist.LEXIS 26894, *9-10 (E.D. Wis. 2008); see In re Conagra Peanut Butter Prods. Liab. Litig., 2008 U.S.Dist.LEXIS 40753, *40 ("most states have adopted versions of § 2-318 [of the Uniform Commercial Code] that allow recovery for breach of warranty only if there was injury to the person and not for mere economic loss. In fact, only five states and the Virgin Islands have adopted Alternative C. Most jurisdictions do require privity of contract to recover under a breach of warranty for purely economic loss").

● "the law in the 18 different jurisdictions concerning **punitive damages** varies greatly, including with respect to the following issues: the conduct by the defendant that must be shown; the degree of harm that must be shown; the standard of proof; different rules for claims against corporate defendants; whether the entitlement to or amount of damages is determined by the court or the jury; whether the claim for punitive damages is bifurcated from the liability phase of trial, and whether evidence relating to punitive damages may be introduced in the liability phase; statutory limitations (caps) on punitive damages; and the relationship to compensatory damages for constitutional purposes." Doll v. Chi. Title Ins. Co., 246 F.R.D. 683, 691 (D. Kan. 2007).

The Settlement Proponents concede that the states' laws vary among the six claims alleged in the consolidated complaint. But, the Settlement Proponents fail to honor the Court's request to brief "fully and meaningfully" the material features of the laws to demonstrate that subclasses are unnecessary and that it is not unfair to treat all class members identically. Instead, the Settlement Proponents attempt to avoid the issue by making each claim a moving target. For example, the "Representative" Plaintiffs contend that differences are immaterial because "where on jurisdiction may have more favorable law for a particular cause of action, it may be not as favorable for another, and vice versa, amongst all of the causes of action being alleged for all jurisdictions."[5]

But, of course, whether or not, at the end of the day, each jurisdiction may have at least one claim, all of the claims are not the "***the same in functional content***" for settlement purposes. (The American Law Institute, Principles of the Law of Aggregate Litigation, Tentative Draft No. 1, April 7, 2008, § 2.05(b)(2).) All things being equal, a claim that carries the remedy of punitive damages has more settlement value than one that does not or one that caps punitive damages, a claim that carries the remedy of attorneys' fees has more settlement value than one that does not, a claim that does not have an element of intent / scienter has more settlement value than one that does not, a claim that does not have an element of reliance has more settlement value than one that does not, a claim that has an element of reliance but for which reliance may be presumed on a class-wide basis has more settlement value than a claim for which reliance may not be presumed on class-wide basis, a claim that does not require privity or a direct benefit conferred on the defendant has more settlement value than one that does not, a claim that does

---

[5] Representative Plaintiffs' Supplemental Brief In Support Of Preliminary Approval Of Class Action Settlement Agreement, at 3.

9

not require notice or that requires notice but notice has been given has more settlement value

than a claim that requires notice when no notice has been given, a claim that does not provide for

a private right of action has more settlement value than a claim that allows for a private cause of

action, a claim that applies to economic loss has more settlement value than a claim that does

not, an equitable claim that applies regardless of whether or not there is a legal remedy has more

settlement value than a claim that does not, a claim that carries injunctive relief has more

settlement value than a claim that does not, *etc*.  Thus, contrary to the Settlement Proponents'

mantra that "[t]hese variances do not affect the fairness, reasonableness, or adequacy of the

settlement as applied"[6] (whatever that means), these variances do affect the fairness,

reasonableness, and adequacy of the settlement.

## III.  CALIFORNIA'S CONSUMER PROTECTION LAWS (STATUTORY AND COMMON LAW) AFFORD GREATER RIGHTS AND REMEDIES THAN THOSE OF OTHER STATES.

"California's consumer protection laws are ***among the strongest in the country***."

Wershba v. Apple Computer, Inc., 91 Cal.App.4th 224, 242-43 (Cal. App. 2001) (noting, among

other things, the remedy of disgorgement of profits under the UCL and the remedy of punitive

damages under the CLRA) (emphasis added);  *see* America Online, Inc. v. Superior Court, 90

Cal.App.4th 1, 11, 14-15 (Cal. App. 2001) (referring to the CLRA's remedies for statutory

damages, restitution, injunctive relief, punitive damages, and attorneys' fees as "***strong***" and

"***extraordinary remedies***";  explaining that "the CRLA is a legislative embodiment of a desire to

protect California consumers and furthers a strong public policy of this state";  and noting that

"the cumulative importance of even [the more nuanced and] less significant differences"

---

[6]  Representative Plaintiffs' Supplemental Brief In Support Of Preliminary Approval Of Class Action Settlement Agreement, at 8-10.

between the non-remedial aspects of the California and Virginia consumer protection statutes are "substantial") (emphasis added); <u>Clothesrigger, Inc. v. GTE Corp.</u>, 191 Cal.App.3d 605, 616 (Cal. App. 1987) (reasoning that the trial court abused its discretion by denying the plaintiff's motion to certify a nationwide class action because it failed to apply California choice of law rules, under which California law might be applied to nonresidents because "***California's more favorable laws*** may properly apply to benefit nonresident plaintiffs when their home states have no identifiable interest in denying such persons full recovery") (emphasis added); <u>Anapoell v. American Express Bus. Fin. Corp.</u>, 2007 U.S.Dist.LEXIS 88182, *36 (D. Utah 2007) ("there is a conflict between the California UCL and the Utah UPA because the California statute is much broader and there is no equivalent statute in Utah").

Unlike the law of many other states, California's consumer protection laws include the remedies of: (1) punitive damages; (2) restitutionary disgorgement of profits; (3) fluid recovery; (4) attorneys' fees; (5) corrective advertising; (6) a class action;[7] and (6) a jury trial.

## IV.    BECAUSE CALIFORNIA'S LAWS AFFORD GREATER RIGHTS AND REMEDIES THAN THOSE OF OTHER STATES, A SETTLEMENT ALLOCATION THAT TREATS CALIFORNIA CLASS MEMBERS EQUALLY IS NOT FAIR, REASONABLE, OR ADEQUATE.

The First Circuit Court of Appeal has signaled that "'a court must understand the claims, defenses, relevant facts, and applicable substantive law in order to make a meaningful determination of the certification issues'" and that "a district court must formulate some

---

[7]    *See* <u>Discover Bank v. Superior Court</u>, 36 Cal.4th 148, 157 and 174 (Cal. 2005) (affirming the "important role of class action remedies in California law" and referring to the statutory right to bring a CLRA claim as a class action as "the CLRA class action remedy" which furthers a "'strong public policy of this state'"); <u>Klussman v. Cross Country Bank</u>, 134 Cal.App.4th 1283, 1296 (Cal. App. 2005) ("[t]he right to seek classwide redress is more than a mere procedural device in California"); <u>Aral v. Earthlink, Inc.</u>, 134 Cal.App.4th 544, 564 (Cal. App. 2005) (emphasizing the importance of "the right to pursue a class action remedy").

11

prediction as to how specific issues will play out in order to determine whether common or individual issues predominate in a given case." Waste Management Holdings, Inc. v. Mowbray, 208 F.3d 288, 295, 298 (1st Cir. 2000) (citing Castano approvingly for this proposition). Castano itself warned that: "In a multi-state class action, variations in state law may swamp any common issues and defeat predominance. Accordingly, a district court must consider how variations in state law affect predominance and superiority." Castano v. The American Tobacco Co., 84 F.3d 734, 741 (5th Cir. 1996).

The same analysis is required for purposes of determining whether to approve a settlement. To determine whether a settlement is fair, reasonable, and adequate, the Court must compare the value of the settlement to the value of the class members' respective claims. *See*, *e.g.*, Synfuel Technologies, Inc. v. DHL Express (USA), Inc., 463 F.3d 646, 653-54 (7th Cir. 2006); Mirfasihi v. Fleet Mortgage Corp., 450 F.3d 745, 749 (7th Cir. 2006); Cotton v. United States Pipe & Foundry Co. Coke By-Products Plaint, 559 F.2d 1326, 1330 (5th Cir. 1977) ("The relief sought in the complaint may be helpful to establish a benchmark by which to compare the settlement terms").

This is because the Court has a "duty in a class action settlement situation to estimate the litigation value of the claims of the class and determine whether the settlement is a reasonable approximation of that value." Mirfasihi, 450 F.3d at 749. This estimate must be based on the elements and remedies of the claims of each of the class members' respective states. Id. at 749-51. Mirfasihi emphasizes that the Court must evaluate the true value of each of the class members' claims, including the value of statutory damages, to determine whether or not the settlement amount is fair, reasonable, and adequate in light of that value. There, in approving the settlement, the district court improperly valued certain class members' claims at $0.00 by not

12

accounting for the value of their remedy of ***statutory damages*** under state law.  450 F.3d 745,

749.  Mirfasihi therefore undermines the Settlement Proponents' argument that the value of a

claim should not include remedies such as statutory damages or punitive damages.  A proper

estimate of the value of the claims necessarily entails an estimate of the value of the different

remedies afforded under each of the claims, *e.g.*, punitive and statutory damages.  *See*, *e.g.*, In re

Warfarin Sodium Antitrust Litig., 391 F.3d 516, 530 (3rd Cir. 2003) ("any material variations

[among the remedies of the states' laws, including punitive damages and statutory damages],

could be considered in the context of calculating damages as well as in assessing the fairness of

the settlement").

   This is because a settlement allocation must respect the difference in value of the class

members' claims due to the varying strengths of their claims:

> "'A plan of allocation is evaluated by the same standards applied to the settlement as a
> whole:  fairness, reasonableness, and adequacy. . . .'  'A plan of allocation should be
> based on the nature and extent of class members' provable damages.'  In re Luxottica
> Group S.p.A. Secs. Litig., 233 F.R.D. 306, 316-17, 2006 U.S. Dist. LEXIS 6133, at *33
> (E.D.N.Y. 2006).  '. . . Of course, nothing requires a settlement to benefit all class
> members equally.  Such a rule would itself result in an inequitable windfall to certain
> class members, to the detriment of others.'  In re Global Crossing Sec. & ERISA Litig.,
> 225 F.R.D. 436, 462-63, 2004 U.S. Dist. LEXIS 23946, at *89-90 n.4 (S.D.N.Y. 2004).
> Although the Levitt Plaintiffs object to the allocation of the settlement, the plan will
> distribute the settlement proceeds to class members based on the varying strengths of
> their claims."

Levitt v. Bear Stearns & Co. (In re Sterling Foster & Co. Sec. Litig.), 2006 U.S.Dist.LEXIS

80861, *17-19 (E.D. N.Y. Oct. 31, 2006);  *see*, *e.g.*, Stoneridege Inv. Partners LLC v. Charter

Communs., Inc. (In re Charter Communs., Inc.), 2005 U.S.Dist.LEXIS 14772, *33 (E.D. Mo.

June 30, 2005) ("it is appropriate for interclass allocations to be based upon, among other things,

the relative strengths and weaknesses of class members' individual claims");  In re BankAmerica

Corp. Sec. Litig., 210 F.R.D. 694, 712 (E.D. Mo. 2002) ("The Court finds that to be fair,

reasonable and adequate, any proposed allocation to the October purchasers must reflect both the strength of their claims under California law -- which are not subject to the PSLRA bounce-back provision--and the strength of their 10(b) and 10b-5 claims, which are subject to the bounce-back.  Additionally, the plan of allocation should reflect the strength of all of the October purchasers' claims as compared to the strength of all of the claims of other plaintiffs");  In re Oracle Sec. Litig., 1994 U.S.Dist.LEXIS 21593, *3-4 (N.D. Cal. June 16, 1994) ("It is also reasonable to allocate more of the settlement to class members with stronger claims on the merits").

The same rule applies when, as here, the value of class members' claims vary due to differences among state law.  This conclusion flows inexorably from the requirements of Rule 23 for class certification and Rule 23 for approval of a settlement and from the dictates of the United States Supreme Court, as this Court itself recognizes in In re Relafen Antitrust Litig., 225 F.R.D. 14, 21-22 (D. Mass. 2004):

> "***Nor is the Court convinced that the present settlement posture renders it wholly `inappropriate to address the strength of class claims*.***'  Pls.' Supp. Mem. at 6. . . . [U]nder Eisen v. Carlisle & Jacquelin, [417 U.S. 156] (1974), the certification inquiry may not involve a `preliminary hearing into the merits.'  Id. at 177.  But the suggestion that Eisen bars all consideration of disparities between class members' claims `reads too much into too little.'  See Waste Management Holdings, Inc. v. Mowbray, 208 F.3d 288, 298 (1st Cir. 2000).  In fact, the Supreme Court's subsequent opinion in Ortiz v. Fibreboard Corp., [527 U.S. 815] (1999), noted that one of several factors ***counseling against certification of the settlement class was the fact that certain claimants `had more valuable claims*** . . . [,] the consequence being a second instance of disparate interests.'  Id. at 857.  Thus, ***as the Supreme Court recognized in Ortiz, absent at least some consideration of the `value' of class members' claims -- which here varies according to differences in state law -- a certifying court cannot assure `fair and adequate representation*.***  Id. at 856 (quoting Amchem, [521 U.S. at 627]);  see Carrington & Apanovitch, supra, at 471 (`The modification of rights from those that can be enforced at trial to those that will be measured by weak conjecture (at settlement) effects a transfer of wealth from class members with clearly meritorious claims to those whose claims are more dubious.  . . .  The wealth transfer is most apparent when the court-approved settlement treats diverse class members as if their claims were of equal

worth.'').  In addition to raising adequacy concerns, ***differences in state law may undermine predominance, `compounding' the questions that affect only individual members.  Amchem***, [521 U.S. at 624].  . . .  Humility does not, as the end payor plaintiffs suggest, require the Court to favor recovery.  Rather, it requires the Court to apply state law ``as it exists.''  Wright, Miller & Cooper, supra, § 4507 (quoting Burris Chem., Inc. v. USX Corp., 10 F.3d 243, 247 (4th Cir. 1993)).  . . .  Thus, in the more likely event that the fund is sufficient . . ., consumers would be treated `all the same,' Ortiz, [527 U.S. at 857].  ***As noted in Ortiz, this `itself is an allocation decision with results almost certainly different from the results that those with (more valuable claims) would have chosen*.'  Id.;  *accord* Amchem (`The disparity between . . . categories of plaintiffs, and the diversity within each category are not made insignificant by the District Court's finding that petitioners' assets suffice to pay claims under the settlement.  Although this is not a limited fund' case certified under Rule 23(b)(1)(B), the terms of the settlement reflect essential allocation decisions designed to confine compensation and to limit defendants' liability.'" (Certain citation omitted)).

*Cf*. Lucas v. Kmart Corp., 2006 U.S.Dist.LEXIS 51439, *14, 29-30 (D. Colo. July 27, 2006) (approving settlement as fair, reasonable, and adequate where the allocation plan was based on the variations of class members' statutory damages); In re Relafen Antitrust Litig., 231 F.R.D. 52, 76 (D. Mass. 2005) ("In response to this Court's concerns about a nationwide settlement class, class counsel established the Allocation Committee and approached independent counsel for each group of states.  This Committee `engaged in intense negotiation for approximately two weeks,' before making its initial recommendations, and reconvened following the October 5, 2004 hearing").

Thus, a settlement that treats the claims of California consumers the same as the claims of consumers of other states is not fair, reasonable, or adequate.  In other words, it would not be fair, reasonable, or adequate to sell (release) the tickets (claims) of California consumers for the same price as the tickets of consumers from other states.  The tickets of California consumers are worth more.

Viewed from the opposite side of the same coin, a failure to treat claims of California consumers differently from those of class members from other states effectively abandons

15

California consumers' superior remedies in violation of the adequacy of representation

requirement.  *See*, *e.g*., <u>Relafen</u>, 225 F.R.D. at 27-28 (holding that treating claims with statutory

damages under state law equally with claims without such statutory damages effectively waives

the right to statutory damages;  recognizing that the right to opt-out is not a meaningful right for

class members who have small claims not viable absent a class action);  <u>In re Relafen Antitrust</u>

<u>Litig.</u>, 221 F.R.D. 260, 280 and 286 (D. Mass. 2004) ("`Indeed, named plaintiffs who would

intentionally waive or abandon potential claims of absentee plaintiffs have interests antagonistic

to those of the class'"); <u>Clement v. American Honda Fin. Corp.</u>, 176 F.R.D. 15, 23-24 (D. Conn.

1997) (denying certification where, as a condition of class treatment, members were forced to

forego their claims for unfair trade practices and statutory damages);  *see also* <u>Janik v. Rudy,</u>

<u>Exelrod & Zieff</u>, 199 Cal.App.4th 930 (Cal. App. 2004) (holding that plaintiff stated a claim

against class counsel for legal malpractice for omitting a consumer statute claim).

 The chart prepared by the Settlement Proponents only serves to highlight the material

variations among the states' common law and statutory consumer protection laws.  Can it be said

that a consumer class action settlement is fair, reasonable, and adequate when it treats California

class members the same as all others where no other statute or province affords the host of

remedies provided under California's consumer protection statutes?  Can it be said that a

consumer class action settlement is fair, reasonable, and adequate when it treats California class

members the same as Iowa class members, who have no private cause of action for violation of

the consumer protection act, or the same as Alabama, Louisiana, Mississippi, or Montana class

members, whose consumer protection statutes expressly exclude their availability in class

actions?  Can it be said that a consumer class action settlement is fair, reasonable, and adequate

when it treats California class members the same as class members in states such as Alabama,

Alaska, Indiana, Kansas, Louisiana, Maine, or New Jersey, Oregon, Rhode Island, Texas, Utah, West Virginia, and Wyoming, who do not have a cause of action for violation of the consumer protection act because no notice was given,[8] or class members in states such as Alabama, Alaska, Arkansas, D.C., Illinois, Indiana, Kansas, Kentucky, Maryland, Mississippi, Nevada, North Carolina, North Dakota, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Dakota, Uthah, Virginia, West Virginia, Wisconsin, and Wyoming, whose consumer protection statutes require intent, or class members in states and provinces whose consumer protection statutes do not afford punitive damages?  (*See*, *e.g.*, Smith v. Sprint Comms (7th Cir. 2004) 387 F.3d 612.) Plaintiff Carlos Corrales respectfully submits that the answer is "No."

## V.    THE SETTLEMENT PROPONENTS ERR IN CONTENDING THAT DIFFERENCES IN THE ELEMENTS AND REMEDIES OF THE STATE LAWS ARE IRRELEVANT.

Despite the Court's guidance, the Settlement Proponents stubbornly repeat their argument that differences in elements and remedies of the state law claims do not preclude certification of a settlement class or render the identical treatment of all class members unfair, unreasonable, or inadequate, arguing that fine lines need not be drawn.

All of the cases the Settlement Proponents cite for this proposition are readily distinguishable because the class members also had *federal law* claims under which the class members were afforded the significant remedies of treble damages:  In re Warfarin Sodium

---

[8]  The First Circuit Court of Appeal has not answered the question of whether or not the notice requirements of these states precludes the claims in federal court or whether the consumer protection statutes' inapplicability to class actions applies in federal court.  However, because the District of Massachusetts has held that the notice requirements do preclude the claims in federal court and that the class action limitations do apply in federal court (In re Average Wholesale Price Litigation, 230 F.R.D. 61, 84-85 (D. Mass. 2005)), these claims' settlement value are substantially reduced regardless of the ultimate resolution of these issues by the First Circuit Court of Appeal.

Antitrust Litig., 391 F.3d 516 (3rd Cir. 2004) (Sherman Act and Clayton Act);[9]  In re Lorazepam

& Clorazepate Antitrust Litig., 205 F.R.D. 369 (D. D.C. 2002) (same);[10]  In re Lupron®

Marketing and Sales Practices Litig., 228 F.R.D. 75 (D. Mass. 2005) (RICO);[11]  In re Mexico

Money Transfer Litig. (Western Union and Orlandi Valuta), 164 F.Supp.2d 1002 (N.D. Ill. 2000)

---

[9]  Warfarin centered on violations of federal law affording treble damages, in that case violations of the Sherman Act and the Clayton Act resulting in overpayment for a prescription drug. Moreover, Warfarin, when carefully read, actually supports Plaintiff's position.  The Court of Appeal, reviewing the order granting class certification under an abuse of discretion standard, and limiting its holding to the facts of the case, expressly recognized that, in some cases, certification of a national class action violates Rule 23 because of the differences among the states' laws, and further recognized that, in other factual situations, state law variations may impact Rule 23 requirements other than simply trial manageability:  "Nonetheless, *we recognize that problems beyond those of just manageability may exist when a district court is asked to certify a single nationwide class action suit, even for settlement purposes, when claims arise under the substantive laws of the fifty states.  Although there may be situations where variations in state laws are so significant so as to defeat commonality and predominance even in a settlement class certification, this is not such a case.*"  Id. at 529-30.  In Warfarin, the Court of Appeal was careful to note that variations in rights and remedies may be sufficiently reconciled by the fact that "*any material variations could be considered in the context of calculating damages as well as in assessing the fairness of the settlement*."  Id. at 530 (emphasis added).  Notably, the district court in the underlying case of In re Warfarin Sodium Antitrust Litig., 212 F.R.D. 231 (D. Del. 2002), in order to avoid the issues arising from variations of state law, applied the Delaware consumer protection act to all of the class members. Id. at 248-49 and n. 15 and 16 and 251-52.

[10]  Lorazepam centered on violations of federal antitrust law, and, additionally, was supported by the FTC and the attorney general's offices of all 50 states.  Id. at 372.  And, while the court in Lorazepam noted that it was not considering treble damages allowed under state law to determine whether the settlement amount was fair, it did so relying on a case stating that this is the rule "in an antitrust settlement" (and, in any event, the court considered treble damages "far from certain."  Id. at 377.

[11]  In Lupron, the civil RICO statute was "the mainstay of the Consolidated Amended Complaint."  228 F.R.D. at 88.  Moreover, the objectors in that case did not present the court with the substantial variations among states' laws but instead appear to have made the argument as a throw-away, "finally not[ing] some differences" in the state consumer protection laws. Consistent with the lack of development of the objector's argument, the court relegated its entire discussion of the issue to a mere footnote (n. 33).

18

(same);[12]  In re Mexico Money Transfer Litig., 267 F.3d 743, 747-79 (7ᵗʰ Cir. 2001) (same);[13]

Western Union Money Transfer Litig., 2004 U.S.Dist.LEXIS 29377 (E.D. N.Y. 2004) (same);

In re Prudential Ins. Co. of America, 148 F.3d 283, 315 (3ʳᵈ Cir. 1998) (Sections 10(b) and 20(a)

of the Securities Exchange Act of 1934).[14]   As the court in Rezulin explains:

> "Finally, the proposed class doubtless includes members from all fifty states, and
> plaintiffs' claims overwhelmingly arise under state rather than federal law.  This dictates

---

[12]  In Mexico Money Transfer, the district court carefully considered the argument that the claims of California class members entitled them to a greater allocation.  The court did *not* dismiss this argument because all class members had a "ticket" and therefore could all be treated equally, which is the flawed legal construct urged by the settlement proponents in this case. Instead, the court dismissed the argument because, after careful consideration of the rights and remedies under California law, the court believed that the California claims in that case did not justify a greater allocation because the claims were based on California law that did not apply (such as the California Financial Code), were weak on the merits (such as the absence of a material misrepresentation or a duty to disclose to support the CLRA claim), or did not provide for greater remedies in contrast to the RICO claim shared by all class members.  Id. 164 F.Supp. 2d at 1022-1027.

[13]  In affirming, the United States Court of Appeal for the Seventh Circuit, emphasized that: (1) the class representatives "relied principally on federal substantive law," *i.e.*, RICO;  (2) the state law theories were "marginal theories;"  (3) the claims based on the California Financial Code did not give the California consumers any advantage over RICO; (4) all the claims "had only nuisance value"; and (5) the state law consumer fraud claims were not supported by any duty to disclose because in that case there was no misrepresentation and because "[n]o state or federal law requires either currency exchanges or wire-transfer firms to disclose the interbank rate at which they buy specie, as opposed to the retail rate at which they sell currency (and the retail price is invariably disclosed)."  267 F.3d at 747-79.

[14]  Additionally, in Prudential, all of the insurance regulators from the fifty states and the District of Columbia endorsed the settlement (id. at 317), and before the fairness hearing, the defendant reached an agreement with the state objectors, including California, whereby enhancements were made to the settlement and additional fines and penalties were paid to California.  Id. at 298. The Court of Appeal also emphasized that the objector "failed to demonstrate that the differences in applicable state law were sufficient" to preclude predominance, the discussion regarding variations of state law was limited to differences among the elements (as opposed to the remedies) of the "'common law'" claims, and the district court concluded that "any differences fall into a limited number of predictable patterns."  Id. at 315.  Finally, the settlement contained "additional remediation amounts" which were the functional equivalent of punitive damages.  Id. at 289, 317.

that the claims of individual class members be decided under state law. And this only compounds the problems noted already." 210 F.R.D. at 69.

This Court recognizes this distinction:

> "MR. STRENIO: Because it does address the *Warfarin* case, and when the Court goes back and looks at all of these cases where the defendants are relying on them, the Court will note a distinction that is present in those cases that are not present here, and that is, in those cases, they have primarily Federal Law, in other words, the gestalt of the action or the motivating force or the primary weight and legal claims being pushed by the plaintiffs in those cases were Federal Law, where the Federal Law, such as RICO or the Sherman Act, where you had antitrust issues, all afforded the class members triple damage, treble damages, in which case, when you compare a state's remedies versus a remedy that affords treble damages, then it's easy to think, okay, well, the relative differences among the states aren't that great, because they are all going to be protected by this federal statute –

> THE COURT: I think, Mr. Strenio, I understand those issues and it, perhaps, should be obvious, that they're on my mind, and what I'm looking for now is, you know, to set up a structure for dealing with it and give the parties an opportunity to make arguments more directed toward what is, you know, this is a class action fairness case, it's not a federal question case."

(Transcript of State Conference held on April 28, 2008, at 15:7 - 16:3.)

Other of the cases cited by the Settlement Proponents, arising in the product liability as opposed to consumer fraud context, side-step the question of variations among the remedies of the state laws by simply concluding that differences in damages does not preclude a finding of predominance for class certification. In re Nigeria Charter Flights Contract Litig., 233 F.R.D. 297, 305-06 (E.D. N.Y. 2006);  In re Serzone Prods. Liab. Litig., 231 F.R.D. 221, 240 (S.D. W.Va. 2005).[15]  These cases, not involving claims applicable in the consumer fraud context, do *not* answer the question of whether treating all the class members identically in a settlement satisfies the *adequacy* requirement for class certification or the requirement that the settlement

---

[15]  In Serzone, the court took comfort in the fact that "[a]s this matter involves attorneys representing individual clients from all over the nation, it is noteworthy that not a single attorney raised an objection indicating variances in state law as a basis for disapproving certification of this settlement class." 231 F.R.D. at 240.  The same, of course, cannot be said here.

20

be *fair, reasonable, and adequate*.  This is the question that must be answered and is the one

posed by the Court:

> "it seems to me that I have to have satisfied myself even or, perhaps, especially in a settlement-class circumstance, that there is no substantial difference in the law involved, or if there are differences, that it is not an unfairness to some member of the class who is, say, a resident of Kansas for whom Kansas law would be applicable."

(Transcript of State Conference held on April 28, 2008, at 4:15-21.)

Other of the cases cited by the Settlement Proponents erroneously assume that

differences in state laws impact only the manageability requirement for class certification.

O'Keefe v. Mercedes-Benz USA, LLC, 214 F.R.D. 266, 291 n. 19.  And, in fact, many of the

cases relied upon by these cases do not gloss over the differences but instead indicate that such

differences can be handled by subclasses, a solution the Settlement Proponents steadfastly resist.

*See*, *e.g.*, In re Simon II Litig., 211 F.R.D. 86, 178 (E.D. N.Y. 2002); In re Telectronics Pacing

Sys., Inc., 172 F.R.D. 271, 291 (S.D. Ohio 1997);  In re Lilco Sec. Litig., 111 F.R.D. 663, 670

(E.D. N.Y. 1986); In re School Asbestos Litig., 789 F.2d 996, 1010 (3rd Cir. 1986).

But, these variations impact not only the manageability requirement for class

certification, but also the adequacy and predominance requirements.  Cole v. General Motors

Corp., 484 F.3d 717, 724 (5th Cir. 2007) (reaffirming the warning of Castano v. Am. Tobacco

Co., 84 F.3d 734, 741 (5th Cir. 1996) that, in a class action governed by the laws of multiple

states, such as this one, "variations in state law may swamp any common issues and defeat

predominance");  Zinser v. Accufix Research Institute, Inc., 253 F.3d 1180, 1189 (9th Cir. 2001)

("Where the applicable law derives from the law of the 50 states, as opposed to a unitary federal

cause of action, differences in state law will `compound the ()disparities' among class members

from the different states");  Cima v. Wellpoint Health Networks, Inc., 2008 U.S.Dist.LEXIS

21224, *35 n. 5 (S.D. Ill. 2008) ("the Seventh Circuit Court of Appeals has warned repeatedly in

recent years against the certification of unwieldy multistate classes, holding that the difficulties

inherent in applying the laws of numerous states to the class claims defeat both predominance

and manageability").  As the court in <u>Rezulin</u> explains:

> *"*[The Seventh Circuit Court of Appeal in <u>Matter of Bridgestone/ Firestone</u>] observed,
> `state consumer-protection laws vary considerably, and courts must respect these
> differences rather than apply one state's law to sales in other states with different rules.'
> *And it held that `because these claims must be adjudicated under the law of so many
> jurisdictions, a single nationwide class is not manageable.'  This of course is another
> way of saying that the individual issues arising by virtue of the multiplicity of varying
> state laws predominated over the common issues.  So too here*."

210 F.R.D. at 71 (emphasis added, footnotes omitted).[16]

---

[16]  While <u>In re Pharmaceutical Industry Average Wholesale Price Litig.</u>, 230 F.R.D. 61 (D. Mass.
2005), ("<u>AWP</u>"), in passing, cited <u>Warfarin</u> for the proposition that variations in state law are
irrelevant to certification of a settlement class due to the absence of the manageability
requirement, <u>AWP</u> did not involve a settlement (much less a settlement allocation that treated all
claims the same despite the disparate remedies afforded the class members) making this
statement *dicta*, and, the plaintiffs supported separate grouping of states with similar laws for
trial.  <u>Id</u>. at 83-84.  Additionally, <u>AWP</u> recognized that, in addition to issues of trial
manageability, "`in a multistate class action, variations in state law may swamp any common
issues and defeat predominance,'" and <u>AWP</u> cited <u>Amchem Prods., Inc. v. Windsor</u>, 521 U.S.
591, 624 (1997) for the proposition that "`differences in state law . . . compound . . . the
disparate questions undermining class cohesion in this case.'"  <u>Id</u>. at 82 (ellipses in original).
<u>AWP</u> limited its holding that predominance existed to the facts of that case because "in the
context of the claims of consumer-patients under Medicare B, these variations in legal standards
are unlikely to be material," because the court excluded consumers whose consumer protection
statutes do not allow a private cause of action or a class action, the plaintiffs were not alleging
that the defendants representation was negligent, and variations relating to the reliance element
would not matter because of the facts of that case.  <u>Id</u>. at 84-85.

22

In short, the material variations among the states' and provinces' laws preclude, in this case, certification of a settlement class that treats all claims equally. Absent subclasses here, the adequacy requirement cannot be satisfied. And, by treating all the claims equally here, the settlement cannot be found to be fair, reasonable, and adequate. The claims of all the class members are not the same in functional content for settlement purposes.

Dated: June 18, 2008                    Respectfully submitted,

By:      /s/ G. James Strenio
         Taras P. Kick
         G. James Strenio
         THE KICK LAW FIRM, APC
         900 Wilshire Blvd., Suite 230
         Los Angeles, California 90017
         (213) 624-1588
         taras@kicklawfirm.com
         james@kicklawfirm.com
         Counsel for Plaintiff
         CARLOS CORRALES