**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

_____
                                        |
In re:                                  |   MASTER DOCKET
                                        |   Civil Action No. 05-11177
M3 POWER RAZOR SYSTEM                   |   (Lead Case)
MARKETING & SALES PRACTICES             |
LITIGATION                              |   MDL Docket No. 1704
_____|
                                        |
THIS DOCUMENT RELATES TO:               |
ALL ACTIONS                             |
_____|


**REPRESENTATIVE PLAINTIFFS' SUPPLEMENTAL REPLY BRIEF IN SUPPORT OF PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AGREEMENT**

**I.     INTRODUCTION.**

As the Court stated at the April 28, 2008 hearing, "this settlement makes eminent good sense." Hearing Transcript, April 28, 2008 ("Tr.") at 4. Despite such recognition, plaintiff Carlos Corrales ("Corrales"), in his Response to Settlement Proponents' Briefing Re: Variation of the Consumer Protection Statutory and Common Laws of the States and Canadian Provinces ("Corrales Response"), continues his approach of repeatedly bringing the same arguments before the Court, arguments that have already been fully briefed in the hundreds of pages of filings Corrales has submitted, and arguments that are at times lifted verbatim from his prior briefs. Nevertheless, Corrales again repeatedly relies on authorities involving litigated classes, where decisions focusing on manageability were rendered. These cases do not apply to cases where, as here, certification of a settlement class is being sought. Corrales also relies on authorities that, upon closer review, reveal their inapplicability to these proceedings. Again, Corrales touts the alleged superiority of California's consumer protection laws, despite the clear recognition that other states, such as Massachusetts, provide similar protection for consumers. Now, as before, the sufficiency of Corrales' arguments remains the same—they are entirely without merit.

**II.    THE LAWS OF THE VARIOUS JURISDICTIONS DO NOT DIFFER SO MATERIALLY AS TO BAR CERTIFICATION OF THE REQUESTED SETTLEMENT CLASS.**

What is most notable about Corrales' Response is not what it says, but what it does not say. Although he devotes more than twenty pages of briefing to the use of rhetorical questions and block-quote after block-quote, Corrales performs minimal analysis of the so-called "material variations" between the laws of the various jurisdictions. In fact, of the six causes of action brought by Representative Plaintiffs in their Amended Consolidated Class Action Complaint ("Amended Complaint"), Corrales devotes the vast majority of his brief to analyzing just one—

violations of the various consumer fraud and deceptive business practices acts—and only does so in the context of addressing California's consumer protection laws. Corrales has little, if anything, to say about how the laws pertaining to the other causes of action—unjust enrichment, breach of express warranty, breach of implied warranty for a particular purpose, negligent misrepresentation, and intentional misrepresentation—materially differ so as to bar preliminary approval of the settlement. Such a lack of analysis can fairly be interpreted as acquiescence to Representative Plaintiffs' position that the laws of each jurisdiction for these causes of action do not materially differ and, therefore, that preliminary approval is warranted.

Nonetheless, Corrales makes numerous remarks in his response that require Representative Plaintiffs' reply. For instance, Corrales devotes nearly four full pages of his response to the citation of numerous block-quotes where courts have, after effectuating a choice of law analysis, denied class certification. Corrales Response at 5–8. None of those decisions, however, arose in the settlement class context; rather, they all address the litigation of class certification, which is not presently at issue before the Court. The concerns echoed by some of those jurisdictions address manageability, which is, again, not at issue here. *See Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems."). Notably, one of the very cases cited by Corrales for the proposition that the laws on unjust enrichment vary, *Powers v. Lycoming Engines*, 245 F.R.D. 226 (E.D. Pa. 2007), actually granted the plaintiffs' motion for class certification, and certified a nationwide class for both unjust enrichment and breach of implied warranty. *See* Corrales Response at 7. Importantly, the *Powers* court found that for unjust enrichment, "[a]lthough there are numerous permutations of the elements of the cause of action in the various states,

there are few real differences," and that "[t]here are few conflicts among the various states' laws on the implied warranty of merchantability cause of action." *Powers*, 245 F.R.D. at 231, 235.

Next, Corrales claims, without any support or authority whatsoever, that certain causes of action before the Court have "more settlement value" based on various elements that may or may not be required to establish liability for each, yet fails to elucidate precisely what these alleged additional values might be or how they would apply in the settlement context, where Defendant offers an enhancement to all members of the Class in order to effectuate a nationwide settlement. Corrales Response at 9–10. Corrales failed to analyze such matters, perhaps because he lacked any rational basis for being able to do so, as he glosses over this argument with nothing more than a series of unsupported, and at times nonsensical, rhetorical questions. Corrales Response at 9 ("a claim that does not have an element of intent/scienter has more settlement value than one that does not, a claim that does not have an element of reliance has more settlement value than one that does not, . . . a claim that does not require privity or a direct benefit conferred on the defendant has more settlement value than one that does not").

While Representative Plaintiffs and Settlement Class Counsel have the best interests of the Class in mind, the Corrales Response, and the arguments contained therein, evidences the self-interested nature that works to the detriment of the Class. Notably, while Corrales seemingly stresses that subclasses are necessary, he offers absolutely no inclination as to what potential subclasses might be, other than a lawyer-driven California-only class. In fact, Corrales' and his counsel's desire to place California and its consumer protection laws on a pedestal comes not only at the expense of the other jurisdictions they all too quickly leave behind, but it clouds their judgment and insight into the applicable laws and standards of preliminary approval of a settlement class, as illustrated by their unrelenting reliance on inapplicable authorities.

In fact, of the authorities relied upon by Corrales, a careful review reveals not only that they do not address the settlement class context, but that Corrales continues his practice of selectively picking and choosing to quote only partial statements that fail to fully apprise the Court of the circumstances surrounding said authorities. For example, Corrales cites *Walsh v. Ford Motor Co.*, 807 F.2d 1000 (D.C. Cir. 1986), even though the case hinged on manageability issues in the context of a litigated class.[1] Moreover, *Walsh* actually supports approval here, where the court noted that variations in state laws might not be material where "the evidence in each case [on major factual questions] was either identical or virtually so." *Id.* at 1017 (citation omitted). This is precisely such a case here, where questions relating to Defendant's liability predominate in this action. Consequently, issues such as state consumer protection law variations regarding reliance, causation, scienter, or intent, do not hinder certification of the Settlement Class at issue. "[V]ariations in the rights and remedies available to injured class members under the various laws of the fifty states" do not infringe upon commonality or predominance when common issues exist relating to whether a defendant engaged in a nationwide campaign of deception predominate. *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 530 (3d Cir. 2003) (citing *In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent,* 148 F.3d 283, 315 (3d Cir. 1998)).

Corrales also relies on *Doll v. Chicago Title Ins. Co.*, 246 F.R.D. 683 (D. Kan. 2007), in an attempt to suggest that Representative Plaintiffs are not ably representing the interests of the Class because they allegedly did not provide for punitive damages in the Settlement Agreement.

---

[1] Other cases cited by Corrales suffer from the same glaring inapplicability. *See, e.g.*, *Washington Mut. Bank, F.A. v. Superior Court of Orange County*, 15 P.3d 1071 (Cal. 2001) (finding that, strictly in the context of evaluating choice-of-law and conflicts of law issues, the court must "make a detailed assessment of how the difficulties posed by the variations in state law will be managed at trial."); *In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1018 (7th Cir. 2002) (on motion for class certification of a nationwide class, in analyzing which law to apply, the court noted that with respect to the differences in state laws, "courts must respect these differences rather than apply one state's law to sales in other states with different rules.").

Corrales Response at 2. In *Doll*, in the context of a litigated class pursuant to a motion for class certification, the plaintiffs agreed to have the issue of punitive damages go to trial based on a single set of legal standards chosen by the defendant. *Id.* at 693–94. Here, in stark contrast, Representative Plaintiffs have done no such thing.

And while in *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d at 530, also cited by Corrales, the court noted that variations in available remedies could be considered in evaluating a settlement, the court further held that "the fact that there may be variations in the rights and remedies available to injured class members under the various laws of the fifty states . . . does not defeat commonality and predominance," and that commonality "does not require that all class members share identical claims." (citations omitted).

In terms of "settlement allocation," as Corrales frames it, the numerous authorities he cites are readily distinguishable. Corrales Response at 13–16. For instance, *In re Sterling Foster & Co.*, 2006 WL 3193744, at *5–6 (E.D.N.Y. Oct. 31, 2006), dealt with a "[p]ro rata distribution of settlement funds based on investment loss," and involved numerous claims against one of the defendants that were time-barred, facts that Corrales conspicuously omits from his brief. Here, though, in the case of a uniform scheme of alleged fraud and deception by Defendant, there are no investment losses that need be apportioned amongst Class members, and issues pertaining to statutes of limitations are entirely inapplicable. In fact, Class members here can receive either a refund for the purchase of their M3Power Razor, by returning it to Defendant, in the amount of $13 plus $2 for shipping and handling, or, if the Class member can show that they paid more than $13 for their M3Power Razor, they can receive full reimbursement for said payment upon return of the razor. Settlement Agreement at ¶ 2.1(b)(1).

With regard to *In re Charter Comm., Inc. Sec. Litig.*, 2005 WL 4045741, at *10 (E.D. Mo. June 30, 2005), Corrales again fails to mention that the differences amongst the class members' claims were based on when they purchased their shares of stock, as well as if and when they sold those shares. While Corrales quotes the court's remark that "it is appropriate for interclass allocations to be based upon, among other things, the relative strengths and weaknesses of class members' individual claims," Corrales Response at 13, he omits the remainder of the sentence, which includes "and the timing of purchases and sales of the securities at issue." *In re Charter Comm., Inc. Sec. Litig.*, 2005 WL 4045741 at *10. Similarly, in *In re Oracle Sec. Litig.*, 1994 WL 502054, at *1–2 (N.D. Cal. 1994), the reason that certain class members received greater distributions under the settlement than others was based on numerous factors other than the class members' potential causes of action, such as, *inter alia*, how many shares of stock they purchased, and the corresponding price inflation associated with the claimant's sub-period. *In re BankAmerica Corp. Sec. Litig.*, 210 F.R.D. 694, 712 (E.D. Mo. 20020), is even further off-point, as the proposed settlement there treated an entire sub-class of individuals differently, who were otherwise within the settlement class, by assigning no value whatsoever to their claims.[2]

### III.     CORRALES' OTHER POINTS OF CONTENTION ARE MERITLESS.

In the interest of compromise, clarity, efficiency, and consideration of the Court, Representative Plaintiffs and Defendant submitted their Joint Submission by the Proponents of the Proposed Settlement Comparing the Relevant Laws of the Applicable Jurisdictions for

---

[2] Similarly, in *Mirfasihi v. Fleet Mortgage Corp.*, 450 F.3d 745, 746 (7th Cir. 2006), the court found that the district court abused its discretion in approving a settlement which provided for two plaintiff classes, a "telemarketing class" and an "information-sharing class", whereby the information-sharing class would receive nothing under the settlement. Instead, the claims of the information-sharing class were being extinguished in exchange for funds that would go to "unaffiliated third-party public interest groups and/or charitable institutions devoted to consumer privacy concerns." *Id.* at 747. Unlike in *Mirfasihi*, Class members here are entitled to benefits under the settlement; no Class members are "left out in the cold," as all Class members may participate in the settlement and receive benefits. *Id.*

Settlement Class Certification ("Joint Submission"). While Corrales attempts to denigrate this effort, and the obvious qualifications that should, and must, accompany any joint submission of such a vast and comprehensive magnitude, it would be poor lawyering on either sides' behalf to say that the Joint Submission represents the only interpretation of law for each of the causes of action of the various jurisdictions. Rather, as Representative Plaintiffs have noted, various causes of action and the issue of their respective requisite elements are subject to debate, and at times unsettled.

As he did once before, Corrales finds it necessary to note what claims each plaintiff sought in his or her individual complaint, prior to all cases being transferred to this Court. Corrales Br. at 4. The Amended Complaint, however, controls here, and whatever claims each plaintiff previously sought are entirely irrelevant for present purposes.

Additionally, Corrales takes the position that the Court can disregard several of the case authorities cited by Representative Plaintiffs because these cases involved settlements where federal claims were brought in addition to state law claims. Corrales apparently believes that courts facing such settlements essentially relax the Rule 23 requirements and discount state law variation concerns because the federal remedies pled often offer remedies similar to those available in some states, such as California. There is no support for such an argument, though, as it flies in the face of the well-established mandate of Rule 23 requiring all courts to perform a rigorous analysis of all aspects of the Rule prior to approval of a class-wide settlement. Corrales' argument in this regard thus must be rejected.

Representative Plaintiffs have never asserted that the elements or remedies of any particular state's laws are "irrelevant," as Corrales erroneously claims. In fact, quite the opposite is true. Representative Plaintiffs recognize the importance of analyzing all aspects of the

8

relevant jurisdictions' laws in structuring a nationwide settlement, which is evidenced by the Joint Submission that was provided to the Court. What Representative Plaintiffs have always maintained, however, is that any differences in the various jurisdictions' laws do not preclude certification of a nationwide settlement class. Nothing in Corrales' Response upsets the validity and appropriateness of this position.

Corrales' Response illustrates his fundamental lack of understanding regarding the Rule 23 process. Simply stated, regardless of whether an objection to a nationwide settlement is filed, regardless of whether such objection is thorough and well-presented, and regardless of whether federal claims are brought along with the state law claims, the Court itself is required to perform a rigorous analysis under Rule 23, and can certify a nationwide settlement class only where such rigorous analysis reveals that the requirements of the Rule are met, apart from manageability. *See In re Lupron*, 228 F.R.D. 75, 88 (D. Mass. 2005) ("A district court must conduct a rigorous analysis of the prerequisites established by Rule 23 before certifying a class." *Smilow v. Southwestern Bell Mobile Sys., Inc.,* 323 F.3d 32, 38 (1st Cir.2003)); *see also Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997). Thus, in cases like this, the Court must necessarily be satisfied that state law variations do not preclude certification of a nationwide settlement class. *Id.* ("When a settlement class is proposed, it is incumbent on the district court to give heightened scrutiny to the requirements of Rule 23 in order to protect absent class members.").

Applying this unassailable reality to the present facts, Corrales has no basis for implying that the numerous cases cited by Representative Plaintiffs failed to follow their mandate under Rule 23. While Corrales feels free to speculate about how informed or uninformed objections were in those cases (*e.g.*, calling a state law variation argument in *Lupron* a "throw-away", Corrales Response at 18 n.11), and to contemplate that the judges in those cases opted simply to

ignore any possible state law variations because there were federal claims raised that might bring certain remedies, Corrales can point to no language from any of those cases, or any subsequent cases, to support such a position.[3] Not only has Corrales failed to provide any authority to support his overstated claims of judicial misfeasance, but he likewise fails to recognize that many of the opinions cited by Representative Plaintiffs have become seminal cases in the class settlement context.[4] Surely these decisions would not have achieved such status if they were "aberrations", as characterized by Corrales.

Fully understanding the task to be performed by the Court, Representative Plaintiffs have provided a lengthy analysis of the state law variations presented here as a result of their request for certification of a settlement class. Contrary to Corrales' implication, Representative Plaintiffs have certainly not avoided the existence of such variations. Rather, they take the unremarkable position that the existence of these variations does not preclude certification of the settlement class proposed here. The copious authorities cited by Representative Plaintiffs in their filings, including the cases discussed above, make it clear that nationwide settlements, particularly the one at issue here, can be approved in the face of state law variations.

## IV.   CALIFORNIA LAW DOES NOT REQUIRE A SUBCLASS.

As the Court noted at the April 28, 2008 hearing, "I'm not of the view that there are material differences between the law of Massachusetts and the law of California sufficient to give pause about equitable treatment of the several members of the class." Tr. at 3–4. In light of this conclusion, and read in conjunction with arguments previously set forth by Corrales,

---

[3] Corrales asserts that the judges in *In re Nigeria Charter* and *In re Serzone* simply "side-stepped the question" of state law variations in approving the nationwide settlement in those cases. Corrales Response at 20. Corrales, of course, provides no support for such a strong accusation.

[4] A quick Westlaw search reveals that, by way of example, *In re Prudential* has been cited 2417 times; *In re Warfarin* has been cited 410 times; *In re Mexico Money Transfer* has been cited 211 times; and *In re Lorazepam* has been cited 174 times.

Corrales should have no further objection to the settlement. As argued in his Opposition to Motion for Preliminary Approval, "[i]f [a settlement] could pass scrutiny under the microscope of California consumers' superior rights and remedies, it could pass scrutiny if viewed against the rights and remedies of consumers from other states." Corrales' Opposition to Motion for Preliminary Approval, filed Nov. 14, 2006, at 17 n.8. Given that Massachusetts and California law are on equal footing here, and where the settlement meets the standard of being fair, reasonable, and adequate, as outlined in Representative Plaintiffs' prior memoranda in support of preliminary approval, Corrales cannot now assert such a claim of unfairness.

Moreover, as Representative Plaintiffs have already pointed out to the Court in prior filings, case law to date interpreting Proposition 64 has substantially limited enforcement of California's consumer protection and false advertising laws (Cal. Bus. & Prof. Code §§17200 and 17500).[5] And although intent is not required to make a *prima facia* case under the California Legal Remedies Act ("CLRA") § 1770(a)(5), it is required to make such a case under §§ 1770(a)(9), (a)(10) of the act. Also, all provisions of § 1770 are subject to § 1784:

> [n]o award of damages may be given in any action based on a method, act, or practice declared to be unlawful by Section 1770 if the person alleged to have employed or committed such method, act, or practice (a) proves that such violation was not intentional and resulted from a bona fide error notwithstanding the use of reasonable procedures adopted to avoid any such error and (b) makes an appropriate correction, repair or replacement or other remedy of the goods and services according to the provisions of subdivisions (b) and (c) of Section 1782.

---

[5] For instance, Proposition 64 states that individuals seeking to commence private causes of action pursuant to California's consumer protection laws must show that they have suffered "injury in fact" and have lost "money or property" as a result of the challenged conduct. As a result, until the California Supreme Court resolves the issue, Proposition 64 has vastly hampered California citizens' rights and remedies under the State's consumer protection laws. *See Starr-Gordon v. Mass. Mut. Life Ins. Co.*, No. CIV. S-03-68 LKK/GGH, 2006 U.S. Dist. LEXIS 83110 (E.D. Cal. Nov. 7, 2006) (discussing the increased requirements for class certification after the passage of Proposition 64); *Daugherty v. American Honda Motor Co.*, B186402, 2006 Cal. App. Unpub. LEXIS 9963 (Ct. App. Cal. Oct. 31, 2006) (reiterating the new heightened requirements imposed by Proposition 64 and the heavy burden now placed on plaintiffs seeking to bring a private action for an alleged fraudulent business practice); *Daghlian v. DeVry Univ., Inc.*, Case No. CV 06-00994 MMM (PJWx), 2006 U.S. Dist. LEXIS 53762 (C.D. Cal. July 20, 2006) (outlining the heightened requirement established by Proposition 64 and the difficulty the new guidelines present private California litigants).

11

Thus, with respect to the express intent requirement set forth in § 1784, it makes intent an issue to be litigated under § 1770(a)(5) as well, which in this situation, would likely be hotly contested by both sides.

Corrales further asserts that the lack of a punitive damages component of the settlement renders it, in some way, unfair or inadequate. There is no legal authority to support this notion and, quite to the contrary, courts routinely approve settlements that do not include a punitive damages component even where punitive damages are available. *Brown v. Am. Home Prods. Corp. (In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Prods. Liab. Litig.)*, MDL Docket No. 1203, Civil Action No. 99-20593, 2000 U.S. Dist. LEXIS 12275 (E.D. Pa. Aug. 28, 2000) (recognizing that a fair and adequate settlement need not be rejected based on class counsel's decision to waive punitive damages); *Petrovic v. AMOCO Oil Co.,* 200 F.3d 1140, 1149 (8th Cir. 1999) (finding that possibility of punitive damages was insufficient to conclude that the district court abused its discretion in approving settlement); *Horton v. Metropolitan Life Ins. Co.*, Civ. No. 93-1849-CIV-T-23A, 1994 U.S. Dist. LEXIS 21395 (M.D. Fla. Oct. 25, 1994) (approving a settlement despite objections pointing to the absence of punitive damages in the settlement); *Sweet v. General Tire & Rubber Co.*, Civil Action No. C75-181A, 1982 U.S. Dist. LEXIS 12371 (N.D. Ohio Mar. 17, 1982) (finding the absence of punitive damages to be an insufficient basis to prohibit approval of a settlement). Indeed, even for claims brought under California's unfair trade practices statutes, courts approve settlements that do not obtain punitive damages. *Wershba v. Apple Computer*, 91 Cal. App. 4th 224, 250 (Cal. App. 6th Dist. 2001) (noting that despite the potential availability of punitive damages under the Consumers Legal Remedies Act, the failure to include punitive damages in a class action settlement does not constitute legal error or abuse of discretion) (citing *County of Suffolk v. Long*

*Island Lighting Co.,* 907 F.2d 1295, 1323 (2d Cir. 1990)); *see also* Corrales Response at 10 (citing *Wershba* with approval).

Simply stated, "[i]t is not necessary, nor expected, that class plaintiffs obtain through a settlement the same or the identical relief that would have been realized through a victorious trial." *Sweet v. General Tire & Rubber Co.*, Civil Action No. C75-181A, 1982 U.S. Dist. LEXIS 12371 (N.D. Ohio Mar. 17, 1982); *see also Wershba v. Apple Computer*, 91 Cal. App. 4th 224, 250 (Cal. App. 6th Dist. 2001) ("In the context of a settlement agreement, the test is not the maximum amount plaintiffs might have obtained at trial on the complaint, but rather whether the settlement is reasonable under all of the circumstances.").

Finally, Corrales' counsel filed a declaration to point out that the firm of Coughlin Stoia has filed briefs citing the California Supreme Court's decision noting that California's consumer protection laws are among the strongest in the country. *See* Declaration of Taras Kick in Support of Plaintiff Carlos Corrales' Response to Settlement Proponents' Briefing Re: Variation of the Consumer Protection Statutory and Common Laws of the States and Canadian Provinces ("Kick Declaration"). Corrales ignores the fact that multiple causes of action are at issue here, each of which having numerous strengths and weaknesses across the several jurisdictions. Nevertheless, as already explained, the proposed settlement herein provides fair, reasonable, and adequate relief. The Kick Declaration either concerns citations in briefs for the unremarkable position that California has strong consumer protection laws (*see, e.g.*, *Troyk v. Farmer's Group, Inc.*; *Interinsurance Exchange of the Automobile Club v. Superior Court*; and *McKell v. Washington Mutual*), or whether certain charges levied in connection with insurance contracts constitute "premiums" under California's insurance law – an issue that is not present in this action. (*See Interinsurance Exchange of the Automobile Club v. Superior Court*).

## V. CONCLUSION.

For the foregoing reasons and those stated in their opening supplemental brief, Representative Plaintiffs respectfully submit that no material differences exist amongst the various jurisdictions which would foreclose approval of the settlement before the Court, and that the proposed settlement is fair, reasonable, and adequate to all Settlement Class Members. Consequently, Representative Plaintiffs, individually and on behalf of the proposed Settlement Class, pray that this Honorable Court enter an Order:

(a) granting class certification of a Settlement Class as defined in the Settlement Agreement;

(b) appointing Ben Barnow, Barnow and Associates, P.C., and Robert M. Rothman, Coughlin Stoia Geller Rudman & Robbins LLP, as Settlement Class Counsel and appointing plaintiffs Mark Dearman, Anthony DeBiseglia, Matthew Marr, Adam Kline, Greg Besinger, Collin L. McGeary, Javier Tunon, and Jean-Sebastien Elie as Representative Plaintiffs;

(c) preliminarily finding that the Settlement Agreement is fair, reasonable, and adequate, and in the best interest of the Settlement Class and the Settlement Class Members;

(d) authorizing the Notice of class certification and preliminary approval of settlement to the Settlement Class in the manner set forth in the Settlement Agreement and in the forms attached as Exhibits D and E to the Settlement Agreement, with modification deemed appropriate, if any, regarding the state law chart filed in conjunction herewith;

(e) appointing Complete Claims Solutions, LLC, as the Claims Administrator;

(f) setting a date for the Final Fairness Hearing to consider entry of a final order approving the Settlement Agreement and the request for attorneys' fees, costs, and expenses and incentive awards; and

(g) granting such other and additional relief as the Court may deem just and appropriate.

Dated: July 2, 2008                                    Respectfully submitted,

/s/ Ben Barnow
One of Co-Lead Counsel

Ben Barnow
Barnow and Associates, P.C.
One North LaSalle Street
Suite 4600
Chicago, IL 60602
(312) 621-2000

Robert M. Rothman
Coughlin Stoia Geller
Rudman & Robbins LLP
58 South Service Road, Suite 200
Melville, NY 11747
(631) 367-7100

*Co-Lead Counsel*


Thomas G. Shapiro (BBO #454680)
Shapiro Haber & Urmy LLP
53 State Street
Boston, MA 02109
(617) 439-3939

*Liaison Counsel*

CERTIFICATE OF SERVICE

      I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing ("NEF") and paper copies will be sent to those indicated as non-registered participants on the 2nd day of July 2008.

                                              /s/ Ben Barnow