Katherine B. Wilkins
3663 Branch Court
Oceanside, CA 92058
Phone: (760) 966-1941

Objector in Pro Se

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re:<br><br>M3 POWER RAZOR SYSTEM<br>MARKETING AND SALES PRACTICE<br>LITIGATION<br><br>———————————————<br><br>THIS DOCUMENT RELATES TO:<br><br>  ALL ACTIONS | Civil Action No. SACV 05-11177-DPW<br>(Lead Case)<br><br>MDL Docket No. 1704<br><br>Hon. Douglas P. Woodlock<br><br>**OBJECTIONS AND NOTICE OF**<br>**INTENT TO APPEAR**<br><br>Date:  March 25, 2011<br>Time: 2:00 p.m.<br>Courtroom: 1 |

I, Katherine B. Wilkins, file these objections to the proposed settlement and state

my intent to appear through my attorney, Darrell Palmer, at the fairness hearing on March

25, 2011.

## I.      IDENTIFICATION OF OBJECTOR

I am a member of the settlement class in the case, *In re M3Power Razor System*

*Marketing & Sales Practices Litigation*, Civil Action No. 05-11177.  My current address

is 3663 Branch Court, Oceanside, CA 92058.  I purchased two (2) M3Power Razors.

These purchases were made during the Class Period between June, 2004 and January,

2005. I purchased both these razors at Vons' and Ralphs stores and paid approximately $10.00-15.00 per razor.

I object to Lead Counsel's Memorandum of Law in Support of Motion for Final Settlement (hereinafter, "Motion for Settlement") on the bases more fully delineated below.

## II.    THE COURT MUST ACT AS FIDUCIARY ON BEHALF OF THE CLASS

Federal courts favor settlements of class actions but a fairness hearing is required to allow all interested parties to be heard and all relevant information reviewed so that the court may rule intelligently on whether a proposed resolution is fair, reasonable and adequate.

> **"Active judicial involvement in measuring fee awards is singularly important to the proper operation of the class-action process. Continued reliance on case law development of fee-award measures does not diminish the court's responsibility. In a class action, the district court must ensure that the amount and mode of payment of attorney fees are fair and proper whether the fees come from a common fund or are otherwise paid. Even in the absence of objections, the court bears this responsibility."**
> *Committee Notes to Rule 23(h), 2003.*

"As a starting point, it is important to recall that in determining reasonableness, the district court acts as a fiduciary to the class. See Fed.R.Civ.P. 23(h) advisory committee note ("[a]ctive judicial involvement in measuring fee awards is singularly important to the proper operation of the class-action process .... [e]ven in the absence of objections")" *In re Cabletron Systems, Inc. Securities Litigation* (D.N.H. 2006) 239 F.R.D. 30, 38. ("[W]hen determining fees, judges "must protect the class's interest by acting as a fiduciary"). *In re Rite Aid Corporation Securities Litigation* (3rd Cir. 2005) 396 F.3d 294, 307.

## III.   CLASS COUNSEL FAILED TO MEET ITS BURDEN OF PROOF THAT THE SETTLEMENT AND REQUEST FOR FEES AND COSTS IS FAIR, REASONABLE, AND ADEQUATE.

This Settlement suffers from a procedural defect that should cause this Court to

deny the request until the proper procedures are followed. Fed. R. Civ. P. 23 (h) provides:

(1)   Motion for Award of Attorney Fees. A claim for an award of attorney fees and nontaxable costs must be made by motion under Rule 54 (d)(2), subject to the provisions of this subdivision, at a time set by the court. Notice of the motion must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner.

(2)   Objections to Motion. A class member, or a party from whom payment is sought, may object to the motion.

The Notice of Settlement merely states that, "Gillette has agreed to benefit the

Settlement Class further by being responsible for and paying Settlement Class Counsel's

reasonable fees, costs, and expenses in the amount of $1,850,000" under Section 18 of

the Notice. This clearly does not comport with the requirements of Rule 23 (h). The

Notice merely identifies the value that Class Counsel plans to request, but not the basis

for their fee request. This is not directing notice of the fee motion to class members in a

"reasonable manner" as is required by Fed. R. Civ. P. 23 (h)(1).[1] Nor does this afford

any class members the opportunity to "object to the Motion" as required by Fed. R. Civ.

P. 23 (h)(2).

Determining the reasonableness of Class Counsels' request for fees and costs is

impossible when the details of such requests have not been filed before the objection

---

[1] The 2003 Committee Notes to Rule 23(h), states, inter alia, "Besides service of the motion on all parties, notice of class counsel's motion for attorney fees must be "directed to the class in a reasonable manner." Because members of the class have an interest in the arrangements for payment of class counsel whether that payment comes from the class fund or is made directly by another party, notice is required in all instances. In cases in which settlement approval is contemplated under Rule 23(e), *notice of class counsel's fee motion should be combined with notice of the proposed settlement, and the provision regarding notice to the class is parallel to the requirements for notice under Rule 23(e)."*

3

deadline of March 3, 2011. A plain reading of Rule 23 requires that Class Members be afforded this opportunity. Instead, this Class Member is in a position of total blindness, as I cannot object to a motion that is not on file and not made available to my attorney prior to the objection deadline. Courts within the First Circuit have instructed Courts within their Circuit to exercise discretion in reviewing counsel fee arrangements negotiated in connection with class action settlements – even when these fees are paid separately instead of from the common fund. *Duhaime v. John Hancock Mut. Life Ins. Co.* (1ˢᵗ Cir. 1999) 183 F.3d 1, 4; Citing, *Weinberger v. Great Northern Nekoosa Corp.*, 925 F.2d 518, 524 (1st Cir.1991).

Although not binding on this Court, the Ninth Circuit recently had cause to opine on this issue in *In re Mercury Interactive Corp. Securities Litigation.* In its opinion, the Court held that the practice of not mandating a fee motion to be on file prior to the Objection deadline was a violation of Rule 23 and a borderline violation of the Class Members' due process rights. "The Advisory Committee Notes to the 2003 amendments to Rule 23(h) ... support this reading of the rule. They elaborate that '[i]n setting the date objections are due, the court should provide sufficient time after the full fee motion is on file to enable potential objectors to examine the motion.' Fed.R.Civ.P. 23, 2003 Advisory Committee Notes. The Advisory Committee Notes further contemplate that, in appropriate cases, the court will permit an 'objector discovery relevant to the objections.' Clearly, the rule's drafters envisioned a process much more thorough than what occurred in this case." *In re Mercury Interactive Corp. Securities Litigation*, 618 F.3d 988, 994 (9ᵗʰ Cir. 2010.) The Court further stated that "[t]he plain text of the rule requires that any

4

class member be allowed an opportunity to object to the fee "motion" itself, not merely to the preliminary notice that such a motion will be filed." Id. at 993-4

The drafters of Rule 23 clearly intended to provide Class Members the full and fair opportunity to inspect Class Counsel's fee request in its entirety. Reading the Rule in any other way obviates the safeguards that Rule makers obviously felt were required with respect to calculation of fees and expenses within the Class Action process. For such reason, this Objector reserve the right to supplement these objections once the Fee and Expense Reimbursement request has been filed.

## A.    There is No Lodestar Disclosure to Indicate Whether the Fee Requested is Fair, Reasonable or Adequate.

Utilization of the Lodestar method in the calculation of fees in common fund cases is not unusual and, at the very least, use of the lodestar cross-check method is commonly utilized in this Circuit. *In re Tyco International Ltd. Multidistrict Litigation* (D.N.H. 2007) 535 F.Supp.2d 249, 265, Citing, *In re Rite Aid Corp. Securities Litigation*, 396 F.3d 294, 305-06 (3d Cir.2005); *United States v. 8.0 Acres of Land*, 197 F.3d 24, 33 (1st Cir.1999); *In re Thirteen Appeals Arising out of the San Juan Dupont Plaza Hotel Fire Litigation*, 56 F.3d 295, 307-08 (1st Cir.1995). "[I]t is now common practice to use the lodestar as a cross-check on the POF (percentage of the fund) award. Recently, the argument has been made that using the lodestar cross-check is not merely a good practice but an "ethical imperative." See Vaughn R. Walker & Ben Horwich, The Ethical Imperative of a Lodestar Cross-Check: Judicial Misgivings about "Reasonable Percentage" Fees in Common Fund Cases, 18 Geo. J. Legal Ethics 1453 (Fall 2005)." *In re Cabletron* 239 F.R.D. at 37-8.

5

The practice of utilizing a cross-check method has gained such popularity in recent years that, in 2000, the Third Circuit altered its previously staunch position against any utilization of the lodestar method (as stated in its 1985 Task Force opinion) to state that "[traditionally, the 'appropriate' percentage [fee award] is ... subjected to a cross-check." *In re Cendant Corp. sec. Litig.*, 109 F. Supp. 2d 285, 302 (D.N.J. 2000), vacated and remanded by *In re Cendant Corp. Litig.*, 264 F.3d 201 (3d Cir. 2001). This cross check practice has even been canonized in the Manual for Complex Litigation (Fourth). MANUAL FOR COMPLEX LITIGATION (FOURTH) 14.122 (2004) ("The lodestar is at least useful as a cross-check on the percentage method by estimating the number of hours spent on the litigation and the hourly rate...") The Manual For Complex Litigation (Third) discusses lodestar fee awards with no mention of the cross-check. THE MANUAL FOR COMPLEX LITIGATION (THIRD) 24.122 (1995).

Thus, this Court may, and should in this instance, conduct a lodestar cross-check to determine the reasonable value of attorney hours spent so that it can determine the reasonable market rate for Class Counsels' services. There has been no lodestar disclosure in this case and no evidence that the amount will be disclosed in Counsels' pending Motion for Attorneys' Fees and Costs. This Objector respectfully requests a thorough examination by the Court of Class Counsels' billing records to ascertain the fairness of the fee request and expenses incurred and likewise requests the opportunity to review them vis a vis Objector's attorney of record. This Objector simply cannot ascertain whether or not this fee is reasonable without supporting documentation and absent any mention of the lodestar amount.

## IV.    THE FEE REQUESTED APPEARS TO BE UNREASONABLE.

Although the First Circuit has not endorsed a specified set of factors to be used in determining whether a fee request is reasonable, this Circuit relies on neighboring Circuits for instruction.  Some of the factors usually relied upon are, (1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; and (7) the awards in similar cases. *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 n. 1 (3d Cir.2000). See also *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir.2000)

Importantly, In determining whether to grant a class action fee application, "the Court must determine whether the fee requested is within the range of fees that would have been agreed to at the outset of the litigation in an arm's length negotiation in light of the risk of nonpayment and the normal rate of compensation in the market at the time." In re Relafen Antitrust Litigation (D. Mass. 2005) 231 F.R.D. 52, 79; citing *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 718 (7th Cir. 2001). This requires the district judge to "ascertain the appropriate rate for cases of similar difficulty and risk, and of similarly limited potential recovery." *Kirchoff v. Flynn*, 786 F.2d 320, 326 (7th Cir. 1986).

Aside from the conspicuous absence of a Motion for Fees and Costs, Lead Counsel is requesting fees that amount to approximately 24 percent of the total settlement fund. ($1.87 million of $7.5 million.) Lead Counsel does not disclose how it arrives at this number nor why this is an appropriate percentage.  Furthermore, the manner in which

7

it states its "request" in the Notice is misleading, as it seems to suggest an entitlement to

that dollar value. The Notice states in Section 18 that Gillette has agreed to pay the fees

for Class Counsel. The only plausible reason for phrasing it in this manner is to dissuade

members of the Class from objecting to the fees and costs request, as it sounds as if this is

already a foregone conclusion that Class Counsel shall be paid this amount. Thus, this

phrasing plus the conspicuous absence of a Motion for Fees and Costs makes it

impossible for this Objector to form an opinion as to whether this request is fair,

reasonable or adequate. This Objector therefore reserves the write to supplement its

objections upon review of this information.

## V.   THE RELIEF PROVIDES CLASS MEMBERS WITH VERY LITTLE BENEFIT.

According to the Amended Settlement and the Notice provided to the Class, Class

Members are able to receive one of three methods of benefit as a result of being in this

Class. Only one of the Options truly bestows any benefit on Class Members – and this

option likewise presents a problem to the Class, as explained below.

Class Members may select Option One and receive a refund of $13.00 USD (or

$16.25 CAN). In order to recoup this benefit, the claimant must enclose the actual razor.

If claiming a refund in excess of $13 USD (or $16.25 CAN), one must enclose the receipt

from the purchase of the razor. It is safe to assume that no Class Members have retained

a razor they purchased in 2004-2005 (particularly if it was a defective one). It is also safe

to assume that even the most diligent and thorough record keepers among the Class

Members have since thrown away their receipt for a $13 razor. Thus, this Option is, in

effect, a sham.

Class Members may also select Option Two in order to receive a rebate. In order to claim this rebate, the Class Member is required to submit the UPC code from the package in which the razor was purchased. Similar to Option One, it is safe to presume that no Class Members are still in possession of the original packaging from the razor they owned during the relevant time period. In fact, the packaging was likely thrown away on the day of purchase, followed shortly after by the receipt and, later, the razor itself. Certainly, this Objector is no longer in possession of any of those items. Thus, this Option is also not an option for Class Members.

This leaves Option Three – receipt of a new razor. The Amended Settlement Agreement states that this razor will "credit" against the $7.5 million fund to the tune of $7.00 per razor (inclusive of shipping). The Amended Settlement Agreement and Notice also state that Gillette will distribute these razors until each $7.00 credit exhausts the fund. The problem here is that there is no proof that the value assigned to this settlement razor is reflective of the actual cost to Defendants. Perhaps it only costs Gillette $0.50 per razor plus $0.75 shipping. Thus, there is no proof that the settlement fund is actually $7.5 million dollars.[2]

## VI.   DIFFERENCES IN STATE LAWS MANDATE A DIFFERENTIAL ALLOCATION OF THE CONSUMER REMEDIES PROVIDED.

The proposed settlement fails to recognize, and apply, significant differences among the applicable laws and remedies. Consumer protection laws of the states that are contemplated in the class description are significantly different. Further, the Class will consist of filings in every state. Class treatment for a Class this diverse, with this many

---

[2] Perhaps the settlement fund really only amounts to $3 million, for example. In that case, Class Counsel's fee request would constitute more than 50% of the fund. Thus, this Objector has no way of knowing what the basis is for either the "value" of the settlement fund, or the basis for the attorneys fees.

differing causes of action, will prove to be very difficult. As a result, issues of predominance under 23(b) arise.

Although nationwide classes are often certified in Class Actions, this particular action will cause problems as each state provides different remedies for consumer protection statutes and different tax rates for each city and state. For example, in Alabama, an aggrieved consumer is entitled to the greater of actual damages or $100, and treble damages are available. (Ala. Code §§ 8-19-1 – 8- 19-15), while in Colorado, a consumer can recover only actual damages in a Class Action (Consumer Protection Act Colo. Rev. Stat. §§ 6-1- 101 - 6-1-115.) This makes a claim in Alabama far exceed the benefits available to a claimant in Colorado. This disparity defeats predominance under Rule 23. In particular, this Objector is from California, which requires scienter in order to award damages under the California Civil Code, Consumer Legal Remedies Act, § 1784.

The settling parties seek to certify a class consisting of residents from all 50 states who purchased razors from Gillette pursuant to advertising the Plaintiffs contend was false or misleading. However, the clear mandate in recent federal consumer protection class actions is that (1) certification must be rejected, or (2) where certification is permitted, the settlement must be structured to accommodate the differences among the states' statutes.

Regarding this issue, appellate courts have instructed that if it is too burdensome to perform a proper choice-of-law analysis, the appropriate remedy is decertification of the class; not to gloss over the issue and split things up equally. *See, In re Bridgestone/Firestone Inc. Tires Prod. Liab. Litig.* (7th Cir. 2002) 288 F.3d 1012, 1017.

10

Decertification is not required, however, if the Court (or Class Counsel) can rationally

divide the class to factor in the applicable consumer protection laws, as the court did in *In*

*re Relafen Antitrust Litigation* (D.Mass. 2004) 225 F.R.D. 14.

## VII.    OBJECTORS' ADDED VALUE TO THE CLASS.

In their zeal to win approval of an agreement, professional class counsel and

professional defense counsel often overlook or deny the importance of objectors to the

class-action process. Indeed, professional class counsel and professional defense counsel

may even denounce objectors' counsel as "serial objectors," or use some other pejorative

epithet. However, settlements, such as this one, can be so complicated that only lawyers

who have participated in many class action lawsuits can provide insightful and useful

analysis, thoughtful alternatives, and a context within which to identify flaws or

oversights in a settlement, and thereby assist a court in fulfilling its duty to examine the

settlement as an independent and impartial neutral.

Thus, objectors provide great value to the class action process. Without resolving

the issues described above, the Settlement could become a complete sham and no one

would be the wiser. The judicial system would have failed Class Members by requiring

no mechanism for assuring that the agreed relief is ever received by the persons who

should benefit. The foregoing observations are submitted to improve the Settlement, and

thereafter to guarantee it will work, and to show when and how well it is completed.

These improvements are developed only now because objectors offer the last opportunity

to preserve the adversary process, which is necessary to test the fairness of a proposed

settlement.

"It is desirable to have as broad a range of participants in the fairness hearing as

11

possible because of the risk of collusion over attorneys' fees and the terms of settlement generally. . . . It is impossible for a class to select, retain or monitor its lawyers as an individual client would." *Great Neck Capital Appreciation Inv. P'ship, L.P. v. PricewaterhouseCoopers, L.L.P.*, 212 F.R.D. 400, 412 (E.D. Wis. 2002). "Class counsel and defendants' counsel may reach a point where they are cooperating in an effort to consummate the settlement." Id. "Courts, too, are often inclined toward favoring the settlement, and the general atmosphere may become largely cooperative." Id.

"Thus, objectors serve as a highly useful vehicle for class members, for the court and for the public generally." *Great Neck*, 212 F.R.D. at 412. "From conflicting points of view come clearer thinking." *Id.* at 412-13. "Therefore, a lawyer for an objector who raises pertinent questions about the terms or effects, intended or unintended, of a proposed settlement renders an important service." *Id.* at 413.

Objectors' counsel have been recognized where their efforts have augmented the common fund or otherwise improved a class action settlement. See, e.g., *Bowling v. Pfizer, Inc.,* 922 F.Supp. 1261, 1285 (S.D. Ohio), aff'd, 102 F.3d 777 (6th Cir. 1996); *In re Domestic Air Transp. Antitrust Litig.,* 148 F.R.D. 257, 359-60 (N.D.Ga. 1993). Indeed, even in cases where objectors appeared but the settlement terms were not altered, courts have recognized their value in that their presence improved the process and assisted the court in its scrutiny of the settlement. *See County of Suffolk v. Long Island Lighting Co.*, 907 F.2d 1295, 1325-27 (2d Cir. 1990); *Howes v. Atkins*, 668 F.Supp. 1021, 1027 (E.D.Ky. 1987); *Frankenstein v. McCrory Corp.,* 425 F.Supp. 762, 767 (S.D.N.Y. 1977); *see also Domestic Air*, 148 F.R.D. at 359. Likewise, the Committee Notes to Rule 23(h) expressly states the benefit that objectors may bring to a case,

"In some situations, there may be a basis for making an award to other counsel whose work produced a beneficial result for the class, such as attorneys who acted for the class before certification but were not appointed class counsel, or attorneys who represented objectors to a proposed settlement under Rule 23(e) or to the fee motion of class counsel. Other situations in which fee awards are authorized by law or by agreement of the parties may exist."
2003 Committee Note, Rule 23(h).

## VIII.  JOINDER IN OTHER OBJECTIONS

This Objector adopts and joins in all other well taken - bona fide objections filed by other Class Members in this case, and incorporates them by reference as if they appeared in full herein.

## IX.    REQUEST FOR ATTORNEYS' FEES

Based on the above, this Objector wishes to reserve the right to apply for reasonable and appropriate compensation for the valuable and crucially important services which have been provided in assisting the Court with this complex matter, preserving the adversary process needed to test the Proposed Settlement, identifying problems with the Proposed Settlement, and presenting substantial and workable solutions.

Accordingly, an incentive award is appropriate for the Objector herein for her willingness to be a named party, promoting fairness, and contributing to the common welfare of the Class.

## X. CONCLUSION

**WHEREFORE,** This Objector respectfully requests that this Court:

1.  Upon proper hearing, sustain these Objections;

2.  Upon proper hearing, enter such Orders as are necessary and just to adjudicate these Objections and to alleviate the inherent unfairness, inadequacies and unreasonableness of the proposed settlement;

3.  Continue the Fairness Hearing until such time that this Objector has had an opportunity to review Class Counsel's Billing Records; and

4.  Award an incentive fee to this Objector for my service as a named representative of Class Members in this litigation.

Dated: March 3, 2011                    By: _____

                                        Katherine B. Wilkins, Pro Se

1  **In re M3Power Razor System Marketing & Sales Practices**
   **Case No. 05-cv-11177 (Lead Case)**

2

3                    **DECLARATION OF SERVICE**
4          **STATE OF CALIFORNIA, COUNTY OF SAN DIEGO**

5      I, Maria V. Carapia, declare that I am over the age of eighteen (18) and I am not a party
   to this action.  On March 3, 2011, I caused to be served the following:
6

7          **Objections of Katherine B. Wilkins and Notice of Intent to Appear**

8  on the interested parties:

9                    **SEE ATTACHED SERVICE LIST**

10

11 by placing a copy in an envelope, for delivery via prepaid U.S. Mail, to the addressees
   named on the attached Service List on the above indicated day.
12

13     I declare under penalty of perjury under the laws of the State of California that the
   foregoing is true and correct.  Executed on March 3, 2011, at Solana Beach, California.
14

15

16 _____
                    Maria V. Carapia
17

18

19

20

21

22

23

24

25

26

27

28

## SERVICE LIST

1

2

3
**COURT**
United States District Court
District of Massachusetts

4
1 Courthouse Way
Boston, MA 02210

5

6
**CLASS COUNSEL**
Ben Barnow

7
Barnow and Associates, PC
One North La Salle Street, Suite 4600

8
Chicago, IL 60602

9
Robert M. Rothman
Robbins Geller Rudman & Down LLP

10
58 South Service Road, Suite 200
Melville, NY 11747

11

12
**DEFENSE COUNSEL**
Harvey J. Wolkoff

13
Ropes & Gray LLP
800 Boylston Street

14
Boston, MA 02199

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF SERVICE